Barrett S. Litt, SBN 45527
Email: blitt@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Carol A. Sobel, SBN 84483
Email: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: (310) 393-3055
Facsimile: (310) 451-3858

ADDITIONAL COUNSEL LISTED ON
NEXT PAGE
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARMAINE CHUA, ET AL.,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>DEFENDANTS. | CASE NO:  2:16-CV-00237-JAK-GJS(X)<br>[HON. JOHN A. KRONSTADT]<br><br>NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF LAW; DECLARATIONS; EXHIBITS.<br><br>HEARING DATE:   OCTOBER 24, 2016<br>HEARING TIME:   8:30 A.M.<br>COURTROOM:        750<br><br>TRIAL DATE:         N/A<br>TIME:                     N/A<br>ACTION FILED:     JAN. 13, 2016 |

ADDITIONAL PLAINTIFFS' COUNSEL

Paul Hoffman, SBN 71244
Email. hoffpaul@aol.com
Catherine Sweetser. SBN271142
Email. catherine.sdshhh@gmail.com
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Tel. (310) 396-0731
Fax. (310) 399-7040

Colleen M. Flynn, SBN 234281
Email. cflynnlaw@yahoo.com
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 9001 0
Tel. 213 252-9444
Fax. 213 252-0091

Matthew Strugar, SBN 232951
Email. matthewstrugar@gmail.com
LAW OFFICE OF MATTHEW STRUGAR
2108 Cove Avenue
Los Angeles, California 90039
Tel: 323 696-2299

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 24, 2016, at 8:30 a.m., in Courtroom 750 of the United States District Court for the Central District of California, 55 East Temple Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to certify this case as a class action pursuant to F.R.Civ.P. 23(b)(3), (b)(2) and (b)(1).

The proposed damages (b)(3) class and sub-classes are:

*Damages class*: All persons who were present at either 6th and Hope on November 26, 2014, or Beverly and Alvarado on November 28, 2014, and who were kettled, detained, and/or arrested, then denied OR release by the LAPD, all in association with the protest against the grand jury decision in Ferguson, Missouri in the killing of Michael Brown.

*Damages sub-classes*:

1.    *Damages Sub-Class #1* (6th and Hope Sub-Class) (represented by Plaintiffs Chua, Hicks and Rivera): those persons who were present on November 26, 2014 near or at 6th and Hope Streets and who were arrested by the LAPD in association with a protest against the grand jury decision in Ferguson, Missouri in the killing of Michael Brown and who either were not prosecuted or had their criminal charges resolved favorably.

2.    Damages Sub-Class # 2 (Beverly and Alvarado Hope Sub-Class) (represented by Plaintiff Todd): those persons who were present on November 28, 2014, on a public sidewalk near or at the intersection of Alvarado and Beverly Boulevard and who were detained, handcuffed, interrogated and/or searched in association with a protest against the grand jury decision in Ferguson, Missouri in the killing of Michael Brown.

1    The proposed injunctive relief (b)(2) class is: all persons who have in the past,
2  or may in the future, participate in, or be present at, demonstrations within the City of
3  Los Angeles in the exercise of their rights of free speech and petition.
4    Plaintiffs met and conferred with Defendants regarding this motion on June 30,
5  2016. The parties were unable to agree on whether any of the classes should be
6  certified.

7

8   DATED: July 13, 2016          Respectfully Submitted,

9                                 KAYE, MCLANE, BEDNARSKI & LITT
10                                LAW OFFICES OF CAROL SOBEL
11                                SCHOENBRON, DESIMONE, ET AL.
                                  LAW OFFICE OF COLLEEN FLYNN
12                                LAW OFFICE OF MATTHEW STUGAR

13
                                  By:__/s/ Barrett S. Litt_____
14                                 Barrett S. Litt

15
                                  By:__/s/ Carol A. Sobel_____
16                                 Carol A. Sobel

17
                                  Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................... 1

II.  STATEMENT OF FACTS ..................................................... 2

    A.  6ᵀᴴ & HOPE ARRESTS ................................................. 2
    B.  THE DETENTIONS AT BEVERLY AND ALVARADO: ............... 5

III.  CLASS DEFINITIONS ........................................................ 7

IV.  GENERAL CLASS ACTION CONSIDERATIONS .................. 8

    A.  CLASS ACTIONS ARE PARTICULARLY SUITABLE IN CIVIL
       RIGHTS CASES. .......................................................... 8
    B.  PRESUMPTIONS APPLICABLE TO MOTION FOR CLASS CERTIFICATION ... 9

V.  THIS ACTION SATISFIES THE REQUIREMENTS OF
    FRCP 23(A) and (B)(3). ................................................. 10

    A.  NUMEROSITY .......................................................... 10
    B.  TYPICALITY ............................................................ 12
    C.  ADEQUACY OF REPRESENTATION ................................ 13
        1.  The Class Representatives' Interests Are Not Antagonistic To .....
           The Interests Of The Class ........................................ 13
        2.  Counsel Are Well Qualified To Represent The Class................ 14
    D.  COMMON QUESTIONS EXIST AND PREDOMINATE ................ 14

VI.  THE LITIGATION MEETS THE OTHER REQUIREMENTS OF
    FRCP 23(B). ................................................................. 17

    A.  RULE 23(B)(3)'S REQUIREMENTS OF SUPERIORITY AND .....................
       MANAGEABILITY ARE MET. ........................................ 17
    B.  EVEN IF INDIVIDUALIZED DAMAGES EXIST, THEY DO NOT DEFEAT
       PREDOMINANCE WHERE COMMON LIABILITY ISSUES PREDOMINATE. . 18
    C.  CLASS-WIDE DAMAGES ARE DETERMINABLE AND, IN ANY EVENT,
       WHETHER TO CERTIFY CLASS-WIDE DAMAGES CAN BE DEFERRED. .. 19
    D.  RULE 23(B)(2)'S REQUIREMENTS ARE ALSO MET ................ 22
    E.  ALTERNATIVELY, RULE 23(B)(1)'S REQUIREMENTS ARE MET ............. 23

VII.  CONCLUSION .................................................................. 23

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aichele v. City of Los Angeles*
    314 F.R.D. 478 (C.D. Cal. 2013) ...................................................... 13, 14, 16, 21

*Aichele v. City of Los Angeles*
    No. CV 12-10863-DMG-FFM (x) (C.D.Cal.) ........................................ 12, 15, 17

*Allapattah Svcs. v. Exxon Corp.*
    157 F.Supp.2d 1291 (S.D. Fla. 2001) ........................................................... 19

*Alliance for Global Justice, et al. v. District of Columbia*
    Civ. 01-0811 (D.D.C. 2006) ...................................................................... 16

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ................................................................................ 18

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ..................................................................... 14

*Barham v. Ramsey*
    434 F.3d 565 (D.C. Cir. 2006) ................................................................... 16

*Barnes v. Dist. of Columbia*
    278 F.R.D. 14 (D.D.C. 2011) ..................................................................... 21

*Bateman v. Am. Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010) ..................................................................... 22

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ..................... 8

*Brandon v. Allen*
    719 F.2d 151 (6th Cir.1983), *rev'd on other issues sub nom. Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873 (1985) ........................................... 20

*Johnson v. California*
    543 U.S. 499 (2005) ................................................................................ 14

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*
    917 F.2d 1171 (9th Cir. 1990) ................................................................... 12

*Carey v. Piphus*
   435 U.S. 247, 98 S.Ct. 1042 (1978) ................................................................ 20

*Carnegie v. Household Int'l, Inc.*
   376 F.3d 656 (7th Cir. 2004) (Posner, J.) ...................................................... 21

*Carr v. Whittenburg*
   2006 WL 1207286 (S.D. Ill. Apr.28, 2006) .................................................... 21

*Chang v. United States*
   217 F.R.D. 262 (D.D.C. 2003 ................................................................... 16, 23

*Collins v. Jordan*
   110 F.3d 1363 (9th Cir. 1996) ......................................................................... 17

*Comcast v. Behrend*
   __ U.S. __, 133 S.Ct. 1426 (2013) ........................................................... 18, 19

*Corriz v. Naranjo*
   667 F.2d 892 (10th Cir.1981), *cert. dismissed,* 458 U.S. 1123, 103 S.Ct. 5
   (1982)............................................................................................................. 20

*Crown, Cork, & Seal Co. v. Parker*
   462 U.S. 345 (1983) ......................................................................................... 8

*Dellums v. Powell*
   566 F.2d 167 (D.C. Cir. 1977) ................................................................. 17, 19

*East Texas Motor Freight, Inc. v. Rodriguez*
   431 U.S. 395 (1977) ......................................................................................... 8

*Elliott v. Weinberger*
   564 F.2d 1219 (9th Cir. 1977), *aff'd in pertinent part sub nom., Califano
   v. Yamasaki,* 442 U.S. 682 (1979)................................................................. 22

*Esplin v. Hirschi*
   402 F.2d 94 (10th Cir. 1968) ............................................................................ 9

*General Telephone Co. of Southwest v. Falcon*
   457 U.S. 147 (1982). Civil .............................................................................. 8

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)........................................................................ 13

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Herrera v. Valentine*
  653 F.2d 1220 (8th Cir.1981) ................................................................. 20

*Hessel v. O'Hearn*
  977 F.2d 299 (7th Cir. 1992) ................................................................. 20

*Hickey v. City of Seattle*
  236 F.R.D. 659 (W.D.Wash. 2006) ........................................................ 16

*Horn v. Associated Wholesale Grocers, Inc.*
  555 F.2d 270 (10th Cir. 1977) .............................................................. 11

*In re Nassau County Strip Search Cases*
  2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ........................................ 21

*In Re: Northern Dist. Of Cal. Dalkon Shield Etc.*
  693 F. 2d 847 (9th Cir. 1982) .............................................................. 13

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) ........................................................ 14, 19

*Johns v. DeLeonardis*
  145 F.R.D. 480 (N.D. Ill. 1992) .......................................................... 17

*Johnson v. Gen. Motors Corp.*
  598 F.2d 432 (5th Cir. 1979) .............................................................. 22

*Jordan v. County of Los Angeles*
  669 F.2d 1311 (9th Cir. 1992), *vacated on other grounds,* 459 U.S. 810
  (1982) ........................................................................................ 10, 11, 12

*Kerman v. City of New York*
  374 F.3d 93 (2d Cir. 2004) ................................................................. 20

*King v. Zamiara*
  2013 WL 2102655 (W.D. Mich. May 14, 2013) .................................. 21

*Krzesniak v. Cendant Corp.*
  2007 WL 1795703 (N.D. Cal. June 20, 2007) .................................... 13

*Lenvill v. Inflight Motion Pictures, Inc.*
  582 F. 2d 507 (9th Cir. 1978) .............................................................. 13

*Levett v. Chicago Bd. of Educ.*
  2001 WL 40805, 2001 U.S. Dist. LEXIS 315 (N.D. Ill. 2001) ........................ 17

*Levya v. Medline Industries*
  716 F.3d 510 (9th Cir. 2013) .............................................................................. 18

*MacKinney v. Nielsen*
  69 F.3d 1002 (9th Cir. 1995) .............................................................................. 15

*MacNamara v. City of N.Y.*
  275 F.R.D. 125 (S.D.N.Y. 2011) ........................................................................ 16

*Marcera v. Chinlund*
  595 F.2d 1231 (2d Cir. 1979), *vacated on other grounds sub nom.,*
  *Lombard v. Marcera*, 442 U.S. 915 (1979) ....................................................... 22

*Memphis Cmty. Sch. Dist. v. Stachura*
  477 U.S. 299, 106 S. Ct. 2537 (1986) ................................................................ 20

*Michaud v. Monro Muffler Brake, Inc.*
  No. 2:12-CV-00353-NT, 2015 WL 1206490 (D. Me. Mar. 17, 2015) ............. 11

*NAACP, Western Region v. City of Richmond*
  743 F.2d 1346 (9th 1984) ................................................................................... 16

*Odom v. Hazen Transp., Inc.*
  275 F.R.D. 400 (W.D.N.Y. 2011) ...................................................................... 11

*Parker v. Time-Warner Entertainment Corp.*
  331 F.3d 13 (2nd Cir. 2003) ................................................................................. 9

*Parrish v. Johnson*
  800 F.2d 600 (6th Cir. 1986) .............................................................................. 21

*Patrykus v. Gomilla*
  121 F.R.D. 357 (N.D. Ill. 1988) ......................................................................... 17

*Phillips Petroleum Co v. Shutts*
  472 U.S. 797 (1985) .............................................................................................. 8

*Pulaski & Middleman, LLC v. Google, Inc.*
  802 F.3d 979 (9th Cir. 2015) .............................................................................. 19

v

*Siebert v. Severino*
   256 F.3d 648 (7th Cir. 2001) .............................................................................. 21

*Spalding v. City of Oakland*
   2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ........................................ 13, 16, 17

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 13

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ........................................................................... 14, 15, 19

*Vaquero v. Ashley Furniture Industries, Inc.*
   ---F.3d --- , 2016 WL 3190862 (9th Cir. June 8, 2016) ...................................... 19

*Villanueva v. George*
   659 F.2d 851 (8th Cir. 1981) .............................................................................. 21

*Vodak v. City of Chicago*
   2006 WL 1037151 (N.D. Ill. 2006) .................................................................... 16

*Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*
   2012 WL 6591610 (S.D. Cal. Dec. 18, 2012) ...................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ....................................................................... 9, 14, 17, 22

*Walje v. City of Winchester, Ky.*
   773 F.2d 729 (6th Cir. 1985) .............................................................................. 20

*Williams v. Brown*
   214 F.R.D. 484 (N.D. Ill. 2003) ........................................................................ 17

*Yokoyama v. Midland Nat'l Life Ins. Co.*
   594 F.3d 1087 (9th Cir. 2010) ..................................................................... 18, 19

*Zinser v. Accufix Research Institute, Inc.*
   253 F.3d 1180 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir .2001) .............. 18

### OTHER CASES

*Schmidlin v. City of Palo Alto*
   157 Cal. App. 4th 728 (2007) ............................................................................. 15

1

## FEDERAL STATUTES

42 U.S.C. §1983 .................................................................................. 21

42 U.S.C. §1997e(e) ........................................................................... 21

## OTHER STATUTES

Cal. Civil Code §52(a) ...................................................................... 22

Cal. Civil Code §52.1 ........................................................................ 22

California Penal Code §409 ............................................................ 3, 6

California Penal Code §853.6 ....................................................... 4, 15

## RULES

Fed.R.Civ.P. 23(a)(1) ......................................................................... 10

Fed.R.Civ.P. 23(a)(2) ......................................................................... 10

Fed.R.Civ.P. 23(a)(3) ......................................................................... 10

Fed.R.Civ.P. 23(a)(4) ......................................................................... 10

Fed.R.Civ.P. 23(a) and (b) .................................................................. 1

Fed.R.Civ.P. 23(B) ............................................................................. 17

Fed.R.Civ.P. 23 ............................................................................ 22, 23

Fed.R.Civ.P. 23(a) ............................................................................. 10

Fed.R.Civ.P. 23(a)(4)'s ...................................................................... 13

Fed.R.Civ.P. 23(b)(1) ........................................................................ 23

Fed.R.Civ.P. 23(b)(1), 23(b)(2) and 23(b)(3) ..................................... 2

Fed.R.Civ.P. 23(b)(2) ........................................................................ 22

Fed.R.Civ.P. 23(b)(3) ......................................................... 10, 15, 17, 18

Fed.R.Civ.P. 23(c)(4) ........................................................................ 18

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ........................................................................ 21

First Amendment ...................................................................... 4, 21

Fourth Amendment ............................................................... 20, 21

**OTHER AUTHORITIES**

*Newberg on Class Actions* (hereafter "*Newberg*") ................................. 9, 10, 11, 12

## I.     INTRODUCTION

This action arises out of the unlawful detention and arrest of approximately 170 individuals engaged in demonstrations at or near the intersection of Beverly and Alvarado Streets on November 24, 2014, and 6th and Hope Streets on November 26, 2014. The police herded Plaintiffs as they marched, finally trapping and surrounding them, preventing them from moving forward on the sidewalk. By kettling the demonstrators, detaining, interrogating and searching them, and arresting those at Sixth and Hope without first issuing a lawful order to disperse, Defendants violated Plaintiffs' rights under the U.S. and California constitutions, as well as their statutory and common law rights.

Defendants treated the class members as a class at all times, making a single determination to kettle (i.e., surrounding and preventing from leaving), arrest and jail those at 6th & Hope all without lawful basis, and deny the class members release on their own recognizance ("OR release") without an individual determination; unlawfully detain those at Beverly and Alvarado; and unlawfully collect and disseminate personal information from and about them.

As detailed below, the putative classes and sub-classes satisfy all the requirements of Federal Rules of Civil Procedure 23(a) and (b). Certification here will conserve court resources, avoid a multiplicity of actions, and enable those whose rights were violated to assert small damages claims that could not otherwise be litigated individually. The class(es) are paradigmatic civil rights classes, where each class is too numerous to maintain individual actions, the named representatives claims are typical of each class as a whole, the case presents common questions, to which there are common answers, the class representatives and counsel will adequately represent the interests of the class. In addition, there is a risk of inconsistent adjudications, the City has acted in manner applicable to the class generally, common issues predominate, and the class action is the superior

mechanism for addressing the issues, thus meeting the standards of Rules 23(b)(1), 23(b)(2) and 23(b)(3).

## II.    STATEMENT OF FACTS

### A.    6TH & HOPE ARRESTS

On Wednesday, November 26, 2014, a crowd of peaceful protesters gathered in front of the federal courthouse on Temple and Spring Street at 3:00 pm in protest over a grand jury's decision not to indict Ferguson, Missouri police officer Darren Wilson in the shooting death of Michael Brown.

At the conclusion of the rally, the protesters marched through downtown Los Angeles while LAPD officers monitored and traveled alongside the march. At approximately 7:00 p.m., LAPD formed lines at Figueroa and Flower Streets at 7th Street, preventing the demonstrators from going to the Staples Center. According to subsequent media reports, LAPD Captain Jeff Bert issued a dispersal order at this location around this time. *See, e.g.*, "L.A. files few charges in Ferguson police shooting protests despite mass arrests." Los Angeles Times, July 29, 2015: http://www.latimes.com/local/crime/la-me-lapd-mass-arrests-20150716-story.html. However, as reported by the Los Angeles Times, Captain Bert concedes that the dispersal order was inadequate. *Id*.

Other than a few individuals close to the police line, Plaintiffs never heard a dispersal order. After approximately ten to fifteen minutes of kettling the protesters on Seventh Street, LAPD officers then opened the police line on Flower and Seventh Streets to allow the protesters to proceed north on Flower. Based on this action, Plaintiffs believed that they were free to continue to protest since they were released by the LAPD with no instruction to end their demonstration. The LAPD continued to block Flower to the South and 7th to the east and west. With northbound on Flower as the only option, the protesters proceeded in that direction.

As the demonstrators continued to move north, LAPD blocked various intersections, continually pushing the demonstrators in specific directions. Arriving at

5th and Flower Streets, LAPD blocked access in every direction except east on 5th Street and LAPD officers instructed demonstrators to continue east on 5th Street. The officers occupied the sidewalks, preventing the marchers from utilizing the sidewalks. When the demonstrators began to head east on 5th Street, they saw a separate group of LAPD officers in full "tactical" or "riot" gear jogging toward them from the east on 5th Street.

Without other options, the protesters proceeded through the walkways of the Central Library. LAPD officers closed in around the bushes on the north and west sides of the Library. The protesters proceeded through the walkways around the Central Library to the south side of the building where Hope Street dead-ends at the Library building, just north of 6th Street.

LAPD officers then kettled the demonstrators on Hope Street between 6th Street and the Central Library. Throughout all of this time, since the failed attempt to give a dispersal order some distance away, no further attempt was made to give a dispersal order of any type. Chua and other Plaintiffs requested but were denied permission to leave. Approximately fifteen minutes after Plaintiffs were trapped on Hope Street, without any instruction or information, the LAPD announced that all of them were under arrest. Officers arrested approximately 130 individuals at this location. Each was arrested on charges of misdemeanor Failure to Disperse pursuant to Penal Code §409.

After some time, officers separated Plaintiffs into groups of six, and each group was processed on-site by two LAPD officers. The officers photographed Plaintiffs, collected and recorded their names, searched them, handcuffed them using zip-ties, and loaded them onto buses.

Plaintiffs were then transported to the LAPD's Metropolitan Detention Center (MDC) or the Van Nuys jail. On information and belief, many of those arrested at 6th and Hope were first transported to the 77th Station jail in South Los Angeles before they were released.

The majority of the approximately 130 6th and Hope Plaintiffs were incarcerated for approximately 14 hours, despite their entitlement to release on their own recognizance (OR) immediately upon completion of booking pursuant to California Penal Code §853.6. Most of the class members had no prior criminal record and presented no justification to deny them OR release under the statute.

LAPD Lieutenant Andy Neiman was quoted in the media as saying all demonstrators who were unable to post bail would be held until they were able to appear in court early the following week. Commander Andy Smith was reported to have told news media that, while LAPD would typically release individuals with similar charges OR, "[i]n this case, because these people are part of a protest that is continuing, they will not be released on their own recognizance." This group association is an unlawful basis to deny OR; an individualized assessment is required. After holding Plaintiffs for an extended period of time, they were finally released OR only because Chief Beck decided to let them go at that time.

This action was in keeping with the City's unlawful policy, beginning on or around October, 2011, of denying OR release to individuals arrested for engaging in civil disobedience. According to LAPD Deputy Chief Perez, who first announced this was the LAPD's policy during the Occupy protests in Los Angeles in 2011, the decision was made to deny OR release to those engaged in First Amendment activity to "teach people a lesson." Subsequently, small groups of individuals involved in acts of civil disobedience in October, 2011 and later at the Bank of America headquarters on November 17, 2011, were arrested on non-violent misdemeanor offenses arising from protest activity and denied OR release. Again, on November 30, 2011, the City denied OR release to the nearly 300 people arrested in connection with the mass arrests at City Hall of those with the Occupy L.A. demonstration. Despite the City's subsequent agreement to ensure individualized OR assessments in the future, LAPD did not follow such a policy here.

4

1

## B.     THE DETENTIONS AT BEVERLY AND ALVARADO:

2      At approximately 3:00 p.m. on November 28, 2014, Plaintiffs gathered at

3   Grand Park across from Los Angeles City Hall. Peaceful protestors, legal observers,

4   pedestrians, and members of the media spoke out against the Ferguson grand jury's

5   decision not to indict Darren Wilson for the murder of Mike Brown.

6      After an hour, Plaintiffs began to march peacefully west on Beverly Boulevard.

7   They traveled approximately 2.5 miles, with LAPD officers monitoring the march,

8   traveling alongside by foot, bicycle, motorcycle, patrol car, and, eventually,

9   helicopter. At the start of the march, officers instructed Plaintiffs that they would be

10  arrested if they marched in the street. Plaintiffs adhered to this instruction and

11  marched on the sidewalks. After some time, however, the LAPD intentionally

12  blocked the Beverly Boulevard sidewalk with officers and motorcycles, forming a

13  line across the sidewalk and the bike lane. The demonstrators were ordered by the

14  LAPD to continue the protest by marching in the street. Plaintiffs proceeded with

15  some hesitation to obey this new contradictory command. Not long after, officers

16  approached Plaintiffs again and threatened to arrest anyone marching in the street.

17  Plaintiffs quickly returned to the sidewalk, only to be faced with another LAPD

18  motorcycle blockade on the sidewalk just ahead of them. Once again, the officers

19  directed Plaintiffs to walk in the street. At least one protestor responded that he

20  would not walk in the street, because he feared he would be arrested.

21      Notwithstanding the LAPD's disruptive activities, the march was peaceful,

22  with no violence or threat of violence by the protestors. The only threats to traffic or

23  safety were created by the LAPD when they blocked the sidewalks with officers and

24  motorcycles and ordered Plaintiffs to march in the street. At approximately 5:15 p.m.,

25  Plaintiffs turned north onto Alvarado Street, only to face a line of officers waiting to

26  kettle and detain them. Approximately 100 riot-gear clad LAPD officers advanced on

27  Plaintiffs on foot, bicycles, motorcycles, in patrol cars, and helicopters, quickly

28

5

1   surrounding approximately forty (40) Plaintiffs even though, at this point, the march

2   had not been declared an "unlawful assembly" and no order to disperse was given.

3       More than an hour after Plaintiffs were kettled, the LAPD advised those

4   present that the march had been declared an unlawful assembly. No opportunity to

5   disperse, as required by California Penal Code §409, was provided. Instead, the

6   LAPD advised the class members that no one would be allowed to leave until, as a

7   condition of release, they had been interrogated, run for wants and warrants,

8   searched, required to provide personal identifiers and be photographed by the LAPD.

9   Only then was each given an individual "dispersal order."

10      The pretext for the LAPD's actions was the purported interference with traffic

11  caused by the march. Several LAPD officials represented to the media that the march

12  constituted an unlawful assembly because "demonstrators ran into traffic and blocked

13  motorists" after being "warned repeatedly" to "stay off the street" and "remain on the

14  sidewalk." Contrary to these assertions, video footage of the march shows the LAPD

15  blocking the sidewalk with motorcycles and ordering the demonstrators to walk in the

16  street. Any "interference" with traffic was caused and created by the LAPD itself,

17  who made the sidewalks impassable for Plaintiffs.

18      Although the protestors were not going to be arrested and presented no threat

19  to the officers, the LAPD detained the Plaintiffs, handcuffed many of them with zip-

20  ties, and compelled them to provide private identifying information, including social

21  security numbers, birthplace, employment, telephone numbers, and home addresses

22  before being released. At least one person was asked to identify any non-visible

23  tattoos although he did not have any tattoos visible to the officer. The officers patted

24  down the demonstrators' clothing and searched their personal belongings, including

25  backpacks and wallets, without consent or proper cause. Although discovery has not

26  yet been conducted, Plaintiffs believe that LAPD may maintain a protestor database

27  and disseminates collected information to other law enforcement and government

28  agencies, and seek an order preventing such use. The maintenance of this private

information is a violation of the California Information Practices Act, which applies
with equal force to law enforcement.

For both the foregoing incidents, LAPD mobilized vehicles equipped with a
variety of surveillance equipment, including cameras, "stingray" devices, the
"Freedom-on-the-move" system and drones. This equipment was used to conduct
warrantless collection of private communications contained on the cell phones of the
Plaintiffs, including phone numbers of Plaintiffs' associates and family.

## III.   CLASS DEFINITIONS

The proposed damages (b)(3) class and sub-classes are:

*Damages class*: All persons who were present at either 6th and Hope on
November 26, 2014, or Beverly and Alvarado on November 28, 2014, and who were
kettled, detained, and/or arrested, then denied OR release by the LAPD, all in
association with the protest against the grand jury decision in Ferguson, Missouri in
the killing of Michael Brown.

*Damages sub-classes*:

1. *Damages Sub-Class #1* (6th and Hope Sub-Class) (represented by
   Plaintiffs Chua, Hicks and Rivera): those persons who were present on
   November 26, 2014 near or at 6th and Hope Streets and who were
   arrested by the LAPD, all without probable cause and without a lawful
   dispersal order, in association with a protest against the grand jury
   decision in Ferguson, Missouri in the killing of Michael Brown and who
   either were not prosecuted or had their criminal charges resolved
   favorably.

2. *Damages Sub-Class # 2* (*Beverly* and Alvarado Hope Sub-Class)
   (represented by Plaintiff Todd): those persons who were present on
   November 28, 2014, near or at the intersection of Alvarado and Beverly
   Boulevard and who were detained, handcuffed, interrogated and/or
   searched, all without probable cause and without a lawful dispersal

order, in association with a protest against the grand jury decision in

Ferguson, Missouri in the killing of Michael Brown.

The proposed *injunctive relief (b)(2) class* is: all persons who have in the past, or may in the future, participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech and petition

Plaintiffs have filed with this motion Declarations from the foregoing named Plaintiff class representatives that describe the facts of each of their circumstances that make them appropriate representatives of the class or sub-classes ascribed to each, as well as each one's recognition of his or her obligations as a class representative.

## IV.   GENERAL CLASS ACTION CONSIDERATIONS

### A.   CLASS ACTIONS ARE PARTICULARLY SUITABLE IN CIVIL RIGHTS CASES.

The purposes of class actions are to (1) avoid multiplicity of actions and (2) enable persons to assert small claims that could not be litigated individually because the costs would far out-weigh any recovery. *See, e.g.*, *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). Class actions "conserve" resources by permitting an issue potentially affecting every class member to be litigated in an economical fashion. *General Telephone Co. of Southwest v. Falcon*, *supra*, 457 U.S. 147, 155 (1982). Civil rights cases, like this one, "are often by their very nature class suits involving class-wide wrongs." *East Texas Motor Freight, Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977).

The United States Supreme Court and the Ninth Circuit have repeatedly endorsed the class action procedure as the superior method of adjudicating cases where there are numerous claims that are too small to litigate individually. *See, e.g.*, *Phillips Petroleum Co v. Shutts*, 472 U.S. 797 (1985); *Blackie v. Barrack*, 524 F.2d 891, 899 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). Further, "certain types of lawsuits, such as those in the criminal justice area, are inherently class actions

1  because individual wrongs can be righted only by institutional reforms affecting an

2  entire class of people." *Newberg on Class Actions* (hereafter "*Newberg*") (4th ed.

3  §25:25). [1]

4       **B.    PRESUMPTIONS APPLICABLE TO MOTION FOR CLASS CERTIFICATION**

5       When analyzing class certification, the Court is to perform a "rigorous

6  analysis," which may require it "to probe behind the pleadings." *Wal-Mart Stores,*

7  *Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But this is not a merits determination. *See*

8  *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, 2012 WL

9  6591610 (S.D. Cal. Dec. 18, 2012) (post-*Dukes*; court is "bound to take the

10  substantive allegations of the complaint as true" but must "also…consider the nature

11  and range of proof necessary to establish" them (internal quotation marks and

12  citations omitted)).

13       In a close certification case, a court should err on the side of certifying the

14  class, because a class can always be decertified. As a result, "if there is to be an error

15  made, let it be in favor and not against the maintenance of the class action, for it is

16  always subject to modification should later developments during the course of the

17  trial so require." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968). Although class

18  certifications are reviewed for abuse of discretion, "an appellate court . . . is

19  noticeably less deferential, . . . when the district court has denied class status than

20  when it has certified a class." *Parker v. Time- Warner Entertainment Corp*., 331 F.3d

21  13, 18 (2nd Cir. 2003).

22

23

24

25

---

26       [1] There are currently a 4th and 5th edition of *Newberg*. The 5th edition is the most

27  recent, not yet completed revision, authored by Professor William Rubenstein. The 4th

28  edition is the previous revision encompassing those sections not yet revised by Prof
Rubenstein.

## V.  THIS ACTION SATISFIES THE REQUIREMENTS OF FRCP 23(A) AND (B)(3).

All class actions in federal court must meet the prerequisites of Rule 23(a). There are four prerequisites, each of which is satisfied in this case: *Numerosity:* The class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1).; *Commonality:* There must be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2).; *Typicality*: The claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3).; and *Adequacy of representation:* The person representing the class must be able fairly and adequately to protect the interests of all members of the class. Fed.R.Civ.P. 23(a)(4).

Since Plaintiffs seek certification of both injunctive relief and damages classes, it is most efficient, and less duplicative, to discuss the Rule 23(b)(3) requirement that common issues predominate at the same time as the Rule 23(a) commonality requirement, and to do so after discussion of the other Rule 23(a) requirements.

### A.  NUMEROSITY

Rule 23(a)(1) provides that, for a class to be certified, the class must be "so numerous that joinder of all members is impracticable. The damages class as a whole consists of approximately 170 individuals. The 6th & Hope damages sub-class consists of 130 people, and the Beverly and Alvarado sub-class consists of approximately 40 individuals. These are sufficient to meet the numerosity requirement, both individually and collectively.

A "class of 40 or more members raises a presumption of impracticability of joinder based *on numbers alone*." *Newberg* §3:12 (5th ed.) (emphasis supplied). The Ninth Circuit has indicated that 39 is sufficient based on numbers alone. *See Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir. 1992), *vacated on other grounds,* 459 U.S. 810 (1982) ("Although we would be inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number

of ascertained class members, i.e., 39, 64, and 71, we need not do so since the presence of other indicia of impracticability" demonstrated that the impracticability standard was met); *see also id.* fn. 10 (listing 13 cases with class members of fewer than 100, including 8 with fewer than 40).

"Other indicia of impracticality" for a class "in the gray area between 20 and 40 [include]…judicial economy arising from avoidance of a multiplicity of actions, geographic dispersion of class members, size of individual claims, financial resources of class members, and the ability of claimants to institute individual suits." *Newberg*, §3:12. *See, e.g., Jordan*, 669 F.2d at 1319 (indicia militating in favor of certification included "geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought"); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of 16 due to small amount of individual recoveries, judicial economy of class action, and limited resources of class members); *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490, at *2 (D. Me. Mar. 17, 2015) (although one class was composed of only 23 individuals, adjudicating them "as a class action would promote judicial economy by avoiding the potential for a series of highly similar individual actions"); *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275-276 (10th Cir. 1977) (41-46 class members sufficient; taking "judicial notice that employees are apprehensive concerning loss of jobs and the welfare of their families").

Although the Alvarado and Beverly Sub-Class is only approximately 40 people, in this case it is completely unrealistic that individuals would sue individually, or that lawyers would take their cases individually. Moreover, because these individuals were not arrested, all of the information about this Sub-Class is known only to Defendants at this point. This Sub-Class was detained for a prolonged period of time but not arrested or denied OR, accompanied by an egregious and unwarranted invasion of personal information. Their claims are likely worth in the

1   four figures (i.e. under $10,000) and at most in the low five figures. *See* Declaration

2   of Barrett S. Litt, ¶20 (counsel in this case were counsel in *Aichele v. City of Los*

3   *Angeles*, No. CV 12-10863-DMG-FFM (x) (C.D.Cal.), which had similar claims but

4   including up to two days in jail and holding arrestees on a bus in handcuffs without

5   bathroom access for several hours; the maximum class member recovery (excluding

6   incentive awards) after fees and costs was estimated at slightly more than $14,000.

7   Some class members may not presently be located in Southern California, a fact that

8   cannot be determined until discovery of their identities occurs. Finally, the claims are

9   identical, it would make no sense to litigate individual cases, and individuals bringing

10  suit alone could fear retaliation. *See Newberg,* §3:12 ("fear of retaliation" an

11  additional impracticability factor).

12          **B.    TYPICALITY**

13          Typicality is met if class representatives and members of the class "share a

14  common issue of law or fact and are sufficiently parallel to insure a vigorous and full

15  presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs.*

16  *Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (quot. marks and internal citations

17  omitted.) "As long as the named representative's claim arises from the same event,

18  practice, or course of conduct that forms the basis of the class claims, and is based

19  upon the same legal theory, varying factual differences between the claims or

20  defenses of the class and the class representative will not render the named

21  representative's claim atypical." *Jordan*, 669 F.2d at 1321.

22          The named plaintiffs' claims are typical of those of the class. All of the

23  plaintiffs were kettled, and arrested or detained in association with the protest against

24  the grand jury decisions in Ferguson, Missouri in the killing of Michael Brown; all

25  had personal information taken unjustifiably; all the Beverly and Alvarado sub-class

26  members were detained and compelled to be photographed before release, and all the

27  6th & Hope sub-class members were taken to jail and denied OR release. The named

28  plaintiffs possess the "same interest and suffer the same injury" as class members,

thus satisfying the typicality requirement. *Krzesniak v. Cendant Corp.*, 2007 WL 1795703 at *7 (N.D. Cal. June 20, 2007) (citation omitted). *See also, Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) (finding typicality for a class of protestors even if they are not "substantially identical"); *Spalding v. City of Oakland*, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) (typicality in arrest of protestors class despite differences in experiences because any "discrepancies do not indicate a material difference in the injuries alleged"); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

## C.   ADEQUACY OF REPRESENTATION

### 1.   THE CLASS REPRESENTATIVES' INTERESTS ARE NOT ANTAGONISTIC TO THE INTERESTS OF THE CLASS

The class will be adequately represented in this action. Rule 23(a)(4)'s requirement for adequate representation is met when 1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class, and 2) counsel for the plaintiffs is competent to represent the class. *Lenvill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978); *In Re: Northern Dist. Of Cal. Dalkon Shield Etc.*, 693 F. 2d 847, 855 (9th Cir. 1982); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

The interests of all members of the class are aligned in this action. There are no anticipated or actual conflicts of interests. *See* Class Member Declarations stating they are not aware of any conflicts with other class members. The Defendants' actions subjected all of the Plaintiff class or, where applicable, sub-class to the same unlawful conduct. All Plaintiffs and class (or, where applicable, sub-class) members have suffered substantially similar injuries as a result. As the Plaintiffs' attached declarations evidence, each Plaintiff suffered similar violations of their rights. Plaintiff's declarations also acknowledge their understanding of their responsibilities as class representatives.

2. **COUNSEL ARE WELL QUALIFIED TO REPRESENT THE CLASS**

Plaintiffs' counsel are experienced class action and civil rights practitioners. The litigation team includes the three lawyers who were designated the class counsel in the *MIWON* protest case cited above (LAPD arrests and brutality at immigrant rights protest) and *Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) (LAPD arrests at Occupy LA area on City Hall lawn) – Paul Hoffman, Carol Sobel and Barry Litt. All three have extensive civil rights and class action expertise and experience, and are considered among the premiere attorneys in Los Angeles for such work. *See* Declaration of Barrett S. Litt; accompanying exhibits.

**D.   COMMON QUESTIONS EXIST AND PREDOMINATE**

"[I]n a civil-rights suit, . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*citing LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985)), *abrogated on other grounds by Johnson v. California,* 543 U.S. 499, 504–05 (2005) What it means for a policy or practice to "affect" a class member requires the possibility of common answers, not just the presence of common questions. Where, as here, "examination of all the class members' claims for relief will produce a common answer" to a central common question, commonality is met. *Dukes*, 564 U.S. 338, 352. To the extent necessary to determine commonality, but only to that extent, the District Court examines the underlying legal merits. *Id*. at 351-52; *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014).

The Supreme Court recently summarized the predominance inquiry in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). It explained that "a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id*. (quoting *Newberg* § 4:50, pp. 196–197 (5th ed). It further explained that the "predominance inquiry 'asks whether the common, aggregation-enabling, issues

14

in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' *Id.,* (quoting *Newberg* at §4:49). , at 195–196. So long as "'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'" despite the presence of other important individualized issues such as "damages or some affirmative defense.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* §1778, pp. 123–124 (3d ed. 2005)).

Plaintiffs can easily demonstrate both common questions of law and fact. It is undisputed that police commanders never declared an unlawful assembly but later justified arrests at 6th & Hope on that basis; that they kettled and arrested the 6th & Hope group, and refused to release them OR (even after having settled *Aichele* for doing so); and that they kettled, detained and took personal information from the Beverly and Alvarado group. LAPD created the classes when it made a command decision to engage in the foregoing conduct.

The central and common questions of fact and law include the circumstances and lawfulness of: 1) the kettling and arrest of those at 6th & Hope; 2) the failure to release 6th & Hope arrestees OR without making an individualized determination; 3) the kettling, prolonged detention, and the warrantless search of the persons and property, as well as compelled disclosure of personal information from those at Beverly and Alvarado.

All of the Plaintiffs were subjected to unlawful detentions and/or arrest, and those arrested were denied OR release, based on policies of the LAPD that violated long-standing law in the Ninth Circuit, as well as Structural Relief entered by the Court in the *MIWON* case. *See* Exhibit C (*MIWON* Structural Relief Order (07-cv-03072 AHM (FFM) (Doc. 112) (C.D. Cal. June 24, 2009). For example, California Penal Code §853.6 specifies in mandatory language that misdemeanor arrestees "shall" be released without bail in the field or immediately after booking. *See also Schmidlin v. City of Palo Alto*, 157 Cal. App. 4th 728, 761 (2007); *MacKinney v.*

*Nielsen*, 69 F.3d 1002, 1009 (9th Cir. 1995) (emphasis added. Defendants held the arrestee class on bail, releasing those who had not posted bail late on Thanksgiving Day only on the largess of Chief Beck.

In *NAACP, Western Region v. City of Richmond*, 743 F.2d 1346 (9th 1984), the Court invalidated a municipal ordinance that did not allow for spontaneous protests in the street without a permit. *Id.*, at 1356-57. The protest was in reaction to the announcement that the city would not investigate the recent killing of a black man by the Richmond Police. *Id.* at 1349.

Courts in this Circuit and elsewhere have routinely certified both injunctive relief and damages classes where the police acted against a group of demonstrators on a group basis, as occurred here. *See, e.g., MIWON,* 246 F.R.D. at 629-30 (damages class of protestors ordered to disperse and injunctive relief class for those engaged in peaceful protests in Los Angeles); *Aichele*, 314 F.R.D. at 481 (injunctive relief and damages class of arrestees in connection with dispersal of Occupy LA protests, and relevant sub-classes); *Vodak v. City of Chicago*, 2006 WL 1037151, 1 (N.D. Ill. 2006) (certifying class of "all persons who were surrounded by Defendants" and arrested during antiwar march); *Spalding,* 2012 WL 994644 (certifying mass arrest injunctive relief and damages classes for arrests of protestors following the Johannes Mehserle verdict in Oakland); *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 143-146 (S.D.N.Y. 2011) (certifying 23(b)(2) and (3) mass arrest sub-classes for those claims based on group arrest decisions, netting (which is the same as kettling, as alleged here) protestors in groups, or otherwise taking police action on a group basis). [2]

---

[2] *See also, e.g., Hickey v. City of Seattle*, 236 F.R.D. 659, 664 (W.D.Wash. 2006) (certifying class of arrestees in the WTO protests, defined as "all individuals arrested" on defined streets and between certain hours); *Alliance for Global Justice, et al. v. District of Columbia*, Civ. 01-0811 (D.D.C. 2006) (class certified for mass arrests during World Bank protests in 2000); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006) (noting certification of class by district court for demonstrators arrested in anti-globalization protest in Pershing Park); *Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003) (certifying for declaratory,

1  *Aichele*, *Spalding* and *Moss* all post-date *Dukes*, making clear that *Dukes* does not

2  affect the validity of pre-*Dukes* protest cases.

3  **VI.    THE LITIGATION MEETS THE OTHER REQUIREMENTS OF FRCP**
   **23(B).**

4

5      **A.    RULE 23(B)(3)'S REQUIREMENTS OF SUPERIORITY AND**
       **MANAGEABILITY ARE MET.**

6

7      Rule 23(b)(3) provides that class certification should be granted where

8  common questions predominate, which we have already discussed, and where "a

9  class action is *superior* to other available methods for the fair and efficient

10  adjudication of the controversy." Fed.R.Civ.P. 23(b)(3) (emphasis added). Four

11  factors guide the overall inquiry: (1) the interest of members of the class in

12  individually controlling the prosecution or defense of separate actions; (2) the extent

13  and nature of any litigation concerning the controversy already commenced by or

14  against members of the class; (3) the desirability or undesirability of concentrating

15  the litigation of the claims in a particular forum; and (4) the difficulties likely to be

16  encountered in the management of a class action. *Id.*

17

18  injunctive, and compensatory relief 23(b)(2) class, defined as all individuals who were

19  arrested in Pershing Park in the District of Columbia on September 27, 2002); *Dellums v.*
   *Powell*, 566 F.2d 167 (D.C. Cir. 1977) (class of "all persons who were arrested while

20  assembled on the Capitol steps on May 5, 1971" in protest of the Vietnam War); *Williams v.*

21  *Brown*, 214 F.R.D. 484, 485 (N.D. Ill. 2003) (certifying class detained and searched during
   a basketball tournament; observing that defendants were unable to point to a single case

22  denying certification in a mass detention arising from a single event); *Levett v. Chicago Bd.*

23  *of Educ.*, 2001 WL 40805 at 1, 2001 U.S. Dist. LEXIS 315 at 2 (N.D. Ill. 2001) (certifying
   class of individuals detained and searched without cause at a high school); *Johns v.*

24  *DeLeonardis*, 145 F.R.D. 480 (N.D. Ill. 1992) (certifying class for police raid on a Gypsy

25  community center); *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988) (class
   certified for police raid on a Chicago bar); *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996)

26  (class action by several hundred people arrested by San Francisco police during a local State

27  of Emergency in connection with protests over the acquittal of the police officers who beat
   Rodney King).

28

The class action mechanism is clearly the superior one, both in terms of the efficient administration of justice and in light of the relatively small size of the individualized recoveries at stake. *See, e.g., Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1190 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir .2001) (citation omitted) ("[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action"); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (the policy "at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive" for individuals to bring claims). The very fact that classes of this type have been certified and resolved on a class wide basis demonstrates manageability. The counsel in this case have successfully resolved and ensured the proper administration of classes far larger than this one. *See, e.g.*, Litt Declaration, ¶14.

**B.    EVEN IF INDIVIDUALIZED DAMAGES EXIST, THEY DO NOT DEFEAT PREDOMINANCE WHERE COMMON LIABILITY ISSUES PREDOMINATE.**

Rule 23(c)(4) provides that "when appropriate an action may be brought or maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4). Where liability is a common question, which we have established that it is, class certification is not defeated even if damages are individualized. Defendants commonly, but erroneously, contend that *Comcast v. Behrend*, __ U.S. __, 133 S.Ct. 1426 (2013) altered that analysis. In *Levya v. Medline Industries*, 716 F.3d 510 (9th Cir. 2013), the Ninth Circuit explained that the law in the Ninth Circuit remains that individualized damages do not defeat class certification where common liability issues predominate, and why *Comcast* was limited to its facts. *Levya* explained that *Comcast* holds that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability," and that, where that standard is met, "*the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).*" 716 F.3d at 514 (emphasis supplied). *See also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (pre-

18

Comcast; individualized damages do not defeat predominance); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir.2014) ("[s]o long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification"); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("In sum, *Yokoyama* remains the law of this court, even after *Comcast*."); *Vaquero v. Ashley Furniture Industries, Inc.*, ---F.3d --- , 2016 WL 3190862 (9th Cir. June 8, 2016) (*"*We have interpreted *Comcast* to mean that plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability": in *Tyson Foods*, the Supreme Court "held that class certification was appropriate even though class members might have to prove liability *and damages* individually") (original emphasis).

## C. CLASS-WIDE DAMAGES ARE DETERMINABLE AND, IN ANY EVENT, WHETHER TO CERTIFY CLASS-WIDE DAMAGES CAN BE DEFERRED.

In this case the class members' damages are relatively uniform. All class members were detained. Those at 6th & Hope were arrested, handcuffed, detained on buses without bathroom facilities or availability, denied OR release, and remained in jail for a determinable period of time. Personal information waws obtained from all those at Beverly & Alvarado. General damages could be tried as a whole, with the jury placing values on certain categories of damages. *See, e.g., Dellums v. Powell*, 566 F.2d 167, 208 (D.C. Cir. 1977) (mass arrest damages could be determined based on categories such as how long they were under arrest); *Allapattah Svcs. v. Exxon Corp.*, 157 F.Supp.2d 1291, 1313 (S.D. Fla. 2001) ("it is appropriate for the class representatives to develop and prove common guidelines or formulae that will apply for each individual proof of claims.").

Presumed or general damages (as opposed to special damages) are available without individual inquiry in civil rights cases where individual damages are difficult to determine. Such damages are a long recognized tool for compensating for a harm to dignity that is inherent in certain constitutional violations. Although not presumed

to flow from every constitutional violation, general (or presumed) damages are appropriate when there is a great likelihood of injury coupled with great difficulty in proving damages. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052 (1978). *See also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310-11, 106 S. Ct. 2537, 2545 (1986) ("Presumed damages are a *substitute* for ordinary compensatory damages, not a *supplement* for an award that fully compensates the alleged injury. When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate. … In those circumstances, presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure.") (original emphasis). In *Stachura*, the Court pointed to "a long line of cases ... authorizing substantial money damages" for those deprived of the right to vote, which "an award of presumed damages for a nonmonetary harm" not "easily… quantified." *Id.* at n.14. Circuit courts have applied this concept in a variety of contexts.[3]

---

[3] *See, e.g., Kerman v. City of New York*, 374 F.3d 93, 130-31 (2d Cir. 2004) ("A loss of time, in the sense of loss of freedom, is inherent in any unlawful detention and is compensable as 'general damages' for unlawful imprisonment without the need for pleading or proof"); *Brandon v. Allen,* 719 F.2d 151, 154-55 (6th Cir.1983), *rev'd on other issues sub nom. Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873 (1985) (*Carey* conclusion of no presumed damages limited to procedural due process claims; common law had permitted recovery for a wide array of intangible "dignitary interests," in which cases injury was presumed and general as distinguished from special damages were allowed; presumed damages available for assault and battery in violation of Fourth Amendment); *Walje v. City of Winchester, Ky.*, 773 F.2d 729, 731 (6th Cir. 1985) (In *Brandon*, "we joined two other circuits in finding such an unreasonable seizure [excessive force] to be closely analogous to the common law tort of assault and battery, for which general damages were presumed from the violation of the victim's right to bodily integrity. *See Corriz v. Naranjo,* 667 F.2d 892, 897-98 (10th Cir.1981), *cert. dismissed,* 458 U.S. 1123, 103 S.Ct. 5 (1982); *Herrera v. Valentine,* 653 F.2d 1220, 1227-31 (8th Cir.1981)"); *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992) ("if your home is illegally invaded or you are illegally prevented from voting or speaking you can seek substantial compensatory damages without laying any proof of injury before the jury, provided that you do not ask for heavy damages on the

1       Three fairly recent cases have specifically applied this concept in allowing

2  class wide general civil rights damages, with special damages to be pursued and

3  determined individually. *See In re Nassau County Strip Search Cases*, 2008 WL

4  850268 (E.D.N.Y. Mar. 27, 2008) (class wide strip search general damages); *Barnes*

5  *v. Dist. of Columbia*, 278 F.R.D. 14, 20-22 (D.D.C. 2011) (class wide strip search and

6  over-detention general damages); *Aichele*, 314 F.R.D. at 481 ("General damages for

7  pain and suffering and loss of dignity are available in actions under 42 U.S.C.

8  §1983"). In such cases, class members would be free to come forward separately if

9  they chose to pursue meaningful special damages (e.g., loss of a job).

10       Here, the Court may and should certify general damages for class-wide

11  determination, based on identification of the wrongs suffered by class members –

12  e.g., wrongful arrest or detention, wrongful collection of personal information, denial

13  of OR, value of time spent in custody – or, alternatively, defer determination of the

14  best means of handling damages.[4]

15

---

16  ground that the constitutional right invaded was 'important'"); *Siebert v. Severino*, 256 F.3d

17  648, 655 (7th Cir. 2001) ("The law recognizes that law-abiding citizens can sue and recover

18  general (or presumed) damages for a Fourth Amendment violation, even without proof of

19  injury"); *Villanueva v. George,* 659 F.2d 851, 855 (8th Cir. 1981) ("violations of certain

substantive constitutional rights are redressable by substantial compensatory damages

awards independent of actual injury").

20     The presumed damages concept has also been applied to First and Eighth

Amendment violations, and as a permissible form of damage not barred by the emotional

21  distress damages provision of the PLRA( barring emotional distress damages without

accompanying physical injury). *See, e.g., Parrish v. Johnson*, 800 F.2d 600, 609-11 (6th

22  Cir. 1986) (availability of presumed damages for Eighth Amendment violations were

determined on a case by case basis); *King v. Zamiara*, 2013 WL 2102655 (W.D. Mich. May

23  14, 2013) (presumed damages available for claim for wrongful transfer in violation of First

Amendment; not barred by physical injury provision of PLRA); *Carr v. Whittenburg,* 2006

24  WL 1207286, p. 3 (S.D. Ill. Apr.28, 2006) (presumed damages for violation of a prisoner's

First Amendment rights were not barred by 42 U.S.C. §1997e(e)).

25     [4] *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)

26  (Posner, J.) ("it may be that if and when the defendants are determined to have violated the

law separate proceedings of some character will be required", but that "prospect need not

27  defeat class treatment"; after a liability determination favorable to the class, "a global

28

In addition, Plaintiffs have a claim under Civil Code §52.1, which provides for minimum statutory damages of $4000 under Cal. Civil Code §52(a). Such damages are readily determinable and appropriate for class treatment. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (reversing denial of class certification where District Court found that the statutory damages provided by FACTA were disproportionate to the harm, and thus not superior; Congress intended statutory damages to apply to each violation).

### D.      RULE 23(B)(2)'S REQUIREMENTS ARE ALSO MET

Certification under Rule 23(b)(2) is appropriate where, as here, the opposing party "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360 (internal quotation marks and citations omitted).

Civil rights class actions are the paradigmatic Rule 23(b)(2) suits, "for they seek class-wide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds sub nom., Lombard v. Marcera*, 442 U.S. 915 (1979); *see also Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (action to enjoin allegedly unconstitutional government conduct is "the classic type of action envisioned by the

---

settlement . . . will be a natural and appropriate sequel"; and if not, "Rule 23 allows . . . imaginative solutions," including "bifurcation, appointment of a special master, decertifying

drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom., Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

The fact that the plaintiffs are also seeking monetary compensation does not alter the conclusion that this is an appropriate (b)(2) class. A claim of this type is routinely certified as both a (b)(2) and (b)(3) class action. (See cases cited at §V(D), *supra*.)

### E.   ALTERNATIVELY, RULE 23(B)(1)'S REQUIREMENTS ARE MET

Rule 23(b)(1) provides that a class action may be maintained where prosecution by or against individual class members would create a risk of either (a) inconsistent or varying adjudications that could establish incompatible standards, or (b) adjudication with respect to individual class members that would, as a practical matter, dispose of others' claims or substantially impair or impede their ability to defend their interests. Although certification under this rule is relatively rare, it has been expressly applied in protest cases. (See, e.g*., Chang*, *supra*, 217 F.R.D. at p. 273 n.5.)

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs have satisfied all of the prerequisites to and requirements of Rule 23. Plaintiffs respectfully request that the Court certify the proposed class, approve the named plaintiffs as class representatives, and appoint plaintiffs' counsel to represent the class.

DATED: July 13, 2016          Respectfully Submitted,

KAYE, MCLANE, BEDNARSKI & LITT, LLP
LAW OFFICES OF CAROL SOBEL
SCHOENBRON, DESIMONE, ET AL.
LAW OFFICE OF COLLEEN FLYNN
LAW OFFICE OF MATTHEW STUGAR

class for subsequent proceedings, and others").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:__/s/ Barrett S. Litt_____
 Barrett S. Litt


By:__/s/ Carol A. Sobel_____
 Carol A. Sobel

Attorneys for Plaintiff