1
2
3
4
5

Barrett S. Litt, SBN 45527
Email: blitt@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

6
7
8
9
10
11
12

Carol A. Sobel, SBN 84483
Email: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: (310) 393-3055
Facsimile: (310) 451-3858

Paul Hoffman, SBN 71244
Email: hoffpaul@aol.com
SCHONBRUN, SEPLOW, HARRIS &
HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Telephone: (310) 396-0731
Facsimile: (310) 399-7040

Attorneys for Plaintiffs

13
14
15
16

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CHARMAINE CHUA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>DEFENDANTS. | CASE NO: 2:16-CV-00237-JAK-GJS(X)<br>[HON. JOHN A. KRONSTADT]<br><br>DECLARATION OF BARRETT S. LITT IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; EXHIBITS<br><br>HEARING DATE: OCTOBER 24, 2016<br>HEARING TIME: 8:30 A.M.<br>COURTROOM: 750<br><br>TRIAL DATE: N/A<br>TIME: N/A<br><br>ACTION FILED: JAN. 13, 2016 |

I, **BARRETT S. LITT**, declare:

1.      This declaration is submitted in support of Plaintiffs' Motion for Class Certification. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents.  If called upon, I could and would testify competently thereto.

2.      I am an attorney duly licensed to practice in the State of California.  Since 1984, I have been the principal or senior partner in firms that operate for the specific purpose of developing and maintaining a civil rights and public interest law practice that operates in the private sector on the basis of self-generated fee awards and other recoveries.  Since January 1, 2013, I have been a partner in the law firm of Kaye, McLane, Bednarski & Litt. Between September 2010 and December 31, 2012, I was a partner in the law firm of Litt, Estuar, and Kitson.  From July 2004 to September 2010, I was a partner in the law firm of Litt, Estuar, Harrison, and Kitson.  From 1998 to July 2004, I was the principal in the law firm of Litt & Associates, Inc.  From September 1, 1991 to May 1, 1997, when my then partner left the law firm to become Deputy General Counsel for Civil Rights at the federal Department of Housing and Urban Development, I was a partner at the firm of Litt & Marquez.  And for the seven years prior to that, I was a partner in the firm of Litt & Stormer, Inc.

3.      I graduated from the University of California at Berkeley in 1966 and from UCLA School of Law in 1969.  For the first approximately ten years of my practice, I focused primarily in the area of criminal defense at the trial and appellate levels, mostly in the federal courts.  In that capacity, I handled hundreds of matters, tried many cases ranging from immigration offenses to murders, and handled numerous appeals.  Since 1981, I have focused primarily on complex civil litigation in the areas of constitutional law, civil rights law, class action litigation, and complex multi-party litigation.

4.      My former firm, Litt & Stormer, received the Pro Bono Firm of the Year Award from Public Counsel in 1987 in recognition of its public interest and civil rights work.  Litt & Marquez received an award from the NAACP Legal Defense Fund in July,

1992, as civil rights firm of the year in recognition of its civil rights work.  I received an award from UCLA School of Law as its public interest alumnus of the year in 1995 and in 2010 I received a CLAY award for my work in *Goldstein v. City of Long Beach et al.* (along with my co-counsel in the case), described in ¶7 *infra*.

5.    I have both spoken and written on the subject of civil rights training.  I published an article entitled "Class Certification in Police/Law Enforcement Cases" in *Civil Rights Litigation and Attorney's Fee Annual Handbook*, Vol. 18, Ch. 3 (West Publishing 2002) and one for the National Police Accountability Project titled "Select Substantive Issues Regarding Class Action Litigation In The Jail/Prison Setting", *National Police Accountability Project,* October 2006.  I published an article in the *Los Angeles Lawyer* regarding the use of minimum statutory damages under the Unruh Act, particularly actions brought under Civil Code §52.1, to enhance the prospects for certifying class actions.  *See* "Rights for Wrongs," *Los Angeles Lawyer* December 2005.  In 2010, I published an article in West's *Civil Rights Litigation and Attorney's Fee Annual Handbook* entitled, "Obtaining Class Attorney's Fees." I am rated "A/V" by Martindale-Hubbell, and have been for the past 30 years.  I have been listed in Super Lawyers Southern California in the field of civil rights for the past 11 consecutive years.

6.    A partial list of civil rights class actions in which I am, or have been, the, or one of the, lead counsel, include the following certified class actions:

o  *Amador v. Baca,* No.: 10-1649 SVW (RC) (C.D. Calif) (pending class action challenging manner of searches of women  inmates in outside bus bay; estimated number of class members is 80,000-100,000; 23 (b)(2) and (b)(3) classes certified; case pending);

o  *Williams v. Block*, Case No.: CV-97-03826-CW (Central District of California) and related cases (a series of county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedures);

o  *Bynum v. District of Columbia*, Case No.: 02-956 (RCL) (D.D.C.)(class action against the District of Columbia for overdetentions and blanket strip searches of persons ordered released from custody; final approval of $12,000,000 settlement occurred January 2006 );

2

o *Craft v. County of San Bernardino,* 468 F.Supp.2d 1172 (C.D.Cal. 2006) (certified class action against the Sheriff of San Bernardino County for blanket strip searches of detainees, arrestees, and persons ordered released from custody; partial summary judgment decided for plaintiffs; $25.5 Million settlement approved April 1, 2008);

o *MIWON v. City of Los Angeles*, Case No.: CV 07-3072 AHM (C.D. Calif.) (class action against City of Los Angeles and others for use of police force and related conduct at MacArthur Park on May 1, 2007; final approval of class settlement for $12,800,000 settlement granted  June 24, 2009, the largest class action protest settlement in the U.S.);

o *Barnes v. District of Columbia,* Civil Action No.: 06-315 (RCL) (D.D.C.) (class action against District of Columbia for continuing to both over-detain and strip search post-release inmates despite settlement in *Bynum, supra*; class certification granted; summary judgment granted Plaintiffs on most claims; case ultimately settled for $6 Million);

o *Gamino v. County of Ventura,* Case No.: CV02-9785 CBM (Ex) (C.D. Cal.) (class settlement for putative class fund of approximately $12 Million for persons arrested on possession of drugs and strip searched);

o *Lopez v. Youngblood*, No.: CV07-00474 LJO (DLBx) (E.D. Calif.) (class action against Kern County, California, for unlawful pre-arraignment and post-release strip searches and strip searches not conducted in private; class certification and summary judgment on liability granted; approximately $7 Million settlement);

o *Aichele et al. v. City of Los Angeles, et al.* Case No.: CV 12-10863 DMG FFM (x) (C.D. Calif.) (class action for injunctive relief and damages for arrests and related actions regarding the shutdown of the use of the City Hall lawn by Occupy LA; estimated class size is 300-400; class certified; $2,675,000 settlement);

o *Nozzi v. Hous. Auth. of the City of Los Angeles,* No.: CV 07-380 PA (FFMX), 2016 WL 2647677, at *1 (C.D. Cal. May 6, 2016) (certifying 23(b)(2) and (b)(3) classes on behalf of Section 8 tenants who had a property interest in uninterrupted benefits for a year after receiving notice of a decrease in support from the Housing Authority and whose due process rights were violated because the provided notice was not understandable, see *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016; case pending)).

7.  In addition, I am lead or co-lead counsel in other class actions and in several pending class actions where the issue of class certification has not yet been addressed. (See attached Ex. A, my curriculum vita, for further details,)

8.  My CV also includes a list of individual or multi-plaintiff civil rights cases (in addition to class actions) in which I am or have been the, or one of the, lead counsel, going back to the late 1980's, as well as many reported decisions in which I have been counsel and argued the case.

9.  As the foregoing and my case list demonstrate, I have been involved with, and successful in a wide range of complex civil rights cases, including class actions such as this, and have the requisite skills and experience to act as class counsel in this case. In addition, my firm and I have the legal and financial resources needed to pursue this case to the full extent necessary, as my representation over the past 10 plus years demonstrates.

10.  My qualifications have been noted by various courts or opposing experts. Following are a few examples:

a. Kenneth Moscaret, a well known defense fee auditor, recently stated in a declaration where he addressed my qualifications that I had "an outstanding background and reputation in civil rights/constitutional litigation in Los Angeles", that I was "one of the top litigators in [my] field" and that he believed that my "skill, experience, and reputation in his field are deserving of a premium rate" (although he thought a premium rate was lower than I do).

b. Magistrate Judge Carla Woehrle, in awarding attorneys' fees in *Williams v. Block*, *supra*, commented that I am "considered one of the outstanding civil rights litigators in California, with special expertise in class actions, [and the] other attorneys involved in this litigation on behalf of the class are highly regarded, experienced and capable civil rights attorneys…"

c. United States District Judge Stephen Larson, in awarding attorneys' fees in *Craft v. County of San Bernardino*, *supra*, commented that "Plaintiffs' counsel

4

are experienced civil rights litigators who are at the top of their field of expertise – civil rights litigation with special expertise in civil rights class actions."

d. United States District Judge Conseulo Marshall, in awarding attorneys' fees in *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex), stated, "Mr. Litt is widely known as one of the foremost civil rights attorneys in California, having a particular expertise in civil rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions."

e. In a case in state Court, where I submitted a declaration in support of a fee motion, Judge Gregory W. Alarcon described another attorney and me as "acknowledged experts in attorney fees in class action cases . . . ." *Molina v. Lexmark International Inc.*, LA Super. Ct. No. BC339177, Order Granting Plaintiff's Motion for Attorney's Fees and Costs in the Amount of $5,772,008.07, filed Oct. 28, 2011 at 4.

f. United States District Judge Conseulo Marshall, in awarding attorneys' fees in *Rodriguez et al. v. County of Los Angeles et al.,* CV 10-6342-CBM (AJWx) (12/27/2014), stated, "Barrett S. Litt…is considered one of the leading civil rights attorneys in the country."

11.     I have no conflicts of interest with any members of the class nor, to my knowledge, do any of the other of Plaintiffs' counsel.

12.     The other counsel Plaintiffs request be appointed as class counsel are Carol Sobel, who has submitted her own Declaration, and Paul Hoffman. Attached as Ex. B to this Declaration is the CV of co-counsel Paul L. Hoffman, who is an experienced class action litigator and was co- class counsel with me and Carol Sobel in the *MIWON* and *Aichele* cases listed above.

13.     In the course of my work on class actions, I have gained considerable experience in organizing large class actions and making them manageable. From my

5

experience, most law enforcement agencies have computerized records, which is the case for the LAPD. These records can be used to identify class and sub-class members.

14. The size of this class is readily manageable. I have handled certified law enforcement class actions where the number of class members has exceeded 100,000.

15. This case has similarities to the *MIWON* and *Aichele* cases identified above.

16. In *MIWON*, we successfully reached out to about three hundred class members although the class size itself was much larger. In *MIWON*, because there were varying degrees of physical force used by officers in breaking up the march, the damages were far more individualized than appears to be the case here. We were able to successfully organize that information and settle the case in a manner in which the approximately three hundred class members with whom we were in touch were assigned specified damages, aside from a residual class fund. This case presents little difficulty in negotiating a settlement if Defendants are so inclined, or in litigating the case on a class wide basis if they are not.

17. In *MIWON*, the total class exceeded 5000, far larger than the class here. In addition to the approximately three hundred class members with whom we were in touch, and for whom individualized damages assessments were made (which we do not anticipate here), another approximately 1400 made claims against the general class fund established as part of the settlement.

18. Attached as Ex. C is the *MIWON* Structural Relief Order (07-cv-03072 AHM (FFM) (Doc. 112) (C.D. Cal. June 24, 2009), which was entered as part of the settlement in that case and is discussed in the body of the accompanying Memorandum of Law.

19. In *Aichele*, the total class size was approximately 300, considerably larger than the approximately 170 here. In that case as well, we successfully reached out to the class members there.

20. Based on our experience, the individual claims here are of relatively low value, making individual cases impracticable. In *Aichele*, which had similar claims but

included up to two days in jail and holding arrestees on a bus in handcuffs without bathroom access for several hours, the maximum class member recovery (excluding incentive awards) after fees and costs was estimated at slightly more than $14,000.

21.     The events all arose in the City of Los Angeles, and thus venue would reside in this District. Plaintiffs are unaware of any other pending litigation.

22.     Class notice can be readily accomplished by drawing on LAPD records to identify class members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 11, 2016, at Pasadena, California.


__/s/ Barrett S. Litt_____
Barrett S. Litt

7

**EXHIBIT A**

**Barrett S. Litt**
Kaye, McLane, Bednarski & Litt, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

## Education

1966  B.A. University of California at Berkley
1969  J.D. UCLA School of Law

## Honors and Awards

1987  Pro Bono Firm of the Year Award from Public Counsel (Litt & Stormer)
1992  Civil Rights Firm of the Year Award from the NAACP Legal Defense Fund (Litt & Marquez)
1995  Public Interest Alumnus of the Year Award from UCLA School of Law
2010  California Lawyer Attorney of the Year Award (CLAY)

## Recent Contributions to Professional Publications

"Class Certification in Police/Law Enforcement Cases", *Civil Rights Litigation and Attorney's Fee Annual Handbook*, Vol.18, Ch.3, West Publishing 2002

*"*Rights for Wrong*s",* addressing issues under the California Civil Rights statutes, *Los Angeles Lawyer Magazine*, December 2005

"Select Substantive Issues Regarding Class Action Litigation In The Jail/Prison Setting", *National Police Accountability Project,* October 2006

"Obtaining Class Attorney's Fee*s,*" *Civil Rights Litigation and Attorney's Fee Annual Handbook*, Vol.26, West Publishing 2010

1

**Professional**

| | |
|---|---|
| 1/2013 to the present | Kaye, McLane, Bednarski & Litt, LLP |
| 2004 to 2012 | Litt, Estuar & Kitson, LLP |
| 1997 to 2004 | Litt & Associates |
| 1991 to 1997 | Litt & Marquez |
| 1984 to 1991 | Litt & Stormer |

Licensed to practice in:

> State of California
> U.S. District Court, Central District of California
> U.S. District Court, Eastern District of California
> U.S. District Court, Northern District of California
> Ninth Circuit Court of Appeals
> Fourth Circuit Court of Appeals
> Fifth Circuit Court of Appeals
> Eleventh Circuit Court of Appeals
> D.C. Circuit Court of Appeals
> United States Supreme Court

Admitted Pro Haec Vice in:

> U.S. District of Columbia
> U.S. District Court, Northern District of Georgia
> U.S. District Court, District of Maryland

Rated "AV" by Martindale-Hubbell

Listed in *Southern California Super Lawyers* in the fields of civil rights and class actions for the years 2005-present.

Listed in Best Lawyers in America (Los Angeles area) in the field of civil rights.

**Civil Rights Class Actions – Classes Certified:**

*Nozzi v. Housing Authority of the City of Los Angeles*, CV 07-00380 GW (C.D. Calif.) (class action against the Housing Authority for violations of due process and federal regulations by failing to provide proper notice of

Section 8 rent increase affecting approximately 22,000 tenants; case dismissed on sj for defendants; reversed by Ninth Circuit; dismissed again; reversed second time in *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016; case pending).and summary judgment on liability ordered entered for Plaintiffs; on remand, (b)(2) and (b)(3) classes certified in *Nozzi v. Hous. Auth. of the City of Los Angeles,* No. CV 07-380 PA (FFMX), 2016 WL 2647677, at *1 (C.D. Cal. May 6, 2016));

*Amador v. Baca,* No.: 10-1649 SVW (RC) (C.D. Calif) (pending class action challenging manner of searches of women  inmates in outside bus bay; estimated number of class members is 80,000-100,000; 23 (b)(2) and (b)(3) classes certified);

*Williams v. Block*, Case No.: CV-97-03826-CW (Central District of California) and related cases (a series of county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedures);

*Bynum v. District of Columbia*, Case No.: 02-956 (RCL) (D.D.C.)(class action against the District of Columbia for overdetentions and blanket strip searches of persons ordered released from custody; final approval of $12,000,000 settlement occurred January 2006 );

*Craft v. County of San Bernardino,* 468 F.Supp.2d 1172 (C.D.Cal. 2006) (certified class action against the Sheriff of San Bernardino County for blanket strip searches of detainees, arrestees, and persons ordered released from custody; partial summary judgment decided for plaintiffs; $25.5 Million settlement approved April 1, 2008);

*MIWON v. City of Los Angeles*, Case No.: CV 07-3072 AHM (C.D. Calif.) (class action against City of Los Angeles and others for use of police force and related conduct at MacArthur Park on May 1, 2007; final approval of class settlement for $12,800,000 settlement granted  June 24, 2009, the largest class action protest settlement in the U.S.);

*Barnes v. District of Columbia,* Civil Action No.: 06-315 (RCL) (D.D.C.) (class action against District of Columbia for continuing to both over-detain and strip search post-release inmates despite settlement in *Bynum, supra;*

class certification granted; summary judgment granted Plaintiffs on most claims; case ultimately settled for $6 Million);

*Lopez v. Youngblood*, No.: CV07-00474 LJO (DLBx) (E.D. Calif.) (class action against Kern County, California, for unlawful pre-arraignment and post-release strip searches and strip searches not conducted in private; class certification and summary judgment on liability granted; approximately $7 Million settlement);

*Aichele et al. v. City of Los Angeles, et al.* Case No.: CV 12-10863 DMG FFM (x) (C.D. Calif.) (class action for injunctive relief and damages for arrests and related actions regarding the shutdown of the use of the City Hall lawn by Occupy LA; estimated class size is 300-400; class certified; $2,675,000 settlement);

*Gail Marie Harrington-Wisely, et al. v. State of California, et al.*, Superior Court Case No.: BC 227373 (a case involving searches of visitors to California prisons utilizing backscatter x-ray methods without reasonable suspicion; injunctive relief class certified; stipulated injunction entered; partial reversal on appeal and case returned to Superior Court for determination of attorney's fees and discrete damages claims);

*Ofoma v. Biggers*, Case No.: 715400 (Complex Litigation Panel) (Orange County Superior Court)(family discrimination class action settled in 1996 for damages for the individual plaintiffs and the class of residents, a consent decree and an award of attorney's fees);

*Francis, et al. v. California Department of Corrections, et al.*, Case No.: BC302856 (class action against the CDC(R) for the failure to reimburse inmates assigned to the restitution centers in  Los Angeles for their obligations as ordered by the court. Case was successful in bringing about the restructuring of the CDCR's inmate accounting systems, and in the payment of restitution settlement in the amount of $325,000.)

*People of the State of California v. Highland Federal Savings and Loan*, Case No.: CA 718 828 (Los Angeles Superior Court)(class action filed on behalf of the People of the State of California and a class of tenants residing in several slum buildings located in Los Angeles for financing practices encouraging and perpetuating slum conditions, settled for $3.165 million

4

after decision in *People v. Highland*, 14 Cal.App.4th 1692, 19 Cal. Rptr. 555 (1993) established potential liability for lenders);

*Hernandez v. Lee*, No.: BC 084 011 (Los Angeles Superior Court)(a class action on behalf of tenants of numerous buildings for slum conditions settled in 1998 for $1,090,000);

*Mould v. Investments Concept, Inc.*, Case No.: CA 001 201 (Los Angeles Superior Court)(race discrimination class action on behalf of a class of applicants and potential housing applicants, settled in 1992 for a total of $850,000 for the class and a comprehensive consent decree regarding the defendants' discriminatory policies and practices);

*California Federation of Daycare Association v. Mission Insurance Co.*, Case No.: CA 000 945 (Los Angeles Superior Court)(class action on behalf of several thousand family daycare providers whose daycare insurance policies were canceled mid-term or were not renewed by Mission Insurance Company, settled in 1980's for reinstatement of policies and attorney's fees; brought at request of Public Counsel);

**Pending/on Appeal Civil Rights Class Actions:**

*Salazar v. County of Los Angeles*, No.: 15-cv-09003 (MWF) (C.D. Calif) (recently filed class action against five Counties on claim if illegality of Counties' receipt of majority of excessive  and otherwise unlawful phone charges for inmates' calls with family, friends, lawyers, etc.; case in early stages; class certification not yet addressed);

*Roy v. Los Angeles County Sheriff's Department,* Case No.: CV 12-9012 RGK (FFMx) (pending class action for injunctive relief and damages; class certification not yet filed or ruled on);

*McKibben v. County of San Bernardino,* Case No.: EDCV 14-2171 - JGB (SPx) (pending class action for injunctive relief and damages for unequal treatment of Gay, Bisexual and Transgender jail inmates; class certification not yet filed or ruled on);

*Brewster v. City of Los Angeles,* Case No.: EDCV14-2257- JGB (SPx) (class action for injunctive relief and damages for 30 day impounds of cars without

a warrant; class certification motion and motion for preliminary injunction pending; case dismissed and currently on appeal);

*Chua et al. v. City of Los Angeles, et al.* Case No.: CV-00237-JAK-GJS(x) (C.D. Calif.) (pending class action for injunctive relief and damages for arrests and related actions regarding Ferguson related protests at 6th & Hope and Beverly & Alvarado; estimated class size is 170).

**Multi-party Civil Rights Cases:**

*Hospital and Service Employees Union, SEIU Local 399, AFL-CIO v. City of Los Angeles* (Los Angeles Superior Court) (a settlement in 1993 of $2.35 million against the Los Angeles Police Department for injuries to 148 demonstrators at Century City organized by the Justice for Janitors campaign of SEIU);

*Rainey v. County of Ventura*, Case No.: 96 4492 LGB (C.D. Calif.)(action against County of Ventura for race discrimination on behalf of 12 police officers, settled for damages, structural relief and attorney's fees);

*Lawson v. City of Los Angeles*, Case No.: BC 031 232 (Los Angeles Superior Court)(lawsuit filed in 1991 on behalf of individuals who had been subjected to what plaintiffs alleged were unlawful use of force practices by the Los Angeles Police Department's Canine Unit, settled in 1995 for $3.6 million and comprehensive structural relief);

*Tipton-Whittingham v. City of Los Angeles*, Case No.: CV-94-3240 (TH)(C.D. Cal.)(sex discrimination and harassment suit against the Los Angeles Police Department, involving over 25 individual officers, as a result of which the Department has already completely revamped its anti-discrimination policies and procedures; damages claims settled for $4.85 Million in 2004 in addition to separate fee award of nearly $2 Million in 2000 for injunctive relief, resulting in decision in *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, in which the California Supreme Court upheld catalyst fees under California law);

*Hampton v. NRG* (racial harassment in employment claim; jury verdict of $1,000,000 for two former employees, plus award of attorney's fees and costs; settled in mid-'90's while on appeal);

*Zuniga v. Los Angeles Housing Authority,* 41 Cal.App.4th 2 (1995) (holding that the Housing Authority could be held responsible for injuries to tenants after the Housing Authority was put on notice that tenants were being victimized on the premises and took no reasonable measures to prevent the injury; case settled for $1,040,000);

*PIN v. HACLA,* Case No.: CV-96-2810 RAP (RNBx)(action against the Housing Authority of the City of Los Angeles on behalf of several hundred present or former tenants for discrimination by failing to provide adequate security for isolated minorities in housing developments, settled in 1998 for $1.3 Million plus a comprehensive structural relief settlement agreement);

*Heidy v. United States Customs Serv.,* 681 F.Supp. 1445 (C.D.Cal. 1988) (injunction against U.S. Customs Service for policies and practices of seizing materials from persons traveling from Nicaragua in violation of the First Amendment);

*Castaneda v. Avol* (Los Angeles Superior Court) (1985) (action on behalf of approximately 350 slum housing residents, settled in 1988 for a comprehensive injunction and $2.5 Million damages, plus a separate award of attorneys' fees).

## Individual Civil Rights Cases: Wrongful Conviction Cases

*Frank and Nicholas O'Connell v. County of Los Angeles, et al.,* Case No.: 13-01905-MWF (PJWx) (C.D. Cal.) (civil rights cases for police failure to turn over exculpatory information and eyewitness manipulation, resulting in murder conviction; plaintiff spent 27 years in prison before his habeas petition was granted, and he was not re-tried; suit on behalf of son as well for denial of relationship with father as result of conviction; defendants' qualified immunity appeal rejected in *Carrillo/O'Connell v. County of Los Angeles*);

*Thomas Goldstein v. City of Long Beach et al.,* Case No.: 04-CV-9692 AHM (Ex) (C.D. Cal.) (civil rights cases for police failure to turn over exculpatory information regarding jailhouse informant perjury and eyewitness manipulation, resulting in murder conviction; plaintiff spent 24 years in prison before his habeas petition was granted, and he was not re-tried; brought in mid-way through the case to act as lead counsel; final settlement of $7.95 Million approved by the Court; Ninth Circuit recently reversed

7

dismissal of County/DA's Office, and case against DA settled for additional $900,000);

*Bruce Lisker v. City of Los Angeles,* Case No.: CV 09-9374 AHM (AJW) (C.D. Cal.) (civil rights cases for police fabrication of evidence and failure to turn over exculpatory information, resulting in murder conviction; plaintiff spent 26 years in prison before his habeas petition was granted, and he was not re-tried; 9th Circuit affirmed district court's denial of immunity on 3/20/15; petition for en banc review denied; $7.6 Million settlement).

Consulting counsel in wrongful conviction cases of *Franky Carrillo v. County of Los Angeles*, CV 11-10310-SVW(AGRx) (settled for $10.1 Million), *Obie Anthony v. City of Los Angeles,* CV 12-01332-CBM (AJWx) (settled for $8.3 Million) and *v. County of Los Angeles*, CV 13-07224-CBM (AJWx) )(settled for $890,000 and reform of DA practices), and *Harold Hall v. City of Los Angeles*, C.D. Cal. No. CV 05-1977 ABC, 9th Cir. No. 10-55770 (appeal from grant of summary judgment to Defendants affirmed).

**Other Individual Civil Rights Cases:**

*McClure v. City of Los Angeles,* No.: CV-92-2776-E (C.D. Cal.)(fair housing and equal protection case against City of Long Beach and its agents for preventing six group homes for Alzheimer's victims from opening; jury verdict of $22.5 Million (reduced on remittitur to $13,826,832) plus approximately $10,000,000 in attorney's fees and costs; settled while on appeal for $20 Million);

*U.S. v. Hovsepian*, 359 F.3d 1144, 1147 (9th Cir. 2004)(en banc) (successful action to naturalize individuals previously convicted of conspiracy to bomb Turkish consulate in Philadelphia), aff'd en banc after remand, 422 F.3d 883 (9/6/05);

*Walker v. City of Lakewood*, 263 F.3d 1005 (9th Cir. 2001) (reversing district court decision dismissing fair housing organization's claim against city for retaliation for supporting tenants suing landlord; case subsequently settled for structural relief, damages and attorneys' fees);

*Tavelman v. City of Huntington Park* (individual employment discrimination case against the City on behalf of a Jewish police officer who had been

8

**15**

subjected to a campaign of religious harassment which was settled in mi-
'90's for $350,000);

*Ware v. Brotman Medical Center* (Los Angeles Superior Court) (1993 $2.5
million jury verdict against hospital for removal of hospital privileges of
black doctor; settled for $1.75 million);

*Mathis v. PG&E* (1991 $2 million verdict against PG&E for barring contract
employee from Diablo Canyon Nuclear Power Plant; reversed by the Ninth
Circuit);

*Macias v. State of California* (Los Angeles Superior Court) (action against
the State of California and others for blinding of young man as a result of
exposure to malathion spray, a portion of which was decided in *Macias v.
State of California,* 10 Cal.4th 844 (1994));

*Melgar v. Klee* (Los Angeles Superior Court) (1988) ($1.5 million jury
verdict against Los Angeles Police Department for police shooting; settled
for $1.45 million).

**Selected Civil Rights Decisions (from 1995 forward):**

*Aichele v. City of Los Angeles,* 2013 WL 2445195 (C.D. Cal. June 5, 2013)

*Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999);

*Bynum v. Dist. of Columbia*, 384 F.Supp.2d 342 (D.D.C. 2005);

*Bynum v. District of Columbia*, 412 F.Supp.2d 73 (D.D.C. 2006);

*Carrillo v. Cty. of Los Angeles,* 798 F.3d 1210 (9th Cir. 2015)

*Craft v. Cnty. of San Bernardino,* EDCV 05-359 -SGL, 2006 WL 4941829
(C.D. Cal. Mar. 23, 2006);

*Craft v. County of San Bernardino,* 468 F.Supp.2d 1172 (C.D.Cal. 2006);

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008);

*Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242 (C.D. Cal. 2009);

*Goldstein v. City of Long Beach*, CV 04-9692AHM, 2010 WL 3952888 (C.D. Cal. Apr. 9, 2010)

*Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013)

*Haynie v. Superior Court*, 26 Cal.4th 1061 (Cal. S. Ct. 2001);

*Jones v. Murphy*, 256 F.R.D. 519 (D. Md. 2009)

*Jones v. Murphy*, 470 F.Supp.2d 537 (D.Md. 2007);

*Jones v. Murphy*, 567 F. Supp. 2d 787 (D. Md. 2008);

*West v. Murphy*, 771 F.3d 209 (4th Cir. 2014)

*Lisker v. City of Los Angeles*, CV 09-09374 AHM AJWX, 2011 WL 3420665 (C.D. Cal. Aug. 4, 2011);

*Lisker v. City of Los Angeles*, CV 09-09374 AHM AJWX, 2012 WL 3588560 (C.D. Cal. Aug. 20, 2012);

*Lisker v. City of Los Angeles*, 2:09-CV-09374-ODW, 2014 WL 293463 (C.D. Cal. Jan. 27, 2014)

*Lisker v. City of Los Angeles*, 780 F.3d 1237 (9th Cir. 2015)

*Lopez v. Youngblood*, 609 F.Supp.2d 1125 (E.D.Cal. 2009);

*Lopez v. Youngblood*, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)

*Macias v. State of California*, 10 Cal.4th 844 (Cal. S. Ct. 1995).

*Mathis v. Pacific Gas and Elec. Co.,* 75 F.3d 498 (9th Cir. 1996);

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 1065072 (C.D. Cal. Mar. 19, 2009)

*Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 540 (9th Cir. 2011)

*Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016)

*Powell v. Barrett*, 376 F.Supp.2d 1340 (N.D.Ga. 2005);

10

*Powell v. Barrett*, 496 F.3d 1288 (11th Cir. 8/23/07)

*Powell v. Barrett,* 541 F.3D 1298 (11th Cir. 2008) (en banc) [overruling a portion of the preceding panel decision; after remand to the panel, remaining issues remanded to the District Court];

*Silva v. Block*, 49 Cal.App.4th 345 (1996);

*Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001);

*Tipton-Whittingham v. City of Los Angeles*, 316 F.3d 1058 (9th Cir. 2003);

*Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004);

*U.S. v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc);

*U.S. v. Hovsepian*, 422 F.3d 883 (9th Cir. 2005) (en banc);

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001);

*Zuniga v. Housing Authority*, 41 Cal.App.4th 82 (1995);

**EXHIBIT B**

**PAUL LINDSEY HOFFMAN**
SCHONBRUN, DeSIMONE, SEPLOW
HARRIS & HOFFMAN LLP
723 OCEAN FRONT WALK
VENICE, CALIFORNIA 90291
310-396-0731; 310-399-7040 (FAX)
HOFFPAUL@AOL.COM
WWW.SDSHH.COM


# PROFESSIONAL EXPERIENCE

| | |
|---|---|
| March 1994 - Present | Private Practice<br>Schonbrun De Simone Seplow Harris & Hoffman   LLP<br>Venice, California (1999-Present)<br><br>Bostwick & Hoffman LLP (1994-1999)<br><br>*Practice areas*: civil rights generally; police misconduct; First Amendment; international human rights; employment; defamation; criminal appeals. |
| September 1984 - February 1994 | Legal Director, ACLU Foundation of Southern California<br>Los Angeles, California<br><br>Directed the legal program of the ACLU in Southern California which included the supervision of ten staff attorneys and more than 100 volunteer attorneys with a docket of approximately 200 pending cases in every area of civil liberties and civil rights practice.   Litigated a full docket of cases in all areas of the ACLU's policies, especially police misconduct litigation.   Coordinated ACLU International Human Rights Task Force (1991-2000). |
| August 1976 - August 1981 | Associate Attorney (Litigation Department)<br>Loeb and Loeb, Los Angeles, California<br><br>*Practice areas:* securities regulation, bankruptcy, contracts, business torts, real estate, copyright, defamation and constitutional law. |
| October 1976 - Present | Volunteer Attorney - ACLU Foundation of Southern California<br>Los Angeles, California<br><br>Litigated dozens of civil rights/civil liberties cases from 1976 to 1984 and from 1994 to the present in all areas of the ACLU's work.   Lead counsel in *Coalition Against Police Abuse v. Board of Police Commissioners* (the "police spying" cases); *Wilkinson v. FBI* (a |

1

**19**

challenge to the FBI's COINTELPRO operation against the National Committee To Abolish HUAC); and *Antelli v. City of Hawthorne* (illegal searches of more than 40 homes).

## AWARDS

William J. Butler Human Rights Medal, Urban Morgan   Institute for Human Rights, University of Cincinnati School of Law (2011)

Cox Price Human Rights Award, University of Denver Law School (2009)

Judith Lee Stronach Human Rights Award, Center for Justice and Accountability (2007)

Co-Civil Rights Attorney of the Year, California State Bar (2006)
(for work on Doe v. Unocal)(with Dan Stormer and Anne Richardson)

Los Angeles Business Journal Top Trial Lawyer (1999)

100 Most Influential Lawyers of California (1998)

Clarence Darrow Award (1984) for outstanding First Amendment advocacy for work on the policy spying cases

## TEACHING EXPERIENCE

**FULL-TIME**

August 1981 -
July 1984

Associate Professor, Southwestern University School of Law
Los Angeles, California

**Courses:** Criminal Law and Procedure, Federal Courts, Civil Rights Litigation Seminar, International Human Rights Law, Public International Law, Contracts.   Co-Director (with Stanley Fleishman) of Clinic on the rights of people with disabilities and the elderly.

**ADJUNCT TEACHING**

2001 - Present

Visiting Fellow and Tutor, Kellogg College, Oxford University

June 1980 -
Present

Current:   UCI School of Law

Director, International Human Rights Litigation Clinic
Director, Civil Rights Litigation Clinic
Adjunct Professor, Appellate Litigation Clinic

2

Past:

UCI School of Law
Oxford University/George Washington School of Law
Human Rights Program
Oxford University Master of Studies Program
Stanford Law School
UCLA School of Law
USC Law School
Loyola Law School
Southwestern University School of Law

More than 50 separate courses taught, including First Amendment, Civil Rights Litigation, Rights of Persons with Disabilities and the Elderly Clinic (Southwestern with Stanley Fleischman), Constitutional Law Seminars on Equality and privacy, International Human Rights, International Human Rights Clinic (USC) International Criminal Justice, Police Abuse Litigation, Slander, Libel, and the First Amendment and AIDS and the Law.

## OTHER PROFESSIONAL ACTIVITIES

**BAR ASSOCIATION AND RELATED ACTIVITIES**

Member, California Academy of Appellate Lawyers (elected May 2000)

Co-Chair, International Human Rights Committee, ABA Section on International Law and Practice (1999-2000)

Member, Los Angeles Copyright Society

Lawyer Representative, Ninth Circuit Judicial Conference (1989-1992)

Member, Committee on Private Bar Involvement in Pro Bono Work, The State Bar of California (1988-1991)Program Coordinator, International Human Rights Committee, ABA Section on Individual Rights and Responsibilities (1984-1988)

Committee on Human Rights, The State Bar of California (1983-1986)

Executive Committee, Section on Individual Rights and Responsibilities, Los Angeles County Bar Association (1985-1987)

Executive Committee, International Law Section, Los Angeles County Bar Association (1982-1986)

3

Arbitrator (legal fee disputes), Los Angeles County Bar Association (1980-1983)

Arbitrator, American Arbitration Association, Commercial Panel (1981-1985)

Vice-Chair, Arbitration Committee, Los Angeles County Bar Association (1982-1983)

Judge Pro Tem, Los Angeles Municipal Court (Small Claims)(1983-1984)

## REPRESENTATIVE SAMPLE OF INTERNATIONAL HUMAN RIGHTS ACTIVITIES

**Amnesty International:** 2002-2004 Chair of AI's 9 member International Executive Committee ("IEC") which oversees AI's operations throughout the world.   IEC Member from 1999 to 2005.   Chair of AI's International Strategic Planning Committee (2007-2009).   Chair of AI's International Council Meeting 1991-1997.    Alternative Chair 1989-1991.   Chair of December 1998 International Summit of Human Rights Defenders (Paris, France).   Member of several human rights missions, diplomatic missions (*e.g.* as a delegate to United Nations meetings) and trial observations for AI.

**Amnesty International - USA:** Chair of the Board (1997-99, 1988-89); Member, Executive Committee (1984-89, 1992-94, 1997-99); Member of Board (1983-89), 1992-94, 1996-99); Founder and National Coordinator, AIUSA Legal Support Network (1982-87);   Served on numerous AIUSA committees and task forces.

**Human Rights Watch:** Member of California Committee since its inception; Member of Advisory Committee of Asia Watch; Research mission to Ethiopia (1994).

**Article 19 (International Centre Against Censorship):** Member of International Board (1999-2005); Chair of 1995 International Conference on Freedom of Expression and National Security (Johannesburg, South Africa). **Center for Justice and Accountability:** Co-Founder and Member of Legal Advisory Committee.

## EDUCATION

**LEGAL**

New York University School of Law, J.D., June 1976

*Honors/Activities:*

Staff Member, Annual Survey of American Law (1974-1976)

4

Research Associate, International Law Program,
Carnegie Endowment for International Peace (1975-1976)

Law Clerk, Manhattan Legal Services
(N.Y.U. Public Interest Clinic) (1974-1975)

RFK Fellow, Office of Congressman Jonathan Bingham, Washington, D.C.
(1974) (responsible for foreign policy related issues, issues relating to
Watergate and tax reform).

**GRADUATE**

The London School of Economics and Political Science,
M.Sc. (Econ.), June 1973

**UNDERGRADUATE**

The City College of the City University of New York, B.A., June 1972

| | |
|---|---|
| Major: | International Relations |
| Class Standing: | Top 5% |
| Honors: | Phi Beta Kappa |
| | Magna Cum Laude |
| | Regent's Scholarship |

### SELECTED PUBLICATIONS

**Books** Steinhardt, Hoffman and Camponovo, Human Rights Lawyering:
Cases and Materials (West Publishing)(2009)

Stephens, Ratner, Chomsky, Green and Hoffman, International Human Rights
Litigation in U.S. Courts (2d ed Martinus Nijhoff 2007).

Coliver, Hoffman, Fitzpatrick & Bowen, (Editors), "Security and Liberty: National
Security, Freedom of Expression and Access to Informtaion," (Martinus Nijhoff
1999) ("Secrecy and Liberty")

**Articles and Book Chapters**

The Impact of *Kiobel* for Corporate Accountability Litigation Under the Alien Tort
Statute, in Corporate Responsibility for Human Rights Impacts: New
Expectations and Paradigms, at 201, American Bar Association (2015)

5

**23**

*Kiobel v. Royal Dutch Petroleum Co.*: First Impressions, 52 Col. J. Trans. L. 28 (2013)

International Human Rights Cases Under State Law and in State Courts, 3 UCI L. Rev. 9 (2013) (with Beth Stephens)

The Alien Tort Statute: An Introduction for Civil Rights Lawyers, 2 L.A. Pub. Int. L. J. 129 (2010) (with Adrienne Quarry)

Celebrity Prosecutions: Punishing Pundits: *People v Dyleski* and the Gag Order As Prior Restraint in High-Profile Cases, 39 Loy. L.A. L. Rev 1197 (2006)  (with Michael Seplow)

Wartime Security and Constitutional Liberty: Justice Jackson, Nuremberg and Human Rights Litigation, 68 Alb. L. Rev. 1145 (2005)

Holding Human Rights Violators Accountable By Using International Law in U.S. Courts: Advocacy Efforts and Complementary Strategies, 19 Emory L. Rev. 169 (2005)(with Sandra Coliver and Jennifer Green)

The Rules of the Road: Federal Common Law and Aiding and Abetting Under the Alien Tort Claims Act, 26 Loy. L.A. Int'l & Comp L. Rev. 47 (2003)(with Daniel Zaheer)

Pursuing Crimes against Humanity in the United States: The Need for a Comprehensive Liability Regime, in Justice for Crimes Against Humanity, Eds M. Lattimer and P. Sands(Hart Publishing 2003)(with William Aceves)
Using Immigration Law to Protect Human Rights: A Critique of Recent Legislative Proposals, 23 Mich. J. Int'l L. 733 (2002)(with William Aceves)

*International Human Rights Law and Police Reform, in Zero Tolerance: Quality of Life and the New Police Brutality in New York City* (NYU Press 2001*)* Eds. A. McArdle and T. Erzen.

Using Immigration Law to Protect Human Rights: A Legislative Proposal,20 Mich. J. of Int'l L. 657 (1999)(with William Aceves)

Safeguarding Liberty: National Security, Freedom of Expression and Access to Information: United States of America, (with Kate Martin) in <u>Secrecy and Liberty.</u>

The Gag Order in the O.J. Simpson Civil Action:   Lessons to be Learned?,17 Loyola Ent. L.J. 333 (1997)

The 'Blank Stare Phenomenon':   Proving Customary International Law in U.S. Courts, 25 Ga. J. Int'l and Comp. Law 181 (1996)

Enforcing International Human Rights Law in the United States, in <u>Human Rights: An Agenda for the Next Century</u>, American Society

6

of International Law (1994) (with Nadine Strossen)

Double Jeopardy Wars: The Case for a Civil Rights 'Exception,'
41 UCLA L. Rev. 649 (1994)

The Feds, Lies and Videotape: The Need for an Effective Federal Role
in Controlling Police Abuse in Urban America, 66 So. Cal. L. Rev. 1453 (1993)

The Elimination of Torture:   International and Domestic Developments,
9 International Lawyer 1351 (Fall 1985) (with Linda Brackins)

Public Interest Lawyers:   Three Success Stories, Los Angeles Lawyer
(December 1984) (subject of the article)

<u>Book Review</u>, Hannum, "Guide to International Human Rights Practice," and
Meron, "Human Rights in International Law:   Legal and Policy Issues,"
18 International Lawyer 741 (Summer 1984)

The Police Spying Settlement:   New Safeguards for Political Expression,
Los Angeles Lawyer (May 1984) (with Robert Newman)

The Application of International Human Rights Law in State Courts:
A View from California, 18 The International Lawyer 59 (Winter 1984)
(Symposium)

*Trade Union Rights Under Article 11 of the European Convention of Human
Rights, 5 Comparative Labor Law 149 (1982)*

Assignment to Trial Department; Motions; Procedure in Chambers,
in <u>California Civil Procedure During Trial</u> (C.E.B. 1982) (with Dale L.
Gronemeier).

Environmental Law/The Clean Air Act Amendments, 1974/75 Annual Survey
of American Law 641*.*

The Right of Self-Determination in Very Small Places, 8 N.Y.U. Journal of
International Law and Politics 331 (1976) (with Professor Thomas M. Franck).

Author of dozens of articles for a variety of publications, including the
newsletters and magazines of various organizations, on civil liberties, civil rights
and international human rights issues.   <u>See</u>, <u>e.g.</u>, "The United Nations and the
Death Penalty," in <u>The Universal Declaration of Human Rights 1948-1988:</u>
<u>Human Rights, The United Nations and Amnesty International</u>, at 89-99
(Published by AIUSA in Fall 1988)(with Zazi Pope); "The Use of International
Law in ACLU Cases" (paper presented at ACLU Biennial Conference, Madison,
Wisconsin, June 1989, updated in 1991 for the ACLU Biennial Conference in
Burlington, Vermont).

From 1991 to 2000 Editor of the ACLU International Civil Liberties Report.

7

Numerous op-ed pieces on civil liberties and international human rights topics in the Los Angeles Times, the Daily News, the Los Angeles Daily Journal, Newsday and the Herald Examiner.

Frequent speaker on civil and international human rights issues at dozens of CLE programs, law school talks, symposia, bar association meetings, and other public events.   See, e.g., XII N.Y.L. Sch. J. Hum. Rts. 599 (1995) (re human rights trials in Ethiopia).

### SELECTED CASES

Asterisks denote cases I argued or on which I was lead counsel.   I have been involved in more than one hundred appeals in one capacity or another.

*United States Supreme Court*

*Kiobel v Royal Dutch Petroleum, 133 S. Ct. 1659 (2013)(argued twice)**
(Extraterritorial application of the Alien Tort Statute).

Holder v Humanitarian Law Project, 130 S. Ct. 2705 (2010)
(Free Speech)

Scheidler v. National Organization for Women, Inc., 547 U.S. 9 (2006)
(Threats of Violence/Hobbs Act)

Van Order v. Perry, 545 U.S. 9 (2005)
(Establishment Clause)

*Muehler v Mena,* 544 U.S. 93 (2005)(argued)*
(Wrongful Detention)

*Sosa v Alvarez-Machain,* 542 U.S. 692 (2004)(argued)*
(Alien Tort Statute)

*Sandin v. Conner,* 515 U.S. 472 (1995)(argued)*
(Prisoners Rights, Due Process)

*United States v. Alvarez-Machain,* 504 U.S. 655 (1992)(argued)*
(Extradition Treaty, International Law)

*Lockyer v Andrade,* No 01-1127 (argued November 5, 2002)(co-counsel)
(Three Strikes case)

*Reno v. Arab-American Anti-Discrimination Committee,* 119 S.Ct. 136 (1999)
(Immigrants Rights, Federal Jurisdiction)

8

*Reno v. Flores,* 507 U.S. 292 (1993)
(Immigrant Rights, Due Process)

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522 (1987)
(First Amendment, Trademark)

*Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537 (1987)
(Sex Discrimination)

*Crawford   v. Board of Education,* 458 U.S. 527 (1982)
(Desegregation)

### Circuit Courts

*Mujica v. AirScan, Inc.*, 771 F. 3d 580 (9th Cir. 2014)*
(Extraterritoriality of ATS; International Comity)

*Doe v. Nestle USA, Inc.*, 766 F. 3d 1013 (9th Cir. 2014)*
(Misc. ATS issues)

*Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014)*
(Extraterritoriality of ATS)

*Janko v. Gates*, 741 F. 3d 136 (D.C. Cir. 2014)
(Bivens, FTCA claims for Guantanamo detainee)

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir 2014)(en banc)*
(Police Use of Deadly Force)

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013)*
(Civil Rights Attorneys Fees)

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013)*
(Extraterritoriality of ATS; Mandamus jurisdiction)

*Mirmehdi v United States*, 689 F. 3d 975 (9th Cir 2012)*
(Wrongful Detention/Bivens/FTCA)

*Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F. 3d 1013 (7th Cir. 2011)*
(Corporate Liability under the ATS)

*Doe v Exxon Mobil Corp.*, 654 F. 3d 11 (D.C. Cir. 2011)*
(Miscellaneous ATS issues)

9

*Ali v Rumsfeld*, 649 F. 3d 762 (D.C. Cir. 2011)
(FTCA/ATS claims arising out of Abu Ghraib)

*Kiobel v Shell Petroleum Inc,* 621 F. 3d 111 (2d Cir. 2010)*
(Corporate Liability under Alien Tort Statute)

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244
(2d Cir. 2009)*

*United States v. Peterson*, 538 F. 3d 1064 (9th Cir. 2008)*
(Criminal appeal)

*Khulumani v Barclay National Bank Ltd.*, 504 F. 3d 254 (2d Cir. 2007) (the
Apartheid cases)*

*Al Masry v United States*, 479 F. 3d 296 (4th Cir. 2007)
(Extraordinary Rendition)

*Blankenhorn v City of Orange*, 485 F. 3d 463 (9th Cir 2007)
(Police Misconduct)
*Johnson v County of Los Angeles,* 340 F. 3d 787   (9th Cir. 2003)*
(Qualified Immunity issue)

*Mena v City of Simi Valley*, 332 F.3d 1255 (9th Cir 2003)*
(Qualified immunity issue; judgment affirmed)

*Alvarez v United States,* 331 F. 3d 604 (9th Cir. 2003)(*en banc)**
(ATCA judgment affirmed; FTCA claims allowed to proceed)

*Doe v Unocal*, 395 F. 3d 932 (9th Cir. 2002)*
(argued *en banc* June 17, 2003, vacated based on settlement)
(ATCA corporate complicity case)

*Brown v Li,* 308 F. 3d 939 (9th Cir. 2002)*
(Student First Amendment rights)

*Papa v United States,* 281 F. 3d 1004 (9th Cir. 2002)*
(Civil Rights, International Human Rights)

*Alvarez-Machain v United States,* 266 F. 3d 1045 (9th Cir 2001)*
(Civil Rights, International Human Rights)(taken en banc see above)

*United States v Messer,* 197 F. 3d. 330 (9th Cir 1999)*
(Speedy Trial Act, conviction overturned)

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244 (9th
Cir. 1999)*
(First Amendment, Trademark)

10

28

*United States v. Phillips*, 174 F.3d 1074 (9th Cir. 1999)*
(Criminal Law)

*Martinez v. City of Los Angeles*, 141 F.3d 1373 (9th Cir. 1998)*
(Police Misconduct, International Human Rights)

*Alvarez-Machain v. United States*, 107 F.3d 696 (9th Cir. 1997)*
(Federal Tort Claims Act, Torture Victim Protection Act, Constitutional Law)

*Hilao v. Estate of Marcos*, 103 F.3d 789 (9th Cir. 1996)*
(International Human Rights)

*Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996)*
(International Human Rights)

*Standing Committee v. Yagman*, 55 F.3d 1430 (9th Cir. 1995)
(First Amendment)(*Amicus*)
*Siderman v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992)
(International Human Rights, Foreign Sovereign Immunity)

*American-Arab Anti-Discrimination Committee v. Thornburgh,* 970 F.2d 501 (9th
Cir. 1991)*
(First Amendment, Immigrants Rights)

*United States v. Aguilar*, 871 F.2d 1436 (9th Cir. 1989)
(International Human Rights, Sanctuary Case)

*Chalk v. United States District Court*, 840 F.2d 701 (9th Cir. 1988)*
(AIDS Discrimination)

*Levine v. United States District Court*, 775 F.2d 1054 (9th Cir. 1985)*
(First Amendment, Gag Order)

*Martin v. International Olympic Committee*, 740 F.2d 670 (9th Cir. 1984)
(Sex Discrimination)

**District Court Cases**

*In re S. Afr. Apartheid Litig.,* 15 F. Supp. 3d 454 (S.D.N.Y. 2014)
(Misc ATS issues)

*Al Janko v. Gates*, 831 F. Supp. 2d 272 (D.D.C. 2011)
(Bivens, FTCA claims for Guantanamo detainee)

*In re Chiquita Brands Int'l Alien Tort Statute and Shareholder Derivative*

11

*Litigation,* 792 F. Supp. 2d 301 (S.D.Fla. 2011)
(Misc. ATS and terrorism issues)

*In re S. Africa Apartheid Litig.,* 617 F. Supp. 2d 538   (S.D.N.Y. 2009)*

*Bowoto v Chevron Corp,* 481 F. Supp. 2d 1010 (N. D. Cal. 2007)
*(Alien Tort Statute, corporate complicity)*

*Mujica v Occidental Petroleum Corp,* 381 F. Supp. 2d 1134 and 1164 (C.D. Cal 2005)*
*(Alien Tort Statute, corporate complicity)*

*Mehinovich v Vuckovic,* 198 F. Supp 2d 1322 (N.D. Ga 2002)*
*(International Human Rights, $142 million judgment obtained)*

*Doe v. Unocal,* 963 F.Supp. 880 (C.D. Cal. 1997)*
*(International Human Rights)*

*Johnson v. County of Los Angeles,* 865 F. Supp. 1430 (C.D. Cal. 1994)*
*(First Amendment)*

*Wilkinson v. United States,* 774 F. Supp. 1360 (N.D. Ga 1991)*
*(Due Process)*

*American-Arab Anti-Discrimination Committee v. Meese,* 714 F. Supp 1060 (C.D. Cal. 1989)*
*(First Amendment)*

*Rogan v. City of Los Angeles,* 668 F. Supp 1384 (C.D. Cal. 1987)*
*(Civil Rights, Due Process).*

*Thomas v. Atascadero Unified School District,* 662 F. Supp 376 (C.D. Cal. 1987)*
*(AIDS Discrimination)*

*Wilkinson v. FBI,* 633 F. Supp 336 (C.D. Cal. 1986)*
*(Freedom of Information Act)*

*Handel v. Artukovic,* 601 F. Supp 1421 (C.D. Cal. 1985)
*(International Human Rights)*

*Wilkinson v. FBI,* 99 F.R.D. 148 (C.D. Cal. 1983)*
*(Civil Rights, Archival Privilege)*

**California Supreme Court**

*People v. Mitcham,* 1 Cal. 4th 1027 (1992)*

12

*(Death Penalty)*

### *California Court of Appeal*

*Macias v County of Los Angeles, 144 Cal. App. 4th 313 (2006)*
*(Police misconduct)*

*People v Brown, 100 Cal. Rptr 2d 211 (2000)\**
*(Criminal appeal)*

*Del Rio v. Jetton, 55 Cal. App. 4th 30 (1997)\**
*(SLAPP Suit Defense)*

*City of Huntington Park v. Superior Court, 34 Cal. App. 4th 1293 (1995)\**
*(Civil Rights, Police Misconduct)*

*McCarthy v. Fletcher, 207 Cal. App. 3d 130 (1989)\**
*(First Amendment)*

*Ketchens v. Reiner, 194 Cal. App. 3d 470 (1987)\**
*(First Amendment)*

*Rubin v. City of Los Angeles, 190 Cal. App. 3d 560 (1987)\**
*(First Amendment, State Secrets Privilege)*

*Coalition Against Police Abuse v. Superior Court, 170 Cal. App. 3d 888 (1985)\**
*(Civil Rights, First Amendment, Privacy)*

13

**EXHIBIT C**

BARRETT S. LITT, SBN 45527
E: blitt@littlaw.com
LITT, ESTUAR, HARRISON &
KITSON, LLP
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California 90017
T: (213) 386-3114; F: (213) 380-4585

CAROL A. SOBEL, SBN 84483
E: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Boulevard, Suite 550
Santa Monica, California 90401
T: (310) 393-3055; F: (310) 393-3605

PAUL L. HOFFMAN, SBN 71244
BENJAMIN SCHONBRUN, SBN
118323
JAMES DeSIMONE, SBN 119668
E: hoffpaul@aol.com
SCHONBRUN, DE SIMONE, et al.
723 Ocean Front Walk
Venice, California 90291
T: (310) 396-0731; F: (310) 399-7040

On Behalf of all MIWON Counsel

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTI-ETHNIC IMMIGRANT WORKERS ORGANIZING NETWORK, et al. | Case No.: CV 07-3072 AHM (FMMx) |
| | [Honorable A. Howard Matz] |
| Plaintiffs, | STRUCTURAL RELIEF ORDER |
| vs. | DATE:          June 22, 2009 |
| | TIME:          10:00 A.M. |
| CITY OF LOS ANGELES, et al., | COURTROOM:  14 |
| Defendants. | |

1

1    The parties to the above-captioned action have submitted this joint Order for
2  the Court's review and approval, addressing the injunctive relief class certified by
3  the Court in its Order issued on January 8, 2008.  The court has considered the
4  joint submission and now issues the following Order:

5    **1. Basic Principles:**

6    All persons have the right to march, demonstrate, protest, rally or perform
7  other activities protected by the First Amendment of the United States Constitution
8  and the California Constitution.  The government may impose reasonable and
9  narrowly tailored restrictions on the time, place, and manner of conducting these
10  activities.  However, any limitations or restrictions placed on demonstrations or
11  other First Amendment activities must be justified by the requirements of
12  maintaining public safety, public health, or safe access/egress from the area, and
13  should restrict no more speech than necessary to further these substantial
14  government interests.  Officers must not be affected by the content of the opinions
15  being expressed nor by the race, gender, linguistics, national origin, sexual
16  orientation, physical disabilities, appearances, or affiliation of anyone exercising
17  lawful rights.

18    **2. Helicopters:**

19    Los Angeles Police Department (LAPD) helicopters assigned to monitor
20  permitted crowd control incidents shall operate the aircraft at reasonable altitudes
21  so as to avoid disruption of First Amendment protected activities.  The Incident
22  Commander will coordinate with event organizers to help avoid over flights during
23  keynote speaker presentations.  This action is not intended to prevent LAPD
24  helicopters from response to emergency situations requiring immediate police
25  presence during such crowd control events.

26
27
28

2

**3. Marches:**

Demonstrators, while participating in lawful assemblages, shall not be prevented from using public sidewalks to join or exit a lawful march or from using any public sidewalk adjacent to a lawful march route.  However, while on the sidewalk, marchers will not be allowed to obstruct or unreasonably interfere with pedestrian movement and/or prevent lawfully open businesses from operating when such conduct violates any applicable law.  LAPD will consider the practicality of facilitating demonstrations that may temporarily block traffic and LAPD shall include the subject in its Crowd Management training.

**4. Motorcycles/Bicycles/Motor Vehicles:**

Police motorcycles, bicycles, and motor vehicles may be used for the purpose of observation, visible deterrence, traffic control, transportation and area control during a crowd event.  When used at the back of a march, they should maintain a reasonably safe distance behind the marchers.  LAPD personnel will not utilize motorcycles, bicycles, or motor vehicles to strike assembled demonstrators/marchers as a method for crowd control or crowd dispersal.

**5. Crowd Management Training - Horses:**

In its crowd management training, the LAPD shall include a subject on the impact of the use of horses on crowd behavior.

**6. Use of Less Lethal Weapons:**

Less-lethal munitions are categorized as projectiles launched or otherwise deployed for the purpose of overcoming resistance, effecting arrest or addressing the threat of serious injury to an officer or suspect with less risk of causing death than the use of a firearm.

    a.  Less-lethal munitions may be deployed on aggressive and/or combative suspects in a crowd control situation, on suspects who

1               are a potential physical threat to themselves or others, or suspects
2               displaying "aggressive" and/or "combative" actions.

3          b.  For the purpose of deployment of less-lethal munitions,
4               "aggressive" and/or "combative" actions include ongoing
5               destruction of property that presents a threat to the personal safety
6               of officers or others.

7          c.  Less lethal weapons should not be used on a lawfully dispersing
8               crowd or individual.

9          d.  Less lethal weapons should not be used against a person or a crowd
10              that is retreating unless the person or crowd continues to engage in
11              unlawful activity that is aggressive and/or combative.

12          e.  Where feasible, notice should be given to the crowd before less-
13              lethal weapons are deployed in a crowd control or dispersal
14              situation, and where feasible, it should be given in the language(s)
15              spoken by those assembled.

16          f.  If the LAPD resumes the use of stinger rounds, the LAPD will
17              publish a notice that will require that less-lethal stinger weapons
18              can be used only with the approval of a staff officer (i.e.,
19              commander or above) and only in a riotous situation where the use
20              of lethal force would not be reasonable.

21    **7.**    **Use of Batons:**

22       Batons should not be used against members of the crowd attempting to
23 disperse, persons unable to move because of the press of the crowd, or persons
24 otherwise posing no imminent threat to the officers or other persons.   Batons may
25 be displayed or used in a pushing motion when used as a justified and authorized
26 crowd management technique.  The baton may be used to push individuals who
27 intentionally delay dispersal subsequent to a lawful order to disperse.  When an

28

4

1  individual's behavior is threatening or violent in nature, the baton may be used as
2  an impact device in accordance with Department policy.

3      **8.   Public Assemblies:**

4          The Incident Commander and supervisors shall make every effort to ensure
5  that the police mission is accomplished as efficiently as possible, with the highest
6  regard for human dignity and liberty of all persons, with consideration of the
7  cultural and linguistic diversity of the neighborhoods and communities of Los
8  Angeles, and with minimum reliance on the use of physical force.  Incident
9  Commanders, prior to declaring an assembly unlawful, will follow the procedures
10 as directed in the LAPD Guidelines for Crowd Management and Crowd Control,
11 Volume 5 of the LAPD Emergency Operations Guide.  Before any public assembly
12 is declared to be unlawful, the Incident Commander should evaluate the feasibility
13 of isolating and arresting those responsible for the unlawful conduct, and if it is
14 determined to be feasible, shall take such action.

15     **9.   Declaration of Unlawful Assembly:**

16         Crowd dispersal techniques shall not be initiated until after a declaration has
17 been announced as required by California Penal Code Section 409.  LAPD
18 personnel will follow the procedures as directed in the LAPD Guidelines for
19 Crowd Management and Crowd Control, Volume 5 of the LAPD Emergency
20 Operations Guide.  The following factors shall be considered when issuing a
21 dispersal order:

22             **a.** Use of an amplified loudspeaker system to issue the order.
23             **b.** If feasible, send an officer to the far side of the crowd to tape record
24                 the order.
25             **c.** If circumstances permit (absence of serious violence), the order
26                 shall be made repeatedly over a period of time and, if necessary,
27                 from a variety of locations.

28

5

      **d.** The order must include an objectively reasonable period of time to disperse and a clear and safe route to disperse based on the facts and circumstances known at the time.

      **e.** An order to disperse shall be given in a manner reasonably calculated to be heard by the entire crowd under the circumstances. When it is known that members of the crowd do not understand English, an effort should be made, when feasible, to give the order to disperse in both English and the other language(s).

      **f.** The order to disperse shall include a warning that police action may include the use of less lethal munitions, which could cause significant risk of serious injury to those who remain.

**10.    Crowd Management Training - Shows of Force**

In its crowd management training, the LAPD shall include a subject on the impact of shows of force on crowd behavior.

**11.    LAPD's Policy Regarding Crowd Control:**

LAPD's policy regarding crowd control can be found in the Emergency Operations Guide, Volume 5, Chapter 7.  All LAPD directives and orders directly related to crowd control and the relevant portions of this agreement shall be included in the Emergency Operations Guide by July 1, 2009.  The plaintiffs shall be given an opportunity to provide input and comment on the revisions prior to final approval by the LAPD.

**12.    Training on Crowd Control Policies:**

The LAPD shall require Metropolitan Division to undergo training annually, and every officer at the level of  Sergeant I and above to undergo training at minimum intervals of two years, on the Crowd Control and Use of Force policies to be developed pursuant to Paragraph 11 of this document.  The Department's existing training, designed and implemented after May 1, 2007, will be reviewed

6

1  and modified, as necessary, to conform to the policies developed as part of this

2  agreement.  The training may be live or by e-module, or both, at the Department's

3  discretion.

4  **13.   Retention of Jurisdiction:**

5      The Court retains jurisdiction to enforce the terms of this judgment and to

6  issue all orders necessary to do so.  The Court's jurisdiction shall continue for a

7  period of four years and may be extended—in whole or in part—for an additional

8  period of two years upon proof by a preponderance of the evidence that the

9  activities complained of are due to the Department's failure to substantially comply

10  with the provisions of this order.

11      Before bringing a motion to enforce this order, plaintiffs shall give

12  defendants notice of an alleged violation and a reasonable opportunity to remedy it.

13  If necessary to permit defendants adequate time to remedy the alleged failure to

14  comply, the parties will submit a joint request to extend the Court's initial period

15  of jurisdiction.

16

17  DATED: _June 24, 2009_

18                                              UNITED STATES DISTRICT JUDGE

19

20  Submitted by:

21  LITT, ESTUAR, HARRISON & KITSON, LLP
    LAW OFFICES OF CAROL SOBEL

22

23

24  By :   _/s/ Barrett S. Litt_____

25          BARRETT S. LITT
            Attorneys for Plaintiff Class

26

27

28
                                    7