1  Barrett S. Litt, SBN 45527
2  Email: blitt@kmbllaw.com
   KAYE, MCLANE, BEDNARSKI & LITT
3  234 Colorado Boulevard, Suite 230
   Pasadena, California 91101
4  Telephone: (626) 844-7660
5  Facsimile: (626) 844-7670

6
   Carol A. Sobel, SBN 84483
7  Email: carolsobel@aol.com          Paul Hoffman, SBN 71244
   LAW OFFICE OF CAROL A. SOBEL       Email: hoffpaul@aol.com
8  3110 Main Street, Suite 210        SCHONBRUN, SEPLOW,  HARRIS &
9  Santa Monica, California 90405     HOFFMAN
   Telephone: (310) 393-3055          732 Ocean Front Walk
10 Facsimile: (310) 451-3858          Venice, California 90291
                                      Telephone: (310) 396-0731
11 Attorneys for Plaintiffs           Facsimile: (310) 399-7040
12

13
14                   UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16

17 CHARMAINE CHUA, ET AL.          CASE NO:  2:16-CV-00237-JAK-GJS(X)
                                    [HON. JOHN A. KRONSTADT]
18              PLAINTIFFS,
19                                  DECLARATION OF CAROL A. SOBEL IN
           VS.                      SUPPORT OF MOTION FOR CLASS
20                                  CERTIFICATION; EXHIBITS
21 CITY OF LOS ANGELES, ET AL.,
                                    HEARING DATE:   OCTOBER 24, 2016
22              DEFENDANTS.         HEARING TIME:   8:30 A.M.
23                                  COURTROOM:      750

24                                  TRIAL DATE:     N/A
25                                  TIME:           N/A

26                                  ACTION FILED:   JAN. 13, 2016
27
28

DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of California, in the United States District Court for the Central District of California and the Eastern District of California, among other federal courts.   I have personal knowledge of the facts set forth below.

2.      A copy of my resumé is attached to my declaration.  I have the resources, expertise and experience to prosecute this action.  I am not aware of any conflicts among members of the class or between the attorneys and members of the class.

3.      From 1985 to 1997, I was the First Amendment attorney at the ACLU Foundation of Southern California.  In that capacity, I participated directly and as a supervisor with other ACLU staff counsel and cooperating counsel in all of the ACLU's litigation involving demonstration activities in the City of Los Angeles.  Since entering private practice in 1997, I have continued to litigate in two primary areas: First Amendment litigation and Fourth and Eighth Amendment rights of homeless individuals in Los Angeles.

4.      Among the First Amendment cases in which I was involved while at the ACLU was a lawsuit arising from  demonstrations protesting the veto by then-Governor Pete Wilson of AB101, an omnibus gay rights bill.   The lawsuit, entitled *Marmillion v. City of Los Angeles*, involved approximately 350 individuals who participated in a demonstration in Century City, across from the Century Plaza Hotel, where Governor Wilson was speaking at a Republican fundraiser dinner. *Marmillion* involved, in part, allegations of improper and capricious dispersal orders, as well as some use of force with batons.   Former ACLU staff attorney Jon Davidson and volunteer counsel Carol Watson were the lead attorneys in the *Marmillion* case.

5.      I estimate that I have been lead counsel or co-counsel on approximately 24 cases challenging police actions against demonstrators.  While most of my cases have been brought in Los Angeles, I have also served as counsel on several cases involving mass arrests in Miami following the demonstrations against the Free Trade Area of the Americas ("FTAA") in November, 2003.  The primary case was *Killmon, et al. v. City of Miami, et al.*, cv 04-20707 (SD FL).  The *Killmon* case

and the related cases all involved "trap and detain" tactics, resulting in unlawful arrests of approximately 200 individuals in several incidents over the course of a day.  More recently, I was one of six class counsel approved in *Spalding v. City of Oakland*, arising from the 2010 mass arrest and detention of approximately 150 individuals following the protests of the verdict in the criminal trial of the BART officer who shot and killed a young black male, Oscar Grant,  on January 1, 2009. *See*, 2012 WL 994644, *8 (N.D. Cal. 2012).

6.      I served as one of three lead counsel involving a large-scale police attack on an immigrants rights march and rally in Mac Arthur Park in Los Angeles on May Day, 2007.   The *MIWON* case was one of three class actions filed immediately after the incident.  In competing class certification motions, the Court appointed me, along with Barry Litt and Paul Hoffman, as lead class counsel for all of the cases filed in federal court arising from the May Day events.   The decision granting certification is published at *Multi-Ethnic Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007).    A class of approximately 6,000 members was certified by the Court.   Ultimately, eight cases arising from the same May Day incident were consolidated for settlement purposes.   The case resulted in a settlement of $12,850,000, with approximately 300 persons receiving individual settlements and another $200,000 for unnamed class members.   The Court also entered a stipulated consent judgment, incorporating the terms of the 2005 agreement reached in the settlement of the post-DNC litigation described in paragraph 7, below.   The judgment provided for policy and training revisions in crowd control practices, as well as for the Court to retain jurisdiction to enforce any violation of the judgment for a specified period of years.   More recently I was approved as class counsel, along with Mssrs. Litt and Hoffman, in *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 2013 U.S. Dist. LEXIS 190167, *53 (C.D. Cal. 2013).  *Aichele* resulted from the LAPD's tactical plans to end the OccupyLA protests on City Hall lawn in November 2011.   The putative class consisted of nearly 300 individuals, with claims submitted by approximately 190 individuals, sharing in settlement funds of approximately $2,500,000.

7.      During the time that I worked at the ACLU and since entering into private practice,

several of the cases I litigated resulted in settlements that incorporated policy changes and training requirements, including incorporating such training in the recruit training at the Police Academy. The agreements also set out in detail the parameters of when the LAPD could declare an unlawful assembly, how interaction between the LAPD and the crowd was to occur, restrictions on the use of force against peaceable and passive demonstrators and the requirements that an explicit dispersal order be given prior to any arrests being made.  As part of the settlement of several cases litigated in the mid-90s after the Rodney King verdict protests, the LAPD also agreed to revise its Crowd Control Manual and related Use of Force Policies.  These revisions occurred over the course of approximately 6 months, in which I, along with another ACLU staff counsel and a cooperating counsel met with LAPD command staff to develop and revise specific manual provisions on crowd management, crowd control and use of force.

8.   I also served as lead counsel in litigation brought regarding unlawful dispersal orders and the use of "rubber bullets" against peaceable protestors during the Democratic Convention in Los Angeles in 2000 and the annual October 22nd Coalition to End Police Abuse march in 2000, that also involved an unlawful order by police and the use of "rubber bullets."  The post-DNC litigation resulted in a stipulated consent judgment addressing several improper police tactics, including "herding" protestors with motorcycles.

9.   With respect to the arrests of the sub-class at 6th and Hope, I met with supervisors in the City Attorney's office to discuss the potential criminal charges.  I was present at several of the City Attorney hearings for individuals arrested at 6th & Hope but not prosecuted.  Several of the individuals with whom I appeared at the City Attorney hearings were arrested at different locations and are not potential members of the class.  I am unaware of any conflict, potential or actual, I have with any of the class representatives or any putative class members.

10.   In support of the allegations in the Complaint that Plaintiffs were unlawfully detained and arrested without lawful dispersal orders and that those arrested were denied statutorily mandated individualized OR assessment and release, Plaintiffs have submitted several newspaper articles from the Los Angeles Times reporting on the events that are the subject of this action.  Each is a true and

correct copy of the article as it appears on the Los Angeles Times website.  Exhibit 1 is an article dated November 26, 2014.  Consistent with the allegations of the Complaint, the Los Angeles Times reported that a dispersal order was given earlier on November 26, 2014 at 7th and Figueroa and that the protestors then left the area.  A short time later, a group of demonstrators were walking on the sidewalk at 6th and Flower streets when a line of officers ran at them and began to encircle the protestors.  This is the plaintiff class arrested at 6th and Hope.  In Exhibit 1, LAPD Chief Beck is reported as stating that the protestors would be booked on a misdemeanor charge and all held on $500 bail.  Exhibit 2 is an article dated November 27, 2014, reporting that Chief Beck had ordered that the protestors who had not posted bail would be released OR for Thanksgiving.  The article also quotes Chief Beck as saying that the police had the right to keep every one of the protestors in jail on a misdemeanor unless and until they posted bail.  Exhibit 3 is an article dated July 16, 2015, stating that Los Angeles city prosecutors charged only 27 of 323 protestors arrested over the course of several days in late November 2014 in the Ferguson-related protests.  The article also reports that charges against nearly 200 individuals were formally rejected.  In Exhibit 3, with respect to the dispersal orders, LAPD Captain Jeff Bert is reported as acknowledging that "giving the commands posed challenges."

11.    Based on my meeting with the City Attorney prosecutors, I believe that only four of the 130 demonstrators arrested at 6th & Hope were prosecuted.  I am aware from speaking with two of these individuals and from reviewing online records of the Los Angeles Superior Court that the prosecution of Patti Beers resulted in an acquittal and that all charges against Jasmyne Cannick were dismissed the day before the trial was to begin.  I do not know what occurred with the remaining two prosecuted in the 6th and Hope arrests.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th day of July, 2016 at Los Angeles, California.

_____/s/ Carol A. Sobel_____

CAROL A. SOBEL

# CAROL A. SOBEL
*3110 Main Street, Suite 210 • Santa Monica, CA 90405 •*
*Tel. 310 393-3055 • Fax. 310 451-3858 • Email carolsobellaw@gmail.com*

## Employment:

LAW OFFICE OF CAROL A. SOBEL                          APRIL, 1997 TO  PRESENT
Solo civil rights law firm.

SENIOR STAFF COUNSEL                                   1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                        1985 TO 1990
*ACLU Foundation of Southern Califonria*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                    1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                  1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

California Supreme Court                              No vember, 1978

United States Supreme Court                          Sep tember, 1991

Ninth Circuit Court of Appeals                       August, 1986

U.S.D.C. Central District of California              February, 1986

U.S.D.C.  Eastern District of California             June, 1990

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia,* advance-notice requirements police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles,*
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD).  The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)


*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)

Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

**7**

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian  theme park, Desert Christ Park, owned and operated by San Bernardino County.  Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus.  Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities.  Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds.  (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code  of  Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law.  Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty  on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:
# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5


*Prop 115 revisited: Police charged with crimes*

**10**

*deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988   II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A . June, 1968 |

## Professional and
## Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |

**11**

| | |
|---|---|
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2014 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |

CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine          2008

Top 75 Women Litigators in California - Daily Journal          2008, 2013

California Super Lawyers - Top 50 Women Lawyers in Southern California          2014

National Lawyers Guild, Los Angeles Law for the People Award          2014

**EXHIBIT 1**

LOCAL / L.A. Now

# LAPD arrests about 130 Ferguson protesters in downtown L.A.



By **Tre'vell Anderson** , **Samantha Masunaga** , **Taylor Goldenstein and Brittny Mejia** · **Contact Reporters**

NOVEMBER 26, 2014, 11:38 PM

olice made another mass arrest in downtown Los Angeles on Wednesday night, the third day of protests against a Missouri grand jury's decision not to indict a Ferguson police officer for the fatal shooting of an unarmed black teenager.

LAPD officers arrested about 130 people after corralling the protesters at 6th and Hope streets.

"When they will no longer comply with our requests and when it becomes dangerous, when they start running in and out of cars and put the public at risk, then we have to take action," LAPD Chief Charlie Beck said.

He said those arrested would be booked on a misdeameanor charge and bail would be set at $500.

About 30 more protesters gathered late Wednesday near Staples Center and headed north toward LAPD headquarters. As the protesters walked, police warned them not to block traffic. The demonstrators stayed on the sidewalk and arrived at the headquarters about 11:35 p.m., chanting "we want peace" and "Hands up, don't

shoot."

Disruptions began earlier during Wednesday night's protest and included protesters hitting vehicles in the street and running through intersections, LAPD Lt. Andy Neiman said.

"With the size of this crowd, hitting vehicles is not a safe thing," he said.

Neiman said that on Tuesday night officers recovered several weapons, including a switchblade and pepper spray.

The order for more than 100 people to disperse came just before 7:30 p.m., as officers blocked in the protesters on 7th Street between Figueroa and Flower. Officers announced that members of the crowd would be arrested if they did not leave within four minutes.

Protesters began running, and two people were quickly taken into custody.

Among them was a demonstrator who had taunted police with a Taser.

The crowd chanted, "Let him go."

Police pressed forward toward demonstrators with their batons in front, pushing the crowd back. A woman fell and was arrested as the officers continued forward.

Protesters were on the sidewalk on the corner of 6th and Flower streets when a line of officers started making a run to circle the group. Some of the protesters attempted to get past them and three were pushed by a baton-wielding officer into the window of a store.

Two of the protesters got away, but one person was held against the window and detained.

One by one protesters were cuffed with zip ties and walked to a police bus waiting to take them to jail.

The MetroRail posted on its Twitter account that the 7th Street Metro Center station was closed due to a "nearby civil disturbance."

"I would hope that any future protests, people will think about the need to do it legally," Beck said. "I think that there is sympathy for the point of view of these folks, but I think that sympathy is waning as they infringe on other people's rights."

Before the arrests, the crowd had been heading toward Staples Center, after spending several hours marching to LAPD headquarters and the county's main jail, frequently halting traffic.

"We see you," some chanted, as they walked past the Twin Towers Correctional Facility, an apparent reference to the protesters arrested Tuesday night being held inside.

When protesters reached Cesar Chavez Avenue and Vignes Street, officers with hands on their batons blocked the way toward the Twin Towers Correctional Facility. Sirens blared in the background and a helicopter's searchlight flashed on protesters chanting and standing in the intersection.

"Free the protesters, kill killer cops," they yelled.

But rather than chant, Ray Spears, a resident of Eagle Rock, opted to strike up a conversation with a nearby officer. When the 25-year-old told the officer he was a Christian, the officer responded that he was too.

"I think that all human beings are made in the image of God, and we have civil rights, human rights," Spears said.

"Hey man, we're on the same page," the officer responded.

When Spears held out his fist for a fist bump, the officer raised his hands, he was holding a baton.

"I would if I could right now," the officer told him. Spears called the conversation "a little glimmer of hope."

Protesters then retreated from the intersection, walking back into the tunnel they had just passed through on Cesar Chavez. The crowd walked into the street at some points and police scrambled to set up protection between oncoming traffic and the crowd.

The group paused briefly at the Metropolitan Detention Center, where organizers had said protesters arrested Tuesday night were being held.

"Fight the power," the crowd yelled. Later, as protesters continued the march, some sat cross-legged in the intersection of 5th and Spring streets.

The demonstration ended in a similar mass arrest to the one that followed Tuesday night's protests, when some people managed to briefly shut down the 101 Freeway and the LAPD made 183 arrests.

The number surpassed arrests in other major cities in the nation on the third night of protests over the grand jury decision this week in the killing of Michael Brown by a white police officer.

Copyright © 2016, Los Angeles Times

## UPDATE

**11:38 p.m.**: This post was updated to include the arrival of a small group of protesters at the LAPD's headquarters.

**10:54 p.m.**: This post was updated to include the lastest number of arrests.

**10:07 p.m.**: This post was updated to include details of arrests and comment from LAPD Chief Beck and Lt. Neiman

**8:12 p.m.**: This post was updated to include details of another arrest

**EXHIBIT 2**

7/13/2016                          LAPD chief orders L.A.'s Ferguson protesters released in time for Thanksgiving dinner - LA Times

LOCAL / L.A. Now

# LAPD chief orders L.A.'s Ferguson protesters released in time for Thanksgiving dinner



Protesters stage a "die-in" on a Los Angeles street Wednesday night to represent Michael Brown's body lying in the Ferguson, Mo., street where he was shot. (Marcus Yam / Los Angeles Times)

   By **Matt Stevens · Contact Reporter**

NOVEMBER 27, 2014, 11:57 AM

**D**emonstrators who remained in Los Angeles jails Thursday after being arrested in connection with protests against the grand jury decision in Ferguson, Mo., will be released in time for Thanksgiving dinner, according to L.A. police.

LAPD Chief Charlie Beck ordered that the approximately 90 people still jailed as of Thursday afternoon be released on their own recognizance.

"We have every legal right to keep them until they post bail," Cmdr. Andrew Smith told the Los Angeles Times, "but in light of the holiday ... [Beck] called and said he wants everybody who is eligible for release to be released by dinner time."

**17**

Before being released from jails in downtown Los Angeles, the San Fernando Valley and South L.A, prisoners will have to sign a promise to appear in court, but they will not have to post any bail money, Smith said. Any protesters with warrants out for their arrest will not be eligible, he added.

Almost 150 people were arrested in Los Angeles overnight Wednesday as protests continued over the grand jury's decision not to indict a police officer in the shooting death of Michael Brown. That brought the three-day total of arrests related to such protests in L.A. to 338, Smith said.

Most of the people arrested Wednesday night were adults who failed to disperse when ordered to do so by police, Smith said.

Smith said those arrested could have avoided waking up in jail on the holiday.

"Nobody should have been surprised when they got taken to jail last night," Smith said. "We gave them warning, not just last night but in previous days as well."

LAPD Lt. Andy Neiman previously told the The Times that officers made arrests after protesters started hitting vehicles in the street and running through intersections.

"With the size of this crowd, hitting vehicles is not a safe thing," he said.

Neiman said that on Tuesday night officers recovered several weapons, including a switchblade knife and pepper spray.

"When they will no longer comply with our requests and when it becomes dangerous, when they start running in and out of cars and put the public at risk, then we have to take action," LAPD Chief Charlie Beck said.

Beck said those arrested would be booked on a misdemeanor charge, mostly for unlawful assembly, and bail would be set at $500.

A similar mass arrest followed Tuesday night's protests, when some people managed to briefly shut down the 101 Freeway and the LAPD made 183 arrests.

The number of arrests in L.A. surpassed those reported in other major U.S. cities on the second and third night of protests.

On Tuesday night, protesters blocked traffic on the 101. On Wednesday night, no freeways were blocked.

Late Wednesday, about 30 more protesters gathered near Staples Center and headed north toward LAPD headquarters. As the protesters walked, police warned them not to block traffic. The demonstrators stayed on the sidewalk and arrived at the headquarters at 1st and Spring streets at about 11:35 p.m., chanting, "We want peace" and "Hands up, don't shoot."

**Follow @MattStevensLAT for Westside coverage and breaking news**

# EXHIBIT 3

LOCAL / Crime & Courts

# L.A. files few charges in Ferguson police shooting protests despite mass arrests



LAPD officers search protesters arrested in downtown Los Angeles on the third day of demonstrations over the failure to charge the Ferguson, Mo., police officer who shot Michael Brown to death. (Marcus Yam / Los Angeles Times)

By **Kate Mather and Stephen Ceasar · Contact Reporter**

JULY 16, 2015, 4:00 AM

**W**hen protesters flooded streets across the country last fall, furious over the police killing of an 18-year-old black man in Missouri, the demonstrations in Los Angeles stood out among the rest.

There was no widespread violence, no burning stores or looting, but L.A. made national headlines for another reason: LAPD officers swept up hundreds of protesters in mass arrests. The numbers surpassed those in other cities such as Oakland, St. Louis and Ferguson, Mo., that experienced rioting and other violence.

Eight months later, Los Angeles city prosecutors told The Times they had rejected filing criminal charges against the majority of the people detained by the LAPD during those demonstrations. The city attorney's office has filed charges against only 27 of the 323 protesters arrested — fewer than 9% — and has formally rejected charges against 181.

Most of the remaining cases were referred to informal hearings, where officials "make sure that everyone understands the law and consequences if this happens again," a spokesman for the city attorney's office said.

Los Angeles Police Department officials said they stood by the arrests, despite the small number of charges filed. They noted police have a lower legal threshold — probable cause — for making an arrest than prosecutors do for proving a case.

## "

# This suggests ... officers aren't getting the message and are arresting people who aren't actually the ones violating the law.

— Peter Bibring, Southern California ACLU, of the few charges filed after mass arrests of protesters

Capt. Jeff Bert, who oversaw the on-the-ground response to the demonstrations, said the LAPD's primary objective was to allow protesters to exercise their 1st Amendment rights. But he said that when concerns arose about public safety — such as when protesters ran onto the freeway or blocked traffic — the department needed to take action.

"There comes a point where enough is enough, when we are balancing the needs of the rest of Los Angelenos with the needs of a very small, relatively speaking, group of protesters who are no longer engaging in lawful activity," he said. "Our actions, while not popular, were actions designed to protect and keep the city safe."

Larry Rosenthal, a former deputy city attorney in Chicago and law professor at Chapman University, said that it's not uncommon to see only a few charges filed after a large demonstration resulting in mass arrests. In such chaotic situations, he said, police officers don't always have the time to adequately record the alleged offenses.

"There's great tension between getting control of the scene and being able to document what's been done in a way that will hold up in court," Rosenthal said.

But critics of the LAPD's tactics said the city attorney's decision bolstered their complaints that police went too far by arresting so many people.

"They overreacted," said Carol Sobel, a longtime civil rights attorney who has alleged in legal papers filed with the city that police acted improperly. "They could have handled it differently."

Peter Bibring, a senior staff attorney for the Southern California chapter of the American Civil Liberties Union, said Los Angeles police should be better trained at this point, given the department's checkered past with large demonstrations. The LAPD was blasted for its heavy-handed response to the 2007 May Day rally in MacArthur Park, where officers swung batons and fired rubber bullets on a predominantly peaceful crowd, injuring nearly 250 people. The melee prompted lawsuits and LAPD reforms.

"To me, this suggests there are breakdowns," Bibring said of the LAPD's handling of the November protests. "That officers aren't getting the message and are arresting people who aren't actually the ones violating the law."

Police alleged that many of those arrested refused to leave areas after being warned by police. The charges filed included obstructing thoroughfares, refusing to comply with lawful police orders, and assault or battery on officers, according to the city attorney's office.

City attorney spokesman Rob Wilcox said via email that his office "carefully reviewed each case and based on the available evidence made a decision whether to file." Generally, he said, prosecutors may reject charges in mass-arrest scenarios because they can't prove beyond a reasonable doubt that a specific person committed a specific crime.

Wilcox said prosecutors "worked together closely" with the LAPD "to address the challenging and unique circumstances presented by the Ferguson protests."

"It is one thing to peacefully protest on a sidewalk outside City Hall and quite another to assault a police officer or endanger lives on the freeway ... which are totally unacceptable and will be prosecuted," he wrote.

Like other major police agencies, the LAPD braced last November for the local reaction to a decision made by a grand jury not to indict the white police officer who fatally shot Michael Brown in Ferguson. Although the L.A. protests generally remained peaceful, tensions sometimes flared.

Groups of demonstrators sat down in the lanes of the 110 Freeway downtown, holding their hands in the air. One protester was arrested on suspicion of throwing a frozen water bottle that struck an officer in the head. Other people were photographed climbing on top of police cars.

A common complaint among many protesters was that they didn't hear a so-called "dispersal order" from the LAPD telling them to leave the area.

Bert said he personally delivered dispersal orders, but acknowledged that giving the commands posed challenges, particularly during the first night of demonstrations. Bert said he would have liked to have had officers on the other side of the crowd confirm to him that they could hear the order.

Two nights later, Bert said, he had those officers in place and they told him they could hear his dispersal order. But when an attorney who was observing the protests told Bert he didn't, the captain said, the command was given again.

Charmaine Chua was among the dozens of people arrested on suspicion of failing to disperse the day before Thanksgiving near 7th and Figueroa streets. She said she never heard the LAPD give an order to leave before officers penned her and other demonstrators into an area where they were detained.

After she was released from a Van Nuys jail, Chua said, she connected with other protesters and met with

attorneys to discuss their cases. They believed the arrests were a ploy by police to end the days-long demonstrations, she said.

"It felt like a scare tactic," Chua said.

Chua's case ended with a five-minute meeting at the city attorney's office, she said, where she was told she was arrested because the demonstration was becoming a riot. The city attorney's office warned her to stay out of trouble, she said.

Cori Redstone, another protester arrested that night on allegations of failing to disperse, said she was given paperwork ordering her to court on what turned out to be a federal holiday.

"I don't know if I'm charged or not. I have no idea what is happening with my case," she said recently.

Redstone, who recently completed a graduate degree at CalArts, says she is applying for teaching jobs. She worries the arrest will keep her from getting hired.

"I guess it's a consequence I'll have to live with now," she said.

Wilcox said this week that his office had decided not to file charges against Redstone.

*kate.mather@latimes.com*

*stephen.ceasar@latimes.com*

Copyright © 2016, Los Angeles Times

**This article is related to:** Crime, Assault, Los Angeles Police Department