UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV16-00237 JAK (GJSx) | | Date | May 25, 2017 |
|---|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 26)**

**I.   Introduction**

Charmaine Chua ("Chua"), Torie Rivera ("Rivera"), Lydia Hicks ("Hicks"), Kyle Todd ("Todd") and the National Lawyers Guild ("NLG"), brought this putative class action on behalf of themselves and others similarly situated (collectively "Plaintiffs") against the City of Los Angeles ("City"), Los Angeles Police Department ("LAPD") Chief Charlie Beck ("Beck"), LAPD Commander Andrew Smith ("Smith") and Does 1-10 (collectively "Defendants"). Plaintiffs allege that Defendants violated their rights under the First, Fourth and Fourteenth Amendments to the Constitution, as well as their rights under the California Constitution and Cal. Civ. Code §§ 52.1 and 1798.14. The alleged basis for these claims is that, while involved in two protests in November 2014, Plaintiffs were detained and then arrested by officers of the LAPD. Dkt. 1.

Plaintiffs brought this Motion for Class Certification ("Motion"). Dkt. 26. Defendants filed a statement of Non-Opposition to the Motion. Dkt. 33. A hearing was held on November 7, 2016 and this motion was taken under submission. Dkt. 38. As directed at the hearing, Plaintiffs and Defendant then submitted supplemental briefing. Dkts. 39, 41. For the reasons stated in this Order, the Motion is **GRANTED IN PART**.

**II.   Factual Background**

   **A.   Arrests at 6th and Hope**

On November 26, 2014, a group of protestors began demonstrating in front of a Los Angeles federal courthouse, and then marched first to the LAPD headquarters and then south on Flower Street. Dkt.1 ¶¶ 18-20. The Complaint alleges that as the protestors attempted to turn West on 7th Street, LAPD officers formed a line in front of them and blocked their pathway on 7th Street. Dkt. ¶ 20. It also alleges that the LAPD officers blocked access to Flower and Figueroa Streets, thereby "kettling"[1] the protestors

---

[1] Plaintiffs use this term throughout the Complaint and their Motion. It's defined as a police practice of confining a group of demonstrators or protesters to a small area, as a method of crowd control during a demonstration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

on a single block of 7th Street. *Id.* ¶ 21. The Complaint alleges that LAPD Captain Jeff Bert issued a dispersal order to the demonstrators at this time, but that Plaintiffs could not and did not hear it. *Id.* ¶ 23.

The Complaint alleges that the protestors eventually made their way to Fifth and Flower Streets. *Id.* ¶¶ 24-27. It alleges that the protestors continued to be kettled by the LAPD officers, but walked to the Central Library. *Id.* ¶ 28. The Complaint alleges that the LAPD officers did not attempt to issue a dispersal order and denied the protestors permission to leave the area. *Id.* ¶ 29. It alleges that the LAPD officers then announced that all of the approximately 130 protestors had been placed under arrest. *Id.* ¶ 29. Each was arrested and charged with a misdemeanor, "Failure to Disperse," pursuant to Cal. Penal Code § 409. *Id.* ¶ 30. The Complaint alleges that some bystanders in the area, who were not protesting, were also arrested. *Id.* ¶ 31. It alleges that this violated Cal. Penal Code § 409. *Id.* ¶ 32.

The Complaint alleges that the LAPD officers then "separated Plaintiffs into groups of six and each group as processed on-site by two LAPD officers." *Id.* The LAPD officers allegedly "photographed Plaintiffs, collected and recorded their names, searched them, handcuffed them using zip-ties, and loaded them onto buses." *Id.* The protestors were then transported to one of three locations: the LAPD Metropolitan Detention Center, the Van Nuys jail or the 77th Station jail. *Id.* ¶ 33. The Complaint alleges that most of the protestors were kept in custody for approximately 14 hours before they were released on their own recognizance ("OR release"). *Id.* ¶¶ 34-35.

The Complaint alleges that "Penal Code § 853.6 imposes a mandatory requirement to release misdemeanor violators on their own recognizance either before or immediately after booking unless individualized probable cause exists to believe that one or more exceptions to the statute exists as a basis to deny OR release." *Id.* ¶ 36. The Complaint alleges that no individualized assessment was made for any of the Plaintiffs and each of the Plaintiffs had his or her liberty unlawfully restricted by the decision to detain them. *Id.*

The Complaint alleges that these actions were "in keeping with the City's unlawful policy . . . of denying OR release to individuals arrested for engaging civil disobedience." *Id.* ¶ 37. The Complaint alleges that this was not the first time the LAPD applied this policy. *Id.* It alleges that the decision by the LAPD to do so was "with the specific and deliberate intent to interfere with the exercise of Plaintiffs' rights to assembly and due process." *Id.* ¶ 38.

### B. Detention at Beverly and Alvarado

On November 28, 2014, a group of protestors gathered at Grand Park and began to march west on Beverly Boulevard. *Id.* ¶¶ 39-40. The Complaint alleges that at the start of the march, LAPD officers instructed the protestors that they would be arrested if they marched in the street. *Id.* ¶ 40. It alleges that the protestors complied with this instruction and marched on the sidewalk. *Id.* It alleges that the LAPD officers then intentionally blocked the Beverly Boulevard sidewalk by having officers stand and placing motorcycles there. It is also alleged that the officers ordered the protestors to proceed by marching in the street. *Id.* The Complaint alleges that the protestors were then threatened with arrest by LAPD officers for doing so. *Id.* It further alleges that the protestors then returned to the sidewalk, only to encounter another police blockade and receive another order to continue marching in the street. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

The Complaint alleges that the protestors turned onto Alvarado Street where they encountered a line of LAPD officers waiting to kettle and detain them. *Id.* ¶ 41. It alleges a group of approximately 40 protestors was surrounded by the LAPD officers. *Id.* It alleges that no LAPD officer made a dispersal order until more than an hour after the protestors had been kettled. *Id.* ¶ 42. The LAPD officer who made the order allegedly stated that "the march had been declared an unlawful assembly and that Plaintiffs would not be released until after being questioned individually." *Id.* The Complaint alleges that the order did not inform the protestors of their ability to leave within a set time and by and announced route in order to avoid detention. *Id.* It alleges that "[m]any of those present did not hear or understand the announcement." *Id.*

The LAPD officers then "detained the Plaintiffs, handcuffed them with zip-ties, and compelled them to provide private identifying information, including social security numbers, birthplace, employment, telephone numbers, and home addresses before being released." *Id.* ¶ 44. The Complaint alleges that the LAPD officers patted down the protestors' clothing and "searched their personal belongings, including backpacks and wallets, without consent or proper cause." *Id.* It alleges that the LAPD then conducted electronic checks about those detained to determine, *inter alia*, if there were outstanding warrants as to any of them. *Id.* An officer then "read a dispersal order to one individual at a time," while another officer made a video recording of the face of each individual as the dispersal order was read. *Id.* The Complaint also alleges that "[a]t least one person was asked to identify any non-visible tattoos although he did not have any tattoos visible to the officer." *Id.* The Complaint alleges that the LAPD collected this personal information "for the purpose of maintaining a database of protestors and for the dissemination of this information to other law enforcement and government agencies." *Id.* ¶ 45.

    **C.**    **The Parties**

        1.    <u>Defendants</u>

The City is sued for the actions of the LAPD, a city entity, as well as under *Monell*, for policies of the LAPD. Beck was the LAPD Chief and policymaker at all relevant times. *Id.* ¶ 12. He is sued in both his official and personal capacities. *Id.* Smith was the field commander directing operations. *Id.* ¶ 13. The Complaint alleges that Beck delegated to him the LAPD policymaking authority during these incidents. *Id.* He is sued in both his individual and official capacities. *Id.*

        2.    <u>Plaintiffs</u>

Chua was protesting in downtown Los Angeles on November 26, 2014. *Id.* ¶ 4. She was among the protestors arrested at 6th and Hope Streets. *Id.* After police officers kettled a group of protestors, Chua approached an officer, asked if she were being detained and requested permission to leave the area. *Id.*; Declaration of Charmaine Chua ("Chua Decl."), Dkt. 29 at 4 ¶ 3. She was told that she was not permitted to leave. *Id.* She did not hear a dispersal order that was given. Chua Decl. ¶ 5. She was then arrested and held in custody until approximately 10 a.m. the following day on charges of violating Cal. Penal Code § 409. *Id.* ¶ 6. She was denied release on her own recognizance notwithstanding that she had no criminal history. *Id.* ¶ 7. She declares that there was no reasonable suspicion that she would immediately engage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

in the same allegedly, unlawful activities. *Id.* Ultimately, no criminal charges were filed against her. *Id.* ¶ 8; Dkt. 1 ¶ 4. She declares that she understands her responsibilities as a class representative and does not know of any conflicts with other putative class members. Chua Decl. ¶ 10.

Rivera is a resident of Los Angeles. Dkt. 1 ¶ 6. He was protesting in downtown Los Angeles on November 26, 2014. *Id.* He was among the protestors arrested at 6th and Hope Streets. *Id.* He declares that he heard an officer on a megaphone order the crowd to disperse. Declaration of Torie Rivera ("Rivera Decl."), Dkt. 29 at 11 ¶ 3. The Complaint alleges that he was detained and arrested at 6th and Hope Streets. Dkt 1 ¶ 5. He was arrested and held in custody until about 10 a.m. the following day on charges of violating Cal. Penal Code § 409. Rivera Decl. ¶ 4. He was denied release on his own recognizance notwithstanding that there was no reasonable suspicion that he would immediately engage in the same allegedly unlawful activities. *Id.* ¶ 5. No criminal charges were filed against him, although he made an initial court appearance. *Id.* ¶ 6. He declares that he understands his responsibilities as a class representative and does not know of any conflicts with other putative class members. *Id.* ¶ 8.

Hicks is a resident of Los Angeles County. Dkt. 1 ¶ 5. She was protesting in downtown Los Angeles on November 26, 2014. *Id.* She was among the protestors arrested at 6th and Hope Streets. *Id.* She did not hear a dispersal order. Declaration of Lydia Hicks ("Hicks Decl."), Dkt. 29 at 18 ¶ 4. The Complaint alleges that she was detained and arrested without notice or warning at 6th and Hope Streets. Dkt. 1 ¶ 5. She was then arrested and held in custody until about 3 p.m. the following day on charges of violating Cal. Penal Code § 409. Hicks Decl. ¶ 5. She was denied release on her own recognizance notwithstanding that she had no criminal history. *Id.* ¶ 6. She declares that there was no reasonable suspicion that she would immediately engage in the same allegedly unlawful activities. *Id.* No criminal charges were filed against her. *Id.* ¶ 7. She declares that she understands her responsibilities as a class representative and does not know of any conflicts with other members of the putative class. *Id.* ¶ 9.

Todd is a resident of Los Angeles as well as a lawyer and member of the National Lawyers Guild. Dkt. 1 ¶ 7; Declaration of Kyle Todd ("Todd Decl."), Dkt. 29 at 23 ¶ 1. He was acting as a legal observer during the protest in downtown Los Angeles on November 28, 2014. Todd Decl. ¶ 3. He was kettled by LAPD officers with a group of protestors on a public sidewalk at Beverly and Alvarado Streets without notice or warning. *Id.* ¶ 4. He declares that he was detained with the entire group of protestors for more than an hour and was not permitted to leave. *Id.* His personal property was searched even after he expressly refused to give consent. *Id.* ¶ 5. He witnessed other people being searched. *Id.* He declares that his ID was checked and he was asked for his address, Social Security Number, telephone number and employer. *Id.* After providing this information he was given an individual dispersal order. Another officer then recorded a video of his face. *Id.* He declares that he understands his responsibilities as a class representative and does not know of any conflicts with other members of the putative class. *Id.* ¶ 7.

The NLG is a voluntary bar association. Its mandate is to advocate for human and civil rights. Dkt. 1 ¶ 8. It works to ensure legal and practical access to demonstrations in Southern California by regularly providing legal observers at demonstrations. Their role is to observe and document potentially unlawful or unjustified interference by law enforcement personnel with the rights of the demonstrators. *Id.* The NLG also "works to ensure the right to protest by helping to secure legal representation for demonstrators facing criminal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

charges arising out of demonstration activity and affirmative civil cases against local governments and law enforcement agencies for unlawful interference with demonstrators' rights." *Id.* The Complaint alleges that the NLG "has long advocated against unlawful surveillance of persons engaged in protected First Amendment activity, including the compilation of databases of participants in public protest." *Id.* ¶ 9.

The Complaint also alleges that the NLG "suffered injury when the Defendants kettled the demonstrators, issued an unlawful and inadequate dispersal order, arrested them, denied them released on their own recognizance, and collected personal identifiers on individuals engaged in lawful First Amendment activity." *Id.* It alleges that Defendants actions interfered with NLG's right to assembly and speech because it "plans to assist, plan, participate in, hold similar events in the future, on its own or in conjunction with others, and is fearful that the police actions of November, 2014 including the unlawful collection of information on those participating in First Amendment activity in public places, will be repeated absent injunctive relief to prohibit the practices, policies, and customs of the LAPD that resulted in the unlawful action against peaceful demonstrators on November 26, 2015 in downtown Los Angeles." *Id.*

   3. <u>The Putative Class</u>

The putative class consists of approximately 170 individuals who were allegedly kettled by the LAPD during the two protests in November, 2014. The class consists of two damages subclasses and an injunctive relief class. *Id.* ¶¶ 60-61.

The first damages subclass is the 6th and Hope subclass. It is defined as approximately 130 persons who were detained and arrested at 6th and Hope Streets on November 26, 2014, denied release on their own recognizance but never prosecuted. *Id.* ¶¶ 10, 60. This putative subclass is to be represented by Chua, Hicks and Rivera. *Id.* ¶ 60.

The second damages subclass is the Beverly and Alvarado subclass. It is defined as approximately 40 persons who were kettled, detained, interrogated and forced to give up personal information at Beverly and Alvarado Streets on November 28, 2014. *Id.* ¶¶ 10, 60. This subclass is represented by named Plaintiff Todd. *Id.* ¶ 60.

The injunctive relief class is defined as "all persons who have in the past, or may in the future, participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech and petition." *Id.* ¶ 61. This class is represented by the NLG and all the other named representatives. *Id.*

  D. **Claims and Requests for Relief**

The Complaint advances eight claims for relief: (1) violations of rights to speech, assembly and association pursuant to 42 U.S.C. § 1983 and the California Constitution, Art. I, §§ 2 & 3; (2) violations of rights to be free from unreasonable seizures, excessive or arbitrary force and arrest or detention without probably cause or reasonable suspicion pursuant to 42 U.S.C. § 1983 and the California Constitution, Art. I, § 7;(3) violation of rights to not be deprived of liberty without due process pursuant to 42 U.S.C. § 1983 under the Fourteenth Amendment; (4) violation of rights to equal protection pursuant to 42 U.S.C. § 1983 and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

California Constitution, Art. I, § 13; (5) violations of the right to privacy under the California Constitution, Art. I, § 1; (6) violations of Cal. Civ. Code § 52.1; (7) violations of Cal. Civil Code § 1798.14, Information Practices Act; and (8) false arrest/false imprisonment. Dkt. 1 ¶¶ 86-106.

The Complaint seeks an injunction that would restrain Defendants from engaging in the unlawful and unconstitutional actions described in the Complaint. It also seeks and order that would require Defendants "to seal and destroy all records" derived from the arrests and detentions. Dkt. 1 at 27 ¶ 3. It also seeks an order directing Defendant to disclose the identities of all of the entities to which the records and personal information of the class members have been provided. The Complaint seeks a declaration that Defendants' actions violated Plaintiffs' constitutional rights. It also seeks compensatory, general, punitive, exemplary and statutory damages pursuant to Cal. Civil Code § 52(b). Dkt. 1 at 29-30.

**III.    Analysis**

    **A.    Legal Standard**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160; *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Although we have cautioned that a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (Internal quotation marks and citations omitted)); Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. P. 23, 28 U.S.C. App. at 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

The first step in establishing the propriety of class certification requires that a putative class representative show that the proposed class meets each of the prerequisites of Rule 23(a). *Dukes*, 564 U.S. at 350; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

If these four prerequisites are met, the analysis proceeds to a consideration of whether the proposed class meets an applicable requirement of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs rely on Rule 23(b)(3), (b)(2) and (b)(1). Rule 23(b) provides in pertinent part that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," (Fed. R. Civ. P. 23(b)(2)), or "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If the plaintiff meets his or her burden under Rule 23, then the court has broad discretion to certify the class. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001).

    **B.**    **Application**

        1.    <u>The Requirements of Rule 23(a)</u>

            a)    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotation marks omitted). No specific number of members is required to meet this standard. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Plaintiffs contend that there are 170 members in the proposed damages class. They propose that these members be divided into two subclasses -- one with 130 people and the other with 40. Plaintiffs argue that the subclasses meet the numerosity requirement because individual adjudication would be impractical. Further, they argue that each class member's damages are not sufficiently large to incentivize bringing an individual action. Declaration of Barrett S. Litt ("Litt Decl."), Dkt. 27 ¶ 20. They also argue that joining all members in individual actions would be unrealistic because some of the class members may reside outside of Southern California and others may fear retaliation for bringing an action.

Based on these facts, which Defendants do not dispute, the numerosity requirement is satisfied.

            b)    Commonality

                 (1)    <u>In General</u>

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

*Dukes*, 564 U.S. at 350 (internal quotation marks removed). The class claims must "depend upon a common contention … of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 359 (internal markings omitted).

Plaintiffs contend that commonality exists as to all members of the classes. They argue that the LAPD created the common issues by engaging in unified actions toward all members. Plaintiffs also claim that these actions violated longstanding rights of the class members to participate in protests as well as the specific order entered in *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles* (*MIWON*), No. 07-cv-03072 AHM (FFM) (C. D. Cal. June 24, 2009), Ex. C, Dkt. 27 at 36, which restricted police tactics with respect to protests.

The details as to commonality with respect to each proposed Subclass are next addressed.

(2) <u>6th and Hope Streets Subclass</u>

Plaintiffs argue that, although the senior LAPD personnel at this location did not declare the presence of an unlawful assembly, the arrests at 6th and Hope Streets were retroactively justified on that basis. They also argue that the LAPD officers kettled and arrested those potential class members who gathered at 6th and Hope Streets, and refused to grant them OR release. Plaintiffs contend that the common questions of law and fact in the 6th and Hope Streets subclass include the circumstances and propriety of: (1) kettling and arresting the putative class members who were protesting at 6th and Hope Streets; and (2) denying all of those arrested there OR release based on a global decision, not individual ones.

Plaintiffs contend that, in light of the foregoing, a common issue of law is presented as to an alleged violation of Cal. Penal Code § 853.6. That statute requires that a person arrested for allegedly committing a misdemeanor is to be released after booking unless a statutory exception applies, which is identified by the arresting officer in the corresponding report. This section is "mandatory in all cases of warrantless misdemeanor arrests." *Schmidlin v. City of Palo Alto*, 157 Cal. App. 4th 728, 761 (2007), *as modified* (Jan. 2, 2008).

Based on these facts, which Defendants do not dispute for purposes of the present Motion, the commonality requirement is satisfied as to the 6th and Hope subclass.

(3) <u>Beverly and Alvarado Subclass</u>

Plaintiffs contend that the LAPD officers kettled, detained and took personal information from all members of the putative Beverly and Alvarado subclass. Consequently, Plaintiffs contend that common questions of law and fact are presented, including as to the circumstances and propriety of the kettling, prolonged detention, warrantless searches of, and compelled disclosure of personal information by, the members of the proposed subclass. These are similar to the common questions presented as to the classes certified in *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 489 (C.D. Cal. 2013), and *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles* (*MIWON*), 246 F.R.D. 621, 631 (C.D. Cal. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Plaintiffs next argue that, although the scope of the personal information provided by putative subclass members may vary, the commonality analysis does not. Thus, the overarching issues concern the propriety of the kettling and detention. The collection of personal information was incident to this other conduct. Moreover, the scope of the claims that can be asserted can, if appropriate, be revisited later in this matter, without affecting the outcome as to certification. Thus, a class may be certified as long as there is "a single common question." *Dukes*, 564 U.S. at 376.

Based on these facts, which Defendants have not disputed for purposes of the present Motion, the commonality requirement is satisfied as to the Beverly and Alvarado Subclass.

(4)    <u>Commonality Between the Subclasses</u>

Plaintiffs argue that even without establishing subclasses, there is commonality as to the claims of the members of both. They all contend that they were subject to "unlawful detentions and/or arrest." Dkt. 26 at 27. This argument is not persuasive. Although the reason for the protest by each group was the same, they occurred on different days, involved different people, as well as different police officers. Further, the members of the proposed 6th and Hope subclass were arrested and detained and then released on bail rather than on OR. In contrast the members of the proposed Beverly and Alvarado subclass were detained, searched and subjected to the collection of personal information. They were never arrested.

For the foregoing reasons, Plaintiffs have not shown that the members of both subclasses "have suffered the same injury" as opposed to merely "suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. Therefore, the commonality requirement has not been satisfied if all members of the two subclasses were combined into a single class. However, as noted above, it is satisfied as to each subclass individually.

c)    Typicality

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representative claims "need not be substantially identical." *Id.*

(1)    <u>6th and Hope Subclass</u>

The claims of the named representatives for the 6th and Hope Streets subclass all arise from their arrests, detention in jail and denial of OR release. Chua, Rivera and Hicks, who are the named plaintiffs as to this Subclass, were all detained, arrested and denied OR release as a result of their participation in the protests. They challenge this conduct. Chua and Rivera were both held until 10 a.m. and Hicks was held until 3 p.m. These claims overlap with those of the members of the putative subclass. Two of the named representatives did not hear any order by LAPD calling for the protestors to disperse. However, even assuming that others may have heard such an order, the core issues are sufficient to satisfy the typicality requirement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

For the foregoing reasons, this requirement is satisfied for the 6th and Hope subclass.

(2) <u>Beverly and Alvarado Subclass</u>

Todd is the named plaintiff as to the Beverly and Alvarado subclass. His claims arise from his detention during the protest and the gathering of personal information, including taking his photograph, without his consent. He was subjected to a mass detention that included all members of the proposed subclass. His claims overlap entirely with those of the members of the putative subclass. Therefore, the typicality requirement is satisfied as to this subclass.

d) Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

(1) <u>6th and Hope Subclass</u>

Plaintiffs argue that each of the named Plaintiffs is an adequate representative of the corresponding subclass because each has declared that he or she has no conflicts with the subclass members. Rivera Decl. ¶ 8; Hicks Decl. ¶ 9; Chua Decl. ¶ 10. Each of the named representatives also has declared that he or she understands the responsibilities of a class representative and are prepared to fulfill them. *Id.* Because the named representatives of the 6th and Hope subclass suffered similar injuries as a result of similar conduct, they will adequately represent the interests of the subclass.

Class counsel have met the second requirement. They have submitted evidence reflecting their substantial experience in handling civil rights class actions, including those involving the mass arrest of protestors. Litt Decl. ¶ 20. The named representatives and their counsel are adequate to pursue the action on behalf of the 6th and Hope subclass.

(2) <u>Beverly and Alvarado Subclass</u>

Plaintiffs argue that Todd is an adequate representative of the Beverly and Alvarado subclass because he has declared that he has no conflicts of interest with the class. Todd Decl. ¶ 7. Plaintiffs also argue that, because Todd's alleged injuries do not arise from his role as a legal observer, he is not distinct from, or in conflict with, any other member of this subclass. Dkt. 29 at 5. These assertions are not sufficient in light of other evidence. Although Todd was present at the relevant time, he was not a protestor. Instead, he was there as a legal observer on behalf of the NLG. This is significant because the roles of a legal observer and a protestor are distinct. Todd was not exercising the same First Amendment right to free expression as the potential class members. His claim under 42 U.S.C. § 1983 for violation of his First Amendment rights is not co-extensive with those of the protestors. These variations may lead to different claims for relief as well as the need to present different types of trial evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Furthermore, Todd declares that he told the LAPD that he did not consent to a search of his person or to any taking or recording of his personal information. Todd Decl. ¶ 5. There is no allegation or showing that the putative subclass members made such statements. This could affect Todd's ability adequately to represent the subclass members on the Fourth Amendment and California right to privacy and Information Act claims. If some consented, it may affect their claims. If issues arise as to whether the consent was voluntary, Todd is not in a position to serve as a representative; as noted, he did not consent. Further, in pursuing his own claims, Todd may elect to focus on the significance of his refusal to consent as part of his assertions as to liability and damages. Once again, this could present conflicts between his position and those of the members of the proposed subclass. Further, in light of Todd's role as a lawyer and legal observer, his claims of injury and damages due to the taking of his personal information may vary from those advanced by other members of the subclass.

For these reasons, Todd is not an adequate representative of the Beverly and Alvarado subclass.

\*         \*         \*

For the forgoing reasons, the requirements of Rule 23(a) have been satisfied as to the 6th and Hope subclass. The Rule 23(a) requirements have not been satisfied as to the Beverly and Alvarado subclass. Through an amended complaint, Plaintiffs may propose another person to serve in this role in order to address the Rule 23(a) issue.

      2.      Requirements of Rule 23(b)

           a)      Legal Standards

Fed. R. Civ. P. 23(b)(3) provides that a class may be certified if a "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are to be considered in making this determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Fed. R. Civ. P. 23(b)(3) applies when "class-action treatment is not as clearly called for as [(b)(1) and (b)(2)], but it may nevertheless be convenient and desirable depending upon the particular facts." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment. It "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | | Date | May 25, 2017 |
|---|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | | |

      b)      Application

           (1)      <u>Predominance</u>

Under Rule 23(b)(3), the Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50, pp. 196-197 (5th ed. 2012)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citing Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

           (a)      Common Questions of Liability

Plaintiffs argue that common issues predominate. In their motion, Plaintiffs combine their arguments on commonality and predominance arguments. Each is analyzed separately in this Order because of the distinctions between the two subclasses.

           (i)      <u>6th and Hope Subclass</u>

Plaintiffs argue that common questions predominate as to the lawfulness of the kettling and arrest of those at 6th and Hope Streets and of the global decision not to grant those persons OR release. The Plaintiffs were detained while protesting and then arrested as a group. The Complaint alleges that there were no individualized determinations made as to the probable cause for this group seizure and arrest. Dkt. 1 ¶¶ 30-31. It also alleges that the Plaintiffs were then booked, and required to provide personal information *Id.* ¶ 32. The Plaintiffs were detained and denied OR release, and the "majority" of them were not released for nearly 14 hours. *Id.* ¶ 35. Plaintiffs argue that whether there is liability based on the lawfulness of these actions is at that heart of their claims and predominates over any individualized determinations.

The Complaint also alleges that at some point prior to the arrests, the LAPD made an order directing the protestors to disperse. It also alleges that this order was not sufficient, in part because many of the putative subclass members could not hear it. *Id.* ¶ 29. As to those who did not hear it, the Complaint alleged that their arrests for failure to comply with it were unlawful. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Whether the dispersal order was *per se* adequate is a common question that predominates over the individualized questions of whether individual subclass members heard the order. If the answer to that question is that the order was *per se* inadequate, then it does not matter whether individual subclass members heard it, because its inadequacy could affect the propriety of all of the arrests. The common subclass-wide question would resolve the individualized issues of liability. Although certain individualized inquiries may arise as to alleged violations arising from the booking and collection of personal information from individual subclass members, *e.g.*, whether they consented to provide the information, the remaining issues would be sufficient to have this matter proceed as a class action on the broader issues of liability.

Some of the Plaintiffs may have been exempt from the general OR release requirements of Cal. Penal Code § 853.6. This could present certain, limited individualized issues. However, the Complaint alleges that the LAPD did not make an individualized determination for any of the Plaintiffs. Therefore, it contends that there was no basis for the detention of those subclass members who might otherwise have been detained. Further, this narrow issue is not sufficient to offset the benefits or a class proceeding in measuring the common legal and factual issues.

For the foregoing reasons, common questions of liability predominate over individual questions in the 6th and Hope subclass.

(ii) <u>Beverly and Alvarado Subclass</u>

Plaintiffs argue that the common questions as to the lawfulness of the kettling, prolonged detention, and the warrantless search of the persons and property, as well as compelled disclosure of personal information from those at Beverly and Alvarado, predominate over individual questions as to members of the Beverly and Alvarado subclasses. The question of the legality of the kettling and detention before the dispersal order was given and whether the dispersal order was legally adequate, are common questions that do predominate over any individual ones.

However, individualized questions are presented as to whether the disclosure of personal information was compelled, or if certain subclass members consented to its disclosure. This could result in the need to adjudicate separate issues as to any such subclass members. For example, if it is determined that the detention was reasonable, Defendants may be able to present the defense that it was appropriate to collect certain personal information, such as the name and address of a person who was detained. But, this may not have warranted the collection of information such as a social security number. The content and nature of other personal information that was collected may also vary among members of the proposed subclass. Therefore, individualized questions as to the claims based on the collection of Plaintiffs' personal information predominate over the common legal and factual issues.

For the foregoing reasons, common questions as to liability predominate over individual ones as to the legality of the kettling and detention of members of the Beverly and Alvarado subclass. That is not so as to the propriety of the collection of personal information from members of the Beverly and Alvarado subclass.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

(b)    Common Questions of Damages

Where damages are sought on a class-wide basis, it must be shown that their calculation is subject to common proof. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Such calculations "need not be exact." *Id.* However, at the class-certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case . . . [and] courts must conduct a rigorous analysis to determine whether that is so." *Id.* at 1433 (internal quotation marks omitted). Still, "damage calculations alone cannot defeat certification," even if individual issues predominate. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-68 (9th Cir. 2014); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010).

"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted). A plaintiff must support a damages theory with evidence, not mere allegations. *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460-61 (S.D. Cal. 2014). When discovery has not yet closed, it may be appropriate to certify a class based on proposed damages modeling and subject to possible decertification after the close of discovery. *E.g.*, *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *18-20 (N.D. Cal. May 30, 2014). But "as long as an efficient mechanism exists to calculate damages on a class-wide basis, the existence of potential individualized damages will not defeat the predominance requirement." *Aichele*, 314 F.R.D. at 496. Plaintiffs must still be able "to show that their damages stemmed from the defendant's actions that created the legal liability." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

Plaintiffs argue that notwithstanding that there may be a need for certain individualized calculations of damages, certification as to liability is appropriate. They add that the subclasses should also be certified for general damages, because common questions of law and fact predominate on that issue.

(i)    <u>6th and Hope Subclass</u>

Plaintiffs argue that the alleged damages of this subclass are uniform because all class members were allegedly detained, arrested, handcuffed, denied OR release. Plaintiffs seek general damages not special damages. General damages are available in actions brought pursuant to 42 U.S.C. § 1983. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086-87 (9th Cir. 2009). Plaintiffs argue that the issue of general damages is a common one that could be presented at trial. They add that a jury could set the amount of general damages as to each alleged wrongdoing. However, Plaintiffs have provided neither evidence in support of their theory of general damages nor a coherent method for how damages might be calculated. Nor do they explain how subclass members could be separately categorized with respect to claimed general damages. In light of these shortcomings, the request to certify this subclass as to a determination of general damages, is unsupported and unpersuasive. However, this determination is without prejudice to renewing this request later in the proceedings based on a more complete factual record. Furthermore, because statutory damages are available, this determination as to general damages does not itself preclude class certification as to that form of relief. *Leyva*, 716 F.3d at 513.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Cal. Civil Code § 52.1 provides for statutory damages for violations of civil rights protected under the U.S. Constitution and the California Constitution. Plaintiffs contend that the calculation of such damages presents an issue that is common to the subclass as a whole. This position is persuasive. Cal. Civil Code Thus, a resolution of the common issues as to liability could lead to a corresponding award of these statutory damages.

For the foregoing reasons, the subclass can be certified as to the demand for statutory damages, but not as to the claim for either general of specific damages.

(ii)     Beverly and Alvarado Subclass

Plaintiffs make little mention of damages as to the Beverly and Alvarado subclass. It is limited to the following: "Personal information waws [sic] obtained from all those at Beverly & Alvarado." Dkt. 26 at 31. There are not common questions presented as to the specific claims for damages made by members of this subclass for the same reasons stated above as to the 6th and Hope subclass. Furthermore, the members of that subclass were arrested and denied OR release. The members of the Beverly and Alvarado subclass claim damages due to their being detained, searched and required to provide certain personal information. Although Plaintiffs did not mention whether statutory damages could be available as to the claims made on behalf of the members of this subclass, for the same reasons stated above as to the 6th and Hope subclass, statutory damages pursuant to Cal. Civil Code § 52.1 may be available to the Beverly and Alvarado subclass, and suitable for classwide adjudication. For the foregoing reasons, common questions do not predominate as to specific damages for members of the Beverly and Alvarado subclass, but common questions may predominate as to statutory damages.

(2)     Superiority and Manageability

Plaintiffs argue that a class proceeding would be manageable and superior to having individual actions. Fed. R. Civ. P. 23(b)(3). They also argue that a class action here is superior because it will allow for the efficient administrative of justice in light of the relatively small size of the individualized damage claims. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001). These arguments are persuasive. Therefore, superiority and manageability have been shown.

3.     Injunctive Relief Class

The proposed injunctive relief class is defined as "all persons who have in the past, or may in the future, participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech and petition." *Id.* ¶ 61. This class is represented by the NLG and all the other named representatives. *Id.* The Complaint seeks an injunction restraining Defendants from engaging in the actions described in the Complaint and requiring Defendant to seal and destroy all records developed as a result of the arrests and detention of class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

a)  Rule 23(b)(2)

A class may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 131 S.Ct. at 2557. In determining whether certification is appropriate under Rule 23(b)(2), a court must "look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

Plaintiffs argue that the injunctive relief class should be certified under Rule 23(b)(2) because its members seek declaratory and injunctive relief. In Defendants' supplemental briefing, which was submitted to address issues raised by the Court at the hearing, Defendants contend that the injunctive relief class is overbroad.

b)  Scope of the Injunctive Relief Class

"A party seeking class certification must first demonstrate that an identifiable class exists." *Aichele*, 314 F.R.D. at 485. "A class definition should be 'precise, objective, and presently ascertainable.'" *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quoting *Manual for Complex Litigation* (*Third*) § 30.14, at 217 (1995)). "[T]he class need not be 'so ascertainable that every potential member can be identified at the commencement of the action.'" *Id.* (quoting Wright, Miller & Kane § 1760 at 117). But must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* "Class membership may not 'depend on the beliefs or state of mind of any individuals' and must be 'readily susceptible to judicial determination.'" *Aichele*, 314 F.R.D. at 485 (quoting *MIWON*, 246 F.R.D. at 630). This requirement has been applied to Rule 23(b)(2) injunctive relief classes. *See, e.g.*, *Aichele*, 314 F.R.D. at 485; *MIWON*, 246 F.R.D. at 630.

As presently defined, the injunctive relief class is not ascertainable. There are no objective criteria provided that could be applied to determine membership in this class, *i.e.*, the identities of all persons who may seek to be present within the City of Los Angeles at protests or to participate in them in a manner that constitutes the exercise of First Amendment rights. As defined, this proposed class would include any person who happens to be present at a protest, on any topic, anywhere in Los Angeles, at any time. It also does not provide a means of determining if potential members of this class would be exercising any First Amendment rights or if any would believe that such rights may be infringed. Although unidentified persons who may later qualify as class members may be included in a class, this is only when "the court can determine at any given time whether a particular individual is a member of the class." *Manual for Complex Litigation*, 4th ed., § 21.222. Plaintiffs have presented no criteria by which such a determination could be made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Other courts have approved more narrowly tailored injunctive relief classes. In *MIWON*, the injunctive relief class included those persons "who in the past have engaged in or who in the future may engage in peaceful demonstrations or protest in the City of Los Angeles," but limited the class to those who were members of certain organizations, and had participated in protests that these organizations had arranged and promoted. 246 F.R.D. at 629-30. *Aichele* permitted an injunctive relief class defined as individuals, including those identified in the future, arrested for unlawful assembly and denied OR release without the benefit of an individualized determination. 314 F.R.D. at 493. In both cases, the membership of these classes could be readily ascertained. The *MIWON* class required affiliation with defined organizations or demonstrations organized by those organizations and its "membership is based on the putative class members' conduct, activities, and affiliations." 246 F.R.D. at 631. The members of the *Aichele* class could be determined from LAPD arrest records. 314 F.R.D. at 493.

The proposed class here is overbroad. It includes anyone present at a "demonstration" in Los Angeles where persons are exercising "their rights of free speech and petition." This is indeterminate and overbroad. It could include those attending a large public demonstration only as observers, a person attending a play with a political theme, or those waving signs at a sporting event.

For the foregoing reasons, the Motion is **DENIED** as to the injunctive relief class, without prejudice to a later request for certification of narrow and defined version of such a class.

        c)        Whether the NLG Is an Adequate Class Representative

As noted, Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. In addition to the class representatives for the damages subclasses, who are also representatives of the injunctive relief class, Plaintiffs seek to have the NLG certified as a class representative of the injunctive relief class.

Even if such a class were certified, the NLG would not be an adequate representative for its members. NLG members often serve as legal observers at demonstrations. *See* Dkt. 1 ¶ 8 ("The NLG-LA works to ensure legal and practical access to demonstrations . . . by regularly providing legal observers at demonstrations to observe and document potentially unlawful or unjustified interference with demonstrators' rights."). As previously discussed with respect to Todd, the goals, rights and obligations of legal observers do not always overlap with those who are protesting. This has particular force here given that the identities of the putative class members and their reason(s) for protesting are both unknown.

Furthermore, the injuries claimed by the NLG include a frustration of its mission, which is to work "to ensure legal and practical access to demonstrations" and to advocate "against unlawful surveillance of persons engaged in protected First Amendment activity, including the compilation of databases of participants in public protest." *Id.* ¶¶ 8-9. NLG's injuries also include a need to expend resources. *Id.* ¶ 8. In contrast, the protestors here have alleged that their injuries include being subjected to kittling, arrest,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

detention, warrantless searches, denial of OR release and the seizure and disclosure of their personal information. These interests and those of the NLG may not always align. Again, this issue is of particular concern given that the identities of the members of this proposed class and their respective purposes and missions are presently unknown. Further, the NLG has priorities that may not always align with those of the members of the putative class. The NLG may be concerned with its ability to have its personnel serve as legal observers and advisers at future demonstrations. This could include the ability to consult with the LAPD on a range of issues. These are matters that may not be priorities for future demonstrators.

Finally, as Defendant has argued, protestors and NLG legal observers may develop adverse interests at future protests. For example, an NLG legal observer could confer with the LAPD and agree to a particular limitation on the actions of those protesting. But, when the NLG observer communicated this to the protestors, they may disagree and refuse to comply. Defendant contends that in such a situation, "an NLG legal observer might be called as a defense witness by the City to establish the reasonableness of the actions taken by the police in situations where the police conferred with an NLG legal observer prior to taking action." Dkt. 41 at 3 n.2.

For these reasons, neither the NLG nor Todd is an adequate representative for the injunctive relief class. However, Chua, Hicks and Rivera, for the same reasons stated above as to the 6th and Hope damages subclass, may be adequate representatives. However, a final determination of that issue cannot be made unless and until this proposed class is redefined and certified.

### d) Whether the NLG Has Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Where a plaintiff lacks standing, a federal court "lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004). A party seeking to invoke this Court's limited jurisdiction bears the burden of establishing that it has standing. *Lopez v. Candaele*, 630 F.3d 775, 784-85 (9th Cir. 2010).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw,* 528 U.S. at 181. "[A]n organization has direct standing to sue when it showed a drain on its resources from both a diversion of its resources and frustration of its mission." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (internal quotation marks and alterations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Plaintiffs contend that the NLG has standing because it has suffered an injury as have its members. Plaintiffs argue that the Complaint adequately alleges that NLG has been injured due to the frustration of its mission by the actions of Defendants. They argue that the NLG's mission is "work[ing] to ensure legal and practical access to demonstrations in Southern California" and "advocat[ing] against unlawful surveillance of persons engaged in protected First Amendment activity, including the compilation of databases of participants in public protest" has been frustrated by the alleged actions Defendant has taken against protestors in this case. Dkt. 1 ¶¶ 8-9. Plaintiffs contend that the allegations with respect to the violations of the rights of protestors to assembly and the unlawful surveillance satisfy the mission frustration prong of the analysis. *See, e.g.*, *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) ("Any violation of the [Fair Housing Act] would therefore constitute a 'frustration of [the plaintiff's] mission,'" where the plaintiff was "organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing, public buildings, transportation, goods and services.").

Plaintiffs also contend that a substantial amount of NLG resources have been consumed due to the need to respond to Defendants' actions. Thus, they argue that the NLG "expends money conducting work to protect the right to lawfully demonstrate without police interference in Los Angeles." Dkt. 1 ¶ 8. This alleged diversion of resources is also sufficient to establish standing. *See, e.g.*, *Smith*, 358 F.3d at 1105 (diversion of resources satisfied when organization's resources were used "to promote awareness of—and compliance with—federal and state accessibility laws"); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) ("The allegation that the [Defendant]'s policy frustrates these goals and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing.").

**IV.    Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED IN PART**. The 6th and Hope damages subclass is certified as to the demand for statutory damages, but not as to the claim for either general of specific damages. The Beverly and Alvarado damages subclass is not certified, without prejudice to the filing of an amended complaint that proposes another person to serve in the role of class representative. The injunctive relief subclass is not certified, without prejudice to a later request for certification of a more narrowly defined class.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |