Barrett S. Litt, SBN 45527
Email: blitt@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Carol A. Sobel, SBN 84483
Email: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: (310) 393-3055
Facsimile: (310) 451-3858

ADDITIONAL COUNSEL LISTED
ON NEXT PAGE
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARMAINE CHUA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>DEFENDANTS. | CASE NO: 2:16-CV-00237-JAK-GJS(X)<br>[HON. JOHN A. KRONSTADT]<br><br>NOTICE OF MOTION AND MOTION FOR LEAVE TO PRESENT CLASSWIDE GENERAL DAMAGES MEMORANDUM OF LAW; DECLARATIONS; EXHIBITS.<br><br>HEARING DATE:   JANUARY 14, 2019<br>HEARING TIME:   8:30 A.M.<br>COURTROOM:      10B<br><br>TRIAL DATE: _   MARCH 19, 2019__<br>TIME:                 9:00 A.M.<br>ACTION FILED:    JAN. 13, 2016 |

ADDITIONAL PLAINTIFFS' COUNSEL

Paul Hoffman, SBN 71244
Email. hoffpaul@aol.com
Catherine Sweetser. SBN271142
Email. catherine.sdshhh@gmail.com
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Tel. (310) 396-0731
Fax. (310) 399-7040

Colleen M. Flynn, SBN 234281
Email. cflynnlaw@yahoo.com
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 9001 0
Tel. 213 252-9444
Fax. 213 252-0091

Matthew Strugar, SBN 232951
Email. matthewstrugar@gmail.com
LAW OFFICE OF MATTHEW STRUGAR
2108 Cove Avenue
Los Angeles, California 90039
Tel: 323 696-2299

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 19, 2019, at 8:30 a.m., in Courtroom 10B of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court for leave to present claims of alleged general damages on a classwide basis at trial of the corresponding claims for liability.

In connection with this motion, and the Court's September 24, 2018 Scheduling Order, Plaintiffs also submit a trial plan for general damages and for statutory damages under Civil Code §52.1.

Plaintiffs met and conferred with Defendants regarding this motion on October 3, 2018. The parties were unable to agree on classwide treatment of general damages or on how statutory damages would be handled.

DATED: November 5, 2018      Respectfully Submitted,

KAYE, MCLANE, BEDNARSKI & LITT
LAW OFFICES OF CAROL SOBEL
SCHOENBRON, DESIMONE, ET AL.
LAW OFFICE OF COLLEEN FLYNN
LAW OFFICE OF MATTHEW STUGAR

By:__/s/ Barrett S. Litt_____
      Barrett S. Litt

By:__/s/ Carol A. Sobel_____
      Carol A. Sobel
Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................1

II.     GENERAL NON-INDIVIDUALIZED DAMAGES ARE AVAILABLE IN
        CIVIL RIGHTS CASES, INCLUDING CLASS ACTIONS, LIKE THIS.
        ....................................................................................................................2

III.    THE PROCEDURE COURTS HAVE USED FOR PRESENTATION OF
        CLASSWIDE GENERAL DAMAGES AND ITS APPLICATION TO
        GENERAL DAMAGES AND LIABILITY IN THIS CASE..................10

        A.  *THE APPROACH TAKEN IN OTHER CLASS ACTIONS CERTIFYING CLASSWIDE
            GENERAL DAMAGES.* ................................................................10

        B.  *PLAINTIFFS' PROPOSED TRIAL PLAN FOR CLASSWIDE GENERAL
            DAMAGES…………… ...........................................................13*

IV.     LIABILITY AND STATUTORY DAMAGES TRIAL PLAN..............16

        A.  *TRIAL PLAN FOR 6TH AND HOPE ARRESTS.* ...............................16

        B.  *TRIAL PLAN FOR FAILURE TO PROVIDE TIMELY OR RELEASES.* ...........18

        C.  *TRIAL PLAN FOR STATUTORY DAMAGES UNDER §52.1 REQUIRES JURY
            INSTRUCTIONS AND QUESTIONS POSED IN THE VERDICT FORM………19*

i

# <u>TABLE OF AUTHORITIES</u>

## Federal Cases

*Aichele v. City of Los Angeles*
    314 F.R.D. 478 (C.D. Cal. 2013 ....................................................................2, 10

*Amador v. Baca*
    299 F.R.D. 618 (C.D. Cal. 2014) ................................................................8, 9

*Augustin v. Jablonsky*
    819 F. Supp. 2d 153 (E.D.N.Y. 2011)........................................................11, 12

*Barnes v. Dist. Of Columbia*
    278 F.R.D. 14 (D.D.C. 2011) .......................................................*passim*

*Betances v. Fischer*
    304 F.R.D. 416 (S.D.N.Y. 2015)..........................................2, 5, 7, 11

*Carnegie v. Household Intern., Inc.*
    376 F.3d 656 (7th Cir. 2004).......................................................15, 16

*Cuviello v. City of Oakland*
    No. C 06-5517 MHP, 2010 WL 3063199 (N.D. Cal. Aug. 3, 2010),
    *aff'd in part,* 434 F. App'x 615 (9th Cir. 2011) ...................................19

*D.C. by & through Garter v. Cty. of San Diego*
    2017 WL 5177028 (S.D. Cal. Nov. 7, 2017) ...................................8, 9

*Dellums v. Powell*
    566 F.2d 167 (D.C.Cir.1977) ................................................10, 11, 12

*Kerman v. City of New York*
    374 F.3d 93 (2d Cir. 2004)...........................................................*passim*

*Lambert v. Nutraceutical Corp.*
    870 F.3d 1170 (9th Cir. 2017)........................................................10

*Memphis Community School District v. Stachura*
    477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ..............7, 9, 11

*Raysor v. Port Authority of New York and New Jersey*
    768 F.2d 34 (2nd Cir. 1985) ..............................................................3

ii

*Rodriguez v. City of Los Angeles*
  2014 WL 12515334 (C.D. Cal. Nov. 21, 2014)……………………………..7, 9

*Rodriguez v. City of Los Angeles*
  No. CV111135DMGJEMX, 2015 WL 13308598 (C.D. Cal. Aug. 11,
  2015) .................................................................................................... 8

*Roy v. Cty. of Los Angeles*
  No. CV1209012ABFFMX, 2018 WL 3436887 (C.D. Cal. July 11,
  2018) .................................................................................................. 10

*Schulz v. Lamb*
  591 F.2d 1268 (9th Cir. 1978) .............................................................. 5

**State Cases**

*Angelucci v. Century Supper Club*
  41 Cal. 4th 160, 158 P.3d 718 (2007) ................................................ 19

*Koire v. Metro Car Wash*
  (1985) 40 Cal.3d 24, 219 Cal.Rptr. 133, 707 P.2d 195 ...................... 19

**State Statutes**

Cal. Civ.Code § 52(h) ............................................................................ 19

Cal. Civil Code § 52(a) ........................................................................... 19

Cal. Civil Code § 52.1 ...................................................................... 19, 20

California Penal Code § 853.6 ................................................................ 18

**Constitutional Provisions**

First Amendment ..................................................................................... 4

**Other Authorities**

35 C.J.S. False Imprisonment § 83 .......................................................... 5

McCormick, *Handbook on the Law of Damages* § 107 (1935) ................ 4

*Prosser & Keeton* § 11 ............................................................................ 4

iii

## I.     INTRODUCTION

In its September 24, 2018 Scheduling Order, this Court ordered that the parties meet and confer to attempt to reach agreement on the following issues in connection with this motion: (i) Plaintiffs' request to present claims of alleged general damages on a classwide basis at the trial of the corresponding claims for liability; (ii) a proposed trial plan for the presentation of evidence by Plaintiffs on a classwide basis as to such alleged damages, and any responsive evidence by Defendants; and (iii) a proposed trial plan for the presentation of evidence by Plaintiffs on a classwide basis as to alleged liability and corresponding statutory damages, and any responsive evidence by Defendants.

The parties were unable to agree, and so Plaintiffs present this Memorandum which incorporates Plaintiffs' proposed trial plan for how damages would be tried. Regarding statutory damages, Plaintiffs have concluded that there is no separate evidence to be presented for statutory damages, and that issue is rather addressed by the combination of jury instructions and verdict form.

As the Court is aware, this action is certified for claims of the unlawful detention and arrest of approximately 170 individuals engaged in demonstrations at or near the intersection of 6th and Hope Streets on November 26, 2014. The police herded Plaintiffs as they marched, finally trapping and surrounding them, preventing them from moving forward on the sidewalk. Plaintiffs allege that Defendants unlawfully kettled the demonstrators (preventing them from readily being able to disperse even if they could hear a dispersal order), and detained and arrested them without first issuing a lawful order to disperse (i.e., any order to disperse, to the extent one was given, was not audible to most people, and Defendants failed to ensure it was both heard and that members of the crowd knew what was expected of them). Plaintiffs also allege that Defendants unlawfully denied the class members release on their own recognizance ("OR release") without an individual determination.

The Court has certified the following damages class: persons who were detained and arrested at 6th and Hope Streets on November 26, 2014, denied release on their own recognizance ("OR") but never prosecuted. To clarify the latter component, Plaintiffs' contention is that Plaintiffs were denied OR release for a period of time that was unjustified. They were eventually released OR but later than they should have been under any reasonable standards.

This memorandum first addresses the propriety of the use of general damages generally and in class actions. It then addresses how, in the context of classwide damages, courts have handled the presentation of evidence, and proposes a trial plan for presentation of generally damages evidence in this case. (That discussion overlaps how classwide liability evidence would be presented, so the two are addressed together.) Finally, Plaintiffs proposes how statutory damages would be handled, which Plaintiffs believe is not an issue of evidentiary presentation but of jury instructions and the verdict form.

## II.   GENERAL NON-INDIVIDUALIZED DAMAGES ARE AVAILABLE IN CIVIL RIGHTS CASES, INCLUDING CLASS ACTIONS, LIKE THIS.

Federal courts recognize that general damages are available in §1983 civil rights class actions, and several courts have certified general damages for class treatment. *See Betances v. Fischer*, 304 F.R.D. 416, 431-432 (S.D.N.Y. 2015) (in over-detention class action, general damages for false imprisonment did not turn on characteristics of individual class members and therefore could be calculated on a class-wide basis; explaining that the "the jury could determine the damages appropriate for each deprivation, based on the type of deprivation. For example, the jury could determine a particular amount of damages for each day of incarceration," which could be multiplied by the number of days each class member was incarcerated); *Aichele v. City of Los Angeles,* 314 F.R.D. 478, 496 (C.D. Cal. 2013) (in §1983 over-detention class action, general damages available for emotional distress and loss of dignity); *Barnes v. Dist. Of Columbia*, 278 F.R.D. 14, 20 (D.D.C.

2

2011) (in class action strip search case, allowing class wide trial for general damages for "the injury to human dignity that is presumed when a person is strip searched" but not for special damages, and noting that proof would be limited "to the details of … class members' … strip searches"); *Nassau County Strip Search Cases*, 742 F.Supp. 2d 304, 323 (E.D.N.Y. 2010) (in strip search class action, awarding general damages of $500 per search for affront to human dignity).

The concept of general damages has been most discussed in the Second Circuit. It flows from the principle that, "where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004). The underlying facts and conclusions in *Kerman* explain the distinction between general damages and emotional distress damages. The Second Circuit upheld a jury's determination that no damages were awarded for "relatively minor physical injuries (pain from being transported with his hands cuffed under him and subsequent soreness in his back and neck) and emotional or psychological injuries" from his arrest. *Kerman* 374 F.3d at 123. However, "[i]n contrast," where the jury found that the defendants used excessive force, and "since the jury's verdict that excessive force had been used plainly accepted the plaintiff's testimony that he had been beaten, we concluded that the plaintiff was entitled as a matter of law to some compensation." *Id.* at 124. "Similarly, *where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, we have held that the plaintiff is entitled to compensatory, not merely nominal, damages*." *Id.* (emphasis supplied).

Thus, in *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 38–39 (2nd Cir. 1985), a $16 award "was inadequate to compensate the plaintiff for, *inter alia,* 'the loss of time ... involved in a case of false arrest.'" *Kerman* 374

3

F.3d at 125 (quoting *Raysor*). The *Kermnan* court discussed traditional tort principles and the distinction between general and special damages for false imprisonment:

> "[C]ompensatory damages that may be awarded for false imprisonment fall into two categories: general damages and special damages. *See, e.g.,* McCormick, *Handbook on the Law of Damages* §107, at 375–77 (1935) ("*McCormick on Damages*"). General damage is a "harm of a sort inseparable from [the unlawful] restraint." *Id.* at 375. For "false imprisonment, upon pleading and proving merely the unlawful interference with his liberty, the plaintiff is entitled to 'general' damages for loss of time and humiliation or mental suffering." *Id.; see, e.g., Prosser & Keeton* §11, at 48 ("The plaintiff is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury to health. Since the injury is in large part a mental one, the plaintiff is entitled to damages for mental suffering, humiliation, and the like." (footnotes omitted)). Items of "special damage" commonly include "physical discomfort, shock, or injury to health," "loss of ... employment," and "injury to the plaintiff's reputation or credit," and must be specifically pleaded and proven. *McCormick on Damages* at 376. In contrast, " '[g]eneral' damage ... need not be specifically proved-it may be inferred from the circumstances of the arrest or imprisonment" and "would include at least the value of the time lost by the plaintiff during the period of detention." *Id.*
>
> "*The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty*."

*Kerman*, 374 F.3d at 125-26 (citing cases involving remittiturs to $7500 and $10,000 for respectively three and five hours of detention) (emphasis supplied).

In *Hazle v. Crofoot*, the Ninth Circuit addressed the question of damages in a case where the plaintiff sued his parole agent and other state officials for violating his First Amendment rights when they revoked his parole and sent him back to prison for refusing to participate in a religion-based drug treatment program. 727 F.3d 983 (9th Cir. 2013). The Court approvingly quoted *Kerman* for the proposition that "where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some actual injury to plaintiff, the plaintiff is entitled to an

4

award of compensatory damages as a matter of law" and that this rule regarding compensatory damages "applied with particular force to claims for loss of liberty." *Hazle* at 993 (quoting *Kerman* at 124). The *Hazle* court noted that this holding was "consistent with decisions by other circuits rejecting awards of merely nominal damages for unlawful conduct resulting in the loss of liberty." *Id. See also Schulz v. Lamb*, 591 F.2d 1268, 1272 (9th Cir. 1978) ("The award of token damages of only $1.00 was also in error. Arrest, handcuffing, transportation to jail, processing and incarceration for some four-and-one-half hours in a lockup call for some compensation for embarrassment, humiliation and inconvenience to a 27-year-old college graduate never before arrested, even if testimony as to long-lasting mental effects be entirely discounted.").

Corpus Juris Secondum summarizes the law on entitlement to damages for loss of freedom as follows:

> "a plaintiff … is entitled to compensatory damages for the loss of liberty, which is compensable as general damages in an unlawful imprisonment case, including compensation for the loss of time, sense of loss of freedom, which such a plaintiff is entitled to without the need for proof of amount. Such damages are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering."

35 C.J.S. False Imprisonment § 83.

*Kerman* and *Hazle* are not class actions, but the indication that a plaintiff who has suffered a loss of liberty "is *entitled* to an award of compensatory damages as a matter of law" (emphasis supplied) necessarily leads to the conclusion that classwide general damages for the damages inherent in any loss of liberty are available. The class actions that have allowed such damages have fallen into two general categories – loss of liberty (generally some form of unlawful arrest or detention) and loss of human dignity (used in strip search cases).

*Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015) was a class action in which Plaintiffs sought class certification for a claim challenging the

administrative imposition of post-release supervision ("PRS") by the New York State Department of Correctional Services ("DOCS"). DOCS imposed PRS on convicted felons, either before or as they were released from prison; the Department of Parole ("DOP") then enforced those terms. The Second Circuit had previously found the system unconstitutional, and Plaintiffs claimed that in the years following that decision, state officials subjected them to various unlawful conditions and custody by continuing to impose the terms of PRS that had been declared unlawful. In certifying a 23(b)(3) damages class, the Court summarized the availability of general damages as follows:

> This case involves both general damages, which may be calculated on a class-wide basis, as well as special damages, which require individual determinations. The Second Circuit has discussed in detail the types of damages that may be awarded for the loss of liberty in the context of false imprisonment. The court noted that "[t]he damages recoverable for the loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering...." General damages for the loss of liberty "'need not be specifically proved—it may be inferred from the circumstances of the arrest or imprisonment' and 'would include at least the value of the time lost by the plaintiff during the period of detention.'" Thus, these damages do not turn on any individual characteristics of any class members.
>
> This logic was extended to the harm suffered by a class of plaintiffs subjected to strip searches. There, the court concluded that "it [could] not be disputed that the violation at issue—the strip search—resulted in some injury to the class members." The court therefore held that "[a]t the very least, class members are entitled to general damages." Because the "class members were aggrieved by a single, admittedly unlawful policy and there is a strong commonality between the strip search violation and the harm[,] [t]here is no reason that a jury ... could not determine an amount of general damages awardable to each member of the class."
>
> Here, the injuries resulting from the defendants' enforcement of administratively-imposed PRS are not uniform—there are several distinct categories, all of which involve a loss of liberty. For those plaintiffs who were incarcerated based solely on a violation of administratively-imposed PRS, a jury may find that general damages for the loss of liberty inherent in false imprisonment are warranted, and may be calculated on a class-wide basis.

> Presumed damages may also be calculated for less severe liberty restrictions such as curfews and travel restrictions, also on a class-wide basis. Defendants are in possession of databases that identify each restriction that was placed on each class member. The jury can determine the damages appropriate for each deprivation, based on the type of deprivation. For example, the jury could determine a particular amount of damages for each day of incarceration. This amount could then be multiplied by the number of days each class member was incarcerated.

*Id.* at 431–32 (citing and quoting, *inter alia, In re Nassau Cnty. Strip Search Cases,* 2008 WL 850268, at *3–7 (E.D.N.Y. Mar. 27, 2008) (strip searches) and *Barnes v. District of Columbia,* 278 F.R.D. 14, 21 (D.D.C.2011) (assigning damages using a matrix based on the length of overdetention)).

Notably, *Betances* distinguished which of the damages qualified as general damages versus presumed damages. It found that classwide general damages were available "for the loss of liberty inherent in false imprisonment" and classwide presumed damages were available "for less severe liberty restrictions such as curfews and travel restrictions." Here, the relevant damages are general damages for loss of liberty.

There is some confusion in the case law as to whether "general damages" and "presumed damages" are distinct. In *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)), the Court overturned an award based on an instruction that damages may be awarded for the abstract value or importance of a constitutional right. However, "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate," *id.,* 477 U.S. at 310–11, 106 S.Ct. 2537, 91 L.Ed.2d 249, and "presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure," *id.* at 311, 106 S.Ct. 2537.

Some cases have described general or presumed damages to include emotional distress or pain and suffering. *See, e.g., Rodriguez v. City of Los Angeles*, 2014 WL

12515334, at *6–7 (C.D. Cal. Nov. 21, 2014) (in §1983 class action, general damages available for pain, suffering, emotional distress and loss of dignity) (citing *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086-1087 (9th Cir. 2009) (compensatory damages may be awarded for humiliation and pain and suffering even where the plaintiff did not submit evidence of economic loss or mental or physical symptoms)); *Rodriguez v. City of Los Angeles*, No. CV111135DMGJEMX, 2015 WL 13308598, at *11-12 (C.D. Cal. Aug. 11, 2015). To avoid any issue regarding whether Plaintiffs' claim for classwide damages includes individualized emotional distress or pain and suffering, we want to be clear that we seek classwide general damages for loss of liberty not based on individual experience but the common experience of class members of being unlawfully arrested and held without timely OR release.

Thus, Plaintiffs use the term "general damages" to refer to the type of damages that are necessarily entailed in an unlawful loss of liberty. Whatever the applicability of presumed damages may be to situations where the violation is "difficult to establish," Plaintiffs distinguish such "difficult to establish" presumed damages from the "general damages" for loss of liberty here. Regardless of when presumed damages for a difficult to measure injury are available, general damages are available for loss of liberty, as *Kerman* and *Hazle* establish. In this case, Plaintiffs are seeking general damages for loss of liberty, not presumed damages for a difficult to measure injury.

*Amador v. Baca*, 299 F.R.D. 618, 630–35 (C.D. Cal. 2014) and *D.C. by & through Garter v. Cty. of San Diego,* 2017 WL 5177028, at *14-16 (S.D. Cal. Nov. 7, 2017) (following *Amador*) may be cited by Defendants as examples of cases rejecting presumed damages. Neither of these cases are apposite because neither involved claims for "loss of liberty," which the Ninth Circuit expressly acknowledged as the basis for non-individualized damages in *Hazle* (quoting *Kerman*), and neither addressed the potential differences between general and presumed damages. In

addition, *Amador* (on which *Garter* relied) is not persuasive (1) because it distinguishes *Hazle* without addressing the fundamental reasoning behind *Hazle*; (2) it recognized that *Hazle* cited *Kerman* favorably but did not adequately explain why *Kerman* should not be adhered to; and (3) it dismissed general damages by conflating them with the presumed damages at issue in *Stachura*.

Recently, Judge Birotte in this District found general damages were available in a class action against the Los Angeles County Sheriff's Department for holding people entitled to release from custody on ICE holds (similar to the loss of liberty claim here except that the claim here also includes unlawfully arrests). Defendants had moved to decertify the class on the ground that classwide damages were not available. The Court rejected that contention and distinguished the *Amador* case discussed in Fn. 1:

> [T]he County relies upon a Central District of California case, *Amador v. Baca*, 299 F.R.D. 618, 630–35 (C.D. Cal. 2014), to argue that general and presumed damages are not available here. (Reply at 10–12.) Much of the County's discussion, however, focuses on presumed damages, not general damages. (*See, e.g.*, Reply at 10 ("Judge Wilson rejected the concept that presumed damages have any application in §1983 cases where, as here, an individual's damages are not difficult to establish."), 11 ("Judge Wilson's analysis continued with a review of Supreme Court authorities relevant to the issue of presumed damages, noting that presumed damages in the context of common law defamation have been labeled 'an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss.' "). While the discussion in *Amador* to which the County refers discusses "general damages," the conflation of presumed damages and general damages here is not appropriate, as they are distinct concepts and categories of damages. (Reply at 11–12.)
>
> Other district court decisions from this district recognize presumed and general damages as distinct categories of damages, and have found that general damages may be available on a class-wide basis in §1983 actions based upon unlawful detention. *See Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG (JEMx), 2014 WL 12515334, at *1, *5–7 (C.D. Cal. Nov. 21, 2014) (denying the defendants' motion for class decertification and recognizing that general damages, distinct from presumed damages, may be available on a class-wide basis in a §1983 action based on unlawful detentions); *see*

*also Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013) (certifying § 1983 over-detention class action and finding that general damages are available on a class-wide basis). The Court agrees with these decisions and finds that general damages are available on a class-wide basis here.

"At this stage, the question is only whether [Plaintiffs have] presented a workable method [for calculating class-wide damages]." We conclude that [they] have." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1184 (9th Cir. 2017). As such, the Court rejects the County's arguments that decertification is warranted here based on damages issues.

*Roy v. Cty. of Los Angeles*, No. CV1209012ABFFMX, 2018 WL 3436887, at *3–4 (C.D. Cal. July 11, 2018).

## III. THE PROCEDURE COURTS HAVE USED FOR PRESENTATION OF CLASSWIDE GENERAL DAMAGES AND ITS APPLICATION TO GENERAL DAMAGES AND LIABILITY IN THIS CASE.

### A. THE APPROACH TAKEN IN OTHER CLASS ACTIONS CERTIFYING CLASSWIDE GENERAL DAMAGES.

Under the general damages approach proposed here, damages are awarded based on the conditions to which Plaintiffs were subject independent of emotional distress/pain and suffering damages, without regard to individual factors. The most comprehensive discussion is in *Barnes v. D.C.*, 278 F.R.D. 14, 20-21 (D.D.C. 2011), where the Court addressed how general damages would be tried for the previously certified strip search and overdetention classes.

*Barnes* adopted what it described as the "*Dellums* method" (referring to of *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir.1977)). In *Dellums*, the D.C. Circuit upheld an award of classwide damages based on the jury's determination of a matrix of values for the lengths of an unlawful arrest and detention. In that case, where people were held for up to several days, the Court used 12 hour increment or less in detention, 12 to 24 hours in detention, 24 to 48 hours of detention, and 48 to 72 hours

of detention.[1] The *Barnes* Court described the available general damages as compensation for "the injury to human dignity from an unlawful strip search or overdetention, that is presumed when a person is strip searched or overdetained" (citing *Augustin v. Jablonsky*, 819 F. Supp. 2d 153 (E.D.N.Y. 2011). *Augustin* is a strip search class action in which general damages were awarded on a classwide basis; it found that "an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to its cause and the resulting general, or presumed—as distinct from the special—damages sustained." *Id*. at 157.

As we noted previously, opinions have tended to conflate general and presumed damages, and these two opinions reflect that to the extent they use general and presumed damages interchangeably. We are using the term general damages here to refer to loss of liberty damages. While it is not necessary to resolve the distinction in this case, Plaintiffs suggest a potentially important distinction between them. General damages are usually connected with actions that in themselves necessarily cause tangible harm – such as an unlawful arrest or detention or unlawful strip search; such damages were well recognized at common law. Presumed damages are usually referred to in the context of less tangible harms (*e.g,,* voting (*Stachura*) or travel (*Betances*)). To reiterate, Plaintiffs seek a classwide award of general damages as compensation for loss of liberty or freedom.

We cite *Barnes* as the most informative decision about the process of trying classwide general damages because of its detailed discussion of how the trial process

---

[1] The Defendants in *Dellums* did not challenge the class certification generally on commonality grounds without separately challenging the damages matrix. The Court rejected Defendant's contention that the case was same as a mass accident, that false arrest was not subject to class treatment and that "determination of damages in this case requires individualization." 566 F.2d at 189, fn. 56. There was not more extensive discussion, but the case is regularly cited as an early example of the methodology for classwide general damages in a loss of liberty case.

would go. The Court first determined that, "[i]n accordance with the *Dellums* method as well as the method used in *Augustin, id.* at 157–58, 2011 WL 4953982, at *2, the parties shall each present the testimony of some members of the overdetention and strip-search classes, up to fifteen in total for each party." 278 F.R.D. at 20. Because the witnesses would be chosen by each party, and not through a statistically reliable random sample, the Court recognized that it would "not accurately represent the varying circumstances of the absent class members or the varying impacts of the District's conduct upon them." Id. at 20–21. To avoid the parties' cherry-picking witnesses, resulting in a trial using the "15 best and 15 worst cases," the Court "place[d] restrictions on the types of testimony that either party may elicit from the witnesses" and set the following parameters:

> [T]estimony shall be limited solely to the details of such class members' overdetentions and strip searches—*e.g.,* when they were supposed to be released, whether they had been ordered released by a court or whether their sentences had expired, how long they were overdetained, how the strip search was conducted, and so forth. No testimony will be permitted that could lead the jury's valuation astray by causing it to believe that the witness' story was typical of the stories of the absent class members. Therefore, the Court will not permit testimony concerning class members' backgrounds—*e.g.,* their occupations, education levels, criminal histories, family situations, and similar, personal facts. Because the chosen witnesses will not be selected at random, such testimony would mislead the jury by causing it to project these witnesses' backgrounds onto the class as a whole, even though the backgrounds of the absent class members are likely to differ substantially from those of the witnesses selected by the parties. For the same reason, the Court will not permit testimony concerning the impact of these overdetentions or strip searches on these testifying class members. …. Nor will expert testimony concerning the emotional or other impact of overdetentions or strip searches on class members be permitted, as the jury is perfectly capable of assessing that generalized injury themselves based on the class members' testimony, the parties' arguments, and their own experiences. As to the strip searches, the jury will determine a dollar value for each strip search; for overdetentions, the jury will assign damages using a matrix based upon the length of overdetentions—*i.e.,* 0–12 hours, 0–24 hours, 0–36 hours, and so forth. To assist the jury in assigning values, the Court will allow expert testimony that is limited to

explaining the range of general damages that have been awarded by judges or juries in similar cases.

278 F.R.D. at 20-21.[2]

**B.   PLAINTIFFS' PROPOSED TRIAL PLAN FOR CLASSWIDE GENERAL DAMAGES.**

Plaintiffs propose a modified version of the *Barnes* approach adapted to the circumstances here. Because the liability issues and the damages issues overlap, we describe the class member testimony for both:

1.   Each side may designate up to seven (7) class members to testify.

2.   That testimony may include addressing the following non-exhaustive list: a) the crowd size, b) the audibility of any police announcements, c) the witness' location at relevant times (including location during any police announcements, location during any crowd  movement in response, location at the time of or in response to any police activity or announcements, location at the time of detention or arrest), d) observations of the police's overall activity, including clarity of instruction and police guidance in moving the crowd (not to include individualized actions not aimed at the crowd as a whole), e) the arrest process, f) the transport process after arrest, g) the booking process, h) the release process, i) the relevant dates and times of events, j) observations of others in the same situation, k) the length of time from arrest to release, and k) other similar information relevant to the circumstances of the assembly, police activity, and arrest and release.

---

[2] Mr. Litt, one of the counsel in this case, was also one of the counsel in *Barnes*. Because the case settled after the liability trial on the one outstanding overdetention subclass, there is no record of trial proceedings implementing this methodology. In *Jablonski*, there was a court trial on general damages after a grant of summary judgment on liability.

3. Such witnesses may not address a) any specialized circumstances from their past that affected their experience, b) how the experience made them feel, c) special economic damages, d) pain and suffering or emotional distress, or e) any other similar individualized information.

4. Similarly, neither side may elicit information regarding the witness' prior experiences or backgrounds—*e.g.,* their occupations, education levels, criminal histories, family situations, medical conditions or similar, personal facts.

With these parameters, it is likely that each class member's damages testimony will be relatively short (likely under an hour).

The jury would award damages for an unlawful arrest (independent of the time held) and would additionally award compensation for time spent in custody after the time in which Plaintiffs should have been released OR (which Plaintiffs contend is no more than two hours based on hours in custody).

Plaintiffs are still assessing whether to use two groupings of hours to fix damages (released within 12 hours or after 12 hours of custody), but will likely seek a single amount for all class members because all releases occurred within 18-20 hours. The amount of time in custody would be derived from police records, based on the time of arrest and release reflected in those records. This should be something that can be stipulated to. Alternatively, Plaintiffs would present a summary witness under FRE § 1006 showing the number and identity of class members and the length of time in custody.

If the Court permitted it, Plaintiffs would also present expert testimony "explaining the range of general damages that have been awarded by judges or juries in similar cases." *Barnes*, 278 F.R.D. at 21. Because most class actions settle, and class settlements by definition do not account for individualized emotional distress or other damages, Plaintiffs propose to include such amounts in their expert testimony, along with expert testimony that settlements are compromises and therefore usually

14

understate the trial value of a claim. Plaintiffs have attached the expert report of Michael Avery to advise the Court of the nature of such testimony. Plaintiffs want to emphasize that the viability of classwide general damages is independent of whether the Court concludes that such expert testimony should be admitted. General damages could be tried without such testimony, and the jury would determine the appropriate amount of damages without it.

Under this approach, classwide general damages would be determined uniformly for each class member. Although it is likely that most class members would not pursue individualized damages, those class members who chose to do so would be entitled to pursue them. At that stage, the class could be decertified, and class members could pursue their own individual damages if they so chose, or other mechanisms for resolving such damages claims could be developed. *See, e.g., Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include '(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.'") (quoting *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001)).[3]

---

[3] Although Plaintiffs are not aware of cases analyzing the issue through this prism, it is logical that, at least for those class members who were willing to forego special damages, and thereby limit their damages proof to the general circumstances of their arrest and detention, this procedure is  as much in the Defendants' interest as it is in Plaintiffs', since it would restrict damages determinations to cases where general damages were rejected by the class member.

1    In the event that the Court denies the motion to try classwide general damages,

2  Plaintiffs propose that the class liability and statutory damages case be tried. If

3  liability is found, Plaintiffs propose that the issue of further steps to address damages

4  be reserved until that time. As *Carnegie* indicates, after a liability determination,

5  there are various possible approaches, which can best be determined at the time.

6  There certainly would be the opportunity to revisit settlement at that time. In the

7  absence of settlement, the parties potentially could agree on streamlined approaches

8  to individual damages determinations.

9  **IV.    LIABILITY AND STATUTORY DAMAGES TRIAL PLAN.**

10    The Court has requested a trial plan for liability, in addition to one for general

11  damages outlined above. *See* Doc. 108 (Plaintiffs shall "file a proposed trial plan for

12  the presentation of evidence on a classwide basis as to alleged liability and

13  corresponding statutory damages."). Below, we briefly summarize the key liability

14  facts that form the basis of our claims and how they would be presented, and then

15  address how statutory damages would be handled.

16    **A.    TRIAL PLAN FOR 6TH AND HOPE ARRESTS.**

17    Demonstrations protesting the failure to indict Michael Brown's killer (in

18  Ferguson, Mo.) were held around the country, including in Los Angeles on Nov. 24,

19  2014. Although LAPD had deployed plain clothes officers as "shadow units" with the

20  demonstrators, it had no report of any planned unlawful activity. LAPD formed a line

21  at 7th and Flower blocking the protest from proceeding down Flower toward the

22  Staples Center. Capt. Bert of LAPD has testified that he ordered that the protest be

23  dispersed due to protestors in the street and crossing against a red light (which

24  Plaintiffs challenge as a lawful basis for a dispersal order). The stated rationale for

25  the dispersal order was that demonstrators were becoming very loud and scaring

26  pedestrians.

27    The dispersal order was issued using a PA system on a Suburban parked on 7th,

28  approximately 50-75 feet back from the intersection. According to LAPD, it was

1  reiterated approximately two minutes later through the same sound system.
2  According to Lt. Pratt, protestors were directed to go north on Hope Street while,
3  according to Capt. Bert, they were told to go north on Flower, stay on the sidewalks
4  and had five minutes to disperse.  Capt. Bert has admitted that alternative routes were
5  not given to the demonstrators at the time.

6      The news video footage shows that the order was audible if you were very
7  close to the PA system, but does not show protestors in that immediate area. A
8  second set of video clips was taken close to where a large group of demonstrators
9  were present, and they are inaudible. Based on police testimony that the large group
10  of protestors were at the next intersection, the announcement was not audible to the
11  concentration of protestors.

12      Capt. Bert, by his own description, took some officers and set up a scrimmage
13  line at 5th and Flower, blocking the protestors from going North on Flower (even
14  though that was the route he directed on the PA system announcement). There is no
15  evidence that the police set up blocking perimeters along the east or west sides of the
16  routes they wanted the protestors to go as a means of directing protestors where to
17  walk. Capt. Bert has testified that, when he saw protestors off the sidewalk after the
18  dispersal order, he blocked egress at various intersections – thereby preventing
19  protestors from leaving – and ultimately pushed them into a cul-de-sac with no egress
20  at 6th and Hope, resulting in a completely chaotic situation and the arrests of class
21  members.

22      Based on the foregoing facts, Plaintiffs contend, *inter alia*, that the arrests were
23  unlawful because a) the dispersal order was not adequately communicated or audible
24  to the crowd, b) clear directions were not provided regarding how to disperse, c) no
25  exit routes were established or communicated to the protestors and, to the extent they
26  were, LAPD's actions contradicted them, d) LAPD's actions caused confusion
27  among the protestors regarding what they were supposed to do, and e) LAPD
28  ultimately forced protestors into an area from which they could not exit, and then

1  arrested them. All of this occurred in violation of established law, established POST
2  standard and established LAPD crowd dispersal policy.

3      Plaintiffs will submit class member testimony, video and LAPD testimony and
4  reports to establish these facts. They will also submit LAPD documents and policies.
5  Finally, they will submit expert police practices and audio standards testimony. If
6  classwide damages are being tried, Plaintiffs' presentation of class member testimony
7  would combine the description of events with the permitted damages testimony
8  previously outlined.

9      **B.    TRIAL PLAN FOR FAILURE TO PROVIDE TIMELY OR RELEASES.**

10     Plaintiffs' second claim is that the custodial detention of the demonstrators
11  arrested at 6th & Hope on November 24, 2014 for up to approximately 18-20 hours
12  did not comport with the requirements of California Penal Code sec. 853.6. That code
13  section provides that a misdemeanor arrestee be cited and released in the field, or
14  immediately after booking. Here, the class members were all held for several hours,
15  as much as 20 hours.

16     The protestors could and should have been processed in the field. The
17  alternative process that was available at the time is illustrated by the procedures at
18  Beverly & Alvarado on November 28, 2014.  There, the LAPD had the capacity to
19  run approximately forty people for wants and warrants in the field, document the
20  contact on video, search the people and then give them a dispersal order, all in less
21  than an hour and a half. The handling of the Beverly & Alvarado demonstrators on
22  November 28, 2014 demonstrates that it was completely feasible to have handled this
23  without any arrests, even if charges were going to be filed. In fact, with rare
24  exceptions, class members were booked and never charged with any crime. It was
25  apparent to LAPD based on their handling of such cases in the past that the actual
26  filing of charges was, at a minimum, highly unlikely.

27     In any event, even if arrests were appropriate, it should not take nearly a day to
28  book 140 misdemeanor arrestees. Based on prior experience, LAPD can process

booking and OR release in under an hour. Here, arrestees were held on buses for some hours and then several hours passed before their release. Although Defendants dispute it, the available evidence indicates that this was an intentional, punitive act.

LAPD Lieutenant Andy Neiman was quoted in the media as saying all demonstrators who were unable to post bail would be held until they were able to appear in court early the following week. LAPD Commander Andy Smith was quoted in news media that, while LAPD would typically release individuals with similar charges OR, "In this case, because these people are part of a protest that is continuing, they will not be released on their own recognizance."

Plaintiffs will present class member, LAPD and expert testimony on this issue, as well as documents.

## C. TRIAL PLAN FOR STATUTORY DAMAGES UNDER §52.1 REQUIRES ONLY JURY INSTRUCTIONS AND QUESTIONS POSED IN THE VERDICT FORM

Under Civil Code §52.1, statutory or actual damages (but not civil penalties) provided by Civil Code §52(a) are available to a prevailing plaintiff. *Cuviello v. City of Oakland*, No. C 06-5517 MHP, 2010 WL 3063199, at *4–6 (N.D. Cal. Aug. 3, 2010), *aff'd in part,* 434 F. App'x 615 (9th Cir. 2011). "Section 52 damages include actual damages, treble damages and exemplary damages. Moreover, actual damages include both special damages and general damages. Cal. Civ.Code §52(h)." *Id*. The statute 'provides for minimum statutory damages ... for *every* violation of section 51, *regardless* of the plaintiff's actual damages.'" *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 174, 158 P.3d 718, 726 (2007) (quoting *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33, 219 Cal.Rptr. 133, 707 P.2d 195). To obtain the minimum statutory damages of $4,000, it is not necessary to prove harm and causation. *See Koire,* 40 Cal.3d at 33.

Since the statute contains neither defining characteristics nor any requirement or standards for awarding up to treble damages, their award is necessarily

discretionary. Since treble damages is a discretionary determination by the trier of fact, it too does not present evidentiary issues and is an issue for jury instructions and the verdict form.

The jury would be instructed that, for each violation of §52.1, it must award each class member a minimum of the statutory damages of $4000, and has the discretion to award up to three times that amount without proof of actual damages. The verdict form would pose questions determining the jury's findings in that regard.

DATED: November 5, 2018          Respectfully Submitted,

                                 KAYE, MCLANE, BEDNARSKI & LITT, LLP
                                 LAW OFFICES OF CAROL SOBEL
                                 SCHOENBRON, DESIMONE, ET AL.
                                 LAW OFFICE OF COLLEEN FLYNN
                                 LAW OFFICE OF MATTHEW STUGAR

                                 By:__/s/ Barrett S. Litt_____
                                         Barrett S. Litt


                                 By:__/s/ Carol A. Sobel_____
                                         Carol A. Sobel
                                 Attorneys for Plaintiff