**Exhibit A Pt. 1**

YOLANDA HUANG, SBN 104543
P.O. Box 5475
Berkeley, CA 94705
Tel: (510) 329-2140/ Fax: (510) 580-9410

DAN SIEGEL, SBN 56400
ANNE WEILLS, SBN 139845
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA 94612
Tel: (510) 839-1200/ Fax:  (510) 444-6698

Attorneys for Plaintiffs
STEVEN ANGELL, *et al.* and on
Behalf of the proposed class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE AKA LOUISE COLES, CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, and LINDSAY WEBER, individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>CITY OF OAKLAND, COUNTY OF ALAMEDA, HOWARD JORDAN, JEFFREY ISRAEL, ERIC BRESHEARS, RON YELDER, DARREN ALLISON, STEVE TULL, EDWARD TRACEY, ANTHONY RACHAL, SEAN WHENT, GREGORY J. AHERN, BRETT KETELES, CARLA KENNEDY, DAVID BRADY, GREGORY L. MORGADO, KERRY JACKSON, DOES 1-250,<br><br>     Defendants. | Case No. C13-0190 NC<br><br>PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date: April 1, 2015<br>Time: 1 p.m.<br>Courtroom:  A, 15th Floor |

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 1, 2015 at 1 p.m. or as soon thereafter as the matter may be heard before the Honorable Nathanael M. Cousins, plaintiffs by and through their attorneys, will respectfully move the Court for Final Approval of the negotiated Class action settlement. This motion is supported by the Declarations of Yolanda Huang and class plaintiffs.

Dated: February 13, 2015                    Respectfully submitted,

                                            YOLANDA HUANG
                                            DAN SIEGEL



                                    By: _____/s/_____
                                            YOLANDA HUANG
                                            Attorneys for Plaintiffs
                                            Steven Angell, *et al.*


## STATEMENT OF FACTS

The Court, on January 5, 2015, issued its Order Granting Plaintiffs' Motion for Class Certification and Joint Application for Preliminary Approval of Class Action Settlement. Approval of the incentive awards to plaintiffs and the attorneys' fees was reserved.

Prior to the Order of January 5, 2015, plaintiffs and class counsels established a website and through the website, requested that potential class members update their mailing addresses. Class counsel received approximately 130 emails and phone calls with updated addresses for class members. Class Notices (a copy of which is attached as Exhibit A) were printed and mailed first class via United States Postal Service on January 14, 2015 to 351 class members. This left two class members for whom there were no addresses. Every envelope was labeled "J28 Class Action Notice" so that class members would not discard these as junk mail. One of the two individuals without addresses was personally contacted and informed of the class action settlement.

As of February 12, 2015, 33 notices were returned as undeliverable by the United States Postal Service ("USPS").  Of these 33, class counsels obtained phone numbers for 12, and all 12 were called and informed of the class action lawsuit.  Of the remaining 21, we obtained correct addresses and remailed the class notice to the corrected address for 8.  Of the remaining 13, plaintiffs are in the process of searching for these 13 on social media, and leaving messages.

As of February 12, 2015, 100 completed claim forms have been received.  Of these 100, 92 have been verified as those of class members, and 8 claim forms are from individuals whose names are not included in the arrest information.  Those eight (8) individuals have been contacted and requested to submit additional information or documentation to verify their membership in the class.  One has responded with a copy of her arrest citation and her name was added to the class list.  In addition to the 100 claim forms received, one class member has responded that he is not interested in the settlement and most likely will not submit a claim.

In the interim, a Facebook page, and a class member list serve have been established.  On February 11, 2015, a group email was sent to all class members for whom we have emails, reminding them of the filing deadlines, urging them to submit their paperwork and to tell friends of the negotiated class action settlement.

Class counsels have received no exclusion forms, nor any criticism or complaints about any of the terms and conditions of the negotiated settlement.  Feedback has been overwhelmingly positive except for some consternation over the protracted timeline for final approval and disbursement of checks.

Class counsels have received on average 6-7 emails and phone contacts per day from class members with a variety of questions or updated information such as corrections to the spelling or order of their names.  Each communication which is a question or request for information has received an individual response.

Starting  February 21, 2015, class plaintiffs and counsels will phone or direct contact all class members who have not submitted claim forms.

Both named plaintiffs and class counsels have been committed and diligent and pro-active in the administration of the claims. Plaintiffs and class counsels have expended significant time and focus to try and insure that every possible class member is notified of the settlement, and that all who do not wish to opt out, actually submit a claim.

For these reasons, plaintiffs and class counsels request that the court approve the negotiated incentive payments and the attorneys fees awards.

Dated: February 13, 2015          YOLANDA HUANG, ESQ.


                                  By:   /s/   Yolanda Huang
                                        YOLANDA HUANG, ESQ.
                                        Attorneys for Plaintiffs


DATED: February 13, 2015          SIEGEL & YEE


                                  By:   /s/        Dan Siegel
                                        DAN SIEGEL, ESQ.
                                        Attorneys for Plaintiffs

DECLARATION OF YOLANDA HUANG

1. I , YOLANDA HUANG, declare.

2. Class notices were printed and mailed to 351 class members on January 14, 2015. A true and correct copy of the printed class notice is attached as Exhibit A. Each notice was sent in an envelope that was labeled "J28 Class Action Notice" so that recipients would realize this was not junk mail.

3. Of the 351 notices mailed, as of February 12, 2015, only 33 or less than 10% have been returned by the United States Post Office as undeliverable due to the wrong address. This small percentage of returns is due to the fact that prior to the mailing, class counsels expended significant effort in outreach to class members for updated addresses. A total of 130 responses with updated addresses were received.

4. Of the 33 returned notices, we have been successful in obtaining updated addresses for 8, and those notices were remailed. For 12 of the remaining 25, we located phone numbers and either left voice mail messages, or communicated directly with the class member to inform them of the class action settlement and directed them to the website for the class notice and all applicable forms. For the remaining 13, we have searched social media and contacted all those with a social media presence. Of the two class members who were not mailed class notices because their addresses was listed as "transient", we have been successful in personally contacting one of these individuals and informing her of the class action settlement, and how to find the notice and forms. We are still attempting to locate the other individual arrested without an address.

5. As of February 12, 2015, we have received 100 claim forms. The claim forms were mailed in, emailed in, transmitted via facsimile, or hand delivered. Of the 100 claim forms received, 92 have been verified as valid by comparison to both the master list and to the name and date of birth on the Oakland Police's Consolidated Arrest Report. Eight of the 100 are in neither arrest data bank, and they have been requested to provide additional documentation of their presence at the mass arrest

of January 28 2012.   One of the 8 has provided proof of arrest at the time and place of this lawsuit, and she has been added to the class membership list.

6. I spend a minimum of half hour a day fielding questions and inquiries.  While Claire Lacey, the paralegal responds to a majority of the communications, there are questions which are referred to this declarant.  For example, a class member had lengthy questions regarding the circumstances under which the settlement as outlined in the class notice could change without notice to class members and the theoretical rights of class members if the terms of the settlement changed without notice to the class.

7. A small handful of class members have made between 3 and 5 phone calls apiece, primarily inquiring when the checks would be available.  While the initial calls were fielded by Claire Lacey the paralegal, we have now developed a process that if the class members concerns are not satisfied after two conversations with the paralegal, additional calls are referred to class counsel for response.  The majority of these repeat calls were regarding their perception of unreasonable delay in issuing checks or requests for expedited disbursement of the settlement award.

8. This declarant has fielded a number of phone calls from class members who have had a name change either due to marriage or transgender choices, with regard to the type of paperwork required to confirm their new names.

9. This declarant has fielded inquiries from three class members who are overseas with questions regarding wiring or money transfers to overseas financial institutions or to the custody and care of family in the United States.

10. There have been questions regarding the exonerations and the difference between the pregnancy tests some were required to take versus the DNA sampling.

11. There have been daily communications with named plaintiffs such as discussions on over the type of communications which would be permissible over social media, inasmuch as there might be more than one individual with the same name registered on social media; or whether certain social media posts would violate any individuals' right to privacy, or attorney client privilege.

12. In all the communications with class members, we have not received a single query or complaint regarding the amount of the attorneys fees award, nor a single query or complaint regarding the incentive awards. All the responses to the settlement have been positive. Attached as Exhibit B is a true and correct copy of one email from a class member which expresses his positive sentiments regarding the class action settlement.

13. Class members have also provided positive feedback, that in the arrests some have experienced due to the protests sparked by the situation in Ferguson, OPD has in fact complied with the agreements to cite and release rather than to transport protesters to Santa Rita for formal booking and lengthy incarceration.

14. The Court in its Order of January 5, 2015 had a question regarding the breakdown of the services provided by a third party vendor who handled the claims administration. The breakdown is as follows:

Preparation of Mailing List (manual input of addresses from OPD & ACSO files), Design & Layout of Claims Notice, Printing of claims notice, Preparation mailing labels, Handling, Supplies: Envelopes & stamps                                                    $5,500

Responses to queries, estimated at 1 hr per day @ 70 days x $50/ hr =   $3,500

Investigation: Undeliverable class notices; locate correct addresses; contact unresponsive claimants                                                                                            $7,500

Processing & Verification of claim forms                                                $5,500

Updating addresses from claim forms (manual input)                            $2,500

Preparation of checks, handling & mailing                                           $1,250

Supplies (envelopes, postage & checks) @$2.50 per check =                $ 900

15. The Court also queried the difference between the attorneys fees listed in this declarant's December 3, 2014 Declaration and the October 8, 2014 Declaration. This is due to the fact that in preparation for the December 3, 2014 declaration, we reviewed the original attorneys fees included in the October 8 2014, and realized that due to a cut and paste error, there had been some double listings of time, so

those overcharges were eliminated for the December 3, 2014 declaration. Class counsels strove for an accurate tally of hours and time.

16. Anne Weills, while listed as an attorney in this case, did not participate in any substantial manner, so there no inclusion of her time. The other members of the Law Offices of Siegel & Yee who did work on this case are the paralegal Claire Lacey and Neil Satterlund. Claire Lacey in particular contributed substantial time to this case .

17. Ms. Lacey is currently responsible for oversight on the social media outreach to class members, having set up the Facebook page and attending to the daily review/monitoring for class member comments and responses. She is also responsible for the listserve for emails to entire class. In addition, numerous class members have responded with multiple submissions of claim forms. Some emailed them, and then followed with another copy via USPS, and then with phone calls to ask if their submissions were received. Her hours to date, are not included in the December, 2014 Declaration.

18. The costs for the outside vendors were included to provide the court with a comparison of the costs if outside vendors were used. The named plaintiffs and this declarant, in discussion, have agreed that it is a priority to contact as many of the class members as possible, and to use as broad an outreach to class members. And toward this end, the class plaintiffs believed that having it done by class counsel with the assistance of named plaintiffs would be a more effective method of actually informing as many class members as possible.

19. In the final tally, the amount of time expended by class counsels for the administration of the claims will exceed the figures from outside vendors due to the amount of time required to respond to the multitude of concerns and questions. While the paralegals have been very deft in responding, there are still questions that are referred to counsel due to the technical nature of the question. Therefore, even if the entire administration had been handed to a vendor, many of the questions raised by class members would still have to have been forwarded to class

counsels for an appropriate response. I believe that the negotiated attorneys fees is fair and reasonable, particularly given the successful level of outreach to class members, and the extensive amount of time devoted to the administration of the settlement thus far.

I make this declaration under penalty of perjury under the laws of the State of California, executed this 13th day in Berkeley, California.



           /s/ Yolanda Huang
           YOLANDA HUANG

## DECLARATION OF CLASS PLAINTIFFS

We, the named plaintiffs of this matter declare:

1. We request that the Court award the attorneys fees as negotiated.  We believe that the attorneys fees as negotiated are reasonable, fair and appropriate.  The class attorneys in this matter, Dan Siegel and Yolanda Huang, have expended considerable time, effort, and more importantly thought regarding this litigation.  They have been readily accessible to us, and prompt and responsive in all matters.  Furthermore, they have understood the concerns and issues of not just the legal issues, our concerns as plaintiffs but of the class, and many issues were resolved ahead of time because they anticipated problems and devised solutions rather than waited for problems to surface and then devise patches.

2. One such issue is with updating addresses of class members.  Rather than merely using the addresses on the arrest records, class counsels started social media outreach to class members in advance of the first mailing, so that we received a significant number of updated addresses.  As a result, the number of returned class mailings due to

Angell, et al. v. City of Oakland, et al.
Notice of Motion and Motion for Final Approval of Class Action Settlement

Page 9 of 11

insufficient addresses, or marked undeliverable, as less than 10% of the total mailings, is considerably lower than in other litigations or class actions where we were involved. Some of us have direct knowledge of other class action mailings, because some of us assisted in processing those mailings.

3. All of us participated in the very extensive and lengthy settlement negotiations, and while the award itself is one part, and perhaps one of the most visible portions of the settlement, equally important to us are the changes inn OPD's arrest policies for mass demonstrations and mass arrests. Many of us participated in the protests to the events in Ferguson, and the significance of the changes in the PD arrest policies, which cited and immediately released protesters, were apparent and greatly appreciated by us and those arrested. We believe that the efforts of our counsels contributed to that and is a factor which justifies the attorneys fees negotiated in the settlement.

4. In discussing the settlement terms with class members, none of us have heard any direct negative feedback from folks we know are class members regarding the terms of the settlement. On the contrary, everyone has been very favorable and are pleased that this settlement was achieved. The only negative feedback that any of us know about, is a single blog piece which criticized the total settlement amount of this case and the total settlement amounts of all the other occupy class action settlements, including the one from Davis where protesters were pepper sprayed in the face, as inadequate for "cop torture". However, none of us have heard directly any type of criticism from actual class members. Many class members thanked us for our hard work.

5. We also ask that the Court approve the incentive awards. There were quite a few meetings before the litigation was filed to discuss the pros and cons of this litigation and the demands this would take. Quite a few attendees at these meetings bowed out of being plaintiffs because of the time commitment. All of us have expended considerable time and effort in this litigation. Before accepting the settlement, we had meetings apart from counsels to discuss the terms of the settlement, and the relationship of the settlement and impact of the settlement on the community and the class. The terms negotiated were considered and reviewed, and often done in

consultation with class members who chose not to be plaintiffs. Therefore, we ask that you to confirm the incentive awards.

We make this declaration under penalty of perjury, executed under the laws of the State of California.

Dated: February 13, 2015

_____ /s/ Steven Angell _____
Steven Angell


_____ /s/ Miles Avery _____
Miles Avery


_____ /s/ Molly Batchelder _____
Molly Batchelder


_____ /s/ Louise Coles _____
Louise Coles


_____ /s/ Cicily Cooper _____
Cicily Cooper


_____ /s/ Shareef Elfiki _____
Shareef Elfiki


_____ /s/ Ted Hextor _____
Ted Hextor


_____ /s/ Lindsey Weber _____
Lindsey Weber

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

STEVEN ANGELL, and others,

              Plaintiffs,

      v.

CITY OF OAKLAND, and others,

              Defendants.

Case No. 13-cv-00190 NC

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. Nos. 62, 63, 70

    This case arises out of the mass detention and arrest of individuals during an "Occupy Oakland" march and protest on January 28, 2012. Before the Court are plaintiffs' unopposed motion for class certification and the parties' joint motion for preliminary approval of class action settlement. Dkt. Nos. 62, 63. The Court previously denied the motion for preliminary approval without prejudice due to several deficiencies in the proposed settlement agreement and class notice. Dkt. No. 68. After the parties submitted a revised settlement agreement and class notice, Dkt. Nos. 70-1 and 70-2, the Court held a preliminary approval hearing on December 17, 2014. No objectors appeared.

    Because the Court finds that the proposed class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court GRANTS plaintiffs' motion for class certification. Additionally, because the parties have made a

sufficient showing for the purposes of preliminary approval, the Court GRANTS their joint motion. However, because the revised proposed notice to the class continues to suffer from several defects, plaintiffs must file a second revised class notice in accordance with this order for the Court's approval.

# I. BACKGROUND

## A.    Plaintiffs' Allegations

The complaint alleges that, on January 28, 2012, class members and others participated in an "Occupy Oakland" political protest demonstration in Oakland, California. Dkt. No. 1 ¶ 64. In the late afternoon, a group of approximately 500 to 1000 individuals marched from Frank Ogawa Plaza. *Id.* ¶ 65. As they were marching on Broadway, all class members were corralled and trapped in front of the Oakland YMCA between 23rd and 24th Streets by two lines of armed police and peace officers. *Id.* ¶ 66. The complaint alleges that the class members were pushed, clubbed, and driven into a shrinking space by these two advancing lines. *Id.* ¶ 67. The complaint further alleges that these tactics were unjustified and created a melee, filling the crowd with confusion, panic, and fear, and causing injuries. *Id.* There was no exit except into the YMCA, and some class members entered there. *Id.* According to the complaint, no dispersal orders were given on Broadway and no one gave orders or announcements telling the marchers where to go or what to do until after the police announced that the marchers were under arrest. *Id.* ¶ 66. The complaint further alleges that the entire group was placed, without probable cause, under arrest, allegedly for failure to disperse although they were given no notice or opportunity to disperse. *Id.* ¶ 68. After the announcement of the arrest, class members requested permission to disperse, which was denied. *Id.* Those who attempted to disperse were met with the use of force, causing injuries. *Id.*

The complaint further alleges that class members corralled at the detainment area, without probable cause or lawful justification, were forced to stand or sit in the street for hours. *Id.* ¶ 70. Class members were not allowed to use toilet facilities, so the only place to relieve themselves was on the street or in their clothing. *Id.* Some class members were

Case No. 13-cv-00190 NC
ORDER GRANTING CERTIFICATION                    2
AND PRELIMINARY APPROVAL

placed on buses and held there for additional long periods without access to toilet facilities. *Id.* As a result, class members suffered discomfort, embarrassment, and humiliation. *Id.* Class members with medical needs were barred from taking their medications. *Id.*

According to the complaint, after detaining the class members on the street, defendants tied each of the class members' hands with plastic handcuffs behind their backs. *Id.* ¶ 71. Class members were kept handcuffed for inordinate and unnecessarily long periods of time, and handcuffs/ties were intentionally or heedlessly applied too tightly, causing pain, extended discomfort, and injuries. *Id.* Defendants refused to loosen or remove the handcuffs until the class members arrived at the jail, late that night or in the early morning. *Id.*

The complaint alleges that rather than cite and release the class members, the decision was made to arrest and transport them to an Alameda County jail. *Id.* ¶¶ 3, 69. The class members were loaded onto buses and vans. *Id.* ¶ 72. The lengthy detention on the cold street was followed with lengthy waits on the cold buses where the windows were open. *Id.* All class members were transported to an Alameda County jail, and were imprisoned for 12 to 85 hours. *Id.* ¶ 3. Some class members were taken to Glenn Dyer Jail in Oakland, but the majority was taken to Santa Rita Jail in Dublin. *Id.* ¶ 72. Class members were driven on the freeway for 45 minutes to Santa Rita Jail, enduring wind and cold. *Id.*

The complaint further alleges that the decision to transport class members to an Alameda County jail subjected class members to imprisonment for long periods in overcrowded and inhumane conditions, including unheated or deliberately chilled cells, with limited seating, no sleeping facilities, sometimes standing room only, no toilet facilities, no feminine hygiene, and no food, water, or medical care. *Id.* ¶¶ 3, 69. Female class members were embarrassed and humiliated by the forced urination and pregnancy testing. *Id.* ¶ 73.

The complaint alleges that, at Santa Rita, class members were held in extremely over-crowded cells and other spaces, which lacked cots or other sleeping surfaces. *Id.* ¶ 74. Many cells were so over-crowded that there was not room for everyone to sit or lie down on

the floor.  *Id.*  Phone calls were denied for long periods of time.  *Id.*  Class members were denied access to legal counsel.  *Id.*  Toilets and sanitary facilities were inadequate or non-existent.  *Id.*  Means for personal hygiene, particularly feminine hygiene were denied.  *Id.* Despite the winter weather, cold air was continually being blown in and class members' extra clothes were taken away.  *Id.*  No one was provided with blankets or other means to stay warm.  *Id.*  Some were deprived of food and water for extended periods of time.  *Id.* Class members with particular medical needs continued to be deprived of needed medical care, and medication.  *Id.*  The complaint further alleges that the class members were subjected to physical and mental abuse and other inhumane and unreasonable conditions of confinement, which caused them to suffer pain, discomfort, distress, and injury.  *Id.*  All class members at Santa Rita were held for excessive periods.  *Id.* ¶ 76.

No class members were charged or prosecuted, but all now have arrest records and will incur legal costs to attempt to have the arrests removed from their records.  *Id.* ¶ 78.

**B.   Procedural History**

This case was filed on January 14, 2013, by eight plaintiffs—Steven Angell, Miles Avery, Molly Batchelder, Sri Louise also known as Louise Coles, Cicily Cooper, Shareeff Elfiki, Theodore Hexter, and Lindsay Weber.  *See* Dkt. No. 1.  The proposed class alleged in the complaint consists of "persons who were herded, corralled and then arrested in the mass arrest that occurred on the evening of January 28, 2012 on Broadway in Oakland, between 23rd and 24th Street," and who were "detained, arrested, imprisoned and never charged with any crime."  *Id.* ¶ 57.

The complaint names as defendants the City of Oakland, the County of Alameda, and individual defendants employed by the City and the County.  *See* Dkt. No. 1.  The complaint alleges causes of action under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments, as well as state law rights against false arrest and false imprisonment.  *Id.*  Plaintiffs, on behalf of themselves and the class, seek (1) declaratory and injunctive relief to restrain defendants from continuing to violate plaintiffs' federal and state constitutional and statutory rights, the protections for these rights in the

Case No. 13-cv-00190 NC
ORDER GRANTING CERTIFICATION                4
AND PRELIMINARY APPROVAL

Oakland Crowd Management/Crowd Control Policy, and from using false arrests, false imprisonment, unreasonable conditions of confinement, and other unlawful actions to disrupt, interfere with and deter future demonstrations and protest activities in the City of Oakland and Alameda County; (2) an injunction requiring the defendants to seal, return, and/or destroy any records of plaintiffs' arrests; and (3) monetary damages for the injuries plaintiffs suffered when they were falsely detained, arrested and imprisoned. *Id.* ¶ 8.

The parties engaged in discovery, which included exchanging written discovery, taking the depositions of the named plaintiffs and City and County personnel, and inspections of the Santa Rita and Glenn Dyer jail facilities. Dkt. No. 19 at 2. The parties participated in settlement conferences with Magistrate Judge Laurel Beeler over several months. Dkt. Nos. 36, 55. As a result, the parties were able to reach a settlement in September 2014. Dkt. No. 60. Plaintiffs then filed a motion to certify the class, which defendants do not oppose. Dkt. Nos. 62, 62-3. The parties also moved jointly for preliminary approval of the settlement. Dkt. No. 63.

While this case was pending, the case of *Spalding v. City of Oakland*, No. 11-cv-02867 TEH, resolved. The *Spalding* case was also a class action arising out of a mass arrest involving the City of Oakland and the Alameda County Sheriff's Office. Part of the resolution of *Spalding* included injunctive relief regarding the application of cite/release and booking procedures that will be applied in multiple simultaneous arrest situations. *See Spalding*, No. 11-cv-02867 TEH, Dkt. No. 95-1 at 7-9. Plaintiffs assert that the injunctive relief obtained in *Spalding* addresses and resolves the injunctive relief issues raised in plaintiffs' complaint in this case and that, as a result, they are no longer requesting injunctive relief. Dkt. Nos. 62 at 22 n.2; 63 at 3.

## C.    Jurisdiction

The Court has subject matter jurisdiction over this action under 42 U.S.C. § 1983. *See* Dkt. No. 1 ¶ 9. The Court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367. All parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. No. 15 ¶ 13.

**D.    Overview of the Settlement Agreement**

**1.    Class Definition**

The settlement agreement defines the class as "the approximately 360 people who were arrested in the mass arrest on Broadway between 23rd and 24th Streets in Oakland on January 28, 2012, and who were never charged with any crime related to this arrest."  Dkt. No. 70-1 at 6.  The parties explained that 360 is the number of arrestees confirmed through discovery.  *Id.* n.3.

**2.    Monetary Payment to the Class**

Under the settlement agreement, the City and the County will jointly pay the sum of $1,360,000 within 15 days of the Court's entry of final judgment.  Dkt. No. 70-1 at 7.  Those class members who have submitted approved claims will receive an equal part of the $1,360,000 payment after attorneys' fees and costs and the class representatives' awards have been deducted from this amount.  *Id.*

The settlement agreement further provides that, in the event that any check to a claimant is undeliverable or is uncashed 180 days after it is placed in the mail, the funds thus unclaimed will be turned over to Families With a Future, a project sponsored by Legal Services for Prisoners with Children, a non-profit based in San Francisco.  Dkt. No. 70-1 at 8.

**3.    Non-Monetary Benefits of the Settlement**

In addition to the monetary benefits, the settlement agreement includes a stipulation for the sealing and destruction of all arrest records, police reports, investigative reports, booking information, online data, or any other documentation or information pertaining to the arrests of the plaintiffs and those class members who submit approved claims, in the possession of the City and the County.  Dkt. No. 70-1 at 8.  The parties stipulate that the relief will be the equivalent of a determination of factual innocence pursuant to California Penal Code § 851.8.  *Id.*  The parties also request a Court order in the names of all of the plaintiffs and those class members who submit approved claims, stating that that they are factually innocent of the charges for which they were arrested and that they are thereby

exonerated.  *Id.*

### 4.    Incentive Awards and Attorneys' Fees and Costs

Under the settlement agreement, the $1,360,000 payment includes all attorneys' fees and costs, including the costs of administering the class settlement, and the class representatives' awards approved by the Court.  Dkt. No. 70-1 at 7.  The settlement agreement provides that the eight class representatives will each receive $9,000, or such amount as the Court approves, and that class counsel will receive $350,000, or such sum as the Court approves, for attorneys' fees and costs, including all costs associated with the administration of the settlement.  *Id.*

### 5.    Release of Claims

The settlement agreement further provides that, upon the entry of final judgment by the Court, "the Plaintiffs and Claimants shall be deemed to have, and shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed all claims against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint."  Dkt. No. 70-1 at 10.  "Claimants" is defined in the settlement agreement as those class members who actually file claims pursuant to the procedures set forth in the Court's preliminary approval order.  *Id.* at 6.  Additionally, the settlement agreement provides that "the Plaintiffs and Class Members, except those who opt out of the Settlement, shall be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any claims against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint."  *Id.* at 10-11.  The settlement agreement also includes a release by the defendants.  *Id.* at 11.

The settlement agreement provides for a dismissal with prejudice of the individual defendants after preliminary approval of the settlement and formal approval of the settlement by the City and the County.  *Id.* at 9-10.

//

### 6.    Class Notice

The settlement agreement further provides that, no later than 10 days after the preliminary approval of the settlement, plaintiffs will disseminate the notice of settlement (including the claim and exclusion forms) by mailing the notice to each class member's last known mailing address, posting the notice on the class action website, and disseminating information regarding the settlement agreement on social media.  Dkt. No. 70-1 at 10.  The class members will then have 60 days to opt out, or file a claim form, or to object to the settlement agreement following the procedure set forth in the notice.  *Id.*  For all class members who fail to respond within 45 days of the mailing of the notice, plaintiffs will make every effort to contact those class members through direct contact (such as phone, email, Facebook, and Twitter).  *Id.*

## III. DISCUSSION

### A.    Class Certification

Class certification requires that: (1) the class be so numerous that joinder of all members individually is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative must be typical of the claims or defenses of the class; and (4) the person representing the class must be able fairly and adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b).  Plaintiffs here are seeking certification under Rule 23(b)(3), and alternatively under Rule 23(b)(2) and (1).  Dkt. No. 62 at 23.  Plaintiffs assert that the action is maintainable under Rule 23(b)(3) which allows a class action to be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The proposed settlement class here meets the requirements for certification under Rule 23(a). First, the 360 potential class members are sufficiently numerous that joinder of all members would be impracticable.

Second, there are questions of fact and law common to all class members, the answers to which will drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005). "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

Here, plaintiffs claim that defendants declared an unlawful assembly and corralled and arrested the entire march without notice or opportunity to disperse, and that there were no individual determinations of probable cause for arrest. Dkt. No. 62 at 19. Instead, plaintiffs contend that defendants created the class when they made the decision to treat the entire crowd as one, encircled it and arrested every person contained within the police lines. *Id.* Once defendants made this decision, the class members were all treated identically in that they were arrested and incarcerated in an Alameda County jail where they endured similar conditions, with variations in the length of time in incarceration. *Id.*; *see also* Dkt. No. 62-1. In challenging defendants' policies and practices regarding mass arrests without probable cause and incarceration of individuals, plaintiffs raise common questions of law and fact, such as (1) whether defendants made a lawful determination that the march was an unlawful assembly; (2) whether defendants' decision not to give warnings or an opportunity to disperse before arresting the entire crowd violated the plaintiffs' and the class members' constitutional rights; (3) whether the length and conditions of incarceration violated the plaintiffs' and the class members' constitutional rights and California Penal Code § 853.6; and (4) whether the arrests and detentions violated the Oakland Police Crowd Control Policy adopted as part of the settlement agreement in *Coles, et al. v. City of Oakland* and

*Local 10, International Longshore and Warehouse Union, et al. v. City of Oakland*, Nos. 03-cv-02961 TEH and 03-cv-02962 TEH. Dkt. No. 62 at 17-21. *See Spalding v. City of Oakland*, No. 11-cv-2867 TEH, 2012 WL 994644, at *2-3 (N.D. Cal. Mar. 23, 2012) (granting class certification in similar action arising out of mass arrest and incarceration).

Third, the class representatives' claims are typical of those of the class. For purposes of the typicality inquiry, the named plaintiffs' injuries need not be identical with those of the other class members, "only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869. Here, this requirement is met as all of the class members were arrested in a single, coordinated mass arrest at a single location, incarcerated overnight and longer, and subjected to similar conditions of custody. *See* Dkt. Nos. 62 at 21-22; 62-1.

Fourth, there appear to be no conflicts of interest between the class representatives and the class members. Plaintiffs assert that both the class representatives and the class members have a common interest in ensuring that they would not be subject to mass arrests without individual determinations of probable cause, a common interest in ensuring that they would be cited and released rather than transported and held for overly lengthy periods of time in abject conditions. Dkt. No. 62 at 22. Plaintiffs further assert that each named plaintiff is willing to perform the duties of a class representative, and to pursue this lawsuit vigorously on behalf of the class, and there is no basis on which to argue that their interests are antagonistic to those of the class. *Id.* at 22-23. There is no suggestion of collusion between the named plaintiffs and any of the defendants. *Id.* There are also no perceived conflicts with class counsel. The Court finds that the named plaintiffs and their counsel will fairly and adequately protect the interests of the class.

Further, the proposed class meets the requirements of Rule 23(b). Plaintiffs claim that defendants treated the class members as a class, as defendants encircled, arrested, and imprisoned all of the class members in the same way, en masse, without making any individual determinations of probable cause. Dkt. No. 62 at 24. Whether this conduct

violated the class members' legal rights is a common question of law and fact. The legality of defendants' alleged failure to give the class members notice or opportunity to disperse, the mass arrest, the incarceration of the entire class in jail overnight, and the failure to provide the class members with basic sleeping accommodations are subject to common resolution. *Id.* Additionally, class counsel assert that the class members' damages are generally uniform and that there were few physical injuries and low medical bills. *See id.* at 26. The common legal and fact questions represent a significant aspect of the case, and do not appear to be outweighed by any questions affecting only individual members. *See Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

Additionally, considerations of judicial economy favor litigating this case as a class action. As this case involves multiple claims for relatively small sums, a class action is superior to an alternative method for adjudicating the parties' claims. *See Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1154, 1163 (9th Cir. 2001) ("[I]f plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). According to the record provided, no potential class member has expressed a desire to proceed independently and no unusual obstacles have appeared that would make managing the class particularly difficult.

The Court finds that this action is maintainable under Federal Rule of Civil Procedure 23(a) and (b)(3), and therefore, certifies the following class: the approximately 360 people who were arrested in the mass arrest on Broadway between 23rd and 24th Streets in Oakland on January 28, 2012, and who were never charged with any crime related to this arrest. The Court further approves the named plaintiffs as class representatives, and approves Yolanda Huang and Dan Siegel as class counsel.

## B. Preliminary Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, a settlement should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted). In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions . . . . The settlement must stand or fall in its entirety." *Id.* Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon*, 150 F.3d at 1026.

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The Court reviews the preliminary approval factors in turn.

### 1. The Settlement Process

The Court first considers the means by which the parties reached their settlement. Between January 2014 and the present, the parties have participated in four all day and two part-day settlement conferences, and a number of telephonic conferences, with Magistrate Judge Laurel Beeler. Dkt. No. 63 at 4-5. In addition, there have been numerous

communications between the parties. *Id.* The Oakland City Council and the Alameda County Board of Supervisors have also had several reviews of the settlement before final approval in separate closed-session meetings. Dkt. No. 63 at 8. Class representatives were involved in all of the in-court settlement conferences. *Id.* The settlement thus appears to be the product of serious, informed, non-collusive negotiations. Accordingly, the process by which the parties reached their settlement weighs in favor of preliminary approval.

### 2. The Presence of Obvious Deficiencies

The Court must next analyze whether there are obvious deficiencies in the settlement agreement. The Court previously denied preliminary approval of the original settlement agreement because of several deficiencies. Dkt. No. 68. The revised settlement agreement, Dkt. No. 70-1, has cured those deficiencies.

First, the original settlement agreement contained an error in the definition of the class, which has been corrected.

Second, the scope of the release in the original settlement agreement was impermissibly broad as it did not specify who is being released. While the scope of the release in the revised settlement agreement is still broad, it is acceptable because the claims released are limited to those "against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint." Dkt. No. 70-1 at 10-11; *see Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citations omitted). Additionally, the release has been revised so that it does not include claims by class members who have opted out.

Third, the original settlement agreement did not provide for a *cy pres* recipient or specify what would happen with the funds if a check is undeliverable or remains uncashed. The revised settlement agreement names as a *cy pres* recipient Families With a Future, a project sponsored by Legal Services for Prisoners with Children, a non-profit based in San

Francisco. Dkt. No. 70-1 at 8. The designated *cy pres* recipient appears to meet the requirements for approval set forth in *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (holding that there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries" and that the *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, . . . , and must not benefit a group too remote from the plaintiff class"). At the preliminary approval hearing, class counsel explained that the major injuries in this case were the arrest and the incarceration, which affected the families of the class members. Counsel further explained that Families With a Future was chosen as a *cy pres* recipient because it is dedicated to helping incarcerated people integrate in the society, and that while it is based in San Francisco, its geographic focus is Northern California, and the Bay Area in particular.

Fourth, the original settlement agreement provided that class counsel "shall" receive $350,000 for attorneys' fees and costs and that the class representatives "shall" each receive $9,000. The revised settlement agreement clarifies that these amounts are subject to Court approval and that the Court may award a different amount than requested. Dkt. No. 70-1 at 7.

While the Court is not approving the amount of the requested attorneys' fees and costs at this stage, the Court also notes that the supplemental declaration of Yolanda Huang shows different numbers for the hours spent on the case for herself, Dan Siegel, and Claire Lacey, compared to the amounts in her first declaration submitted in support of preliminary approval (compare Dkt. No. 70 at 5 with Dkt. No. 63-1 at 2). The supplemental declaration also has different amounts for the costs (actual and estimated) compared to the first declaration. *Id.* As part of plaintiffs' motion for final approval, Yolanda Huang must provide an explanation for these discrepancies, and submit either her time records for her work on this case or a reasonably detailed breakdown of how many hours she spent on the different categories of activities. Additionally, Yolanda Huang must provide a breakdown by category of the estimated costs of settlement administration to allow the Court to better assess their reasonableness. Finally, Dan Siegel's declaration, Dkt. No. 69 ¶ 23, states that

two other attorneys devoted "significant time" to the case. One of the attorneys, Anne Weills, is not included in the chart summarizing the total attorney hours, *see* Dkt. No. 70 at 5. Additionally, no information is provided on these two attorneys' experience or how they spent the time billed on this case. The motion for final approval must address these issues.

Accordingly, the lack of obvious deficiencies in the revised settlement agreement weighs in favor of granting preliminary approval.

### 3. Preferential Treatment

The third factor the Court considers is whether the settlement agreement provides preferential treatment to any class member. Under the settlement, the monetary recovery will be distributed to class members who have submitted approved claims pro rata after deduction of the attorneys' fees and costs and the class representatives' awards. Dkt. No. 70-1 at 7. Class counsel explained that the decision to apply a pro rata allocation was made unanimously by the named plaintiffs, and was the result of extensive discussion among plaintiffs in consultation with a number of class members. Dkt. No. 70 ¶ 10. Class counsel asserts that, after evaluating the injuries received through this incident, plaintiffs unanimously agreed that the overriding harm was the corralling, arrest, and incarceration. *Id.* Plaintiffs determined that while class members experienced a different length of time of incarceration, the amount of time was a secondary harm because everyone was held in similar conditions, namely overcrowded, filthy, cold, no access to phones, terrible food, lack of feminine hygiene supplies, and without space to sit or lie down. *Id.* Class counsel further explained that there were few physical injuries. Dkt. No. 62 at 26. Accordingly, the proposed distribution of the settlement funds does not appear to grant undue preferential treatment to any class members.

While the settlement agreement authorizes an incentive award to each of the eight class representatives of $9,000, this incentive award, should the Court finally approve it, does not render the settlement unfair, as "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977).

1    Additionally, while the Court is not approving the amount of the incentive award at this

2    stage, the Court notes that the proposed incentive awards here are on the high end but not

3    outside the range of reasonableness. *See Spalding*, No. 11-cv-02867 TEH, Dkt. Nos. 95-1,

4    99 (approving $9,000 incentive award); *Covillo v. Specialtys Cafe*, No. 11-cv-00594 DMR,

5    2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (approving $8,000 incentive award);

6    *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving $10,000 incentive

7    award). Class counsel asserts that the class representatives each had to give a full

8    deposition, spent several long days in court during settlement conferences, and were in

9    close touch with class members and class counsel throughout the nearly two and a half year

10   process since the mass arrest. Dkt. No. 63 at 8. These assertions must be supported by a

11   competent declaration at the final approval stage.

12        The Court finds no indication of unfair treatment to certain members of the class, and

13   therefore this factor supports preliminary approval.

14       **4.**     **Whether the Settlement Falls Within the Range of Possible Approval**

15        Finally, the Court must determine whether the proposed settlement falls within the

16   range of possible approval. "To evaluate the range of possible approval criterion, which

17   focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected

18   recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at

19   *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.

20   2009)). To determine whether an agreement is fundamentally fair, adequate, and

21   reasonable, the Court may preview the factors that ultimately inform final approval: "[1] the

22   strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further

23   litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount

24   offered in settlement; [5] the extent of discovery completed, and the stage of the

25   proceedings; [6] the experience and views of counsel; [7] the presence of a governmental

26   participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *9

27   (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). As part of this

28   assessment, the Court must "compare the value of the settlement against the expected

Case No. 13-cv-00190 NC
ORDER GRANTING CERTIFICATION      16
AND PRELIMINARY APPROVAL

recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." *Id.* at *11 (internal quotation marks omitted). The Court will address first the value of the settlement.

### a. The Value of the Settlement Supports Preliminary Approval.

Under the proposed settlement, class members who submit approved claims will receive an estimated payment of approximately $2,600. Dkt. No. 63 at 7. Class counsel notes that plaintiffs have not claimed special damages, such as wage loss or medical bills. *Id.* Class counsel calculated that the class was incarcerated as a whole for a total of approximately 13,500 hours. Class counsel asserts that, using a possible damages rate of $250 an hour based on a comparison with other cases, the class could see a potential recovery of $3.375 million if the case proceeded to trial. Based on these estimates, the recovery per class member under the settlement is approximately 28% of the estimated maximum recovery. Dkt. No. 70 ¶ 11. The settlement appears to provide for a fair amount of monetary recovery. *See Spalding*, No. 11-cv-02867 TEH , Dkt. Nos. 99, 95-1, 97 (granting final approval of settlement including total monetary settlement of $1,025,000 for 145-149 potential class members).

In addition to the monetary benefits, the settlement provides for those class members who submit approved claims that their arrest records will be sealed and destroyed and that they will be provided with a stipulated finding of factual innocence, to eliminate any possible adverse effect of the arrest on employment or licensing. Dkt. No. 63 at 7.

The Court finds that the proposed settlement confers substantial benefit on the class and that this factor supports preliminary approval.

### b. The Remaining Factors Weigh in Favor of Preliminary Approval.

Turning to the other factors informing settlement approval, such as the strength of plaintiffs' case, the extent of discovery completed at this stage of the proceedings, the risk of maintaining class action status, and the risk, expense, and likely duration of the litigation, the Court finds that all weigh in favor of preliminary approval of the proposed settlement agreement.

Plaintiffs assert that it is not certain that they would prevail at trial in light of defendants' defenses concerning probable cause for plaintiffs' arrests and their processing at Santa Rita. Dkt. No. 70 ¶ 11. Plaintiffs further assert that there is a substantial issue regarding whether the City defendants gave adequate notice to the class members regarding whether their assembly was unlawful before arresting them. *Id.* The City defendants have asserted that the professed purpose of the day's event was to illegally occupy a building and confront the police, and that the crowd's failure to disperse from near 19th Avenue/Telegraph (Rashida Muhammad St.) justified the mass arrest. Dkt. No. 62 at 9. Additionally, there is a substantial issue here about whether the delay by the County in releasing the class members constitutes a constitutional violation. Dkt. No. 70 ¶ 11. Further litigation would involve considerable costs and a significant investment of time by plaintiffs, defendants, and their respective counsel, and would burden the resources of the Court. Dkt. No. 63 at 7. Plaintiffs and their counsel believe that the proposed settlement confers substantial benefits on the class and the general public, and that it is fair and reasonable and in the best interests of the class. *Id.* at 5. According to class counsel, the overwhelming response by the class members has been positive and no objections are anticipated. Dkt. No. 63-1 ¶ 9.

Because the balance of the factors considered by the Court weighs in favor of preliminary approval, the motion for preliminary approval of the settlement is granted.

**C.    Class Notice**

**1.    Method of Providing Notice**

The settlement agreement provides for mailing the notice to each class member's last known mailing address, posting the notice on the class action website, and disseminating information regarding the settlement agreement on social media. Dkt. No. 70-1 at 10. Class counsel assert that numerous class members have stayed in regular communication with class counsel since the date of the arrests and during the pendency of this litigation. Dkt. No. 63-1 ¶¶ 6-7. In addition, the class representatives have remained active and involved in community activities and maintained regular contact with many of the class

members who are aware that a settlement is pending. *Id.* ¶¶ 7, 9.

Class counsel and plaintiffs further assert that they have compiled a comprehensive and updated contact list for class members, many of whom have provided phone numbers and email addresses. Dkt. No. 63-1 ¶ 8. According to class counsel, many social media platforms are in place to disseminate the notice and information about this litigation. *Id.* Class counsel also informed the Court that the class action website has been made live, and that the website requests that potential class members email class counsel with their names, current mailing addresses, email addresses, and phone numbers. Dkt. No. 70 ¶ 6. At the hearing, class counsel stated that she had mailing addresses for everyone and had received updated addresses from approximately 130 class members.

The Court approves the method of notice provided in the settlement agreement, and in addition, the Court orders that the notice be disseminated by email, to the extent email addresses are available to class counsel. The Court finds that the method of notice so ordered provides the best notice that is practicable under the circumstances. *See* Fed. R. Civ. P. 23(c)(2)(B).

### 2. Contents of the Notice

As to the contents of the notice to the class, Rule 23 of the Federal Rules of Civil Procedure requires that "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed class notice, Dkt. No. 70-2, describes the nature of the action, the definition of the class, and the class-wide claims. The proposed notice further explains that class members may appear through an attorney and that the Court will exclude those members requesting exclusion. The notice also specifies the time requirements and manner

of requesting exclusion, as well as the binding effect of a class-wide judgment. In addition, the notice explains that class members may object, indicates the time and place of the final approval hearing, provides information regarding the attorneys' fees and class representatives' incentive awards, and indicates that additional information regarding the settlement is available through class counsel, whose contact information is provided in the notice. The notice also explains how the settlement fund will be allocated, and points to the website that contains additional information about this case and the settlement.

However, the proposed notice contains the following deficiencies:

1.     The proposed class notice contains references to page numbers but there are no page numbers on the document filed with the Court, Dkt. No. 70-2.

2.     Option 5 "Object to the Settlement" under "YOUR CHOICES," must be capitalized to be consistent with the other options. Dkt. No. 70-2 at 2.

3.     The definition of the class in the proposed notice must be consistent with the definition of the class certified by the Court. For example, sections 7 and 9 of the proposed notice under "WHO IS IN THE SETTLEMENT?," fail to refer to the precise location of the arrest as defined in the class definition, i.e., "on Broadway between 23rd and 24th Streets in Oakland." Dkt. No. 70-2 at 7.

*4.*     Section 10 of the proposed notice, under "THE SETTLEMENT BENEFITS – WHAT YOU GET," states that the class representatives and class counsel "will" receive certain amounts from the total settlement. Dkt. No. 70-2 at 7. This section must be revised to clarify that these are proposed amounts subject to the approval of the Court. Additionally, the same section must be revised to add the following (addition noted in italics): "The exact amount of money you will receive depends on the number of timely valid claims received *and the amounts approved by Court for attorneys' fees and costs and class representatives' incentive awards.*" *Id.*

5.     Section 13 of the proposed notice, under "WHAT ARE YOUR OPTIONS?," must explicitly inform the class members of the scope of the class release as provided in the

settlement agreement, rather than merely refer to the settlement agreement. Dkt. No. 70-2 at 9.

6. The proposed notice is confusing as to what is required to object to the settlement. Option 5 "Object to the Settlement" under "YOUR CHOICES," states that a class member may "either" write "or" speak to the Court. Dkt. No. 70-2 at 2. By contrast, section 17 states "To object, you must send a letter . . . ." *Id.* at 10. Additionally, section 18 states that a class member "may" ask the Court by letter for permission to speak at the final approval hearing but does not make clear whether such letter is required in order for a class member to speak at the hearing. *Id.* at 11. Section 18 of the proposed notice also erroneously cross-references section 14 instead of section 17. The notice must be revised to clarify the class members' options and what is required to object.

7. Sections 15 and 16 of the proposed notice, under "WHAT ARE YOUR OPTIONS?," erroneously refer to "Exclusion Claim Form." Dkt. No. 70-2 at 9-10. These sections must be revised to clarify that there are two separate forms—an "Exclusion Form" and a "Claim Form."

8. The Exclusion Form erroneously directs class members to mail it to the Court instead of class counsel (compare to section 15 of the proposed class notice). Dkt. No. 70-2 at 12.

9. The proposed notice misspells the undersigned Magistrate Judge's name. Dkt. No. 70-2 at 4, 11.

## IV. CONCLUSION

The Court certifies the proposed class, grants preliminary approval of the revised settlement agreement, and approves the proposed method of notice. The Court also approves the proposed class counsel and class representatives.

Class counsel must file a second revised proposed notice, claim form, and exclusion form correcting the above deficiencies by January 12, 2015. The date of the preliminary approval of the settlement will be deemed to be the date on which the Court issues an order approving the proposed form of notice.

Case No. 13-cv-00190 NC
ORDER GRANTING CERTIFICATION
AND PRELIMINARY APPROVAL
21

Plaintiffs' motion for final approval, and any supplemental filings in support of the requested incentive awards and attorneys' fees and costs, must be filed within 14 days of the date on which the notice is disseminated to the class members as provided in the settlement agreement. Class counsel must file a supplemental declaration by March 30, 2015, informing the Court of the number of claims forms, exclusion forms, and objections received.

The Court will hold a final approval hearing on April 1, 2015, at 1:00 p.m. in Courtroom A, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

IT IS SO ORDERED.

Date: January 5, 2015

Nathanael M. Cousins
United States Magistrate Judge

YOLANDA HUANG, SBN 104543
P.O. Box 5475
Berkeley, CA 94705
Tel: (510) 329-2140/ Fax: (510) 580-9410

DAN SIEGEL SBN 56400
ANNE WEILLS SBN 139845
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA 94612
Tel: (510) 839-1200/ Fax:  (510) 444-6698

Attorneys for Plaintiffs
STEVEN ANGELL, *et al.* and on
behalf of the proposed class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE also known as Louise Coles,  CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, LINDSAY WEBER, individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>CITY OF OAKLAND, COUNTY OF ALAMEDA, HOWARD JORDAN, JEFFREY ISRAEL, ERIC BRESHEARS, RON YELDER, DARREN ALLISON, STEVE TULL, EDWARD TRACEY, ANTHONY RACHAL, SEAN WHENT, GREGORY J. AHERN, BRETT KETELES, CARLA KENNEDY, DAVID BRADY, GREGORY L. MORGADO, KERRY JACKSON, DOES 1-250,<br><br>      Defendants. | Case No. C13-0190 NC<br><br><br>SETTLEMENT AGREEMENT |

SETTLEMENT AGREEMENT

Plaintiffs STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE AKA LOUISE COLES, CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, LINDSAY WEBER, on behalf of themselves and the class;  Defendants CITY OF OAKLAND, HOWARD JORDAN, JEFFREY ISRAEL, ERIC BRESHEARS, RON YELDER, DARREN ALLISON, STEVE TULL, EDWARD TRACEY, ANTHONY RACHAL, SEAN WHENT (hereinafter "OAKLAND DEFENDANTS"); and Defendants COUNTY OF ALAMEDA,  GREGORY J. AHERN, BRETT KETELES, CARLA KENNEDY, DAVID BRADY, GREGORY L. MORGADO, and KERRY  JACKSON, (hereinafter "COUNTY DEFENDANTS"); by and through their respective counsel, agree and stipulate as follows:

## I.  THE LITIGATION

On January 14, 2013, Plaintiffs filed a class action complaint against the City of Oakland and a number of Oakland police officers, and against the County of Alameda, its Sheriff, and senior deputies of the Sheriff's Office, asserting violations of their First, Fourth, and Fourteenth Amendment rights, and their rights under California state law, arising from a mass arrest which occurred on January 28, 2012.  Approximately 360 Class Members were engaged in a march and demonstration protesting the economic inequalities and the financial disparities between the 99% and the 1%.  Three hundred and sixty (360) Class Members were arrested on Broadway between 23rd and 24th Streets in Oakland.  Plaintiffs allege that the arrests were conducted without a dispersal order first having been given at that location or an opportunity to disperse.  Plaintiffs allege that the mass arrests were violations of Oakland's own Crowd Control Policies in addition to being violations of federal and state constitutional protections and state laws.  Defendants deny the allegations.

Following the arrests by the Oakland Police, class members were handcuffed, detained on the streets, placed in the custody of the Alameda County Sheriff's Office, and transported to Alameda County jails, where, they contend, they were held for between 12 and 80 hours

before being cited and released for failure to disperse in violation of California Penal Code § 409, a misdemeanor. Plaintiffs contend the booking and detention violated California state law providing for the citation and release of misdemeanor arrestees, as well as the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also contend that while on the street and during transport, they were painfully restrained by plastic handcuffs, and not given access to toilet facilities. They further contend that they were held in severely overcrowded and unsanitary holding cells that were cold, lacked adequate seating, had no beds or bedding, and lacked telephones. While held in jail, Class Members were unable to contact family or friends, many for up to 24 hours rather than the three hours required by Penal Code §851.5. Defendants deny these allegations.

Plaintiffs requested monetary damages, attorneys' fees and costs, an injunction to prevent defendants from continuing to violate Plaintiffs' rights, and an order requiring Defendants to seal and destroy all records derived from this arrest. (Class Action Complaint, Dkt. # 1.)

While this case was pending, the case of *Spalding v. City of Oakland*, C11-02867, resolved. The *Spalding* case was also a class action arising out of mass arrest involving the City of Oakland and the County of Alameda Sheriff. Part of the resolution of *Spalding* included injunctive relief primarily on the application of Cite/Release and Booking Procedures that will be applied in multiple simultaneous arrest situations, which addressed and resolved the injunctive relief issues raised in plaintiffs' complaint. The resolutions included amendment of the Oakland Police Department's Crowd Control and Crowd Management Policy, adopted on October 4, 2013.[1]

---

[1] **VIII. CITE/RELEASE AND BOOKING PROCEDURES**
A. Individuals arrested for minor offenses may be cited and released in compliance with Penal Code §853.6 and Department General Order M-7, CITATIONS FOR ADULT MISDEMEANORS, Part III, A-N.
B. When it is impractical to cite arrestees at or near the site of the demonstration because of a substantial risk that this procedure would allow the unlawful activity to continue or because of specific geographic factors, officers may cite and release arrestees from temporary processing stations or police facilities as near the site of the arrest as possible. While detained during the citation and release process, arrestees shall have reasonable access to toilet facilities and to appropriate medical attention.
C. No fingerprinting will be done as part of the citation and release process. Arrestees may be instructed to appear for booking prior to or after arraignment.
OPD Training Bulletin III-G, CROWD CONTROL AND CROWD MANAGEMENT POLICY (Rev. 28 Oct 05),

Angell, *et al.* v. City of Oakland, *et al.*
Settlement Agreement

On May 17, 2013, the Alameda County Sheriff's Office also adopted a mass arrest policy, which resolved plaintiffs' injunctive relief requests with regard to Alameda County jails and booking policies.[2]

The Parties engaged in preliminary discovery including written discovery and depositions of all named Plaintiffs and five Sheriff's personnel. The Parties then agreed to stay discovery and litigation and engage in settlement discussions. Between January 2014 and the present, the Parties have participated in four all day and two part day settlement conferences and a number of telephonic conferences with Magistrate Judge Laurel Beeler. In addition, there have been numerous communications between the Parties. As a result of these extensive settlement negotiations, and with Judge Beeler's assistance, the Parties have now agreed on a complete settlement of this Litigation, the terms of which are set forth below.

As part of the Settlement Process, the parties agreed to hold Plaintiffs' motion for class certification in abeyance. Said motion for class certification is filed as a companion motion to Plaintiffs' motion for preliminary approval of this settlement.

II. The Settlement Agreement and Terms of Stipulation

A. Definitions

"Effective Date" shall be when the Judgment has become Final as defined below.

"Final" means the date on which the Court has entered the Judgment, following submission of this Settlement Agreement and the Final Approval Motion to the Court.

"Preliminary Approval Motion" means a motion filed with the Court requesting that the Court consider and preliminarily approve the Settlement Agreement.

"Final Approval Motion" shall mean a motion filed with the Court requesting that the Court consider and, if it finds the settlement to be fair and reasonable, finally approve the Settlement Agreement.

---

[2] ACSO Detentions & Correction Policy 11.65 states where 25 or more individuals are arrested for citable offenses, while participating in "planned gatherings for the purpose of exercising rights protected by the First Amendment," these individuals with identification are not fingerprinted and booked. Instead, a warrant check will be conducted "within thirty (30) minutes after the arrestee has been identified" (11.65 (F)6) and when groups of ten (10) arrestees have been cleared of warrants, "each will be issued a citation and notice to appear and they and their property will be transferred to the release section of the facility and released." (11.65 (F)7).

"Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement of the Litigation as contained in this Stipulation should be approved as fair, reasonable, and adequate, and whether the Judgment should be entered.

"Judgment" means the Final Judgment and Order of Dismissal with Prejudice, to be rendered by the Court.

"Approved Claim" means a claim submitted no later than the Bar Date by a Class Member other than a Representative Plaintiff which is approved by Plaintiffs' counsel.

"Bar Date" means that date specified herein by which Claim Forms submitted by Class Members must be delivered or postmarked in order to be considered for payment pursuant to the terms of the Settlement described in this Stipulation.

"Class" means the approximately 360 people who were arrested in the mass arrest on Broadway between 23rd and 24th Streets in Oakland on January 28, 2012, and who were never charged with any crime related to this arrest."[3]

"Class Members" means all persons within or encompassed by the definition of the Class.

"Class Representatives" or "Plaintiffs" means STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE AKA LOUISE COLES, CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, and LINDSAY WEBER.

"Claimants" means Class Members who actually file claims pursuant to the procedures set forth in the Court's Preliminary Approval Order. This will specifically exclude all Class Members who opt-out of the class action.

"Class Notice of Settlement Agreement" means the written notice, together with the Publication Notice, which shall include the general terms of the Settlement Agreement and the date of the Final Approval Hearing. The Class Notice of Settlement shall conform to all applicable requirements of the Federal Rules of Civil Procedure, due process, any other applicable law, and shall otherwise be in the manner and form approved by the Court.

---

[3] Three Hundred and sixty (360) is the number of arrestees confirmed through discovery and for this reason varies slightly from the number pled in the complaint.

Angell, *et al.* v. City of Oakland, *et al.*
Settlement Agreement

Page 5 of 13

"Claim Form" means that form which Class Members must submit in order to qualify to participate in the settlement described in this Stipulation.

"The Parties" means the parties to this settlement agreement, who are the Plaintiffs, the Class, the Oakland Defendants, and the County Defendants, defined above.

"Court" means the United States District Court for the Northern District of California.

"Class Counsel" or "Plaintiffs' Counsel" means the class counsel named in Plaintiff's pending motion for class certification, Dan Siegel and Yolanda Huang, or as the Court's Order for Class Certification designates.

"Lead Counsel for Plaintiffs" means Yolanda Huang.

"Class Settlement Fund" means the sum to be paid by the Defendants, totaling $1,360,000, not subject to reversion, which will be funded and distributed as further described in this Agreement.

B. Monetary Settlement

In consideration of the Release set forth in section II.G. of this Stipulation and the entry of Judgment on the claims of all Class Members, the Defendants CITY OF OAKLAND and COUNTY OF ALAMEDA will jointly pay the sum of $1,360,000 within fifteen (15) days of the Effective Date of this settlement. Said payment shall include all attorneys' fees and costs of administering the class settlement and shall be made payable to Yolanda Huang, Attorney Client Trust Account, to be distributed to the Class Representatives, Claimants, and Class Counsel by that office as follows:

The eight Class Representatives shall each receive $9,000, or such amount as the Court approves;

Class Counsels shall receive $350,000 for attorneys' fees and costs, including all costs associated with the administration of the Class Settlement Fund, transmittal and publication of the Class Notice of Settlement Agreement and Claim Forms, review and approval of Claim Forms, and payment of Approved Claims, or such sum as the Court approves.

Those Claimants who have submitted Approved Claims shall each receive an equal part of $1,360,000 after attorneys' fees and costs and the Class Representatives' distribution have been deducted.

In the event that any check to a Claimant who submits an approved claim is undeliverable or is uncashed 180 days after it is placed in the mail to that Claimant the funds thus unclaimed shall be turned over to Families With a Future, a project sponsored by Legal Services for Prisoners with Children, a non-profit based in San Francisco (EIN: 94-3080408).

C. Non-Monetary Settlement

1. Sealing and Destruction of Arrest Records

The Parties stipulate to the following and seek the Court's order granting such relief as of the Effective Date:

a. All arrest records, police reports, investigative reports, booking information, online data, or any other documentation or information pertaining to the arrests of the Plaintiffs and Claimants who have submitted Approved Claims in the possession of the Oakland Defendants and County Defendants shall be sealed and destroyed.

b. The Parties stipulate that the relief shall be the equivalent of a determination of factual innocence pursuant to California Penal Code § 851.8, and that the procedural requirements of that statute shall be waived, including any time deadlines and notice to the District Attorney.

c. The Court shall issue an Order in the names of all of the Plaintiffs and Claimants who have submitted Approved Claims, stating that it is the determination of the Court, pursuant to the stipulation of the Oakland Defendants (the arresting agency), that the Plaintiffs and Claimants are factually innocent of the charges for which they were arrested and that they are thereby exonerated. Thereafter, the arrest shall be deemed not to have occurred and the person may answer accordingly any question relating to its occurrence. (See Penal Code § 851.8, subd. (f).)

d. Destruction of records of arrest pursuant to the Court's order shall be accomplished by permanent obliteration of all entries or notations upon the records pertaining to the arrest, and the record shall be prepared again so that it appears that the arrest never occurred. However, where the only entries on the record pertain to the arrest and the record can be destroyed without necessarily affecting the destruction of other records, the document constituting the record shall be physically destroyed. (See Penal Code § 851.8, subd. (j).)

e. Plaintiffs arrested for felonies which were never charged will be determined to have met the requirements of Penal Code § 299, and will be eligible to have their California State DNA profile expunged and their DNA sample withdrawn.

f. Defendants will provide a copy of the Court order to the California Department of Justice, along with a list of Plaintiffs and of all Claimants who have filed timely Claim Forms, and advise said agency of the fact that the records of their January 28, 2012 arrests have been rendered obsolete on the basis of a finding of factual innocence pursuant to Penal Code § 851.8, which shall include expungement of all DNA profiles obtained and withdrawal of all DNA samples.

D. Preliminary Approval

As soon as possible, and in no event more than ten (10) days after execution of this Stipulation, the Parties shall jointly submit the Stipulation together with its Exhibits to the Court and shall jointly apply for entry of a Preliminary Approval Order substantially in the form set forth in Exhibit C, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, and approval/ dissemination of the Class Notice of the Settlement and the proposed Claim Form.  Plaintiffs shall also concurrently file a motion for class certification, and defendants shall file a notice of non-opposition to said motion, including Plaintiffs' request that the Class Notice and right to be excluded from the class be sent in combination with the notice of settlement.

Within forty (40) days after the Court has issued its order giving preliminary approval of the terms and conditions of this settlement, Defendant Alameda County shall formalize its approval of this settlement through a public Board Resolution and Defendant City of Oakland shall formalize tis approval of this settlement through a City Council Resolution.

Within ten (10) days after receipt of a copy of Defendant Alameda County's formal approval of this settlement through a public Board Resolution, counsel for plaintiffs shall submit to the Court a stipulation and proposed order dismissing, with prejudice, Defendants GREGORY J. AHERN, BRETT KETELES, CARLA KENNEDY, DAVID BRADY, GREGORY L. MORGADO, and KERRY JACKSON.  Within ten (10) days after receipt of a copy of Defendant City of Oakland's City Council Resolution approving this settlement,

counsel for Plaintiffs shall submit to the Court a stipulation and proposed order dismissing, with prejudice, Defendants HOWARD JORDAN, JEFFREY ISRAEL, ERIC BRESHEARS, RON YELDER, DARREN ALLISON, STEVE TULL, EDWARD TRACEY, ANTHONY RACHAL, and SEAN WHENT.

In exchange for said dismissal, said individual Defendants hereby waive all rights to recover costs or fees in connection with this lawsuit, as well as any tort claims they may have against Plaintiffs or their counsel arising out of the prosecution of this action, and agree to the Waiver and Covenant Not to Sue contained herein in paragraph H.

E. Class Notice of the Settlement and Claim Form

No later than 10 days after this Court's Preliminary Approval of this Settlement, Plaintiffs shall disseminate the Notice of Settlement Agreement by mailing the Notice to each class member's last known mailing address, posting the Notice on the Class Action website, and disseminating information regarding the Settlement Agreement on social media.  The Class Members shall have 60 days to opt out or file a Claim Form, or to object to the Settlement Agreement following the procedure set forth in the Notice.  For all class members who fail to respond within 45 days of the mailing of the Notice, Plaintiffs shall make every effort to contact said class members through direct contact (phone, email, Facebook, Twitter).

F. Final Approval

A Final Approval Hearing shall be set no less than 45 days after the Court issues its Preliminary Approval Order. The parties jointly request that, at the Final Approval Hearing, the Court approve the settlement of the Litigation and enter Judgment in a form substantially similar to that attached hereto as Exhibit D.

G. Releases and Bar Order

1. Upon the Effective Date, as defined above, the Plaintiffs and Claimants shall be deemed to have, and shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed all claims against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint.

2. Upon the Effective Date, the Plaintiffs and Class Members, except those who opt out of the Settlement, shall be forever barred and enjoined from commencing, instituting,

prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any claims against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint.

3. Upon the Effective Date, each of the Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the determination regarding approval or disapproval of any claim submitted.

### H. Waiver and Covenant Not to Sue

Upon the Effective Date, each of the Defendants shall be deemed to have, and shall have, fully, finally, and forever waived, released, and relinquished any claim for malicious prosecution in connection with the Litigation. Each such Defendant covenants that he or she will not institute any claim, lawsuit, arbitration, or proceeding of any nature against Plaintiffs, any Class Member, or Plaintiffs' Counsel for any act or omission in connection with this Litigation.

### I. Conditions of Settlement, Effect of Disapproval

This Settlement is subject to the following conditions:

1. This Settlement is subject to the approval of the Court as provided in Federal Rules of Civil Procedure Rule 23(e).

2. If the Stipulation is not approved by the Court, or otherwise fails to become effective in accordance with its terms and provisions, the terms and provisions of this Stipulation, with the exception of this section, shall have no further force and effect with respect to the Parties and neither this Stipulation nor any submission by any party in connection with the Motion(s) for Preliminary or Final Approval or Appeal therefrom, or any related motions or proceedings, may be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of

this Stipulation shall be treated as vacated, nunc pro tunc.

J. Miscellaneous Provisions

1. The Parties (a) acknowledge that it is their intent to consummate the Settlement set forth in this Stipulation, and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish and effectuate the terms and conditions of the Stipulation.

2. The Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement comprises claims, which are contested, and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that the terms of the settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel and with the assistance of Judge Beeler.

3. All of the exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

4. The Stipulation and the exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

5. This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties. Lead Counsel for Plaintiffs, on behalf of the Class, is expressly authorized by the Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms, and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which she deems appropriate.

6. Each attorney or other person executing the Stipulation or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

7. The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

8. This Settlement Agreement was drafted with substantial review and input by all

Parties and their counsel, and no reliance was placed on any representations other than those contained herein. The Parties agree that this Settlement Agreement shall be construed by its own terms, and not by referring to, or considering, the terms of any other settlement, and not by any presumption against the drafter.

NOW, THEREFORE, the foregoing terms are hereby STIPULATED AND AGREED, by and among the Parties, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

DATED: December 3, 2014          BOORNAZIAN, JENSEN & GARTHE
                                 A Professional Corporation


                                 By: _____
                                 GREGORY J. ROCKWELL, ESQ.
                                 Attorneys for Defendants
                                 COUNTY OF ALAMEDA, GREGORY J.
                                 AHERN, BRETT KETELES, CARLA KENNEDY,
                                 DAVID BRADY, GREGORY L. MORGADO, and
                                 KERRY JACKSON


DATED: December 3, 2014          LOZANO SMITH


                                 By: _____
                                       WILLIAM E. SIMMONS
                                 Attorneys for Defendants
                                 CITY OF OAKLAND, HOWARD JORDAN,
                                 JEFFREY ISRAEL, ERIC BRESHEARS, RON
                                 YELDER, DARREN ALLISON, STEVE TULL,
                                 EDWARD TRACEY, ANTHONY RACHAL,
                                 SEAN WHENT

DATED: Dec. 3, 2014          YOLANDA HUANG, ESQ.

By:   /s/   Yolanda Huang
 YOLANDA HUANG, ESQ.
Attorneys for Plaintiffs

STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE also known as Louise Coles,  CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, LINDSAY WEBER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ANGELL, MILES AVERY, MOLLY BATCHELDER, SRI LOUISE AKA LOUISE COLES, CICILY COOPER, SHAREEF ELFIKI, THEODORE HEXTOR, and LINDSAY WEBER, individually and on behalf of others similarly situated,<br><br>           Plaintiffs,<br>   vs.<br><br>CITY OF OAKLAND, COUNTY OF ALAMEDA, HOWARD JORDAN, JEFFREY ISRAEL, ERIC BRESHEARS, RON YELDER, DARREN ALLISON, STEVE TULL, EDWARD TRACEY, ANTHONY RACHAL, SEAN WHENT, GREGORY J. AHERN, BRETT KETELES, CARLA KENNEDY, DAVID BRADY, GREGORY L. MORGADO, KERRY JACKSON, DOES 1-250,<br><br>☐         Defendants. | Case No. C13-0190 NC<br><br><br><br>FINAL ORDER AND JUDGMENT |

## 1.  INTRODUCTION

All Parties have stipulated to settlement in the above entitled case.  The Settlement Agreement was signed October 8, 2014 and filed with the court, and then subsequently amended.  All parties have executed the amended settlement, which was filed with the Court on December 3, 2014.  The Court granted preliminary approval, the Class was notified of the settlement as provided in the Court's preliminary approval order, and a Fairness Hearing was held where the opportunity for objections was allowed.  The Class Members had previously

been provided notice of the litigation and an opportunity to exclude themselves from the Class.  (See Docket Nos. 62, 63, 66, 68, 69, 70, 72, 73, & 74.)  Pursuant to Federal Rules of Civil Procedure 23(e), and in accordance with the Settlement Agreement, the Court finds the settlement, the stipulated attorney's fees and costs, and the incentive award to the named plaintiffs, to be fair, reasonable and adequate.  Accordingly, pursuant to the stipulation of the Parties, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. This Final Order and Judgment incorporates by reference in the Settlement Agreement, which is attached hereto as Exhibit A and Incorporated by reference herein, and all capitalized terms used herein that also appear in the Settlement Agreement have the meanings set forth in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3), (4).  The court has personal jurisdiction over the Class Representatives, Defendants and the Class.

3. The Class Notice of the proposed settlement (in the printer ready form attached as Attachments # 2 to Document 70 and incorporated by reference herein) constituted the best notice practicable under the circumstances and was reasonably calculated to apprise the Class Members of the Settlement and the release of rights contained in the Settlement Agreement (Exhibit A hereto.)  Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice Provided members of the Class due and adequate notice of the Settlement, these proceedings and the rights of the Class Members to object to the Settlement.

4. Pursuant to Rule 23, this Court hereby approves the Settlement as set forth in the Settlement Agreement, and finds that the Settlement is in all respects fair, reasonable and adequate to the Class Members.  Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement (Exhibit A),  the terms of which are incorporated by reference into this Final Order and Judgment.

5. Within Fifteen (15) days of the date of this Order, the Defendants shall pay the sum of $1,360,000, to Class Counsel for distribution to the Approved Claimants, Class Representatives, and Class Counsel, as provided in the Settlement Agreement.

6. The Court finds that the payments to the Class Representatives provided in the Settlement Agreement are not unduly preferential, and the amounts are justified based on the burdens and responsibilities carried by the Class Representatives in commencing and prosecuting the Litigation, including the notoriety attendant on pursuit of the Litigation and the amount of time and effort involved, including communicating with class members regarding the Settlement Agreement and responding to direct queries and questions from class members.

7. The Court approves the payment to Class Counsel for attorneys fees and costs as provided in the Settlement Agreement, and finds that the stipulated attorneys fees and costs payment was the product of arms-length and good faith negotiations supervised by Magistrate Judge Beeler, takes into consideration the level of experience, legal expertise, efficiency of Class Counsel and all other relevant factors.

8. Pursuant to the Settlement Agreement, the Court will issue a separate order in the names of the Approved Claimants, stating that it is the determination of the Court, pursuant to

Page 3 of 4

stipulation of the Oakland defendants, that the Approved Claimants are factually innocent of all charges for which they were arrested and that they are hereby exonerated; and providing that the Oakland Police Department and the Alameda County Sheriff's Office shall seal and destroy all arrest records, police reports, investigative reports, booking information, on line data, or any other documentation or information in possession pertaining to said arrests.  [Exhibit A, §C (1)(a) thru §C (1)(d), page 7.]  And the DNA samples taken from those charged with felonies shall be withdrawn and the samples destroyed.  [Exhibit A, §C(1)(e-f), p. 8]

IT IS SO ORDERED

Dated:  April 7, 2015



GRANTED

Judge Nathanael M. Cousins

Angell, *et al.* v. City of Oakland, *et al.*
[Proposed] Final Order

**Avery, Michael 10/7/2018**
**For Educational Use Only**

Angell v. City of Oakland, 33 Trials Digest 18th 4 (2015)

---

**33 Trials Digest 18th 4, 2015 WL 4910581 (N.D.Cal.) (Verdict and Settlement Summary)**

**Copyright (c) 2018 Thomson Reuters/West**
**United States District Court, N.D. California.**

Angell v. City of Oakland

**TOPIC:**
Synopsis: Occupy Oakland protesters allege civil rights violations

Case Type: Civil Rights & Constitutional Law; First Amendment; Civil Rights & Constitutional Law; Search & Seizure;
Civil Rights & Constitutional Law; Section 1983; Class Action

DOCKET NUMBER: 3:13CV00190

STATE: California
COUNTY: Not Applicable

**Related Court Documents:**
Plaintiffs' class action complaint: 2013 WL 363380

Settlement agreement: 2014 WL 9910458

Final order and judgment: 2015 WL 3794047

Verdict/Judgment Date: April 07, 2015

JUDGE: Nathanael M. Cousins
**ATTORNEYS:**
Plaintiff: Yolanda Huang, Berkeley, CA; Daniel M. Siegel, Siegel & Yee, Oakland, CA; Anne Weill, Siegel & Yee, Oakland,
CA
Defendant (County of Alameda): Gregory J. Rockwell, Boornazian, Jensen & Garthe, Oakland, CA
Defendant (City of Oakland): William E. Simmons, Office of the City Attorney, Oakland, CA

**SUMMARY:**
Verdict/Judgment: Settlement

Verdict/Judgment Amount: $1,360,000

Range Amount: $1,000,000 - 1,999,999
$1,360,000 to plaintiff class from defendants City of Oakland and County of Alameda for damages

The settlement included $9,000 each for eight class representatives and $350,000 for attorney fees. The settlement also
included non-monetary relief, including the destruction of the arrest records and other records pertaining to the arrests of
plaintiffs and withdrawal of DNA samples.

Trial Type: Settlement

**Avery, Michael 10/7/2018**
**For Educational Use Only**

Angell v. City of Oakland, 33 Trials Digest 18th 4 (2015)

**FACTS/CONTENTIONS:**

According to court records: Plaintiffs Steven Angell, Miles Avery, Molly Batchelder, Sri Louise a/k/a Louise Coles, Cicily Cooper, Shareef Elfiki, Theodore Hector, and Lindsay Weber, on behalf of a class of similarly situated individuals, claimed that on Jan. 28, 2012, they participated in an 'Occupy Oakland' political protest demonstration to protest economic inequalities and injustice and the widespread foreclosures of homes in the city, among other things. Plaintiffs said that as they marched north on Telegraph Avenue, police officers began to attack the crowd by pushing, rushing in swinging batons, and discharging 'flash-bang' grenades and tear gas.

Eventually, plaintiffs said, the class members were corralled and surrounded by police; plaintiffs claimed the officers forced them into a shrinking space, which created a melee and caused numerous injuries to class members. The police then arrested 400 to 500 people, plaintiff claimed without probable cause, allegedly for failure to disperse, although they were given no notice or opportunity to disperse.

Plaintiffs claimed they were detained for hours while being forced to stand or sit in the street, handcuffed, denied access to toilet facilities and denied access to necessary medications. Plaintiffs also claimed they were treated poorly after they were taken to jail. Female class members were reportedly forced to take pregnancy tests; class members were reportedly held in over-crowded cells with inadequate facilities; and police offers reportedly encouraged other inmates to threaten, intimidate or attack class members. Class members claimed they were held for four days before release and claimed that even after the district attorney declined to file charges, they were transported back to jail and forced to surrender DNA samples.

Plaintiffs claimed the actions taken by police were taken to deter class members from public protest and the exercise of free speech; plaintiffs also said officers' actions violated the police department's policies. Plaintiffs also claimed they should have been cited rather than arrested and said that some class members were ultimately released without booking or citations while others were released with citations.

Plaintiffs alleged violation of the First, Fourth and Fourteenth Amendments pursuant to 42 U.S.C.A. Sec. 1983, **false arrest** and false imprisonment, violation of Cal. Civ. Code Sec. 51.7 and 52.1, violation of Article I Sec. 1 of the California Constitution and negligence against defendants City of Oakland, County of Alameda, Howard Jordan, Jeffrey Israel, Eric Breshears, Ron Yelder, Darren Allison, Steve Tull, Edward Tracey, Anthony Rachal, Sean Shent, Gregory J. Ahern, Brett Keteles, Carla Kennedy, David Brady, Gregory L. Morgado and Kerry Jackson.

**CLAIMED INJURIES:**

Not reported.

**CLAIMED DAMAGES:**

Not reported.

**SETTLEMENT DISCUSSIONS:**

Not reported.

**COMMENTS:**

According to court records: The complaint was filed Jan. 14, 2013.

Trials Digest, a Thomson Reuters/West business
JVR 1508110064

**Avery, Michael 10/7/2018**
**For Educational Use Only**

**Angell v. City of Oakland, 33 Trials Digest 18th 4 (2015)**