Barrett S. Litt, SBN 45527
Email: blitt@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Carol A. Sobel, SBN 84483
Email: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: (310) 393-3055
Facsimile: (310) 451-3858

ADDITIONAL COUNSEL LISTED
ON NEXT PAGE
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CHARMAINE CHUA, ET AL.

PLAINTIFFS,

VS.

CITY OF LOS ANGELES, ET AL.,

DEFENDANTS.

CASE NO: 2:16-CV-00237-JAK-GJS(X)
[HON. JOHN A. KRONSTADT]

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; [PROPOSED] ORDER; DECLARATIONS AND EXHIBITS

HEARING DATE: SEPTEMBER 9, 2019
HEARING TIME: 8:30 A.M.
COURTROOM: 10B

ADDITIONAL PLAINTIFFS' COUNSEL

Paul Hoffman, SBN 71244
Email. hoffpaul@aol.com
Catherine Sweetser. SBN271142
Email. catherine.sdshhh@gmail.com
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Tel. (310) 396-0731
Fax. (310) 399-7040

Colleen M. Flynn, SBN 234281
Email. cflynnlaw@yahoo.com
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 9001 0
Tel. 213 252-9444
Fax. 213 252-0091

Matthew Strugar, SBN 232951
Email. matthewstrugar@gmail.com
LAW OFFICE OF MATTHEW STRUGAR
2108 Cove Avenue
Los Angeles, California 90039
Tel: 323 696-2299

PLEASE TAKE NOTICE that, on September 9, 2019, at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 10B of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to preliminarily approve the proposed settlement in this case, and to authorize the mailing and other forms of notice to class members.

This motion is unopposed and is based on the accompanying Memorandum of Law, the stipulation of all parties to entry of the proposed Preliminary Approval Order, the proposed Preliminary Approval Order and exhibits thereto filed concurrently, the files and records in this case, and on such further evidence as may be presented at a hearing on the motion.

DATED: July 15, 2019

Respectfully submitted,
Kaye, McLane, Bednarski & Litt, LLP

By: /s/ Barrett S. Litt
Barrett S. Litt
Attorneys for Plaintiffs

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. TERMS OF THE SETTLEMENT .......... 2

III. THE STANDARDS FOR ENTRY OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN MET .......... 3

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## Federal Cases

*City of Riverside v. Rivera*
477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) .................................. 10, 12

*Cotter v. Lyft, Inc.*
176 F. Supp. 3d 930 (N.D. Cal. 2016)............................................................. 3, 9

*Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, AFL-CIO*
784 F.2d 98 (2d Cir. 1986) ............................................................................... 11

*Glass v. UBS Fin. Servs., Inc.*
2007 WL 221862 (N.D. Cal. Jan.26, 2007) ........................................................ 8

*In re High–Tech Emp. Antitrust Litig.*
No. 11–CV–02509–LHK, 2014 WL 3917126 (N.D.Cal. Aug. 8, 2014)............................................................................................................ 4, 5

*Nielson v. Sports Auth.*
No. C–11–4724–SBA, 2012 WL 5941614 (N.D. Cal. Nov. 27, 2012)................................................................................................................. 5

*Prandini v. National Tea Co.*
585 F.2d 47 (3d Cir. 1978) ............................................................................... 11

*Quesada v. Thomason*
850 F.2d 537 (9th Cir. 1988) ............................................................................ 12

*Rodriguez v. West Publishing Corp.*
563 F.3d 948 (9th Cir. 2009) .............................................................................. 7

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003) .............................................................................. 7

*Van Vranken v. Atlantic Richfield Co.*
901 F.Supp. 294 (N.D. Cal.1995)........................................................................ 8

*Weeks v. Kellogg Co.*
No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)......................................................................................................... 8

**Federal Statutes**

42 U.S.C. § 1988 ..... 3, 11, 12

**State Statutes**

Civil Code § 52.1 ..... 10

Cal. Civil Code § 52.1(i) ..... 11

Civil Code § 52.1(h) ..... 3

**Rules**

Rule 23(e) ..... 4

**Other Authorities**

*5 Newberg on Class Actions* § 15:93 (5th ed.) ..... 6, 11

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

This action arises out of the actions by Defendants surrounding a protest on November 26, 2014, in or around the vicinity of Sixth and Hope Street in Los Angeles over the decision not to file criminal charges for the killing of Michael Brown in Ferguson, Mo. Plaintiffs allege that Defendants unlawfully declared an unlawful assembly, unlawfully and unjustifiably arrested Plaintiffs and unlawfully denied Plaintiffs release from custody on their own recognizance ("OR") regarding the and the attendant arrest, detention and release of Plaintiffs.

The Court entered its final class certification order certifying a damages class for the Sixth and Hope protestors on May 25, 2018. Dkt. 50. It denied without prejudice certification for an injunctive relief class and did not certify a class for the Beverly and Alvarado detention (leaving one individual plaintiff, Kyle Todd, for that claim). *Id*.

The parties held three in-person mediation conferences before Magistrate Judge Jay Gandhi, two while he was still on the bench and one after, which did not result in a settlement. After Plaintiffs filed their motion for general damages and expert reports were exchanged, the parties had a one-on-one negotiation, which resulted in the instant proposed settlement, subject to the approval of the Court. Declaration of Barrett S. Litt (hereafter "Litt Dec."), ¶ 4. The proposed settlement has now been agreed to by all parties, including approval by the Los Angeles City Council. To minimize the class administration costs, Plaintiffs decided it would be more efficient for the class administration to be handled by the Law Office of Carol Sobel for a flat fee of $20,000, which would be less expensive by approximately $10,000 than hiring a professional administrator. Litt Dec.", ¶ 10. In other protest cases that the same Plaintiffs' counsel have done, while they have used a professional administrator, Ms. Sobel did much of the outreach due to her

relationship with class members from having acted as counsel for the protest organizers and addressing issues of getting the arrestees released at the time.

## II. TERMS OF THE SETTLEMENT

The terms of the settlement are set forth in greater detail in the exhibits attached to the Proposed Preliminary Approval Order (specifically in the Settlement Agreement), which exhibits are as follows:

| | |
|---|---|
| Exhibit A | Settlement Agreement |
| Exhibit B | Proposed Class Notice |
| Exhibit C | Claim Form |

In summary, the class settlement's basic terms, subject to court approval, are as follows:

a. A class fund of $255,010 to be paid as follows:

i. expert costs (totaling $20,210) to be paid to the Client Trust Account of the Law Office of Carol Sobel;

ii. mediation costs (totaling $5500) to be paid to the Client Trust Account of the Law Office of Carol Sobel;

iii. incentive awards to the three class representatives of $5000 each to be paid to the Client Trust Account of the Law Office of Carol Sobel (for a total of $15,000);

iv. class administration costs of a flat fee of $20,000 to be paid to the Law Office of Carol Sobel, inclusive of all cost of mailing and reporting[1]; and

---

[1] Ms. Sobel has agreed to do this in order to minimize the cost of class administration, as her office has been in contact with many class members, and this amount is considerably less than what would be paid to a professional administrator. In Plaintiffs' counsel's experience, the cost of class administration of a class this size would likely be in the $30,000 range. Ms. Sobel's office has performed this service in other cases before the District Court and has assisted in maximizing class participation in still other cases where an outside firm was retained to administer the class fund.

v. $200,000 for distribution pro rata to claiming class members to be paid to the Client Trust Account of the Law Office of Carol Sobel.

b. $484,290 (inclusive of $7,163.27 in litigation costs other than the expert, mediation and class administration costs) as compensation for statutory attorney's fees and costs (subject to the approval of the court), to be paid to the Client Trust Account of the Law Office of Carol Sobel, and to be the subject of a separate motion for attorney's fees pursuant to 42 U.S.C. §1988 and Civil Code §52.1(h). For purposes of this motion, Defendants agree that Plaintiffs are the prevailing party under the foregoing statutes for a motion pursuant to this settlement and further agree that $476,801.93 (the portion of the fees and costs constituting fees) is substantially discounted below the amounts that Plaintiffs would have sought in an attorneys' fee motion as the prevailing parties in a contested motion. Plaintiffs' motion for attorneys' fees will include the full amount of fees and costs that would be available without the limitation of this agreement, but it is agreed that in no event will more than $484,290 in fees and costs be awarded.

c. $5000 to Todd Kyle as compensation for his individual claim paid to the Client Trust Account of the Law Office of Carol Sobel.

The proposed Preliminary Approval Order assumes entry of the order no later than August 19, 2019. If an order is not entered by that time, the dates will have to be extended. The draft preliminary approval order indicates the time needed between the various events if the times do need to change.

## III. THE STANDARDS FOR ENTRY OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN MET

The following from the court in *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) well explains the preliminary approval inquiry:

"District courts have interpreted Rule 23(e) to require a two-step process for the approval of class action settlements: 'the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.' " *In re High–Tech Emp. Antitrust Litig.*, No. 11–CV–02509–LHK, 2014 WL 3917126, at *3 (N.D.Cal. Aug. 8, 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D.Cal.2004)). At the final approval stage, it is well-established that the Court must balance the following non-exhaustive factors to evaluate the fairness of the proposed settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon,* 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

It is less clear what factors should guide the Court's evaluation of the proposed settlement at the preliminary approval stage. "Some district courts ... have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.' " *In re High–Tech Emp. Antitrust Litig.,* 2014 WL 3917126, at *3 (quoting *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)) (citing *Cordy v. USS– Posco Indus.,* No. 12–553, 2013 WL 4028627, at *3 (N.D. Cal. Aug. 1, 2013)). In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Id.* (quoting *In*

*re Nat'l Football League Players' Concussion Injury Litig.*, 961 F.Supp.2d 708, 714 (E.D. Pa. 2014)); *see also Nielson v. Sports Auth.*, No. C–11–4724–SBA, 2012 WL 5941614, at *6 (N.D. Cal. Nov. 27, 2012). Determining whether the settlement falls in the range of reasonableness also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount. *See In re High–Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *4.

The standards for entry of a preliminary approval order have been similarly summarized in *Newberg on Class Actions* as follows:

> [T]the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase. Some courts go so far as to state that a proposed settlement is 'presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise.' Nevertheless, most courts will not simply "rubber-stamp" a motion for preliminary approval, and review is more than "perfunctory."
>
> "Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is '"probable cause" to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness.' More specifically, courts will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.' Courts in most circuits use some variation of this test. The test

> grew out of a statement in an early version of the *Manual for Complex Litigation* calling for approval if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval.' Many courts continue to utilize that phrasing of the test.
>
> …
>
> "The general test—holding that a settlement will be preliminarily approved if it 'is neither illegal nor collusive and is within the range of possible approval'—contains both procedural and substantive elements. The procedural element focuses on the nature of the settlement negotiations and the possibility of collusion, while the substantive element focuses on the terms of the agreement itself. …".

*Newberg on Class Actions* §13:13 (5th ed.) (footnote references and footnotes omitted).

Applying the factors for preliminary approval, this case qualifies for such approval. The following facts are uncontested or stipulated to in the parties' accompanying stipulation for purposes of the settlement and pleadings related to it:

1. The settlement terms were negotiated at arms' length with the assistance of an experienced mediator and jurist, now retired Magistrate Judge Jay Gandhi, after three in person mediation sessions and one subsequent direct party to party negotiation. Litt Dec., ¶ 4.
2. This case was litigated extensively and vigorously. Plaintiffs conducted extensive discovery, both documents and numerous depositions. They also gathered substantial third-party evidence. They retained experts regarding the propriety of the police actions,

reenactment of the audibility of the police unlawful assembly announcement and general damages. Litt Dec., ¶ 5.

3. There were arms' length negotiations and no collusion, as evidenced by the extensive discovery and mediation process. (See Litt Dec. ¶¶ 4,5.)

4. The proposed settlement provides a slight benefit to the class representatives ($5,000 in addition to their class member formula award). Carol Sobel's Declaration describes in some detail the contributions made by the Class representatives to the successful resolution of the case. See Sobel Dec., ¶¶ 18-21. The proposal for incentive awards was at Class Counsel's initiative, and no discussion or agreement regarding incentive awards occurred with the Named Plaintiffs until the proposed settlement was reached. The proposed incentive awards to each Named Plaintiff reflects counsel's assessment of the value of their contributions to the case, the risk taken by them and the size of the settlement. Litt Dec., ¶ 7.

5. Plaintiffs proposal for $5,000 for each of the three class representatives satisfies the considerations in determining the reasonableness of incentive awards. These figures are well within the range of acceptable incentive payments to class representatives for which the Court has discretion in recognition of work done on behalf of the class and in consideration of the risk undertaken in bringing the action. *See, e.g., Rodriguez v. West Publishing Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir.

2003) (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable). "An incentive award of $5,000 per class representative is in line with other awards approved in this circuit." *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *37 (C.D. Cal. Nov. 23, 2013). Substantially larger incentive awards have been approved. *See, e.g., Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *16 (N.D. Cal. Jan.26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal.1995) (awarding $50,000 to a lead plaintiff). Plaintiffs will more fully brief this issue in connection with the final approval order and address it here only to demonstrate that this is appropriate. The Class Notice will advise class members of this proposed incentive award, thereby allowing them the opportunity to object to it.

6. The recovery for class members is substantial, especially when viewed from the perspective of the trial risks. Given the class size of approximately 140, and the class fund of $200,000, the minimum recovery per class member is approximately $1425. Given that not all class members will file claims, the likely recovery per class member (assuming an 80-85% claims rate) is approximately $1700. While this is lower than amounts in some comparable cases, this case carried greater risk. Defendants claimed that the unlawful assembly order was justified and audible, and claimed that they did not deny OR release but rather needed the time to process the arrestees before releasing them. While Plaintiffs believed they had a strong claim, they considered this claim to be considerably more subject to dispute than other cases they handled. Plaintiffs' counsel concluded that a recovery

of between $1500-$2000 per class member is a fair settlement given the disputed nature of the claim and that all class members were released within 18 hours (in contrast to longer detentions in other cases). Litt Dec. ¶ 9.

7. Counsel did not send this case out for bid to individual professional class administrators but instead decided to have the class administration handled by Ms. Sobel's office. In our previous protest cases, where we have used professional class administrators, Ms. Sobel has ended up engaging in substantial independent outreach to class members because of her role in representing the protest organizers preceding and during the protests, as a result of which she has built substantial relationships with many protest organizers and activists in the Los Angeles area. In my recent experience in settling several class actions over the past few years, in each of which professional class administrators were retained, the minimum cost of a professional administrator, no matter how small the class size, is $30,000 or more. We have agreed instead that Ms. Sobel will do the class administration for $20,000. This is advantageous to the class because it is a lower cost than for a professional administrator and advantageous to Ms. Sobel because she will receive some compensation for her work in reaching class members whereas her similar work in other cases went completely uncompensated. Accordingly, we request that the Court appoint the Law Office of Carol Sobel as class administrator. Litt Dec. ¶ 10.

Examining what the *Cotter* Court looked to as the most important factor to consider ("plaintiffs' expected recovery balanced against the value of the settlement offer"), the proposed settlement is a fair and reasonable settlement. The likely maximum recovery here was in the $4000 range if statutory damages

were awarded under Civil Code § 52.1, but the applicability of §52.1 to claims such as these is hotly disputed, has been the subject of considerable legal debate, and its contours are not yet clearly set. Absent statutory damages, if the court had allowed classwide general damages, the likely recovery was $2000-$5000 (although it is somewhat difficult to predict). In the absence of statutory or general damages, and without a settlement, class members would have been left to pursue relatively modest damages claims individually, in which the attorney's fees would likely have exceeded individual damages by a greater ratio than in *Rivera, supra.* An additional factor driving settlement from Plaintiffs' perspective is that, even if Plaintiffs were successful at trial, this case could have spread out over several years litigating individual damages claims and defending a potential appeal.

Given all of these factors, it was the judgment of Plaintiffs' counsel that the settlement represents a fair compromise reflecting "plaintiffs' expected recovery balanced against the value of the settlement offer." Accordingly, the proposed settlement is certainly "within the range of possible approval." (*Newberg*, *supra*.)

## IV. ATTORNEYS' FEES

Attached to this motion as Exhibit D are the summaries of fees and costs and other information required by §10(e)(i) of this Court's Standing Order For Civil Cases. Those materials include 1) a spreadsheet establishing the time spent on the case to date by each biller, organized as indicated by Exhibit G to the foregoing standing order; 2) an estimate of future attorneys' fees that the agreed upon attorneys' fee will include; 3) Plaintiffs' normal hourly rate as well as the hourly rates that will actually be realized (which are substantially below what Plaintiffs' counsel consider their normal hourly rate); and 4) preliminary Declarations from Class Counsel Carol Sobel and Barrett S. Litt supporting the requested award including demonstrating the exercise of billing judgment in the hours claimed. The full fee detail is not included in the preliminary approval materials but will be in

the motion for attorneys' fees to be filed and to which class members will have the right to object.

These tables reflect the work in this case through July 9, 2019 for Mr. Litt's firm and through December 31, 2018 for the other attorneys. The hourly rates used are supported by the Declarations of Class Counsel Carol Sobel and Barrett S. Litt, both of whom have been recognized by various courts as experts on attorneys' fees. See Sobel Dec., ¶¶ 35, 38 and Litt Dec., ¶¶ 18,19. The request for fees here is not for a fee award out of the Class Fund, but for a statutory fee under 42 U.S.C. §1988 and Cal. Civil Code §52.1(i).[2] Because this is a class action, Plaintiffs' counsel will be filing a full attorneys' fee motion, and class members will have the opportunity to object, Plaintiffs' counsel do not submit their full presentation in support of fees at this time. However, in light of the Court's Standing Order, they do provide rate support in the Sobel and Litt Declarations and attachments.

The agreed-upon attorneys' fee award, subject to court approval, reflects a substantial discount from what Plaintiffs' counsel would have sought and would reasonably expect to be awarded as statutory attorneys' fees. Litt Dec., ¶ 38. While the fees are higher than the Class Damages Fund, that is not surprising in a civil rights class action where the size of the class and the extent of damages was relatively small compared to other protest class actions in which Plaintiffs' counsel

[2] Although it is immaterial in this context, since the requested fees are well below lodestar, such statutory fees include fees on fees in contrast to fees drawn from the Class Fund. *See, e.g., Prandini v. National Tea Co.*, 585 F.2d 47, 53, (3d Cir. 1978) (explaining that, because the class action fee request there was for a statutory fee award and not for fees drawn from a common fund, the attorneys were due compensation for the work spent litigating the attorney's fees); *Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986) (allowing for fees-on-fees in a class action fee-shifting case but carefully distinguishing it from common fund case); *5 Newberg on Class Actions* §15:93 (5th ed.) (Applying the lodestar method in common fund cases—Time spent advocating for fees ("fees-on-fees")),

have been involved. The agreed-upon attorneys' fee award, subject to court approval, reflects a substantial discount from what Plaintiffs' counsel would have sought and would reasonably expect to be awarded as statutory attorneys' fees. Litt Dec., ¶ 38. The basis for the fee claim here is statutory attorneys' fees, which (unlike percentage of the fund class awards) are not correlated to the size of the plaintiffs' recovery, and look to the reasonable hours and rates and the public benefit that resulted from the litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466 (1986), (quoting S.Rep. No. 94-1011, p. 6 (176), reprinted in, U.S. Code Cong. & Admin.News 1976 pp. 5908, 5913 ("[b]ecause damage awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief. Rather, Congress made clear that it 'intended that the amount of fees ... not be reduced because the rights involved may be nonpecuniary in nature.' ") (emphasis added by Supreme Court)). As a result, "[e]ven in cases seeking only monetary relief, 'a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damage awards.' *Id*. [*Rivera*] at 2694. Therefore, it is inappropriate for a district court to reduce a fee award below the lodestar simply because the damages obtained are small. Permitting such reductions would create an incentive to bring only those civil-rights cases that would produce large damage awards. This incentive conflicts with the purposes of section 1988. *See id.* [*Rivera*] at 2695-97." *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988).

Mr. Litt's Declaration also explains that, based on his prior experience in settling numerous class actions, Class Counsel anticipate that an additional 50-125 hours (exclusive of class administration) will be spent between the attorneys' fee motion, dealing with certain class issues or class member inquiries, responses to objections if there are any, and the final approval motion and final approval order. Litt Dec., ¶ 40. It is not possible to be more accurate because of unknown

circumstances that may arise, and the varying time needed depending on the existence and state of objections. In addition, because the fee information for the other firms is not fully up to date, the final tally of time will include that.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court preliminarily approve the settlement, and sign the proposed Preliminary Approval Order (with any revisions the Court deems necessary). That Order contains dates that have been worked out among the parties. They assume that the order will be entered by September 9. If it is later, the dates may need to be modified to allow sufficient time to follow the schedule.

DATED: July 12, 2019

Respectfully submitted,
KAYE, McLANE, BEDNARSKI & LITT, LLP

By: /s/ Barrett S. Litt
Barrett S. Litt
Attorneys for Plaintiffs