**Exhibit 2**

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

2019 WL 1109683
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

[Dan MCKIBBEN](#), et al.
v.
John MCMAHON et al.
Case No. EDCV 14-2171 JGB (SPx)
|
Filed 02/28/2019

Attorneys and Law Firms

Amanda C. Goad, Aditi Fruitwala, [Melissa A. Goodman](#), [Peter J. Eliasberg](#), ACLU Foundation of Southern California, Los Angeles, CA, [Barrett S. Litt](#), [David S. McLane](#), [Lindsay Battles](#), [Ronald O. Kaye](#), Kaye McLane Bednarski and Litt LLP, Pasadena, CA, Brendan M. Hamme, ACLU of Southern California, Santa Ana, CA, for Dan McKibben, et al.

[Susan E. Coleman](#), [Nathan A. Oyster](#), Burke Williams and Sorensen LLP, Los Angeles, CA, for John McMahon et al.

Proceedings: Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 86); and (2) GRANTING Plaintiffs' Motion for Final Approval of Class Settlement (Dkt. No. 90) (IN CHAMBERS)

[JESUS G. BERNAL](#), UNITED STATES DISTRICT JUDGE

*1 On January 18, 2019, Plaintiffs[1] Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford[2], Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt (collectively, "Plaintiffs" or "Named Plaintiffs") filed a Motion for Final Approval of Class Settlement. ("MFACS," Dkt. No. 90.) On November 7, 2018, Plaintiffs moved for attorneys' fees and costs. ("MAF," Dkt. No 86.) These matters are unopposed. The Court held a hearing on these matters on February 11, 2019. Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiff's MFACS and GRANTS Plaintiffs' MAF.

| | |
|---|---|
| [1](#) | Plaintiff Dan McKibben passed away while this lawsuit was pending, and is not listed as a Plaintiff. His name is still used as the Case Name. |
| [2](#) | At the February 11, 2019 hearing, Plaintiffs' Counsel reported that Christopher Crawford passed away while this motion was pending. |

I. BACKGROUND

On May 20, 2015 Plaintiffs filed a Second Amended Complaint against Defendants Sheriff John McMahon, Greg Garland, Jeff Rose, Sergeant James Mahan, Corporal Armando Castillo, the County of San Bernardino ("the County"), and San Bernardino Sheriff's Department ("SBCSD") (collectively "Defendants"). ("SAC," Dkt. 37.) Plaintiffs sue each individual defendant in both his individual and official capacity. (Id.) Plaintiffs allege three causes of action: (1) violation of [42 U.S.C. § 1983](#) for depriving Plaintiffs of equal protection afforded by the 14th Amendment based on sexual orientation, gender identity, and gender; (2) violation of [Cal. Civ. Code § 52.1](#) for interfering with Plaintiffs' rights to equal protection under the California Constitution; and (3) injunctive relief under [Article 1, § 7 of the California Constitution](#) and violation of Cal. Govt. Code § 1135(A) by the County, SBCSD, and McMahon. (Id.)

On August 15, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. On September 10, 2018, the Court granted the preliminary approval of this class action settlement and granted conditional certification of the proposed settlement classes. ("Preliminary Approval Order," Dkt. No 84.) In the Preliminary Approval Order, the Court ordered:

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the settlement class.

2. The following settlement classes are certified for settlement purpose only:

a. <u>Damages Class:</u> Individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) were gay, bisexual, and/or transgender inmates housed in the Alternative Lifestyle Tank of the San Bernardino County Jail facility known as West Valley Detention Center.

*2 b. <u>Injunctive Relief Class:</u> Individuals who currently are, or in the future will be, gay, bisexual, and/or transgender inmates housed in the San Bernardino County jails, including but not limited to those housed in the Alternative Lifestyle Tank.

3. Barrett S. Litt, David McLane, and Lindsay Battles of Kaye, McLane, Bednarski & Litt, and Melissa Goodman, Amanda Goad, Brendan Hamme, and Aditi Fruitwala of the ACLU Foundation of Southern California are appointed as class counsel for purposes of settlement only.

4. Named Plaintiffs Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford, Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt are qualified to act as representatives of the settlement classes and are preliminarily appointed as class representatives.

5. JND Legal Administration is appointed as the settlement administrator.

6. The settlement notice, as set forth in Exhibit B to the Settlement Motion, is approved in form and substance for use in the administration of the Settlement Agreement. The Court grants the parties the authority to finalize the contact information, website address, response dates, and fairness hearing dates in accordance with this Order.

7. JND Legal Administration is directed to mail the notice and claim form to all individuals entitled to receive notice within two weeks of this Order.

8. Settlement class members will have until January 7, 2019 to file a claim, opt-out, or file an objection to the Settlement Agreement.

9. The final approval hearing will be scheduled for February 11, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(<u>Id.</u> at 19-20).

II. THE SETTLEMENT AGREEMENT

Plaintiffs filed a Settlement Agreement on August 15, 2018. ("Settlement Agreement," Dkt. No. 78.) The Court preliminarily approved the Settlement Agreement on September 10, 2018. (Preliminary Approval Order.) The terms of the Settlement Agreement are discussed below.

A. Settlement Classes
The settlement classes for the purposes of the settlement of this case include both a Damages Class and an Injunctive Relief Class.

The Damages Class includes "individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

month in which the settlement was reached in principle) self-identified as gay, bisexual and/or transgender inmates ("GBT inmates") housed in the Alternative Lifestyle Tank ("ALT") of the San Bernardino County Jail facility known as West Valley Detention Center ('WVDC')." (Settlement Agreement § 1, ¶ 10.)

The Injunctive Relief Class includes "individuals who currently are, or in the future will be, GBT inmates housed in the San Bernardino County jails, including but not limited to those housed in the ALT." (Id. § 1, ¶ 18.) The finalized class list consisted of 660 individuals. ("Keough Declaration," Dkt. No. 92 ¶ 4.)

B. Release
All settlement class members agree to release their claims as follows:

*3 The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons[3] by all of the SCMs,[4] including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the complaint, as well as any claim regarding the bus transportation of transgender inmates (hereafter "Covered Claims").

When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further,

as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

...

Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

(Settlement Agreement § VI, ¶¶ 21-23, 45.)

| | |
|---|---|
| [3] | Released Persons refers to: Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of San Bernardino County, including John McMahon, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons. (Settlement Agreement § II, ¶ 26) |
| [4] | SCMs stands for "Settlement Class Member," which refers to: [A]ny member of the Damages class as defied above (whether or not s/he files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement. (Settlement Agreement § II, ¶ 28.) |

C. Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

- Gross settlement amount ("Class Fund"): $950,000.00

- Expert, consulting, mediation costs $36,304.49

- Settlement administration costs: $37,500.00[5]

- Service award to class representatives: $55,500.00[6]

- Net settlement amount: $818,195.51

- Attorneys' fees and costs: $1,100,000.00[7]

(MFACS at 3.)

| [5] | The Settlement administration cost here differs from the cost listed in the Preliminary Approval because the County has already paid a $2,500 deposit to the Claims Administrator. |
|---|---|
| [6] | This amount differs from the amount listed in the Settlement Agreement because Plaintiff Christopher Crawford passed away and will no longer receive a Service Award. The net settlement amount is also adjusted to reflect this change. |
| [7] | Attorneys' fees and litigation costs (excluding mediation and expert costs) are included in a request for attorneys' fees separate from the settlement amount. (Settlement Agreement ¶ 30.) |

*4 The Class Fund is non-reversionary. (Settlement Agreement § IV, ¶ 11.) However, if 11 to 24 Damages Class members opt-out of the class, Defendants will receive a credit against the Class Fund based on the amount each individual opt-out was due under the initial formula. (Settlement Agreement § XI, ¶ 48.) The credit is not available if 10 or fewer Damages Class Members opt-out. (Id.) If 25 or more Damages Class members or any Named Plaintiffs opt-out, Defendants have the option to use the same credit formula or rescind the Settlement Agreement. (Id. § XI, ¶ 49.) No damages class members opted out of the settlement. (Keough Decl. ¶17.)

1. Damages Class Members

Each Damages Class member is eligible to receive payment. Individual settlement amounts to class participants are paid from the net settlement amount. The portion of the net settlement amount payable to each Damages Class participant will be calculated through a points-based formula. (Settlement Agreement § IV, ¶¶ 8-9.) The total points for each participant will be added together, and each participant's recovery will be a percentage of the net settlement amount based on that class member's percentage of the total points for participants making timely claims. (Id. § IV, ¶ 9.) In addition to this formula, there is a recovery floor of $40 per participant and a recovery ceiling of $10,000 per participant. (Id. § IV, ¶ 10.) This recovery ceiling "is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining class members. (Such outliers would be entitled to opt out and pursue their own claims if they so chose.)" (Id.)

The formula to calculate the points each Damages Class member receives is designed to account for the fact that the severity of the challenged conditions varied over time and depended on an inmate's sentencing status, security classification, and work eligibility. (MFACS at 5-6.) Those Damages Class members who were low security risks were more adversely affected by the challenged conditions because they would have received more out-of-cell time than inmates deemed a higher security risk. (Id.) Additionally, all Damages Class members were denied access to certain programs whose availability varied based on sentencing status and work eligibility. (Id.) Finally, the challenged conditions before October 14, 2014 were more restrictive and receive higher point values than conditions after October 14, 2014. (Id.) Based on these considerations and others addressed in the Settlement Motion, Plaintiffs divide these confinement conditions into nine categories and assign point values depending on their relative severity. (Settlement Agreement § IV, ¶ 8.) Points are assigned for each day a Damages Class member was incarcerated in a given category and aggregated. (Id.) Below are the nine per diem categories and corresponding point values:

- Category 1: Sentenced, work-eligible (Pre-October 2014) 100

- Category 2: Sentenced, not work-eligible (Pre-October 2014) 60

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

- Category 3: Pre-sentenced, lower security risk (Pre-October 2014) 55

- Category 4: Pre-sentenced, higher security risk (Pre-October 2014) 45

- Category 5: Pre-sentenced, unknown security risk (Pre-October 2014) 45

- Category 6: Sentenced, work-eligible, no job (Post-October 2014) 65

- Category 7: Sentenced, work-eligible, inferior job (Post-October 2014) 50

- Category 8: Sentenced, not work-eligible (Post-October 2014) 35

- Category 9: Pre-sentenced (Post-October 2014) 20

(Id. § IV, ¶ 8.)

As of the time of the MFACS, Claim Forms from 165 class members have been approved. (MFACS at 3.) This represents approximately 25% of the total 655 class members. (Id. at 11) Based on this number, the mean recovery is $4,000-$5,000. (Id.) On February 7, 2019 Plaintiffs filed a notice of additional late claims. ("Late Claims Notice," Dkt. No. 94.) Counsel has been made aware that two claims were filed after the January 7, 2019 cut-off date and that additional class members were incarcerated and did not receive the Class Notice. (Id.) As of February 4, 2019, the Claim Administrator has received ten additional claims. (Id.) Plaintiffs request this Court approve the payment of these ten late claims and any claims postmarked as of February 11, 2019. (Id.) Additionally, class representative Frederick Crockan has attempted to file his claim on multiple occasions, but his claim forms have not been received by the Class Administrator. (Id.) Plaintiffs request the Court deem Crockan to have filed a timely claim. (Id.) Further, Mr. Joe Raymond Fierro, a verified class member, never received a claim form. ("Additional Late Claim Notice," Dkt. No. 95.) Plaintiffs request the court deem Mr. Fierro to have timely filed a claim. (Id.) At the February 11, 2019 hearing Defendants represented they do not oppose this request. Finally, on February 22, 2019, Counsel filed an ex parte application regarding the late filing of Andrew Afoa, who, due to no fault of his own, never received a claim form prior to the cut-off date. (Dkt. No. 98.) Counsel notes Defendant's counsel has no objection to the ex parte application. (Id.) The Court APPROVES these requests.

2. Class Representatives
*5 The Settlement Agreement provides a total of $55,500 of the gross settlement amount to the Named Plaintiffs. (Settlement Agreement § IV, ¶ 3.) There are 14 Named Plaintiffs, and each would receive between $2,000 to $5,500 depending on counsel's assessment of their contributions to the litigation. (Id.) The Settlement Agreement proposes exact amounts for each of the Named Plaintiffs in paragraph 3.

3. Settlement Administration Costs
The settlement administrator, JND Legal Administration ("JND" or "Administrator"), will be paid from the gross settlement amount. (Id. § IV, ¶ 2.) Class counsel requested bids and selected the most reasonable bid based on price, scope of services, and capabilities of the administrator. (Id. § IX, ¶ 31.) In its bid JND estimated the administration to have a maximum of $40,000. (Id. § IV, ¶ 2.) The cost of administration totaled the $40,000 indicated in the Settlement Agreement. (MFACS at 3; Keough Decl. ¶ 22.) At the February 11, 2019, Defendants counsel informed the Court that the County has already paid $2,500 of the total Claims Administration cost as a deposit, making the outstanding total $37,500.

4. Attorneys' Fees and Costs
Class counsel seeks an award of attorneys' fees separate from the gross settlement amount. (Settlement Agreement § IV, ¶ 12.) Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide attorneys' fees for prevailing plaintiffs. (See MAF at 2.) This amount was

independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion. (Id. at 12; Settlement Agreement § IV ¶ 13.)

D. Injunctive Relief
The Settlement Agreement also provides for injunctive relief over a three-year period. (MFACS at 16, "Injunctive Relief Agreement," Dkt. No 90-2 at 15.) The terms of the injunctive relief are detailed in Exhibit 2 and include the development of policies not yet drafted. (Id. at 16.) Defendants estimate the resources associated with these Injunctive Terms will be approximately $500,000 per year. (Id.)

There are nine parts to the proposed Injunctive Terms: (1) create the PREA-GBTI Committee ("the Committee")[8]; (2) establish policies for Housing and Classification Issues; (3) establish inmate worker options for GBTI inmates; (4) require access to programming; (5) require equal tier time for GBTI inmates; (6) require training on GBTI, PREA, and sexual harassment issues for staff, contractors, volunteers, and other inmates; (7) require specific policies for transgender inmates; (8) establish a zero-tolerance policy for harassment and ensuring PREA compliance; and (9) establish procedures to enforce the Settlement Agreement. (See generally "Injunctive Terms," Dkt. No 78-3.)

[8] "PREA" refers to the Prison Rape Elimination Act, and "GBTI" refers to individuals who are gay, bisexual, transgender, or intersex.

Importantly, these terms include provisions to ensure that GBTI inmates have comparable access as their peers in general population to programming, education, religious services, tier time, and work. Additionally, the terms provide for housing that considers an inmate's sexual orientation and gender identity when making assignments, and considers a GBTI inmate's preferences. Finally, the terms provide specific policies needed to address the needs of transgender inmates, including housing assignment, choice as to the gender of deputies performing searches, and access to hormonal medication to treat gender dysphoria. (See generally Injunctive Terms; see also MFACS at 14.)

*6 The complete text of the Injunctive Terms is available at Dkt. No. 78-3.

E. Notice
The Settlement Agreement proposed the following procedure to notify the settlement class members of the Settlement Agreement. The Administrator will be responsible for mailing class notice and the claim form to class members at their last known address. (Settlement Agreement § IX, ¶ 32.) The Administrator will use customary means to search for the last known address and do "whatever else is reasonably appropriate in order to reasonably notify Class Members ...." (Id.) Additionally, Defendants will post a summary notice in the ALT for the duration of the class notice period with a statement that the full notice will be provided on request. (Id.)

The class notice describes the particulars of this case, provides the class definition, provides information for claimants to contact the Administrator, notifies the Damages Class members of the case website, and contains a series of questions and answers to help explain the Settlement Agreement. (Id. ¶ 34; see also "Class Notice," Dkt. No. 81-2.) The Administrator will mail the class notice as soon as practicable after preliminary approval. (Settlement Agreement § IX, ¶ 35.) The Administrator will include in the physical mailing a claim form. (Id. § X, ¶ 37.) In addition to physical mail, the Administrator will also gather, to the extent reasonably possible and cost effective, email addresses of class members. (Id. § IX, ¶ 36.) A claim form will be timely submitted if it is received before the cutoff date, which Plaintiffs propose should be January 7, 2019. (Proposed Order at 3.) If a class member submits a deficient claim form the Administrator will provide mail notice of the deficiency and give the class member 30 days to provide a proper form. (Settlement Agreement § X, ¶ 39.) If the original form is received before the cutoff date, the corrected claim will still be considered timely. (Id.)

A class member who wishes to opt-out of the Damages Class must submit a request to be excluded to the Administrator before the cutoff date. (Id. § XI, ¶ 43.) Class members who do

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

not timely opt-out of the Damages Class are deemed to have participated in the settlement and will be bound by the Settlement Agreement and all subsequent proceedings, even if s/he did not file a claim form. (Id. ¶ 45.)

F. Performance of the Settlement Agreement
JND Legal Administration is serving as the settlement administrator. (Settlement Agreement IX, ¶ 31.) The Administrator received 165 approved Claim Forms from individuals identified as Settlement Class Members. (Keough Decl. ¶ 21.) Four Claim Forms have been denied as duplicative. (Id.) 382 Claim Forms were submitted by individuals who do not appear on the Class List. (Id.) Two Claim Forms were missing signatures or other required information and were deemed deficient. (Id.) An additional two Claim Forms were received as of January 14, 2019 with postmarks dated after the January 7, 2019 deadline. (Id.) The claims administrator has received a total of 555 claims to date. (Id.) On February 7, 2019, Plaintiffs filed a Late Claim Notice informing the Court that 10 late claims were filed. (Late Claims Notice.) The Court granted Plaintiffs' request to approve the payment of these late claims. See supra Part II.C.1.

III. Legal Standard

A. Class Action Settlement

*7 Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

B. Attorneys' Fees
Class Counsel also requests approval of its request for attorneys' fees. In the Ninth Circuit, the court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel. See, e.g., Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); In re Washington Pub. Power Supply Sys. Sec. Lit., 19 F.3d 1291, 1295 (9th Cir. 1994). When a statutory fee is available, such a statutory fee award is appropriate independent of the class damages fund. See Staton v. Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003) ("in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, ...[and] the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles"). Here, a statutory fee is available under both 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized..." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. Staton 325 F.3d at 965. Statutory attorneys' fees are not correlated to the size of recovery but instead look to the

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

attorneys' reasonable hours and rates, as well as the public benefit conferred by the litigation. See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

### IV. Rule 23 Requirements

#### A. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Settlement Classes in this matter under Rules 23(a) and 23(b)(2) and (3). (Preliminary Approval Order at 3–8.) Accordingly, the Court "need not find anew that the settlement class[es] meet[ ] the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified ... a Rule 23(b)(3) class ... [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Classes have not changed since they were conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Classes.

#### B. Rule 23(c)(2) Notice Requirements

*8 Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to Settlement Class members. The claims administrator timely mailed the Notice Packet, provided e-mail notice, established a toll-free number to provide information on the settlement, created a settlement website, and advertised the settlement on the internet through Facebook. (Keough Declaration ¶¶ 7–15.) The Court therefore finds that notice to the Settlement Class was adequate.

#### C. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [ Rule 23(e) ] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on February 11, 2019. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

1. Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Plaintiffs considered their liability case to be strong, especially since California expressly applies strict scrutiny to claims of sexual orientation discrimination. (MFACS at 9.) However, Defendants similarly believe they have a strong defense in asserting that Plaintiffs made voluntary and informed decisions to be housed in the ALT. (Id.) Additionally, Defendants contest that a proper comparison for GBT inmates are general population inmates, and instead assert that protective custody inmates are the proper comparison group. (Id.)

Given the challenges Plaintiffs would face in continued litigation over such issues, the Court finds this factor weighs in favor of approval.

2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs' counsel acknowledges the risk, expense, and likely duration of litigation. (MFACS at 10-11.) Plaintiffs anticipate that even with what they perceive to be strong claims, litigation would take several years. (Id.) This would also greatly increase the costs of litigation. At this stage, Plaintiffs' counsel already seek $1,100,000 in attorneys' fees and costs, and at a substantially discounted rate. (Id. at 7.) Stretched over years of potential litigation, this sum would be substantially larger.

*9 The risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of final approval.

3. Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 445 (E.D. Cal. 2013); see also In re Veritas Software Corp. Sec. Litig., No. 03–0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007) ) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

4. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000).

In valuing this litigation, Plaintiffs' Counsel estimated each class members would recover a few thousand dollars. (MFACS at 9.) Under this Settlement, the average recovery for claiming class members is $4,000-5,000. (Id.) Additionally, Plaintiffs' Counsel considers the monetary recovery highly favorable when compare to other class actions for damages in the jail context involving over-detentions and strip searches. (Id. at 10.)

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

Plaintiffs also believe that the Injunctive Terms contribute significant additional value. (Id.) Plaintiffs' counsel, who are experienced in class action litigation regarding civil rights issues, believe the Injunctive Terms are "groundbreaking" and a "model in many respects." (Id. at 10-11.) Plaintiffs' counsel determined that the benefit to the class of this injunctive relief was of such value that they agreed to a significantly reduced fee in return. (Id.)

The Court finds this factor weighs in favor of final approval.

5. Extent of Discovery Completed and Stage of the Proceedings
This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Plaintiffs assert they negotiated with Defendants at arms' length and without collusion, which is evidenced by the extensive discovery and mediation process. (MFACS at 14.) Plaintiffs conducted extensive document discovery. (Id. at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) SBCSD provided both formal and informal discovery concerning the operation and conditions of general population inmates as well as ALT inmates. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.)

*10 The Court finds the parties have engaged in substantial investigation of the facts and the applicable law. This factor weighs in favor of granting final approval of the Settlement Agreement.

6. Experience and Views of Counsel
"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Plaintiffs' counsel has extensive experience serving as counsel in civil rights class actions. (MFACS at 13.) Litt is a well-known civil rights lawyer with decades of experience. (MAF at 10). McClane has worked on civil rights and criminal defense cases for the last fifteen years. (Id.) Battles has been practicing civil rights cases for ten years. (Id.) Goodman, Goad, Hamme, Hill, and Fruitwala of ACLU SoCal have 15, 13, 6, 4 and 4 years of experience respectively. (Id.) Counsel further submits that the proposal is fair. (MFACS at 11.) This weighs in favor of final approval.

7. Presence of a Governmental Participant
"The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration." Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977). Here, the County and SBCSD are government agencies, and as such, their participation and consent to the terms of injunctive relief weigh in favor of approving the settlement.

8. Opposition of Class Members
The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, the record supports that class members have a positive reaction to the proposed settlement. JND has approved and received 165 Claim Forms. (Keough Decl. ¶ 21.) As of the date of the declaration, the settlement administrator had not received any opt-out requests nor any objections to the settlement. (Id. ¶¶ 17-19.) Assuming this trend continues, this indicates that the classes approve of the settlement. Accordingly, this factor weighs in favor of final approval.

D. Settlement Administration Costs

Plaintiffs seek $40,000 in settlement administration costs, the same amount that this Court preliminarily approved as part of the Settlement Agreement. (MFA at 4; Preliminary Approval Order at 6.) The Court approves $40,000 in administration costs.

E. Incentive Awards

The trial court has discretion to award incentives to the class representatives. See In re Mego, 213 F.3d at 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

*11 The settlement provides a slight benefit to the 15 Named Plaintiffs (ranging from $2000 to $5,500 in addition to their class member formula award, depending on the role and contribution of the class representative). (MFACS at 17.) Although there is a larger than normal number of class representatives, it is because Class Counsel determined there were several categories of class representatives necessary to represent class members in custody with standing to seek injunctive relief and class members not in custody who were not subject to PLRA restrictions. (Id.) Class Counsel also determined that they needed a larger than usual number of class representatives due to the variety of deprivations at which the Complaint was aimed (e.g., drug treatment, mental health treatment, education, work opportunities), for each of which it was important to have a class representative who personally experienced the deprivation. (Id.)

Here, the class representatives were (either at the time of the filing of the complaint or previously) in SBCSD custody. (Id. at 19.) Those who were in custody exposed themselves to risk of retaliation, and those not in custody were still at risk of re-arrest and retaliation. (Id.) All Named Plaintiffs put their names in the public arena. (Id.) Plaintiffs' counsel spent dozens of hours interviewing class representatives while they were in custody, increasing their potential risk and demonstrating their personal participation in the litigation. (Id.)

Class Counsel asserts the requested amounts are well within the range of court approved incentive payments in recognition of work done on behalf of the class and in consideration of the risk undertaken in bringing the action. (Id.) "An incentive award of $5,000 per class representative is in line with other awards approved in this circuit." Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *37 (C.D. Cal. Nov. 23, 2013). see also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (affirming $5,000 incentive award even though the average class member received only $12); In re Mego, 213 F.3d at 463 (approving a $5,000 incentive award for each class representative).

Given these Named Plaintiffs' involvement in the case and their assumption of significant risk, the Court AWARDS the following incentive awards:

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

| NAME | INCENTIVE AWARD |
|---|---|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

| | |
|---|---|
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| TOTAL | $55,500.00 |

9   Christopher Crawford passed away and will no longer receive an incentive award. See supra Part II.C.

### V. ATTORNEYS' FEES AND COSTS

Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide reasonable attorneys' fees for prevailing plaintiffs. (MFACS at 7.) This amount was independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion. (Id.)

#### A. The Lodestar Approach is Appropriate

The lodestar approach is appropriate because this is a class action brought under fee-shifting statutes where the primary relief sought is injunctive relief. See In re Bluetooth Headset Prod. Liab. Litig., at 941. The Ninth Circuit noted it has "repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded." Morales v. City of San Rafael, 96 F.3d 359, 365 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997). In Morales, the damages verdict was itself "significant... [and] established a deterrent to the City, its law enforcement officials and others who establish and implement official policies."

*12 Here, Plaintiffs request $1,100,000 in attorneys' fees, which exceeds the class damages fund. In a case without an available statutory fee, this disparity would be inappropriate. However, in a case like this, it is common for statutory fees to exceed recovered damages, particularly where Plaintiffs obtained significant injunctive relief. Plaintiffs secured injunctive relief on a groundbreaking issue. The parties agree these statutory fees are appropriate. Like in Morales, the relief obtained through this settlement creates a deterrent for state agents has an effect on official policies. The value of this relief is difficult to measure but should not be underestimated given the critical implications for the injunctive class members and the potential for use as a model for other correctional facilities.

Given the nature of this case and the relief granted, this Court finds the lodestar method appropriate in this case.

#### B. The Requested Fees are Reasonable

Class counsel seeks $1,100,000 in attorneys' fees. (MFACS at 7.) This number was negotiated by the parties with the assistance of a professional mediator and represents a significantly discounted lodestar. (Id.)

District courts using the lodestar method to determine reasonable fees under § 1988 engage in a two-step process. First, courts "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012); Morales 96 F.3d at 363; Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). Second, "[t]he district court

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Statutory attorneys' fees are not correlated to the size of recovery but instead look to the attorney's reasonable hours and rates, as well as the public benefit conferred by the litigation. See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

1. Computation of the Lodestar

Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ballen, 466 F.3d at 746 (internal quotation marks omitted); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. See Ballen, 466 F.3d at 746.

a. Reasonable Number of Hours

To calculate attorneys' fees using the lodestar method, a court must determine the reasonable number of hours for which the prevailing party should be compensated. See, e.g., Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). Ultimately, a "reasonable" number of hours equals "[t]he number of hours ... [which] could reasonably have been billed to a private client." Moreno, 534 F.3d at 1111. The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested is reasonable. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994). Thus, to determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, a district court should begin with the billing records the prevailing party has submitted. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).

Here, Class Counsel provides billing records that were contemporaneously maintained which detail the time spent working on this case. ("Ex. C," Dkt. No 87-3; "Ex. E," Dkt. No. 88-1.) In their MFACS, Plaintiffs provide tables that

include each timekeeper who worked on the case and the number of hours they worked. (MFACS at 13.) Billed hours were spent on activities such as extensive document review and analysis, interviewing class representatives and class members, and settlement negotiations. (Id. at 12). Plaintiffs note that negotiating the terms of injunctive relief was particularly time consuming and took several meetings with both the mediator and counsel. (Id.)

*13 The Court has no reason to doubt the number of hours provided by Class Counsel. This is especially true given the substantial discount from Class Counsel's lodestar total, as negotiated in the settlement. Further, the hours provided by Class Counsel do not account for work done for the MFACS and MAF, ongoing work with the Class Administrator and class members, and an appearance at the final approval hearing. (Id. at 14.) Given these reasons and the time-intensive nature of a settlement involving injunctive relief, this Court finds that Class Counsel billed a reasonable number of hours.

b. Reasonable Hourly Rate

Class Counsel asserts their requested hourly rates are reasonable for attorneys of their skill, experience, and reputation. California law entitles plaintiff attorneys to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." Children's Hosp. & Med. Ctr. V. Bonta, 97 Cal. App. 4th, 740, 783 (Cal. Ct. App. 2002). Federal law similarly instructs that "requested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). In making this showing, "affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)(internal citations and marks omitted).

In calculating the lodestar, Plaintiffs may adjust for delay in payment. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

historic hourly rates or otherwise—is within the contemplation of the statute [42 U.S.C. § 1988]"); Barjon v. Dalton, 132 F.3d 496, 502–03 (9th Cir. 1997) ("the district court may choose to apply either the attorney's current rates to all hours billed or the attorney's historic rates plus interest"). Generally, for a "fee award to be reasonable, it must be based on current, rather than historic, hourly rates." Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1119 (C.D. Cal.2012) (citing Jenkins, 491 U.S. at 282) (lodestar award in settled class action).

To demonstrate the reasonableness of Class Counsel's rates, Plaintiffs' attorneys Barrett S. Litt ("Litt") of Kaye, McClane, Bednarski and Litt ("KMBL") and Amanda Goad of the ACLU Foundation of Southern California ("ACLU SoCal") have submitted declarations attesting to their experience litigating federal civil rights class actions and detailing their work on this case. ("Litt Declaration," Dkt. No. 87; "Goad Declaration," Dkt. No. 88.) Litt is licensed to practice law in the State of California, the U.S. District Courts in the Central, Eastern, and Northern Districts of California, in the Ninth, Fourth, Fifth, Eleventh, and D.C. Courts of Appeal, and in the United States Supreme Court. ("Ex. B," Dkt. No. 87-2.) Litt has been practicing for 45 years and has litigated an extensive list of complex civil rights cases, many of which have involved fee-shifting provisions. (Litt Decl. at 30) Litt asserts he bills an hourly rate of $1,150.00. (Id.)

In addition, Litt's declaration provides information as to the experience and billing rates of Plaintiffs' counsel David S. McLane ("McLane"), Lindsay Battles ("Battles"), and Ron Kaye ("Kaye") of KMBL and Melissa Goodman ("Goodman"), Brendan M. Hamme ("Hamme"), Goad, Tasha Hill ("Hill") and Aditi Fruitwala ("Fruitwala") of ACLU SoCal. (Litt Decl. at 30-45.) Litt further provides information regarding the rates of senior paralegal Julia White and junior paralegals Esteban Gil and Rene Arriaza of KMBL, as well as senior paralegal Duaba Gonzalez of ACLU SoCal. (Id.) Litt provides tables supporting the proposition that each member of Plaintiffs' counsel's rates fall within the range of rates for attorneys and paralegals of comparable experience by comparing Plaintiffs' counsels' rates with others working at prominent civil rights firms and organizations in the Central District of California within a close range of experience. (Id.)

*14 The Court finds the range of rates provided by these tables adequately establishes billing rates for civil rights attorneys in the forum. The relevant portions of this table state that: attorneys practicing civil rights litigation with 26-49 years of experience bill adjusted lodestar rates of $887-$1230 per hour; attorneys practicing civil rights litigation with 23-33 years of experienced bill adjusted lodestar rates of $738-$1220 per hour; attorneys practicing civil rights litigation with 9-15 years of experience bill adjusted lodestar rates of $603-$855 per hour; and attorneys practicing civil rights litigation with 1-6 years of experience billed adjusted lodestar rates of $336-$671 per hour (Id. at 31-43). Litt further notes that fee-paying litigants bringing similars action would pay much higher commercial rates for attorneys of similar or less experience practicing civil rights litigation. (Id.)

Plaintiffs request the hourly rates for attorneys: $875 for McLane, who has 32 years of experience; $600 for Battle, who has 10 years of experience; $875 for Kaye, who has 30 years of experience; $715 for Goodman, who has 15 years of experience; $640 for Goad, who has 13 years of experience; $480 for Hamme, who has six years of experience; $390 for Hill, who has four years of experience; and $390 for Fruitwala, who has four years of experience. (Litt Decl. at 29.) Plaintiffs request the following rates for non-attorney timekeepers: $335 for Julia White, a senior paralegal; $195 for Diana Gonzalez, a senior paralegal; $175 for Rene Arriaza, a junior paralegal; $225 for Sujata Awasthi, a law clerk; $225 for Evan Ettinghoff, a law clerk. (Id.)

The provided tables reflect that the hourly rates of Plaintiffs' attorneys fall within the reasonable range for attorneys of their experience in this district. Further, the fact that counsel seeks a significantly discounted lodestar weighs in favor of finding that the provided rates are reasonable. Plaintiffs' calculated lodestar total is $2,647,267.35. (Id.) They seek only the discounted amount of $1,100,000. (MFACS at 7.) Accordingly, this Court finds the rates, as reflected in Plaintiffs' motion for attorney's fees and costs are reasonable.

2. Adjustments to the Lodestar
After computing the lodestar figure, district courts may adjust that figure pursuant to a "variety of factors." See Moreno, 534 F.3d at 1111. "[T]he district court accounts for the following factors in the lodestar computation: '(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee

Sobel, Carol 7/2/2019
For Educational Use Only

McKibben v. McMahon, Slip Copy (2019)

agreement.' " Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013)(citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975) ).

The Court has already provided an analysis for many of these factors above, including: (1) the novelty and complexity of the issues; (2) counsel's skill and experience; (4) the results obtained; and (5) the contingent nature of the fee arrangement. In those analyses, the Court found that all these factors weighed in favor of approving the settlement. The Court need not repeat this analysis and finds that these factors weigh in favor of approving Plaintiffs' motion for award of attorney's fees and costs. The Court turns to the remaining factor.

Management of this case involved working with a large number of class representatives, working with two different subclasses, and managing both federal and state law claims. Counsel also compiled and analyzed data over four years. Plaintiffs conducted extensive document discovery. (MAF at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.) The Court finds this factor weighs in favor of approval.

*15 The aforementioned factors weigh in favor of approval. Notably, counsel achieved positive results and already stipulated to a substantially discounted lodestar during settlement. For the reasons stated above, the Court APPROVES Plaintiff's request for $1,100,000 in attorneys' fees.

C. Costs
Federal and state fee shifting statutes allow for reimbursement of litigation expenses that "are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to § 1988." Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240, 1244 (9th Cir. 1982), cert. granted, judgment vacated on other grounds, 461 U.S. 952 (1983).

Here, Plaintiffs request costs for travel, investigators, consultants, filing fees, photocopies, printing, scans, messenger services, telephone calls, postage, computerized legal research, and similar costs normally reimbursed by the client. See, e.g., In re Immune Responses Sec Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007). Opinions of federal courts are applicable to determining allowable costs under California law. See, e.g., Bussey v. Affleck, 225 Cal. App. 3d, 1162, 1165 (Cal. Ct. App. 1990), abrogated on other grounds by Robert L. Cloud and Associates, Inc. v. Mikesell, 69 Cal. App.4th 1141 (1999).

The Settlement Agreement provides for payments of costs up to $37,000, payable from the Class Fund. (Settlement Agreement ¶ 30.) Counsel now requests $36,304.49 in costs. (MAF at 21.) This Court has reviewed the provided itemized list of costs and finds they are appropriate. The Court therefore APPROVES the requested amount for costs.

VI. CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement and Injunctive Terms;

2. APPROVES payment of the ten late claims and any claims postmarked on or before February 11, 2019;

3. APPROVES Plaintiffs' requests to deem Frederick Crockan, Joe Raymond Fierro, and Andrew Afoa to have filed a timely claim;

4. AWARDS Class Counsel attorneys' fees in the amount of $1,100,000.00;

5. AWARDS Class Counsel costs in the amounts of $36,304.49 as provided in the Settlement Agreement;

6. AWARDS the following amounts to the Named Plaintiffs:

| NAME | INCENTIVE AWARD[9] |
|---|---|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |

| Illich Vargas | $5,500 |
|---|---|
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| TOTAL | $55,500.00 |

7. ORDERS the payment of $37,500 to the claims administrator; and

8. DISMISSES the Complaint WITH PREJUDICE.

The Court ORDERS such judgment be entered.

All Citations

Slip Copy, 2019 WL 1109683

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.