UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   (IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 131)

## I.   Introduction

Charmaine Chua ("Chua"), Torie Rivera ("Rivera"), Lydia Hicks ("Hicks"), Kyle Todd ("Todd") and the National Lawyers Guild ("NLG"), brought this class action on behalf of themselves and others similarly situated (collectively "Plaintiffs") against the City of Los Angeles ("City"), Los Angeles Police Department ("LAPD") Chief Charlie Beck ("Beck"), LAPD Commander Andrew Smith ("Smith") and Does 1-10 (collectively "Defendants"). Dkt. 1 at 1. Plaintiffs alleged that Defendants violated their rights under the First, Fourth and Fourteenth Amendments, as well as their rights under the California Constitution and Cal. Civ. Code §§ 52.1 and 1798.14. *Id.* The basis for these claims is that, while Plaintiffs participated in two protests in November 2014, they were detained and then arrested without cause by officers of the LAPD. Id. ¶ 1.

On May 25, 2017, Plaintiffs' motion for class certification was granted in part. Dkt. 50. The "6th and Hope" damages subclass was certified as to the demand for statutory damages only. *Id.* at 19. The request for certification of the "Beverly and Alvarado" damages subclass was denied, without prejudice. *Id.* The request for the certification of the injunctive relief subclass was also denied, without prejudice. *Id.*

On January 10, 2019, the Parties filed a notice of provisional settlement. Dkt. 120. On July 15, 2019, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement (the "Motion"). Dkt. 131. A hearing on the Motion was conducted on September 9, 2019, and the matter was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED**.

## II.   Factual and Procedural Background

The relevant factual background to Plaintiffs' Motion is described in detail in the Order Re Plaintiffs' Motion for Class Certification. Dkt. 50. That discussion is incorporated here by this reference. To provide the context for the analysis of the Motion in this Order, the material portions of that prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

discussion are summarized below.

    A.    Factual Background

        1.    <u>6th and Hope Subclass</u>

On November 26, 2014, protestors assembled in front of a federal courthouse as a staging area for a protest march whose route would go first to the LAPD headquarters and then south on Flower Street. Dkt. 1 ¶¶ 18-20. The Complaint alleges that the protestors eventually made their way to Fifth Street and Flower Street and then the Central Library, but that LAPD officers then "kettled," i.e., surrounded them. Dkt. 1 ¶¶ 24-29. LAPD officers then allegedly announced that 130 protestors were under arrest. Dkt. 1 ¶ 29. Those who had been arrested were then transported to LAPD detention facilities. Dkt. 1 ¶ 33. The Complaint alleges that most of those arrested were detained for approximately 14 hours, and were then released on their own recognizance ("OR Release"). Dkt. 1 ¶¶ 34-35.

        2.    <u>Beverly and Alvarado Protest</u>

On November 28, 2014, a separate group of protesters assembled at Grand Park in Downtown Los Angeles. Dkt. 1 ¶ 39. They then walked west on Beverly Boulevard. Dkt. 1 ¶¶ 39-40. The Complaint alleges that, once the protesters reached Alvarado Street, LAPD officers surrounded approximately 40 of them. Dkt. 1 ¶ 41. LAPD officers then allegedly detained the protesters and, among other things, "handcuffed them with zip-ties, and compelled them to provide private identifying information, including social security numbers, birthplace, employment, telephone numbers, and home addresses before being released." Dkt. 1 ¶ 44.

    B.    Procedural Background

Plaintiffs filed this action on January 12, 2016. Dkt. 1. On July 14, 2016, Plaintiffs moved for class certification. Dkt. 26. Defendants filed a statement of non-opposition to Plaintiffs' motion for class certification. Dkt. 33. The motion for class certification was granted-in-part on May 25, 2017. Dkt. 50. As noted, the 6th and Hope damages subclass was certified as to statutory damages. *Id.* at 19. As also noted, the motion for certification of the Beverly and Alvarado damages subclass and the injunctive relief class was denied. *Id.*

On January 10, 2019, Plaintiffs filed a notice of provisional settlement. Dkt. 120. Plaintiffs filed the present Motion on July 15, 2019. Dkt. 131. Plaintiffs filed an Amended Preliminary Approval Order and Corrected Attorney CVs on August 21, 2019. Dkts. 135, 136. Plaintiffs filed an Amended Class Notice on September 12, 2019. Dkt. 143.

**III.**    <u>**Summary of Settlement**</u>

    A.    Class Definition

The Motion seeks approval of a settlement of the claims of the 6th and Hope Subclass (the "Subclass").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |  | | |
|---|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | | |

Dkt. 131 at 19. The Subclass is defined as approximately 130 persons who were detained and arrested at 6th Street and Hope Street on November 26, 2014, denied release on their own recognizance, but never prosecuted. Dkt. 50 at 5. The Subclass was certified only as to the demand for statutory damages. *Id.* at 15.

      B.      Payments to Class Members

The Settlement Agreement provides for a class fund of $260,710 in exchange for release of all claims advanced in this action by the Subclass (the "Gross Settlement Fund"). Dkt. 131-2 ¶ 11. The Parties propose to allocate the Gross Settlement Fund to the approximately 130 subclass members[1] as follows:

| | Amount | Percent |
|---|---|---|
| **Gross Settlement Fund** | **$260,710** | **100%** |
| Expert Costs | $20,210.00 | 7.75% |
| Mediation Costs | $5,500.00 | 2.11% |
| Settlement Administration Costs | $20,000.00[2] | 7.67% |
| Incentive Awards for Class Representatives | $15,000.00 | 5.75% |
| **Net Settlement Fund** | **$200,000.00** | **76.71%** |

*Id.* [3]

The Net Settlement Fund will be allocated on a pro rata basis to each subclass member who files a timely, valid claim. Dkt. 131-2 ¶ 26.

      C.      Payment to Kyle Todd

The Settlement Agreement provides that a $5000 incentive award will be paid to Kyle Todd. Dkt. 131-2 ¶ 22. Todd was the named plaintiff for the putative Beverly and Alvarado damages subclass for which

---

[1] The Settlement Agreement (Dkt. 131-2 at 3; *Id.* ¶¶ 11, 38), Class Notice (Dkt. 131-3 at 3-4), Order Re Plaintiffs' Motion for Class Certification (Dkt. 50 at 2, 5, 7), and Complaint (Dkt. 1 ¶¶ 10, 30, 60) each state that there are approximately 130 members of this subclass. The Litt Declaration states that there are approximately 140 members. Dkt. 132 ¶¶ 6, 9. Given the prior, consistent estimates of 130 members, that figure is used in this Order to calculate the per person amounts.
[2] According to the statement by Plaintiffs' Counsel, Dkt. 139, this $20,000 is a cap on total settlement administration costs. At the September 9, 2019 hearing, Plaintiffs' Counsel stated that any portion of the $20,000 that was not used for these costs, would revert to the Gross Settlement Fund, and then distributed to members of the subclass.
[3] Using these same amounts for expert costs, mediation costs, settlement administration costs, incentive awards and net settlement amount, the Settlement Agreement later states a different figure, i.e., $255,010. Dkt. 131-2 ¶ 22. Because all the elements and amounts are unchanged, $260,710 is the correct amount, and is used in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

the motion for class certification was denied. Dkt. 50 at 19.

      D.      Attorney's Fees

The Settlement Agreement provides that Class Counsel will be awarded $484,290 in attorney's fees and litigation costs. Dkt. 131-2 ¶ 22. This amount is independent of the expert, mediation and class administration costs referred to in the Gross Settlement Fund amounts. Dkt. 131-2 ¶ 12, 22. The fee award is $476,801.93. Dkt. 131-2 ¶ 35. The cost award is $7488.07. *Id.*

      E.      Notice Plan

The Settlement Agreement provides a process for notifying members of the Subclass about the Settlement Agreement. Dkt. 131-2 ¶¶ 36-42. A copy of the proposed Notice is attached to the Settlement Agreement. Dkt. 131-3 at 2-7 (the "Class Notice"). An Amended Class Notice was later filed. Dkt. 143. The Law Office of Carol Sobel will administer the settlement (the "Class Administrator"). Dkt. 131-2 at ¶ 38. The Class Notice will be mailed to Subclass members. *Id.* The Class Administrator will also assemble and use the email addresses of Subclass members to send notices to them. Those addresses are in a document that was used to organize the protests. *Id.*

The Amended Class Notice will inform them of rights to opt-out, object, or submit a claim. Dkt. 131-3 at 4-6. The deadline for objections will be the same as that for opt-out claims. Dkt. 131-2 ¶ 14.

      F.      Release of Claims

The Settlement Agreement provides for a general release of claims by all members of the Subclass who file claims, and do not opt out. Dkt. 131-2 ¶¶ 32-32. The term "Named Plaintiffs" in the general release also includes Kyle Todd. Dkt. 131-2 ¶ 15.

**IV.**      <u>Analysis</u>

      A.      Legal Standard

Fed. R. Civ. P. 23(e) requires a two-step process in considering a request for approval of a class action settlement. First, in the preliminary approval process, a court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). In the second step, which occurs after preliminary approval, notification of class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted.

Several factors are germane to the determination whether the final approval should be granted. As the Ninth Circuit has explained:

    [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

A court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Several factors are applied in assessing the fairness of a proposed settlement:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the amount offered in settlement;
(4) the extent of discovery completed and the stage of the proceedings;
(5) the experience and views of counsel;
(6) any evidence of collusion between the parties; and
(7) the reaction of the class members to the proposed settlement.

See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each of these factors does not necessarily apply to the assessment of every class action settlement. Further, other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Fed. R. Civ. P. 23(e) provides further guidance as to determination whether a proposed settlement is fair, reasonable and adequate. Thus, it provides that a court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3);[4] and
(D) the proposal treats class members equitably relative to each other.

---

[4] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

Fed. R. Civ. P. 23(e)(2).

    B.    Application

        1.    <u>Class Settlement Fund</u>

            a)    Class Representatives and Counsel Adequately Represented the Class

The substantial efforts in the litigation of this action since its filing in January 2016, supports a finding that the representation was adequate. "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Plaintiffs' counsel "conducted extensive discovery" about the protests and retained experts to evaluate the propriety of police actions. *See* Dkt. 131 at 12-13; Litt. Decl., Dkt. 132 ¶ 5; Sobel Decl., Dkt. 133 ¶ 16. The City produced 50 disks on which approximately four gigabytes of data was maintained related to the incidents underlying this action. Sobel Decl., Dkt. 133 ¶ 10. Plaintiffs and Defendants "took depositions and responded to extensive discovery requests from the other side. Dkt. 133 ¶ 11. This shows that the parties had substantial and sufficient information to make informed decisions about a reasonable settlement. Therefore, this factor supports preliminary approval of the settlement.

            b)    The Proposal was Negotiated at Arm's Length

Courts in the Ninth Circuit "ha[ve] long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. However, courts will intercede to determine that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.*; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

There is no evidence of any fraud, overreaching, or collusion in connection with the entry of the Settlement Agreement. The parties engaged in lengthy settlement negotiations, including two in-person mediation conferences before now former Judge Gandhi while he was on the bench and one thereafter. Dkt. 131 at 7. Judge Gandhi is an experienced and sophisticated neutral and a person of great integrity. One additional settlement negotiation session occurred without Judge Gandhi. *Id.* These facts support the approval of the Settlement Agreement.

None of the Gross Settlement Fund will revert to Defendants. Instead, if any funds are not distributed, they will be donated to a designated organization. Dkt. 131-2 ¶ 29. The requested amount of $484,290 for attorney's fees is substantial, but it is consistent with the amount of work performed and results achieved. Therefore, this amount is not so disproportionate to the total recovery to suggest any collusion. However, the amount of the fee award is separately analyzed below, and will be reviewed anew in connection with a later motion for final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

For these reasons, this factor supports preliminary approval of the settlement.

        c)     The Relief Provided for the Class is Adequate

              (1)    Strength of Plaintiffs' Claims, and the Costs, Risks, and Delay of Trial and Appeal Supports the Class-Action Settlement.

It is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d at 965.

The "likely maximum recovery" was "in the $4000 range" for each Subclass member, "if statutory damages were awarded under Cal. Civ. Code § 52.1." Dkt. 131 at 15-16. Plaintiffs note that whether § 52.1 applies in situations presented here is "hotly disputed" and "has been the subject of considerable legal debate." *Id.* at 16.

Plaintiffs contention that the Gross Settlement Fund of $260,710, which represents approximately 50% of the statutory damages estimate, represents "a fair compromise," Dkt. 131 at 15-16, is also persuasive. Risks and delay associated with a trial and potential appeal support such a compromise. Such risks include the applicability of § 52.1 statutory damages to a case like this and the clarity of the recordings of the dispersal orders issued by LAPD officers during the protests. Dkt. 133 ¶ 16.

These considerations support the conclusion that the amount of the Gross Settlement Fund is reasonable.

              (2)    The Proposed Method of Distributing Relief to the Class is Effective.

Rather than using a third-party settlement administrator, the parties have agreed that Carol Sobel, Plaintiffs' counsel, can perform this function at a lower cost. Dkt. 131-2 ¶ 38. Plaintiffs have presented evidence sufficient to show that Sobel perform this role efficiently and effectively. The evidence includes her substantial legal experience in class action matters, including in cases similar to this one. Dkt. 131 at 15. Plaintiffs state that the "minimum cost of a professional administrator" would be "$30,000 or more," *id.*, but that Sobel will be paid no more than $20,000, based on the work actually performed. Dkt. 139 at 3-4.; Dkt. 143 (identifying $20,000 as a cap and not as a flat fee). The expected timeline for payment is also reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

        (3)       <u>Payment of Expert and Mediation Costs from Gross Settlement Fund is Reasonable.</u>

Incurring costs of this type in connection with this litigation was necessary and appropriate. For the reasons discussed below, their amount is also reasonable

        d)       The Proposal Treats Class Members Fairly

The Settlement Agreement provides that the Net Settlement Fund will be allocated equally among all participating Subclass members. Dkt. 131-2 at 9 at 5. This confirms the fairness of the Settlement Agreement, and weighs in favor of preliminary approval.

    2.    <u>Incentive Awards</u>

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

> 1) The risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs seek preliminary approval of a $5000 incentive award to each of the three named plaintiffs of the 6th and Hope subclass and for Kyle Todd. Dkt. 131-2 ¶ 22; Dkt. 131 at 8. Plaintiffs' counsel maintain that these $5000 incentive awards reflect the "value of [the class representatives] contributions to the case, the risk taken by them and the size of the settlement." Dkt. 131 at 13; *see* Dkt. 133 ¶¶ 18-22.

There are no records as to the amount of time spent on this matter by each of these individuals. Plaintiffs' counsel has acknowledged that such records should have been kept and maintained, and takes responsibility for the failure to do so. Dkt. 133 ¶ 22. Instead, Plaintiffs' counsel "reconstructed the time they expended" by evaluating her own interactions with them, reviewing time records of all counsel, and reviewing materials provided by the named plaintiffs. *Id.* This reconstruction led to what she deems a conservative estimate of 50 hours per named plaintiff, and does not include anticipated future hours spent in assisting with class administration. *Id.* Assuming the accuracy of the 50-hour estimate, the $5000 awards would reflect a rate of $100 per hour.

Given the experience of Plaintiffs' counsel, and her straightforward acknowledgement of a shortcoming in her oversight, there is no reason to question the 50-hour time estimates. Further, given the work performed and the risks associated with it, the $100 hourly rate is reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

For these reasons, the total of $20,000 in incentive awards is reasonable for purposes of preliminary approval. This issue will be reviewed in connection with the motion for final approval, including with respect to any objections that are filed.

        3.      <u>Attorneys' Fees</u>

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement"; however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964.

Fees requested under 42 U.S.C. § 1988 and Cal. Civil Code § 52.1(i) need not "necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality). "[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, *for all time reasonably expended on a matter.*" *Id.* at 575 (quoting Senate Report, at 6, U.S. Code Cong. & Admin News 1976, p. 5913) (internal quotation marks omitted) (emphasis in original). Courts calculate the "lodestar figure" by "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941.

The Settlement Agreement acknowledges that Plaintiffs' counsel has "incurred significantly more attorney [sic] fees than the amount of fees agreed to be awarded." Dkt. 131-2 ¶ 35. The sum of the requested attorney's fees and costs is $484,290. *Id.* This includes $7488.07 in litigation costs not included in the Gross Settlement Fund. *Id.* Plaintiffs' counsel states that the $484,290 reflects a "substantial discount" from the total amount "Plaintiffs' counsel would have sought and would reasonably expect to be awarded as statutory attorneys' fees." Dkt. 131 at 17 (citing Litt Decl., Dkt. 132 ¶ 38). This statement is supported by a proffered lodestar calculation of $896,711.00. Dkt. 131-5 at 15.

Exhibit D to the Motion sets out a detailed summary of the basis for the requested award. Dkt. 131 at 10 (citing Dkt. 131-5). The Litt Declaration and Sobel Declaration provide additional support for the attorneys' fees and costs award. *See* Dkts. 132, 133, 136. The total fees identified by Exhibit D (Dkt. 131-5) are summarized in the following chart:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
|---|---|---|---|
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

| Attorney | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Barry Litt (Attorney) | 175.1 | $1200 | $210,120.00 |
| Carol Sobel (Attorney) | 307.1 | $1000 | $307,100.00 |
| Catherine Sweetser (Attorney) | 61.6 | $650 | $40,040.00 |
| Colleen Flynn (Attorney) | 68.7 | $725 | $49,807.50 |
| Colleen Mullen (Attorney) | 7.9 | $500 | $3,950.00 |
| Julia White (Senior Paralegal) | 63.3 | $360 | $22,788.00 |
| Matthew Strugar (Attorney) | 61.5 | $725 | $44,587.50 |
| Monique Alarcon (Attorney) | 66.4 | $420 | $27,888.00 |
| Monique Alarcon (Law Student) | 104.7 | $200 | $20,940.00 |
| Paul Hoffman (Attorney) | 121.3 | $1050 | $127,365.00 |
| Rachel Steinback (Attorney) | 52.5 | $650 | $34,125.00 |
| Weston Rowland (Law Clerk) | 32 | $250 | $8000.00 |
| **Total** | **1122.1** | **-** | **$896,711.00** |

These fees do not include the 50-125 hours that Plaintiffs' counsel expect to spend on an anticipated motion for final approval, including as to an award of attorney's fees motion as well as on class issues or class member inquiries. These fees for some firms are "not fully up to date." Dkt. 131 at 18-19; see Dkt. 132 ¶ 40 (declaring that some attorneys' time is described only through "late 2018").

Substantial issues are presented by the lodestar calculation. They include the number of counsel who billed time, the hourly rates for counsel, the time and hourly rate proposed for a law student, and whether it was appropriate to have spent more than 1000 hours on this proceeding given the limited financial benefits that will be provide to members of the Subclass if there is a final approval. Accordingly, a de novo review of this issue will be performed in connection with the motion for final approval. However, given the nature of the underlying issues, the risk assumed by counsel, and that even if the lodestar were reduced by almost 50% it would still correspond closely to the amount of the fee request, preliminary approval is granted as to the proposed amount.

    4.  Expert and Mediation Costs

The Settlement Agreement provides that $20,210 in expert costs will be deducted from the Gross Settlement Fund. Dkt. 131-2 ¶¶ 11, 22. However, the Litt Declaration states that "expert charges total $12,210 for police practices, sound and general damages experts." Dkt. 132 ¶ 39. The Sobel Declaration does not state a total amount for expert costs. See Dkt. 133. No explanation is given for the $8000 disparity. The Settlement Agreement provides that $5500 in mediation costs will be deducted from the Gross Settlement Fund. Dkt. 131-2 ¶¶ 11, 22. Neither the Litt Declaration nor the Sobel Declaration state that $5500 was incurred for mediation costs.

Due to the lack of support and contradiction as to expert and mediation costs, Plaintiffs' counsel shall file supplemental declarations with their contemplated motion for an award of attorney's fees and costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

The reasonableness of costs will be reviewed de novo in connection with final approval. Given that they are modest in amount, a deferral of this issue, while granting the Motion is appropriate. It will conserve party and judicial resources, including attorney's fees.

      5.      <u>Appointment of Settlement Administrator</u>

For the reasons stated above, Carol Sobel is approved to function as the Settlement Administrator.

      6.      <u>Class Notice</u>

Rule 23(e) requires that a court "direct notice in a reasonable manner to all class members who would be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

A proposed Class Notice was attached to the Settlement Agreement. Dkt. 131-3. Subsequently an Amended Class Notice was filed. Dkt. 143. The Amended Class Notice summarizes the terms of the settlement, advises Subclass Members of the estimated size of individual awards and provides information on how to contact Plaintiffs' counsel. *Id*. The Class Notice also instructs Subclass Members on how to submit a claim, file an objection or opt-out of the settlement. *Id*. at 6-7. The Amended Class Notice is sufficient and is approved.

**V.**    <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **GRANTED**. The Class and Settlement Notice, which is attached as Exhibit A to the Joint Stipulation to Approve Class Notice, Relevant Dates Related to the Final Approval Hearing and the Contemporaneously Filed Preliminary Approval Order (Dkt. 144-1), is approved.

Within two weeks of the issuance of this Order, the City shall deposit or cause to be deposited into an account designated by the Class Administrator by check sent by overnight mail an amount of same day available funds equal to $20,000. If no Final Order of Approval and Settlement is entered by the Court, then all such funds paid to the Class Administrator that remain after payment of all accrued expenses shall be returned to Defendants.

The schedule for class notification and the final approval hearing is as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-00237 JAK (GJSx) | Date | November 15, 2019 |
| Title | Charmaine Chua, et al. v. City of Los Angeles, et al. | | |

| Event | Date |
|---|---|
| Providing final class identifying information to Class Administrator Law Office of Carol Sobel, to the extent not already provided | November 13, 2019 |
| Text message, emailing, and first-class mail notice (for those for whom email addresses and mobile phone numbers are unavailable) | November 27, 2019 |
| Notice by regular mail to all class members who were initially notified by electronic means only (those who received notice by email and text) and who have not yet submitted claim forms; Notice will also include explanation that class members were sent electronic notice but mail notice is being sent because they did not file a claim or exclude themselves from the settlement | December 6, 2019 |
| Filing of Plaintiffs' Motion for Award of Attorneys' Fees and Costs | January 6, 2020 |
| Deadline for class members to file objections to any aspect of settlement (postmarked or received by this date) | January 30, 2020 |
| Deadline for class members to opt-out of class settlement (postmarked or received by this date) | January 30, 2020 |
| Deadline to file class claims (postmarked or received by this date) | January 30, 2020 |
| Deadline to file Opposition or Reply to class member objections (including objections to award of attorneys' fees and costs) | February 23, 2020 |
| Deadline to file proposed final approval order and motion for final approval of settlement | February 23, 2020 |
| Final Approval Hearing | March 16, 2020 at 8:30 am |

**IT IS SO ORDERED.**

                                                                                                                                          : _____

Initials of Preparer    ak