Barrett S. Litt, SBN 45527
Email: blitt@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Carol A. Sobel, SBN 84483
Email: carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: (310) 393-3055
Facsimile: (310) 451-3858

ADDITIONAL COUNSEL LISTED
ON NEXT PAGE
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHARMAINE CHUA, ET AL.

PLAINTIFFS,

vs.

CITY OF LOS ANGELES, ET AL.,

DEFENDANTS.

CASE NO: 2:16-CV-00237-JAK-GJS(X)
[HON. JOHN A. KRONSTADT]

NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES
AND COSTS; DECLARATIONS AND
EXHIBITS

HEARING DATE:    MARCH 16, 2020
HEARING TIME:    8:30 A.M.
COURTROOM:       10B

ADDITIONAL PLAINTIFFS' COUNSEL

Paul Hoffman, SBN 71244
Email. hoffpaul@aol.com
Catherine Sweetser. SBN271142
Email. catherine.sdshhh@gmail.com
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Tel. (310) 396-0731
Fax. (310) 399-7040

Colleen M. Flynn, SBN 234281
Email. cflynnlaw@yahoo.com
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 9001 0
Tel. 213 252-9444
Fax. 213 252-0091

Matthew Strugar, SBN 232951
Email. matthewstrugar@gmail.com
LAW OFFICE OF MATTHEW STRUGAR
2108 Cove Avenue
Los Angeles, California 90039
Tel: 323 696-2299

PLEASE TAKE NOTICE that, on March 16, 2020, at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 10B of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to award, as part of the final settlement in this case, attorneys' fees and costs to Plaintiffs.

This motion is based on the accompanying Memorandum of Law, the exhibits and declarations filed in support of it and previously filed in support of the motion for preliminary approval of the settlement, the files and records in this case, and on such further evidence as may be presented at a hearing on the motion.

DATED:  December 20, 2019     Respectfully submitted,
Kaye, McLane, Bednarski & Litt, LLP

By: /s/ Barrett S. Litt
Barrett S. Litt
Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     THE LODESTAR METHOD FOR AN AWARD OF STATUTORY
        ATTORNEYS' FEES IS THE APPROPRIATE METHODOLOGY IN
        THIS CLASS ACTION..........................................................................4

        A.    IT IS WELL-ESTABLISHED THAT ATTORNEY'S FEES CAN
              SUBSTANTIALLY EXCEED DAMAGES IN STATUTORY FEE CASES. ..........4

        B.    STATUTORY FEES ARE AN APPROPRIATE BASIS FOR AN AWARD OF
              ATTORNEY'S FEES IN A CLASS ACTION BROUGHT UNDER FEE-
              SHIFTING STATUTES, INCLUDING WHERE THE FEES EXCEED DAMAGES.
              .......................................................................................................5

III.    ANALYSIS OF THE FACTORS IN DETERMINING AN
        APPROPRIATE ATTORNEYS' FEE AWARD IN CLASS ACTIONS.9

        A.    THIS CASE INVOLVED COMPLEX ISSUES AND SIGNIFICANT RISK. ........9
        B.    THE MANAGEMENT OF THE CASE WAS CHALLENGING.......................10
        C.    REACHING A SETTLEMENT WAS DIFFICULT. .....................................10
        D.    THE RISKS OF NON-PAYMENT WERE SUBSTANTIAL............................10
        E.    THE EFFORT EXPENDED BY COUNSEL. ................................................11
        F.    THE RESULT OBTAINED FOR THE CLASS ...........................................12
        G.    COUNSEL'S EXPERIENCE.....................................................................12
        H.    COUNSEL'S SKILL ..............................................................................13
        I.    THE REACTION OF THE CLASS .............................................................13

IV.     PLAINTIFFS' ATTORNEYS' FEE REQUEST IN THIS CASE IS A
        SUBSTANTIALLY REDUCED LODESTAR. .......................................13

        A.    PLAINTIFFS' LODESTAR......................................................................13
        B.    COUNSEL'S HOURLY RATES ARE REASONABLE..................................15
        C.    COUNSEL'S HOURS ARE REASONABLE ...............................................21

V.      COSTS ...................................................................................................23

VI.     CONCLUSION .....................................................................................25

i

# TABLE OF AUTHORITIES

## Federal Cases

*Ambriz v. Arrow Fin. Servs., LLC*
   No. CV07-5423-JFW(SSX), 2008 WL 2095617 (C.D. Cal. May
   15, 2008). Opinions of the ................................................................. 23

*Barjon v. Dalton*
   132 F.3d 496 (9th Cir. 1997) ............................................................. 16

*Beaty v. BET Holdings, Inc.*
   222 F.3d 607 (9th Cir. 2000) ............................................................. 21

*In re Bluetooth Headset Prod. Liab. Litig.*
   654 F.3d 935 (9th Cir. 2011) ............................................................... 6

*Charlebois v. Angels Baseball LP*
   993 F. Supp. 2d 1109 (C.D. Cal. 2012) ............................................. 16

*City of Riverside v. Rivera*
   477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) ......... 4, 5, 18

*Coles v. City of Oakland*
   No. C03–2961 THE, 2007 WL 39304 (N.D.Cal. Jan. 4, 2007) ......... 16

*Craft v. Cty. of San Bernardino*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................... 6

*Donovan v. CSEA Local Union 1000, American Federation of State,*
*County and Municipal Employees, AFL-CIO*
   784 F.2d 98 (2d Cir. 1986) .................................................................. 7

*Fair Hous. of Marin v. Combs*
   285 F.3d 899 (9th Cir. 2002) ............................................................... 5

*Garcia v. Resurgent Capital Servs.*
   2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) .................................. 19

*Gascho v. Glob. Fitness Holdings, LLC*
   822 F.3d 269 (6th Cir. 2016) ............................................................... 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*
   55 F.3d 768 (3d Cir. 1995) .................................................................. 6

ii

*Gordon v. Los Angeles Unified Sch. Dist.*
  2019 WL 2511936 (C.D. Cal. June 17, 2019) ..................................................... 19

*Hensley v. Eckerhart*
  461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ..................................... 20

*In re Home Depot Inc.*
  931 F.3d 1065 (11th Cir. 2019) ........................................................................... 8

*In re Immune Responses Sec. Litig.*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................. 23

*Johnson v. Georgia Highway *430 Express, Inc.*
  488 F.2d 714 (5th Cir. 1974) .............................................................................. 20

*Jordan v. Multnomah Cty.*
  815 F.2d 1258 (9th Cir. 1987) ............................................................................ 16

*LaPeter v. Canada Life Ins. Co. of Am.*
  No. CV06–121–S–BLW, 2009 WL 1313336 (D.Idaho May 11,
  2009) .................................................................................................................... 17

*McKibben v. McMahon*
  2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ................................................. 8, 18

*Missouri v. Jenkins*
  491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ................................... 16

*Moore v. James H. Matthews & Co.*
  682 F.2d 830 (9th Cir. 1982) .............................................................................. 22

*Moore v. Millenium Acquisitions, LLC*
  2017 WL 1079753 (E.D. Cal. Mar. 21, 2017) ...................................................... 5

*Morales v. City of San Rafael*
  96 F.3d 359 (9th Cir. 1996), *opinion amended on denial of reh'g,*
  108 F.3d 981 (9th Cir. 1997) ................................................................................ 5

*Moreno v. City of Sacramento*
  534 F.3d 1106 (9th Cir. 2008) ........................................................................ 21, 22

*Owner-Operator* Indep. *Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*
  659 F. Supp. 2d 1016 (S.D. Ind. 2009) ................................................................ 7

*Paul, Johnson, Alston & Hunt v. Graulty*
   886 F.2d 268 (9th Cir. 1989) ................................................................. 6

*Prandini v. Nat'l Tea Co.*
   585 F.2d 47 (3d Cir. 1978) .................................................................... 7

*Quesada v. Thomason*
   850 F.2d 537 (9th Cir.1988) ................................................................. 5

*In re Quintus Sec. Litig.*
   148 F.Supp.2d 967 (N.D.Cal.2001) ...................................................... 9

*Sobel v. Hertz Corp.*
   53 F. Supp. 3d 1319 (D. Nev. 2014) ..................................................... 6

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ................................................................ 6

*Thornberry v. Delta Air Lines, Inc.*
   676 F.2d 1240 (9th Cir. 1982), *cert. granted, judgment vacated on other grounds,* 461 U.S. 952, 103 S. Ct. 2421, 77 L. Ed. 2d 1311 (1983) ................................................................................................. 23

*In re Washington Public Power Supply System Securities Litigation*
   19 F.3d 1291 (9th Cir. 1994) ................................................................ 6

**State Cases**

*Bussey v. Affleck*
   225 Cal. App. 3d 1162 (Cal. Ct. App. 1990), abrogated on other grounds by *Robert L. Cloud & Associates, Inc. v. Mikesell*, 69 Cal. App. 4th 1141 (1999) ..................................................................... 24

*Children's Hosp. & Med. Ctr. v. Bonta*
   97 Cal. App. 4th 740 (Cal. Ct. App. 2002) ......................................... 16

*Harman v. City & Cnty. of San Francisco*
   158 Cal. App. 4th 407 (2007) ............................................................ 20

*Horsford v. Bd. Of Trustees of Cal. State Univ.*
   132 Cal. App. 4th 359 (2005) ............................................................ 22

*Hsu v. Semiconductor Sys., Inc.*
   126 Cal. App. 4th 1330 (2005) .......................................................... 24

*Ketchum v. Moses*
 24 Cal. 4th 1122 (2001)................................................................21

*Laffitte v. Robert Half Internat. Inc.*
 1 Cal. 5th 480, 489, 376 P.3d 672 (2016) ........................................6

*Peak-Las Positas Partners v. Bollag*
 171 Cal. App. 4th 101 (2009)........................................................22

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*
 163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ...................................23

*Ramon v. County of Santa Clara*
 173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ...................................22

**Federal Statutes**

42 U.S.C. § 1988.........................................................2, 3, 16, 23

Freedom of Information Act ..............................................................11

**State Statutes**

Civil Code § 52.1(h) ..........................................................................2, 3

Penal Code § 853.6 ..............................................................................9

**Rules**

Rule 26 ................................................................................................11

**Constitutional Provisions**

First Amendment ..................................................................................9

**Other Authorities**

*California Attorney Fee Awards*..........................................................19

*In re Heritage Bond Litigation*
 2005 WL 1594403 ...........................................................................9

*Newberg*, § 15.93 ...............................................................................7

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

This action arises out of the actions by Defendants surrounding a protest on November 26, 2014, in or around the vicinity of Sixth and Hope Street in Los Angeles over the decision not to file criminal charges for the killing of Michael Brown in Ferguson, Mo. Plaintiffs allege that Defendants unlawfully declared an unlawful assembly, unlawfully and unjustifiably arrested Plaintiffs and unlawfully denied Plaintiffs release from custody on their own recognizance ("OR") regarding the and the attendant arrest, detention and release of Plaintiffs.

This Court previously preliminarily approved the settlement in this case. In summary, the class settlement's basic terms, subject to court approval, are as follows:

a.   A class fund of $255,010 to be paid as follows:

    i.   expert costs (totaling $20,210) to be paid to the Client Trust Account of the Law Office of Carol Sobel;

    ii.   mediation costs (totaling $5500) to be paid to the Client Trust Account of the Law Office of Carol Sobel;

    iii.   incentive awards to the three class representatives of $5000 each to be paid to the Client Trust Account of the Law Office of Carol Sobel (for a total of $15,000);

    iv.   class administration costs of a maximum fee of $20,000 to be paid to the Law Office of Carol Sobel, inclusive of all cost of mailing and reporting[1]; and

---

[1] Ms. Sobel has agreed to do this in order to minimize the cost of class administration, as her office has been in contact with many class members, and this amount is considerably less than what would be paid to a professional administrator. In Plaintiffs' counsel's experience, the cost of class administration of a class this size from a professional administrator would likely be substantially higher. Ms. Sobel's office has performed this service in other cases before the

1

v.  $200,000 for distribution pro rata to claiming class members from the total class of approximately 124 class members, to be paid to the Client Trust Account of the Law Office of Carol Sobel (as well as any unused portion of the class administration fee).

b.   $484,290 (inclusive of $7,163.27 in litigation costs other than the expert, mediation and class administration costs) as compensation for statutory attorneys' fees and costs (subject to the approval of the Court), to be paid to the Client Trust Account of the Law Office of Carol Sobel, and to be the subject of a separate motion for attorneys' fees pursuant to 42 U.S.C. §1988 and Civil Code §52.1(h). For purposes of this motion, it is undisputed that Plaintiffs are the prevailing party under the foregoing statutes for a motion pursuant to this settlement. As is apparent from the information provided in the preliminary approval motion, and as is further addressed below, that $476,801.93 (the portion of the fees and costs constituting fees) is substantially discounted below the amounts that Plaintiffs would have sought in an attorneys' fee motion as the prevailing parties in a contested motion. While our motion, and the lodestar presented, is based on the full amount of fees and costs that would be available without the limitation of this agreement (which is nearly double the agreed upon fee), Plaintiffs recognize that the fees and costs to be actually awarded are capped at $484,290.

c.   $5000 to Todd Kyle as compensation for his individual claim paid to the Client Trust Account of the Law Office of Carol Sobel.

The parties held three in-person mediation conferences before Magistrate

District Court and has assisted in maximizing class participation in still other cases where an outside firm was retained to administer the class fund.

As was explained at the preliminary approval hearing, Ms. Sobel is billing for staff work at $45 per hour. To the extent that the $20,000 is not exhausted, it will be added to the class fund for distribution to class members.

2

Judge Jay Gandhi, two while he was still on the bench and one after, which did not result in a settlement. After Plaintiffs filed their motion for general damages and expert reports were exchanged, the parties had a direct one-on-one negotiation, which resulted in the instant proposed settlement, subject to the approval of the Court. Declaration of Barrett S. Litt (hereafter "Litt Dec."), ¶ 32.

The $476,801.93 in fees is compensation for statutory fees and certain costs pursuant to 42 U.S.C. §1988 and Civil Code §52.1(h), and is subject to Court approval after class members have received notice and had the opportunity to object. The costs included in this motion includes all litigation costs incurred except for mediation costs, consultant/expert costs and Class Administration costs (all of which are to come from the class fund). The remaining $7,163.27 in litigation costs are modest. This motion seeks fees for the whole case but, in order to efficiently prepare the motion, fees and costs have been cut off for this motion as of December 1, 2019. In the motion for final approval of the settlement, Plaintiffs will supplement the lodestar figure through the date of the motion.

This motion explains the basis for that $476,801.93 attorneys' fee figure, including that it is substantially less than Plaintiffs' counsel's lodestar, and was so discounted because Plaintiffs' counsel agreed to reduced fees in order to settle the case, and in light of the potential risks to the class that it would not prevail. It addresses the propriety of the fees exceeding the damages agreed to by a multiple of over two. In a nutshell, because there are statutory attorneys' fees available under both §§1983 and 52.1, it is well-established that it is appropriate to award statutory attorneys' fees even when those fees substantially exceed the damages so long as the fee is reasonable. This principle applies to both individual cases and class actions.

Because the proposed Final Order of Approval will address the award of fees and costs, a separate proposed fee order is not being submitted.

3

## II. THE LODESTAR METHOD FOR AN AWARD OF STATUTORY ATTORNEYS' FEES IS THE APPROPRIATE METHODOLOGY IN THIS CLASS ACTION.

### A. IT IS WELL-ESTABLISHED THAT ATTORNEYS' FEES CAN SUBSTANTIALLY EXCEED DAMAGES IN STATUTORY FEE CASES.

Plaintiffs' counsel are very aware that the attorneys' fees here exceed the class damages fund. In a case without an available statutory fee, where the primary relief is monetary (as opposed to injunctive relief), this disparity would generally be inappropriate. That is not so for statutory fees in cases involving fee shifting statutes. In that circumstance, it is common that statutory fees exceed recovered damages (particularly but not exclusively where nonpecuniary injunctive relief is involved). The reason is that the public policy behind fee shifting statutes, particularly those involving civil rights, is to make litigation of such claims financially viable regardless of the size of the claim because protection and vindication of civil rights has a societal value beyond the monetary value of the claim. In *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986), the Supreme Court affirmed a fee award of $245,456 where plaintiffs received only $33,350 in damages, with no injunctive relief, "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.*. 477 U.S. at 575. Congress recognized that the normal contingent fee arrangements made in personal injury cases "would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries." *Id.* at 577. "Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Id.* at 574. Further, Congress intended that fee awards "be governed by

4

the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Id.* at 576.

Accordingly, courts in the Ninth Circuit have routinely reiterated these precepts and awarded fees in excess of damages when appropriate. *See, e.g., Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996), *opinion amended on denial of reh'g,* 108 F.3d 981 (9th Cir. 1997) ("we have repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded"; damages verdict was itself "significant…[and] established a deterrent to the City, its law enforcement officials and others who establish and implement official policies"; overturning $20,000 fee award in case where awarded damages were $17,500); *Quesada v. Thomason,* 850 F.2d 537, 539 (9th Cir.1988) ("court should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested"); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 907 (9th Cir. 2002) (upholding statutory attorney's fee award of $508,606.78 where $24,377 in compensatory damages and $74,400 in punitive damages [total damages of $98,777] were awarded); *Moore v. Millenium Acquisitions, LLC*, 2017 WL 1079753, at *11 (E.D. Cal. Mar. 21, 2017) (awarding $58,961.25 in attorneys' fees and $6,966.78 in litigation expenses where plaintiff received $4000 in statutory damages).

**B.  STATUTORY FEES ARE AN APPROPRIATE BASIS FOR AN AWARD OF ATTORNEYS' FEES IN A CLASS ACTION BROUGHT UNDER FEE-SHIFTING STATUTES, INCLUDING WHERE THE FEES EXCEED DAMAGES.**

This analysis applies in the class action context just as it does in for individual plaintiffs. In the Ninth Circuit, a court generally has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel. In a class action where there is no available statutory attorneys' fee available, the lodestar or percentage method comes from a common fund, but

5

either method can be used to determine the fee. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994).

However, where a statutory fee is available, such as here under §§1988 and 52.1(h), a statutory fee award is appropriate independent of the size of the class damages fund. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, …[and] the amount of such attorney's fees can be approved if they meet the reasonableness standard when measured against statutory fee principles"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts)"); *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 489, 376 P.3d 672, 676 (2016) ("Class action litigation can result in an attorney fee award pursuant to a statutory fee shifting provision or through the common fund doctrine"); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1326 (D. Nev. 2014) ("the differing purposes behind statutory fee shifting and the common fund doctrine confirm that the lodestar method is the appropriate manner for calculating reasonable attorney's fees" in a class action where a statutory fee is available, but the court may add a risk multiplier in a common fund case); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1126 (C.D. Cal. 2008) (citing $27 Million total settlement in *Williams v. Block* with both "a statutory fee of $5.5 Million negotiated in connection with a related state court taxpayer's suit for injunctive relief" and "an additional 20% of the remaining class fund ($21.5 Million) in attorney's fees").

In *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (cited favorably in *In re Bluetooth Headset Prod.*

*Liab. Litig., supra*), the Court explained that "the lodestar method…[is] the appropriate method in statutory fee shifting cases…[including in class actions.] *Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class.*" (Emphasis supplied.)

In *Prandini v. Nat'l Tea Co.*, 585 F.2d 47 (3d Cir. 1978), the parties, as here, negotiated an amount for the class damages fund, and a separate amount for attorneys' fees in a Title VII case. The attorneys' fees negotiated were a "ceiling" subject to court approval. In light of the fact that "any of the $50,000 which is not awarded to plaintiffs' attorneys will not be paid to the plaintiffs to augment their settlement fund," calling the fees a "fund" had "little analytical value" since they were separate from the "damages fund." Because, "unlike a common fund award," the attorney's fees award would not "reduce the plaintiffs' recovery…[, the] fee award made here may be analyzed on the same terms as a statutory fee award, which the defendant would pay, and which would not in any way affect or reduce the plaintiffs' award." *Id*. at 53. *See also Newberg*, §15.93 (citing *Prandini* and noting "fees that are paid to class counsel for the time they spend pursuing attorney's fees for the underlying case" are compensable in class fee claims based on a statutory fee, in contrast to a pure class fund fee award); *Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986) (allowing for fees-on-fees in a class action fee-shifting case and carefully distinguishing it from common fund cases, where such fees-on-fees are not appropriate).

Thus, courts have awarded lodestar-based fees independent, and in excess, of the amount of class damages based on fee shifting statutes (or contracts). *See. e.g., Owner-Operator* Indep*. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, 659 F. Supp. 2d 1016 (S.D. Ind. 2009) (class action under Truth in Lending statutes where

class members received $194,220.98 [236 claims filed out of possible 3200 "potential claimants"]; granting statutory attorneys' fees and costs in the amount of $1,145,671.58 under statutory fee provisions); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 275–76 (6th Cir. 2016) (in a consumer class action where the "district court also correctly noted that several of the plaintiffs' claims involved fee shifting statutes, … and that the purpose of such statutes is to induce a capable attorney to take on litigation that may not otherwise be economically viable," it was not an abuse of discretion for the court to use a lodestar method of calculating fees of $2.39 Million where the maximum fund value was $15,500,430, but the amount paid class members was $1,593,240); *In re Home Depot Inc.*, 931 F.3d 1065, 1078–80 (11th Cir. 2019) (awarding a class attorneys' fee of $15.3 million using the lodestar calculation including a multiplier of 1.3, finding that the case was a contractual fee-shifting case, and the constructive common-fund doctrine did not apply).

In *McKibben v. McMahon*, 2019 WL 1109683, at *11–15 (C.D. Cal. Feb. 28, 2019), a jail class action involving disparate treatment of gay, bi-sexual and transgender inmates in programming and privileges, there was a settlement similar to this (in which one of the class counsel in this case, Barrett S. Litt, was also counsel). There was a settlement for injunctive relief and a damages fund of $818,195.51 exclusive of certain litigation costs and incentive awards. Separately, there was an agreed upon attorneys' fee of $1,100,000, inclusive of certain costs. In approving the attorneys' fee component of the settlement, the Court noted that the "lodestar approach is appropriate because this is a class action brought under fee-shifting statutes"[2] and observed that the "Ninth Circuit noted it has repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded." (Citation and internal

---

[2] While the Court noted that this was true "where the primary relief sought is injunctive relief," the foregoing authorities establish this is true also for damages cases.

8

quotation marks omitted). While, in "a case without an available statutory fee, this disparity would be inappropriate[,]…it is common for statutory fees to exceed recovered damages." Thus, the lodestar method was appropriate even though the (discounted, as here) statutory fees exceeded the damages.

## III.  ANALYSIS OF THE FACTORS IN DETERMINING AN APPROPRIATE ATTORNEYS' FEE AWARD IN CLASS ACTIONS.

Although not mandated by the Ninth Circuit, courts often consider the following factors when determining the reasonableness of class action fees to be awarded: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar. *See, e.g., In re Heritage Bond Litigation,* 2005 WL 1594403 at 18*; In re Quintus Sec. Litig.,* 148 F.Supp.2d 967, 973-74 (N.D.Cal.2001). Although a percentage of the fund is not the request here, these factors are also relevant in determining the reasonableness of Plaintiffs' fee request on a lodestar basis, and so Plaintiffs address them here.

### A.  THIS CASE INVOLVED COMPLEX ISSUES AND SIGNIFICANT RISK.

The issues involved in this case involve complex issues of constitutional law in an area of conflicting circuit law on the issues involved, i.e., what circumstances justify the announcement of an unlawful assembly, what standards apply when police determine an unlawful assembly exists. The legality of the arrests involved largely uncharted First Amendment questions, and the underlying facts were hotly disputed. Similarly, there is no law addressing the standards for OR release under Penal Code §853.6, and again there were substantial fact disputes over whether there was in fact a refusal to grant, or intentional delay in granting, OR release. It was Plaintiffs' counsel's assessment that there were substantial risks in going to trial, and that, despite their belief that Plaintiffs were correct, the class had a meaningful risk of no recovery absent settlement. See Litt Dec. ¶¶ 33.

In addition, there are substantial risks in any class action. Most cases filed as a class action are not certified and many that are can still result in a loss, or in only a partial success. Thus, there is an added level of risk in any class action. See Litt Dec. ¶¶ 20-27.

### B.   THE MANAGEMENT OF THE CASE WAS CHALLENGING.

Although this was not a case that required extensive database management, Plaintiffs' counsel placed a high priority on maintaining contact with a large number of class members throughout the case, including monitoring and communicating on social media. As a result, Plaintiffs' counsel expect that they will reach in a range close to 90% of class members, a time intensive and laborious undertaking.

### C.   REACHING A SETTLEMENT WAS DIFFICULT.

Another example of complexity and risk, and counsel's skill, arose during settlement discussions. Plaintiffs' counsel gathered information regarding comparable settlements from all over the country. Despite two sessions with former Magistrate Judge Jay Gandhi (one while he was on the bench and one afterwards), no settlement was reached. The parties exchanged expert reports, and otherwise began trial preparation. Ultimately, direct negotiations, without the participation of Judge Gandhi, resulted in a settlement. See Litt Dec. ¶ 32.

### D.   THE RISKS OF NON-PAYMENT WERE SUBSTANTIAL

There was substantial risk of non-payment facing Plaintiffs' counsel. While the County had the resources to pay a judgment, the risk lay in establishing that the underlying conduct was illegal. This was discussed at some length in Section III(A), and will not be repeated here. Seeking substantial amounts of money from government entities always carries risks of politics entering into the equation. Of the protest class actions in which class counsel have been involved, this one appeared most likely to be tried due to the differing views of the disputed facts. See Litt Dec. ¶ 31.

As was discussed in the preliminary approval motion, the fee plaintiffs are requesting will cover only approximately 50% of their lodestar, much less any risk enhancement. The lodestar is as low as it is only because Plaintiffs' counsel are very experienced in litigation of this type. Without such expertise, it is likely that the hours other counsel, even those experienced in civil rights litigation, would expend to accomplish the same result would have been substantially larger. Further, much of the preliminary work done to gather the relevant facts, which occurred pro bono during the initial arrest and release process, is not included in the lodestar although there is an argument that it should be. See Sobel Dec. ¶¶32, 33; Litt Dec., ¶ 34.

### E.    THE EFFORT EXPENDED BY COUNSEL.

Including the investigation time, counsel will have litigated this case for over four years at the time of the final approval hearing, excluding time spent on the initial arrests. The work performed included: 1) extensive investigation of the underlying circumstances, including communicating directly with many class members; 2) preparation of the complaint and amended complaint; 3) the Rule 26 conference and report; 4) extensive analysis of documents from a variety of sources, including public materials on the internet and from City Council files, documents obtained through a Freedom of Information Act request filed by the Partnership for Civil Justice, and social media; 5) a successful contested motion to certify the class and preparation of a motion for general damages; 6) preparation of a mediation brief and multiple mediation sessions; 7) working with Plaintiffs' experts to prepare Plaintiffs' expert reports on police practices, the audibility of the dispersal announcements and general damages; 8) negotiation and preparation of extensive settlement documents, including settlement agreement, preliminary approval order, class notice and claim forms; 9) complying with this Court's particular requirements for a preliminary approval (including a time intensive process of organizing Plaintiff's counsel's time by both attorney and task), 10) the

11

instant fee motion and yet to be done responses if objections are filed and proposed Final Approval Order; 11) Final Approval Hearing, and 12) continuing contact with class members offering information and assistance as requested. That description does not capture the full extent of the effort because, unlike many class actions, there was considerable individualized contact and communication with individual class members. Litt Dec., ¶ 35.

### F.   THE RESULT OBTAINED FOR THE CLASS

This case was hard fought, as we have already described. The class members are people of little means. All work was performed on a contingent fee basis. The settlement was the result of arm's length negotiations entered into only after plaintiffs won class certification. Even then it required over a year of settlement efforts and trial preparation before reaching a settlement in principle.

Given the challenges in the case, the financial terms of the settlement are very favorable to class members. It is anticipated that every class member will receive at least $1600 (at a 90% claim rate, in excess of $1800). This is a favorable recovery in light of the fact that all class members were released within 20 hours (and most within 12 hours), and the factual challenges in establishing liability in this case compared to other protest cases.

### G.   COUNSEL'S EXPERIENCE

Class Counsel are highly experienced litigators in the fields of civil rights and class actions. All of the appointed class counsel (Mr. Litt, Ms. Sobel and Mr. Hoffman) are well-known and highly regarded civil rights lawyers, and all have extensive experience dealing both with civil rights and class action litigation. In addition, they are experienced in the area of protest civil rights class actions and other law enforcement class actions. In support of the class certification motion, extensive information regarding the qualifications of all class counsel was submitted to the Court, which demonstrated the exceptional qualifications of class counsel in this case. See Dkt. #28 (Sobel Declaration and CV); Dkt. #27 (Litt

Declaration with Litt and Hoffman CVs), filed in connection with the motion for class certification.

### H.   COUNSEL'S SKILL

This issue has been answered by the discussion above. There can be little doubt that counsel in this case are highly skilled attorneys in the field of civil rights and civil rights class actions, particularly law enforcement class actions. The Court is in a position to assess for itself the skill level of plaintiffs' counsel. We will not elaborate further.

### I.   *THE REACTION OF THE CLASS*

As of the time of this writing, Plaintiffs' counsel has not yet received a final report of the number of claims, opt-outs, or objections filed. That information will be provided in connection with the final approval hearing. However, as of December 19, 2019, there were over 50 claims filed (out of approximately 125 class members), and no opt-outs or objections. Sobel Decl., ¶ 50.

## IV.   PLAINTIFFS' ATTORNEYS' FEE REQUEST IN THIS CASE IS A SUBSTANTIALLY REDUCED LODESTAR.

### A.   PLAINTIFFS' LODESTAR

As we indicated in the preliminary approval motion and in Section II, *infra,* Plaintiffs' claim for attorneys' fees in this case is substantially discounted below the fees that would have been sought in the absence of a settlement agreement and is based on the applicable statutory fee standards. In order to resolve this case at settlement, and avoid the risk of class members recovering nothing at trial (and in turn counsel receiving no awarded fees), Plaintiffs' counsel agreed to a substantially reduced fee. In this section, we address the standards in determining an appropriate statutory attorneys' fee in general under fee-shifting statutes. We previously addressed the propriety of such fees in the context of a class action and where the fees exceed the class damages fund. We then address the hours expended in this case and the rates that would have been sought in a normal fee

motion to justify the award sought here. Since attorneys' fees in this case are available under both federal and California law, we cite to both.

Because the requested fee is not based on the lodestar but rather on the agreement of the parties, "a less exhaustive cataloging and review of counsel's hours" is involved than where the fee is based on a lodestar directly. *See, e.g., Victoria Secret Stores, LLC*, 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008) and cases cited therein. Nonetheless, we already provided detailed timesheets per the court's preliminary approval procedures (see Dkt. 131-5) and provide update timesheets for the subsequent time period in the event the court wishes to review them. All the time records submitted were contemporaneously maintained by the respective counsel. The relevant time records were attached as Exhibit D to the proposed preliminary  approval order in connection with the preliminary approval hearing (Dkt. 131) (fee records from the various counsel involved in the case), and the subsequent records are attached as Ex. C to Mr. Litt's Declaration to this motion. Detailed cost records from February 2015 through December 1, 2019 are attached as Ex. D to Mr. Litt's Declaration to this motion The Litt and Sobel declarations provide the summaries of fees and costs, which are reproduced below for fees, and in Section V *infra* (for costs).

The tables below show each person for whom time has been billed, that person's position and years of practice, the hours worked (through December 1, 2019) and the hourly rate used to bill for that person's time (using current rates). An explanation of the role each biller played in the case is discussed in Ms. Sobel's Declaration. All KMBL firm time was contemporaneously recorded. See Litt Dec., ¶39. Below is a summary of the time spent, and rates used to determine the lodestar, through December 1, 2019.

| PLAINTIFFS' COUNSEL'S LODESTAR AS OF 12/1/2019 | | | | |
|---|---|---|---|---|
| NAME | GRAD YR | HOURS | RATE | TOTAL |
| Barrett S. Litt | 1969 (50) | 495.675 | $1200 | $594,810.00 |
| Carol Sobel | 1978 (41) | 793.625 | $1000 | $793,625.00 |

| PLAINTIFFS' COUNSEL'S LODESTAR AS OF 12/1/2019 | | | | |
|---|---|---|---|---|
| NAME | GRAD YR | HOURS | RATE | TOTAL |
| Paul Hoffman | 1976 (43) | 121.10 | $1050 | $127,155.00 |
| Catherine Sweetser | 2010 (09) | 61.6 | $650 | $40,040.00 |
| Colleen Flynn | 2004 (15) | 68.7 | $725 | $49,807.50 |
| Colleen Mullen | 2014 (05) | 7.9 | $500 | $3,450.00 |
| Matthew Strugar | 2004 (15) | 61.5 | $725 | $44,587.50 |
| Rachel Steinback | 2008 (11) | 52.5 | $675 | $35,437.50 |
| Monique Alarcon[3] | 2016 (03) | 66.4 | $420 | $27,888.00 |
| Monique Alarcon | Law Clerk | 104.7 | $200 | $20,940.00 |
| Julia White | Sr. Paralegal | 93.60 | $360 | $33,696.00 |
| Weston Rowland | Law Clerk | 32 | $250 | $8,000.00 |
| Heath White | IT/Data Mgr. | 11 | 300 | $3,300.00 |
| TOTAL | | 1,970.30 | | $1,782,736.00 |

Based on these hours and rates, the lodestar through December 1, 2019 is
$1,782,736.00. This does not account for the remaining work, which includes work
done after December 1, 2019 on this motion and accompanying declarations, the
yet to be drafted motion for Final Approval and Order, responses to objections to
the extent necessary, ongoing work in connection with the Class Administrator and
class members as needed and appearance at the final approval hearing (which time
will be provided for the Final Approval Hearing). Plaintiffs estimate an additional
100 hours, which may be more or less depending on events not yet known, to
complete this work.

## B.  COUNSEL'S HOURLY RATES ARE REASONABLE

Although the attorneys' fees are capped, Plaintiffs present their motion
based on what they consider the reasonable hourly rates and hours independent of
the cap. Having said that, Plaintiffs recognize that, because the award is limited
and highly discounted, the court may not find it necessary to ascertain the value of
the fees so long as that amount exceeds the agreed upon capped fees.

---

[3] Ms. Alarcon's time is divided between work she did as an attorney and work she
did as a law clerk.

Counsel's requested hourly rates are reasonable for attorneys of their skill, experience and reputation. Under California law, plaintiff's attorneys are entitled to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (Cal. Ct. App. 2002). Federal law is the same. *See, e.g., Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("requested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation") (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

In calculating the lodestar, Plaintiffs used current (2019) rates to adjust for delay in payment. *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 282, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute [42 U.S.C. §1988]"); *Barjon v. Dalton*, 132 F.3d 496, 502–03 (9th Cir. 1997) ("the district court may choose to apply either the attorney's current rates to all hours billed or the attorney's historic rates plus interest"). Generally, for a "fee award to be reasonable, it must be based on current, rather than historic, hourly rates." *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 (C.D. Cal. 2012) (lodestar award in settled class action, citing *Missouri v. Jenkins*). The *Charlebois* Court noted that the increase to current rates

"is justified by comparable increases in the market. *See Coles v. City of Oakland,* No. C03–2961 THE, 2007 WL 39304, *7 (N.D.Cal. Jan. 4, 2007) (rejecting defendants' argument that rate increases should not surpass the rate of inflation and stating 'the focus of the rate analysis is to ensure that fees are awarded at 'prevailing market rates in the relevant community,' and such rates may be affected by factors other than inflation, such as attorneys'

16

additional years of experience or changes in the legal market') (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *Parker v. Vulcan Materials Co. Long Term Disability Plan,* No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D.Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because '[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice'); *LaPeter v. Canada Life Ins. Co. of Am.,* No. CV06–121–S–BLW, 2009 WL 1313336 *3 (D.Idaho May 11, 2009) ('It is typical for rates to increase on a yearly basis and, also, for associates' and paralegals' rates to increase as they gain more experience.')."

Plaintiffs have provided two types of declarations and evidentiary support for the requested rates. First, they have established the outstanding reputations and experience of Plaintiffs' counsel, through various declarations of Plaintiffs' counsel.

Second, the declarations from Barry Litt, Carol Sobel and Richard Pearl address the reasonableness of the rates requested.[4] Mr. Litt and Ms. Sobel have both been identified by courts as experts on attorney fee rates in Southern California. Ample citations from a variety of sources to support the rates requested have been provided. These include reference to numerous other attorney fee awards in civil rights and consumer class actions (either direct fee awards or lodestar cross-checks in class actions). Several civil rights cases have been identified in which rates comparable to those requested have been awarded (or in

---

[4] At the preliminary approval hearing, the Court acknowledged the expertise of Mr. Litt and Ms. Sobel in addressing civil rights rates but requested that, in light of their personal involvement in the case, an independent opinion on the reasonableness of the fees be provided. Accordingly, Mr. Pearl's declaration is provided in addition to theirs.

which rates are comparable to those requested after accounting for the general increase in rates in intervening years).

As one example, Judge Bernal of this District determined approximately one year ago from the date of the final approval hearing in this case that the following rates were "within the reasonable range for attorneys of their experience in this district": $1150 for Mr. Litt, $875 for attorneys with 30 and 32 years' experience, $600 for a ten year attorney, $715 for a 15 year attorney, $640 for a 13 year attorney, $480 for a six years attorney, $390 for a four year attorney, $335 for a senior paralegal and $225 for law clerks. *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019). He noted that materials Mr. Litt had provided (an updated version of which is provided with this motion) provided evidence that attorneys practicing civil rights litigation with 26-49 years of experience bill had been awarded adjusted lodestar rates of $887-$1230 per hour; attorneys practicing civil rights litigation with 23-33 years of experienced bill had been awarded adjusted lodestar rates of $738-$1220 per hour; attorneys practicing civil rights litigation with 9-15 years of experience bill had been awarded adjusted lodestar rates of $603-$855 per hour; and attorneys practicing civil rights litigation with 1-6 years of experience had been awarded adjusted lodestar rates of $336-$671 per hour. Judge Bernal also noted that Mr. Litt had provided support that commercial rates were commonly "higher" than these rates "for attorneys of similar or less experience." *Ibid.*

As Judge Bernal noted, numerous commercial rate awards or commercial fees charged to clients, for which rates are considerably higher than those listed as Counsel's rates, have been provided. Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§1988] be governed by the same standards which prevail in other types of equally complex

18

Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913)). Given that standard, it would be reasonable to use rates comparable to those for complex commercial litigation, but, as the Litt Declaration demonstrates, the rates used are generally below those often paid for commercial litigation, especially for attorneys under 20 years. The reasonableness of the requested rates is reinforced by the fact that the substantial commercial fees described in the declaration are generally paid across the board; they are not generally based, for example, on peer recognition, such as Super Lawyers or some other form of acknowledgment of skill and reputation. Finally, as we explained previously, Plaintiffs' counsel have discounted their lodestar by approximately 50% to resolve this case. Ms. Sobel also provides substantial support for the rates being sought. See Declaration of Carol A. Sobel and attached exhibits filed concurrently herewith.

In addition to the Litt and Sobel Declarations, and in light of the Court's comment at the preliminary approval hearing that there should be evidence of the reasonableness of the rates independent of Mr. Litt and Ms. Sobel, Plaintiffs have provided the declaration of Richard Pearl to address the reasonableness of the requested rates in light of the skill, experience and reputation of Plaintiffs' counsel, particularly class counsel Litt, Sobel and Hoffman. Mr. Pearl is a well-known expert on attorney's fees in California and is the author of the highly regarded California Attorney's Fees Awards. *See, e.g., Garcia v. Resurgent Capital Servs.,* 2012 WL 3778852, at *2 (N.D. Cal. Aug. 30, 2012) ("Richard Pearl is an expert on California attorney's fees and author of *California Attorney Fee Awards*"); *Gordon v. Los Angeles Unified Sch. Dist.,* 2019 WL 2511936, at *5 (C.D. Cal. June 17, 2019) (citing declaration of Mr. Pearl, which "explain[ed] that he has authored a treatise on attorneys' fees in California which has been cited by dozens of courts, and that he has testified as an expert in attorneys' fees cases").

19

Mr. Pearl similarly supports the rates for counsel in general and particularly for Mr. Litt, Ms. Sobel and Mr. Hoffman. He opines that the requested rates "are entirely reasonable," and are "well within the range of non-contingent market rates charged for reasonably similar services by Los Angeles Area attorneys of reasonably similar qualifications and experience." Pearl Dec. ¶13. He supplies numerous other awarded rates in support of his conclusion. *Id*. ¶14. He also indicated that he is aware "of the reputation and experience of Mr. Litt, Ms. Sobel and Mr. Hoffman for handling complex civil rights litigation, including complex civil rights class actions," and that there "is little question that they are considered among the top civil rights practioners in California or that the civil rights class actions of the type that they handle qualify as complex litigation." *Id*. ¶19.

Skill and experience, novelty and difficulty of issues, rejection of other employment, results obtained are all factors in determining a reasonable hourly rate. *See, e.g., Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416 (2007); *Hensley v. Eckerhart*, 461 U.S. 424, 429–30 and n.3, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (referring to twelve factor test enunciated in *Johnson v. Georgia Highway *430 Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In addition to contingent risk, which applies to this case and would support a multiplier under California law, these factors support a lodestar on the high end of the market for the reasons explained below.

Plaintiffs' lawsuit was certainly more difficult and complex than a routine case, and Plaintiffs achieved an excellent result, given the particular challenges in the case. The law regarding the issues involved, particularly as it relates to when and under what circumstances an unlawful assembly determination is legal and the dearth of law on California's Own Release statute presented challenges, as did the existence of substantial factual disputes, the resolution of which would

significantly affect the result had the case gone to trial. See Litt Dec., ¶¶ 33; Sobel Dec., ¶¶ 9-11.

Second, as is explained in Mr. Litt's Declaration, there are substantial risks inherent in any class action, especially for damages. First, the majority of filed class actions are not certified. Second, of the cases that are certified, a significant percentage are ultimately unsuccessful. As a result, less than 2/3 of filed class actions result in successful claims on behalf of the class. The risk and complexity of civil rights class actions justifies rates at the top end of rates in the relevant legal community. There are also substantial risks in any *Monell* claims. Litt Dec., ¶¶15-27.

## C.   COUNSEL'S HOURS ARE REASONABLE

The number of hours expended by counsel is reasonable. The accompanying Declarations establish the substantial effort Plaintiffs' counsel put into this case. Every hour reasonably spent on the case is compensable, and deference should be given to counsel's assessment of the resources necessary to prevail. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) ("Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those *relating* solely to the fee") (emphasis in original); *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim.") (internal quotations omitted).

Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent *lawyer* to advance or protect his client's

interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009). In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vov. Las Virgenes Municipal Utility Dist.*, 79 Cal.App.4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation).

In the instant case, counsel's declarations and attached time records document the attorney, paralegal, and law clerk hours spent in the successful prosecution of this action. *See* Litt Dec., ¶ 41; Sobel Declaration, ¶¶ 34, 35. Such time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). The time put into the case was

Because the agreed upon fee here is so far below lodestar, the only billing judgment exercised was to eliminate billers who worked less than approximately 20 hours on the case, on the theory that such billers were unnecessary. Ordinarily, Plaintiffs' attorneys would have reviewed the billings in greater detail. The fee detail was reviewed for obvious errors, but the kind of exhaustive, detailed review that would ordinarily be done in a fully contested fee motion was not. Sobel Dec., ¶¶ 26, 27.

It is established law that a 10% discount for duplicative or unnecessary work is the most that can be done without individualized justification. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of

discretion and without a more specific explanation"). While, in an ordinary fee motion, Plaintiffs would have exercised line by line billing judgment, or provided an across the board small percentage discount of some sort to account for duplication, it was unnecessary to exercise billing judgment in this case given the approximately 50% reduction in the lodestar based on the agreed upon fee. This is particularly so since the agreed upon fee was the product of settlement negotiations, was heavily discounted, and any fee reduction would not go to class members. If Defendants choose to challenge Plaintiffs' time, it is now their burden to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008).

## V.   COSTS

Plaintiffs have established their costs, which, except for copy/print, scanning and phone, are generally out of pocket and are well within the normal range of costs awarded under both California and federal fee shifting statutes, which allow reimbursement of litigation expenses that "are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of §1988." *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *cert. granted, judgment vacated on other grounds,* 461 U.S. 952, 103 S. Ct. 2421, 77 L. Ed. 2d 1311 (1983).

The types of costs requested here are normal costs awardable under fee shifting statutes, and are routinely allowed, including travel costs, investigators, consultants, filing fees, photocopies, printing, scans, messenger services, telephone, mailing, computerized legal research, and similar costs normally reimbursed by the client. *See, e.g., In re Immune Responses Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007); *Ambriz v. Arrow Fin. Servs., LLC*, No.

23

CV07-5423-JFW(SSX), 2008 WL 2095617 (C.D. Cal. May 15, 2008). Opinions of the federal courts are applicable to determining allowable costs under California law. *See, e.g., Bussey v. Affleck*, 225 Cal. App. 3d 1162, 1165 (Cal. Ct. App. 1990), abrogated on other grounds by *Robert L. Cloud & Associates, Inc. v. Mikesell*, 69 Cal. App. 4th 1141 (1999) and *Hsu v. Semiconductor Sys., Inc.*, 126 Cal. App. 4th 1330, (2005).

The charts below reflect the costs summary in this case (apart from expert and mediation costs).

| KMBL COSTS – FROM ATTORNEYS' FEES AND COSTS AWARDED | |
|---|---|
| **Cost Item** | **Amount** |
| E106-Research | $589.82 |
| E107-Delivery | $489.44 |
| E108-Postage | $6.45 |
| E134-Parking | $66.40 |
| E145-PrintAudit | $241.40 |
| E146-Scans | $12.30 |
| E112-FeesCrt | $700.00 |
| E120-Pis | $766.00 |
| E128-Records | $209.30 |
| E134-Parking | $64.00 |
| E146-Scans | $216.30 |
| **Sub-Total For Fee Award** | **$3,361.41** |

| COSTS – FROM CLASS FUND | |
|---|---|
| **Cost Item** | **Amount** |
| E119-Experts | $12,360 |
| E121-Arb/Medi | $5500 |
| **Sub-Total From Class Fund** | **$17,860.00** |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court award total fees and costs of $484,290, as provided in the Settlement Agreement exclusive of $36,304.49 in expert/consultant/mediation costs to be taken from the Class Fund.

DATED: December 19, 2019          Respectfully submitted,

Kaye, McLane, Bednarski & Litt, LLP

By: /s/ Barrett S. Litt
　　　　　Barrett S. Litt
　　　　　Attorneys for Plaintiffs