1  Barrett S. Litt, SBN 45527
   Email: blitt@kmbllaw.com
2  KAYE, MCLANE, BEDNARSKI & LITT
3  975 East Green Street
   Pasadena, California 91106
4  Telephone: (626) 844-7660
5  Facsimile: (626) 844-7670

6  Carol A. Sobel, SBN 84483
   Email: carolsobel@aol.com
7  LAW OFFICE OF CAROL A. SOBEL
8  3110 Main Street, Suite 210
   Santa Monica, California 90405
9  Telephone: (310) 393-3055
10 Facsimile: (310) 451-3858

11 ADDITIONAL COUNSEL LISTED
   ON NEXT PAGE
12 Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARMAINE CHUA, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>DEFENDANTS. | CASE NO: 2:16-CV-00237-JAK-GJS(X)<br>[HON. JOHN A. KRONSTADT]<br><br>[PROPOSED] FINAL APPROVAL ORDER<br><br>HEARING DATE:  MARCH 16, 2020<br>HEARING TIME:  8:30 A.M.<br>COURTROOM:     10B |

ADDITIONAL PLAINTIFFS' COUNSEL

Paul Hoffman, SBN 71244
Email. hoffpaul@aol.com
Catherine Sweetser. SBN271142
Email. catherine.sdshhh@gmail.com
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
732 Ocean Front Walk
Venice, California 90291
Tel. (310) 396-0731
Fax. (310) 399-7040

Colleen M. Flynn, SBN 234281
Email. cflynnlaw@yahoo.com
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 9001 0
Tel. 213 252-9444
Fax. 213 252-0091

Matthew Strugar, SBN 232951
Email. matthewstrugar@gmail.com
LAW OFFICE OF MATTHEW STRUGAR
2108 Cove Avenue
Los Angeles, California 90039
Tel: 323 696-2299

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................1

II. DEFINITIONS......................................................................................1

III. OBJECTIONS AND OPT-OUTS .........................................................4

IV. THE CLASS..........................................................................................4

V. CLAIMS FILED ...................................................................................5

VI. SETTLEMENT AGREEMENT FAIR, ADEQUATE AND REASONABLE ......................................................................................5

VII. NOTICE ................................................................................................6

VIII. TERMS OF PAYMENTS FROM THE CLASS FUND .........................7

IX. CLASS ADMINISTRATOR................................................................10

X. ATTORNEYS' FEES...........................................................................10

XI. GENERAL PROVISIONS ..................................................................14

XII. FINAL RESOLUTION........................................................................15

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

This lawsuit having come before this Court for a hearing, pursuant to this Court's Order Preliminarily Approving Proposed Settlement Between Plaintiffs and Defendant dated November 15, 2019 (the "Preliminary Approval Order," Dkt. 145) to consider and determine the matters set forth in the Preliminary Approval Order; and due notice of said hearing having been published and given, including their right to object or opt out; and the Court having considered the matter, including all papers filed in connection therewith, and the oral presentations of counsel at said hearing; and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## II. DEFINITIONS

1. "Damages Class Member" means all members of the damages class as defined above.

2. "Class Counsel" means the three firms certified as class counsel in the Court's August 26, 2013, class certification order (modified, where applicable, to reflect the current firm names): Kaye, McLane, Bednarski and Litt, LLP; Law Office of Carol A. Sobel; and Schonbrun Seplow Harris & Hoffman, LLP.

3. "Matters Alleged in the Lawsuit" refers to the claims for relief and allegations in the Complaint.

4. "Released Persons" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents.

5. "LAPD" refers to the Los Angeles Police Department.

6. "Class Notice" means the notice provided to class members as previously authorized by the court.

7. "Effective Date" means the date upon which the Order of Final Approval of Settlement ("Consent Judgment") entered by the Court approving the

1  Settlement Agreement becomes final. The settlement agreement provided that, if a
2  class member objected to the settlement, the Consent Judgment will be deemed
3  final upon expiration of the time to appeal or, if one or more Notices of Appeal
4  were filed in the Ninth Circuit Court of Appeals, upon exhaustion of all such
5  appeals and any petitions for writs of certiorari. It also provided that, if no class
6  member objected to the settlement, the Consent Judgment would be deemed final
7  upon its entry. Since no class member objected to the settlement, the effective date
8  of the settlement is the date that judgment is entered.
9         8.   An "Opt-Out" is any Damages Class Member who files a timely
10 request for exclusion, pursuant to the terms of this Settlement Agreement, to be
11 excluded from the Settlement Class. (If used as a verb, it refers to the process of
12 filing such exclusion.) There were no opt-outs in this case.
13        9.   "Proof of Claim Form" means the Proof of Claim and Release Form
14 that Class Members used to make a claim for payment from the Class Fund, copies
15 of which were attached to the previously submitted settlement agreement.
16        10.  "Incentive Awards" refers to proposed incentive awards to the three
17 class representative plaintiffs of $5000.
18        11.  The "Class Fund" is the monetary fund set aside for Class Members
19 who file timely class claims. This fund is separate from the amount of the
20 settlement for attorneys' fees and costs. The Class Fund includes the following
21 costs: expert costs (totaling $20,210), mediation costs (totaling $5500) and costs of
22 class administration (allocated at a maximum of $20,000 but actually amounting to
23 $4,121.49); incentive awards totaling $15,000. (The remaining costs are included
24 in the attorneys' fee award, as provided by ¶ 12 of the settlement agreement.) After
25 the foregoing costs and incentive awards, the parties have agreed that $200,000,
26 plus the difference between $20,000 and the actual class fund cost (which has now
27 been calculated to be $15,878.51), will be distributed to the claiming class
28

1 members.[1] The amount of the Class Fund inclusive of the foregoing expert,
2 mediation, class administration costs and incentive awards is $260,710.

3     12.  "Attorneys' Fees and Costs" are the attorneys' fees and costs the
4 Plaintiffs intend to request that the Court award Class Counsel pursuant to the
5 statutory attorneys' fee provisions of 42 U.S.C. §1988 and Civil Code §52.1(h).
6 The parties have agreed to a figure of $484,290 (inclusive of litigation costs other
7 than the expert, mediation and class administration costs referred to in the
8 preceding paragraph). Defendants agreed that Plaintiffs satisfy the prevailing party
9 element for a motion pursuant to the settlement and further agreed that the
10 $484,290 figure is substantially discounted below the amounts that Plaintiffs would
11 have sought in an attorneys' fee motion as the prevailing parties in a contested
12 motion.

13     13.  The "Claim Cut-off Date", which was January 30, 2020, is the date by
14 which any Class Member who wishes to receive payment from the Class Fund
15 must file his/her Proof of Claim Form (attached as the last page of Exhibit B).

16     14.  The "Bar Date", which was January 30, 2020, is the date by which
17 any class member must file objections, if any, to this Settlement Agreement, or any
18 class member must request exclusion from the settlement. A Class Member
19 requests exclusion from the settlement by sending a request to the Administrator
20 consistent with the terms of Section VII, *infra*.

21     15.  The "Named Plaintiffs" or "Class Representatives" refers to the
22 persons listed in the introductory paragraph to the settlement agreement (i.e.,
23 Charmaine Chua, Torie Rivera and Lydia Hicks are "Class Representative
24 Plaintiffs"; they and Kyle Todd are included in the term "Named Plaintiffs").

25     16.  "Preliminary Approval" is the Court's determination that the
26 Settlement is within the range of possible approval and therefore that a notice

---

[1] Kyle Todd is an individual Plaintiff only and is not part of the 6th and Hope class. He will receive $5000 as part of the overall settlement.

should be sent to the Class and a hearing should be held with respect to fairness.

17. The "Preliminary Approval Order" is the order entered by the Court preliminarily approving the settlement, after which Class Notice, the opportunity to object and opt out, and a Final Approval hearing occurred. (See Dkt. 145.)

18. A "Settlement Class Member" ("SCM") means any member of the Damages Class as defined above (whether or not s/he files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

19. A "Timely Claim" is one filed a) within the claim cut-off date set by the Court, and b) to the extent the Court approves, late claims (i.e., claims filed after the Class Notice period) that are filed prior to the Final Approval Hearing.

### III. OBJECTIONS AND OPT-OUTS

20. There have been no objections to the settlement in general, no objection to the request for an award of attorneys' fees filed, and no opt outs from the settlement. Prior to class notice, two class members had filed individual lawsuits, which were separately settled. (Declaration of Carol Sobel.)

### IV. THE CLASS

21. Over the objection of Defendants, the Court certified a 6th and Hope class defined as approximately 130 persons who were detained and arrested at 6th and Hope Streets on November 26, 2014, denied release on their own recognizance but never prosecuted. The class representatives were Plaintiffs Chua, Hicks and Rivera. Certification Order, p.5 (Dkt. 50).

22. Plaintiffs alleged that their detentions and arrests were unlawful under the First and Fourth Amendments to the United States Constitution and that the refusal to release class members OR violated Penal Code §853.6, and that these actions were pursuant to LAPD policy. They also alleged violations of Calif. Civil Code §52.1.

## V.   CLAIMS FILED

23.   A total of 112 claim forms were sent to class members by the Class Administrator. Addresses could not be located for 15 class members, to whom such notices were accordingly not sent. A total of 85 timely claims were filed. There were no late claims. Thus, the claims made represent approximately 75% of class members reached. *(Sobel Dec.)*

## VI.   SETTLEMENT AGREEMENT FAIR, ADEQUATE AND REASONABLE

24.   The settlement of this lawsuit was not the product of collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result of bona fide and arm's-length negotiation conducted in good faith by the parties and their counsel, with the assistance of an independent mediator, who is a sitting United States Magistrate Judge. The final settlement was reached between the parties directly shortly before intensive trial preparation was to begin.

25.   The Settlement Agreement and the settlement set forth therein are hereby approved and found to be fair, adequate, reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

26.   The financial terms of the settlement are favorable to class members. Every class member receives in excess of $2500. Plaintiffs' counsel, who are highly experienced in cases of this type, assessed that this case carried greater risk than other protest cases because the issues of the lawfulness and audibility of the unlawful assembly order was highly contested, and Defendants claimed that they did not deny OR release but rather needed the time to process the arrestees before releasing them. While Plaintiffs' counsel believed they had a strong claim, they considered this claim to be considerably more subject to dispute than other cases they handled. Plaintiffs' counsel concluded that a recovery of between $1500-$2000 per claiming class member was a fair settlement given the disputed nature of

the claim and that all class members were released within 18 hours in contrast to longer detentions in other cases. (Litt Prelim. App. Dec. ¶ 9.) The actual recovery per claiming class member well exceeds that amount.

27. The settlement is supported by highly experienced Class Counsel, who thoroughly investigated the case, successfully litigated the class' certification over objection, analyzed extensive documentary and video evidence, submitted several expert reports and conducted several depositions. See, e.g., Attorneys' Fee Declaration of Carol Sobel, ¶ 6, 17-18 (Dkt. 149); Preliminary Approval Order, p. 6 (Dkt. 145) ("Plaintiffs' counsel "conducted extensive discovery" about the protests and retained experts to evaluate the propriety of police actions. *See (*Dkt. 131 at 12-13); Litt. Decl., (Dkt. 132 ¶5); Sobel Decl., (Dkt. 133.) The City produced 50 disks on which approximately four gigabytes of data was maintained related to the incidents underlying this action. Sobel Decl., (Dkt. 133 ¶10). Plaintiffs and Defendants "took depositions and responded to extensive discovery requests from the other side. (Dkt. 133 ¶11). This shows that the parties had substantial and sufficient information to make informed decisions about a reasonable settlement. Therefore, this factor supports preliminary approval of the settlement.")

**VII.   NOTICE**

28. As required by this Court in its Preliminary Approval Order, Class Notices were sent by the Class Administrator to all persons identified from law enforcement records as class members, and extensive outreach was done through email outreach.

29. The notice given to the Class Members is hereby determined to be fully in compliance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all parties entitled thereto.

30. Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in this hearing, it is hereby determined that all Class Members are bound by this Final Order of Approval and Settlement.

## VIII. TERMS OF PAYMENTS FROM THE CLASS FUND

31. The class settlement's basic terms are as follows:

   a. A Class Fund of $255,010 to be paid as follows:
      i. expert costs (totaling $20,210) to be paid to the Client Trust Account of the Law Office of Carol Sobel;
      ii. mediation costs (totaling $5500) to be paid to the Client Trust Account of the Law Office of Carol Sobel;
      iii. incentive awards to the three class representatives of $5000 each to be paid to the Client Trust Account of the Law Office of Carol Sobel (for a total of $15,000);
      iv. class administration costs of a flat fee of $20,000 to be paid to the Law Office of Carol Sobel, inclusive of all cost of mailing and reporting; and
      v. $200,000 for distribution pro rata to claiming class members to be paid to the Client Trust Account of the Law Office of Carol Sobel.

   b. $484,290 (inclusive of $7,163.27 in litigation costs other than the expert, mediation and class administration costs) as compensation for statutory attorneys' fees and costs (subject to the approval of the court), to be paid to the Client Trust Account of the Law Office of Carol Sobel, and to be the subject of a separate motion for attorneys' fees pursuant to 42 U.S.C. §1988 and Civil Code §52.1(h). For purposes of this settlement, Defendants agreed that Plaintiffs are the prevailing party under the foregoing statutes for a motion pursuant to this settlement and further agreed that $476,801.93 (the portion of the fees and costs

constituting fees) is substantially discounted below the amounts that Plaintiffs would have sought in an attorneys' fee motion as the prevailing parties in a contested motion. Plaintiffs' motion for attorneys' fees has been separately filed (with a separate proposed order) and seeks an award of that amount.

    c.    $5000 to Todd Kyle as compensation for his individual claim paid to the Client Trust Account of the Law Office of Carol Sobel.

32.    Because up to $20,000 was allocated to class administration, there is an additional $15,878.51 to supplement the class fund payable to class members.

33.    The following chart shows how the funds would be disbursed under the settlement agreement in light of this final accounting.

| DESCRIPTION | AMOUNT |
| --- | --- |
| KYLE TODD RECOVERY | $5000 |
| COSTS (MEDIATION/EXPERT) FROM CLASS FUND | $25,710 |
| TOTAL CLASS ADMINISTRATIVE COSTS | $4,121.49 |
| INCENTIVE PAYMENTS | $15,000 |
| CLASS FUND FOR DISTRIBUTION TO CLASS MEMBERS (INCLUDING UNUSED CLASS ADMIN FUNDS OF $15,878.51 FROM THE $20,000 ALLOCATED) | $215,878.51 |
| FEES AND COSTS (COSTS IN ADDITION TO MEDIATION EXPERT COSTS PAID BY CLASS FUND) | $484,290 |
| TOTAL | $750,000.00 |
|  |  |
| TOTAL # CLAIMS FILED | 85 |
| AMOUNT PER CLASS MEMBER (AFTER ALL COSTS AND INCENTIVE FEES) | $2539.74 |

34.    The Court finds that the proposed $5000 incentive awards are justified and consistent with well-established law. In the preliminary approval order, the Court noted evidence of a "conservative estimate of 50 hours per named plaintiff" as of that time and found that to be reasonable subject to further review at final approval, "including with respect to any objections that are filed." No class member objected to the proposed incentive awards.

8

35. Incentive "awards are discretionary, *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Recent studies indicate that incentive awards occur in 71.3% of all class cases, and that their frequency has risen in recent years. 5 *Newberg on Class Actions* §17:7 (5th ed.) ("*Newberg*").

36. The proposed $5,000 incentive award, in addition to the amount to which they are entitled under the Settlement Agreement, is supported by the empirical data. *See, e.g., In re LIBOR-Based Financial Instruments Antitrust Litigation, 2018-2 Trade Cas.* 2018 WL 3863445, at *2 (S.D. N.Y. 2018) (citing *Newberg*) ("[E]mpirical studies have shown that, in recent years, the median incentive award per plaintiff is approximately $5,000 and the mean incentive award is approximately $12,000."). *See also, e.g.*, Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at 37 (C.D. Cal. Nov. 23, 2013) ("An incentive award of $5,000 per class representative is in line with other awards approved in this circuit."); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D.Cal. Jan.26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995) (awarding $50,000 to a lead plaintiff).[2]

37. The Class Administrator shall have sole responsibility for distribution of the Class Fund to class members. To the extent that valid claims are filed, but

---

[2] Kyle Todd is not strictly a class representative and does not receive any portion of the Class Fund. However, given the recovery of the average class member, and the fact that he is an individually named plaintiff who could prove individual emotional distress damages, an allocation of $5000 as his damages award is reasonable.

the checks issued pursuant to such claims are not cashed, the funds for that person shall be held in the Client Trust Account of the Law Office of Carol Sobel for one year, after which it will be donated to an agreed upon designated *cy pres* organization.

### IX. CLASS ADMINISTRATOR

38. The Law Office of Carol Sobel acted as the Class Administrator. Ms. Sobel's office has performed all tasks required of it under the settlement agreement and the preliminary approval order.

39. At the conclusion of the Class Distribution, the Class Administrator shall submit a report to the Court summarizing the payments made to the Class.

### X. ATTORNEYS' FEES

40. The Court finds that a) this was a complex case involving significant risks due to the uncertainty of Plaintiffs' prevailing in light of uncharted First Amendment issues, the absence of law addressing the standards for OR release under Penal Code §853.6 and the significant factual disputes, in addition to the normal significant risk in *Monell* and class litigation; b) significant effort was required to maintain contact with as many class members as possible; c) it was difficult to reach a settlement, no settlement was reached after two mediation sessions, and only as trial preparation loomed did the parties directly reach a settlement; d) substantial effort was expended by counsel – including, for example disputed motions to dismiss and for class certification, independent investigation, substantial discovery and document review, submission of several expert reports, settlement, and preliminary and now final approval motions – and although there were significant efforts by the most experienced counsel, appropriate division of labor occurred assigning appropriate work to the less experienced attorneys; e) class counsel are highly experienced and skilled in cases of this type; and f) substantial sums were recovered for class members (exceeding $2500 for those who filed claims), which Plaintiffs' counsel consider a very good result, given the

1  risk of loss.

2  41.  As noted above, the reaction of the class is favorable, and there is a
3  high claim rate and no objections or opt outs.

4  42.  Although the recovery in attorneys' fees exceeds the total recovery
5  being paid to the class, proportionality of fees to client recovery is not the standard
6  to determine the fees to be awarded; rather, the reasonableness of the fee is. Here,
7  as indicated, Counsel obtained an excellent recovery for class members. Where
8  counsel has expended significant effort that was reasonable, the fact that their fees
9  exceed the financial recovery is not an impediment to an award of fees. *See, e.g.,*
10 *City of Riverside v. Rivera,* 477 U.S. 561, 575-77, 106 S. Ct. 2686, 91 L. Ed. 2d
11 466 (1986) ("damages awards do not reflect fully the public benefit advanced by
12 civil rights litigation, Congress did not intend for fees in civil rights cases, unlike
13 most private law cases, to depend on obtaining substantial monetary relief";
14 Congress recognized that the normal contingent fee arrangements made in personal
15 injury cases "would often not encourage lawyers to accept civil rights cases, which
16 frequently involve substantial expenditures of time and effort but produce only
17 small monetary recoveries" and intended that fee awards "be governed by the same
18 standards which prevail in other types of equally complex Federal litigation, such
19 as antitrust cases"); *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir.
20 1996); *Quesada v. Thomason,* 850 F.2d 537, 539 (9th Cir.1988); *Fair Hous. of
21 Marin v. Combs*, 285 F.3d 899, 907 (9th Cir. 2002).

22 43.  This principle applies in the class action context as well. Statuttory
23 fees are available in class actions, just as they are in individual cases with statutory
24 fee provisions. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003)
25 ("in a class action involving both a statutory fee-shifting provision and an actual or
26 putative common fund, the parties may negotiate and settle the amount of statutory
27 fees along with the merits of the case, …[and] the amount of such attorney's fees
28 can be approved if they meet the reasonableness standard when measured

11

against statutory fee principles"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011),

44. The principle that reasonable statutory fees are available in class action as well as individual actions is well established. In *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (cited favorably in *In re Bluetooth Headset Prod. Liab. Litig., supra*), the Court explained that "the lodestar method…[is] the appropriate method in statutory fee shifting cases…[including in class actions.] *Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class*." (Emphasis supplied.) *See also, e.g., Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) (negotiated statutory fee exceeding monetary recovery because, "unlike a common fund award," the attorney's fees award would not "reduce the plaintiffs' recovery…[, the] fee award made here may be analyzed on the same terms as a statutory fee award, which the defendant would pay, and which would not in any way affect or reduce the plaintiffs' award" ); *Newberg*, §15.93 (citing *Prandini* and noting "fees that are paid to class counsel for the time they spend pursuing attorney's fees for the underlying case" are compensable in class fee claims based on a statutory fee, in contrast to a pure class fund fee award); *Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986) (allowing for fees-on-fees in a class action fee-shifting case and carefully distinguishing it from common fund cases, where such fees-on-fees are not appropriate).

45. Thus, courts have awarded lodestar-based fees independent, and in excess, of the amount of class damages based on fee shifting statutes (or contracts). *See. e.g., Owner-Operator* Indep. *Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, 659 F. Supp. 2d 1016 (S.D. Ind. 2009) (class action under Truth in Lending

statutes where class members received $194,220.98 [236 claims filed out of possible 3200 "potential claimants"]; granting statutory attorneys' fees and costs in the amount of $1,145,671.58 under statutory fee provisions); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 275–76 (6th Cir. 2016) (in a consumer class action where the "district court also correctly noted that several of the plaintiffs' claims involved fee shifting statutes, … and that the purpose of such statutes is to induce a capable attorney to take on litigation that may not otherwise be economically viable," it was not an abuse of discretion for the court to use a lodestar method of calculating fees of $2.39 Million where the maximum fund value was $15,500,430, but the amount paid class members was $1,593,240); *In re Home Depot Inc.*, 931 F.3d 1065, 1078–80 (11th Cir. 2019) (awarding a class attorneys' fee of $15.3 million using the lodestar calculation including a multiplier of 1.3, finding that the case was a contractual fee-shifting case, and the constructive common-fund doctrine did not apply); *McKibben v. McMahon*, 2019 WL 1109683, at *11–15 (C.D. Cal. Feb. 28, 2019) (approving settlement in a jail class action involving disparate treatment of gay, bi-sexual and transgender inmates in programming and privileges, where the awarded fees exceeded the class monetary recovery; finding that the "lodestar approach is appropriate because this is a class action brought under fee-shifting statutes"[3] and observing that the "Ninth Circuit … has repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded" and that "it is common for statutory fees to exceed recovered damages"),

      46.    In this case, Plaintiffs' counsel accepted a fee that amounts to about half of their calculate lodestar, which represents a substantial discount from what they would have claimed in a fee motion if they ultimately prevailed through litigation. Detailed fee records have been provided, and the Court does not

---

[3] While the Court noted that this was true "where the primary relief sought is injunctive relief," the foregoing authorities establish this is true also for damages cases.

question that the time identified was actually spent.

47. Plaintiffs' counsel also provided substantial evidence both from Class Counsel Barrett Litt and Carol Sobel, and from well know attorneys' fee expert Richard Pearl, as to the reasonableness of the rates used to calculate the lodestar, which range from as high as $1200 per hour for Mr. Litt to $420 for a 3-4 year attorney, in complex civil rights and other complex civil litigation.

48. In light of the substantial discount from the calculated lodestar to the fee settlement, and the absence of any class member objection to the fees, the Court sees no need to do a detailed lodestar analysis. Under Ninth Circuit law, hours should not be discounted by more than 10% without a detailed analysis. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ) ("district court can impose a small reduction, no greater than 10 percent—a "haircut"— based on its exercise of discretion and without a more specific explanation"). Hypothetically, even if the Court were to find such a "haircut" appropriate here, and were it to further find that the calculated rates should be reduced across the board by 20%, the fee awarded in this case would still be substantially below that recalculated lodestar.

49. Thus, the Court finds the agreed upon fee reasonable.

XI. **GENERAL PROVISIONS**

50. All 85 claim forms, all of which were timely, shall be paid. All class members, whether or not they filed claims, shall be bound by this Order.

51. Except as otherwise provided in this Order, each party shall bear its own costs, expenses and attorneys' fees.

52. The Court reserves and maintains jurisdiction over this settlement and its provisions, and over the claims administration and distribution of the funds. Disagreements between the parties on any disputes or unresolved aspects of this Order as it relates to monetary relief shall be subject to mediation before the Magistrate Judge assigned to the case. If mediation is not successful, the matter shall

be brought to this Court for resolution.

53.     The use of the masculine gender herein is construed to include the feminine and/or the neuter where applicable. The use of the singular herein is to be construed to include the plural where applicable. The use of the plural herein shall be construed to include the singular where applicable.

## XII.  FINAL RESOLUTION

54.     The monetary relief provided for in this Order shall compensate for all alleged violations of rights and all claims by the Damages Class Members on matters alleged in the lawsuit under any theory of liability related to the events of November 26, 2014, at 6th and Hope Streets, that come within the Damages Class definition.

55.     The Court hereby dismisses the lawsuit on the merits, with prejudice, and without further costs, with such dismissal subject only to compliance by the Parties with the terms and conditions of the Settlement Agreement, and this Final Order of Approval and Settlement.

56.     The Damages Class Members, and their agents, attorneys and assigns, are hereby severally and permanently barred and enjoined, to the fullest extent permitted by law, from filing, commencing, instituting, maintaining, prosecuting, asserting or participating in a lawsuit or any other proceeding against the Defendants, including the employees, entities, agents, attorneys and insurers of Defendants and all Released Persons as defined in Section II, ¶ 4, involving or based on any of the claims encompassed by the complaint in this case, or in any way arising out of the facts alleged, or in any way related to the claims for relief pleaded, in the operative Complaint, which are fully incorporated herein by reference.

57.     The Named Plaintiffs and each Class Member waive all rights or benefits which he or she now has or in the future may have under the terms of California Civil Code §1542, arising from, alleged in, or pertaining to the matters

alleged in the Lawsuit, specifically claims related to the events of November 30, 2011, that come within the Damages Class definition, except as to monetary damages for those class members who have opted out. Section 1542 reads:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

58. Each Defendant and other Released Person are hereby released from all claims for damages or other relief which any Class Member had, has, or may have in the future, against such Defendant or other Released Person in any way arising out of the facts alleged, or in any way related to the claims for relief pleaded, in the operative Complaint;

59. The Defendants, and all of their agents, attorneys and assigns, waive and release any and all claims or rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions, by the Plaintiffs in any of the cases covered in this Settlement, by any Represented Individuals as defined herein, and by any Class Members, with respect to any matters related to the matters alleged in the lawsuit complaint, including waiver of the right to file a malicious prosecution action; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code §1542 recited in the previous paragraph.

60. Plaintiffs have not relied upon the advice of Class Counsel as to the legal and/or tax consequences of this settlement, the payment of any money by the Defendants or the distribution of the Settlement Funds.

61. Neither this Final Order of Approval, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any Defendant that any acts of wrongdoing have been

committed, and they shall not be deemed to create any inference that there is any liability therefore. Neither this Final Order of Approval and Settlement, nor the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration, or other tribunal, other than as expressly set forth in the Settlement Agreement.

62. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order of Approval and Settlement. Inasmuch as this disposes of all claims asserted in the Lawsuit, the Court further directs the Clerk to enter an order of dismissal with prejudice pursuant to F.R.Civ.P Rule 41(a)(1)(2).

DATED: _____, 2020

_____
John A. Kronstadt, Judge
United States District Court

17